**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26–90528 (CML) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |
| | ) | |

**EMERGENCY
*EX PARTE* APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING
ADMINISTRATION LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

> **Emergency relief has been requested.  Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 19, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Tuesday, May 19, 2026 at 2:00 p.m. (prevailing Central Time) in Courtroom 402, Floor 4, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's home page.  The meeting code is "JudgeLopez".  Click the settings**

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

**icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "*Debtors*") file this application (this "*Application*") and in support respectfully submit the following:

### Relief Requested

1.      The Debtors seek entry of an order (the "*Order*"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ Kroll Restructuring Administration LLC ("*Agent*") as claims, noticing, and solicitation agent (the "*Claims and Noticing Agent*") in accordance with the terms and conditions set forth in the engagement letter dated May 5, 2026 (the "*Engagement Letter*") attached hereto as **Exhibit B**.  The Application is supported by the *Declaration of Benjamin J. Steele in Support of Emergency Ex Parte Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and Solicitation Agent* (the "*Declaration*") attached hereto as **Exhibit C**.

2.      Emergency consideration of this Application is requested to effectuate the Debtors' transition into bankruptcy and to immediately begin providing effective notice of pleadings and orders to interested parties.

### Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction over this application pursuant to 28 U.S.C. § 1334.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Request to Employ Agent**

6.      The Debtors request approval to employ Agent to serve as Claims and Noticing Agent in these chapter 11 cases to provide the services outlined in the Engagement Letter.  The Debtors believe that Agent's employment is in the best interest of the estates.

7.      The Agent's rates are competitive and reasonable.  The Agent has the expertise required in a complex chapter 11 case.

8.      The Debtors request this Court authorize Agent's employment.

**Compensation**

9.      The Debtors request that Agent's fees and expenses be paid as an administrative expense in the ordinary course of the Debtors' business without further application or order of the Court.  Should a dispute develop, the matter will be brought to the Court for resolution.  Agent agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.

10.      Agent will provide a monthly invoice to the Debtors, Debtors' counsel, the U.S. Trustee, counsel for any official committee, and any party-in-interest who specifically requests service of the monthly invoices.

11.      Prior to the Petition Date, the Debtors provided Agent an advance in the amount of $50,000.  Agent will apply these funds in accordance with the Engagement Letter.

**Indemnification**

12.      The Debtors have agreed to indemnify the Agent as set forth in the Engagement Letter.  Notwithstanding anything to the contrary, the Agent will not be indemnified for liability arising out of gross negligence, willful misconduct, and certain other matters identified in the Order.

**Disinterestedness**

13.     Agent has reviewed its conflicts system to determine whether it has any relationships with the Debtors' creditors and parties-in-interest.  Except as disclosed in the Declaration, Agent represents that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.  To the best of the Debtors' knowledge, Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Agent agrees that it will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

The Debtors request that the Court grant the relief requested in this Application.

*[Remainder of page intentionally left blank]*

Dated: May 18, 2026
Houston, Texas

*/s/  Paul E. Heath*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Sara Zoglman (TX 24121600)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
      szoglman@velaw.com

-and-

David S. Meyer (*pro hac vice* pending)
Jessica C. Peet (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: dmeyer@velaw.com
      jpeet@velaw.com

***Proposed Counsel to the Debtors and Debtors in Possession***

6

## <u>Certificate of Service</u>

This Application is being filed *ex parte*.  Service will only occur by notice on the Court's CM/ECF system.

/s/ *Sara Zoglman*
One of Counsel

**<u>Exhibit A</u>**

**Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26–90528 (CML) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |
|  | ) |  |

**ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION
OF KROLL RESTRUCTURING ADMINISTRATION
LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

The Court has considered the Debtors' application (the "***Application***")[2] to employ Kroll Restructuring Administration LLC ("***Agent***") as its claims, noticing, and solicitation agent ("***Claims and Noticing Agent***") in these chapter 11 cases. The Court finds that *ex parte* relief is appropriate. The Court orders:

1.      The Debtors are authorized to employ Agent as the Claims and Noticing Agent under the terms of the Engagement Letter attached to the Application as modified by this Order.

2.      The Agent is authorized and directed to perform the services as described in the Application, the Engagement Letter, and this Order. If a conflict exists, this Order controls.

3.      The Clerk shall provide Agent with Electronic Case Filing ("***ECF***") credentials that allow Agent to receive ECF notifications and file certificates and/or affidavits of service.

4.      The Agent is a custodian of court records and is designated as the authorized repository for all proofs of claim filed in these chapter 11 cases. Agent shall maintain the official Claims Register(s) in these chapter 11 cases. The Agent must make complete copies of all proofs of claims available to the public electronically without charge. Proofs of claims and all attachments may be redacted only as ordered by the Court.

5.      The Agent must not transmit or utilize the data obtained by the Agent in exchange for direct or indirect compensation from any person other than the Debtors.

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

6.      The Agent shall provide the Clerk with a certified duplicate of the official Claims Register(s) upon request.

7.      The Agent shall provide (i) an electronic interface for filing proofs of claim in these chapter 11 cases; and (ii) a post office box or street mailing address for the receipt of proofs of claim sent by United States Mail or overnight delivery.

8.      The Agent is authorized to take such other actions as are necessary to comply with all duties and provide the Services set forth in the Application and the Engagement Letter.

9.      The Agent shall provide detailed invoices setting forth the services provided and the rates charged on a monthly basis to the Debtors, their counsel, the Office of the United States Trustee, counsel for any official committee, and any party in interest who specifically requests service of the monthly invoices in writing.

10.     The Agent shall not be required to file fee applications.  Upon receipt of Agent's invoices, the Debtors are authorized to compensate and reimburse Agent for all undisputed amounts in the ordinary course in accordance with the terms of the Engagement Letter.    All amounts due to the Agent will be treated as § 503(b) administrative expenses.  The Agent may apply its advance in accordance with the Engagement Letter and the terms of this Order.

11.     The Debtors shall indemnify Agent under the terms of the Engagement Letter, as modified and limited by this Order.  Notwithstanding the foregoing, the Agent is not indemnified for, and may not receive any contribution or reimbursement with respect to:

(a)      for matters or services arising before this case is closed, any matter or service not approved by an order of this Court;

(b)      any matter that is determined by a final order of a court of competent jurisdiction that arises from (i) the Agent's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (ii) a contractual dispute if the court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (iii) any situation in which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002).  No matter governed by this paragraph may be settled without this Court's approval; and

(c)      this paragraph does not preclude Agent from seeking an order from this Court requiring the advancement of indemnity, contribution, or reimbursement obligations in accordance with applicable law.

12.     The Agent shall not cease providing services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court.  In the event Agent is unable to provide the Services set out in this Order and/or the Engagement Letter, Agent will immediately

notify the Clerk and the Debtors' attorney and cause all original proofs of claim and data to be turned over to such persons as directed by the Court.

13.     After entry of an order terminating the Agent's services, the Agent shall deliver to the Clerk an electronic copy in pdf format of all proofs of claim.  Once the electronic copy has been received by the Clerk, Agent may destroy all proofs of claim in its possession sixty days after filing a Notice of Intent to Destroy on the Court's docket.

14.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  The scope of Agent's services may be altered only on further order of this Court.

Dated: [●], 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

3

## Exhibit B

## Engagement Letter



## Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of May 5, 2026 between Kroll Restructuring Administration LLC ("*Kroll*") and Bitcoin Depot Inc. (together with its affiliates and subsidiaries, the "*Company*").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Services**

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "*Services*").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "*Company Parties*") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2.  **Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "*Rate Structure*"); provided, however that Kroll will provide a discount of 25% off the attached hourly rates.  The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any

---

[1]   The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $50,000. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If any annual increase to the hourly rates therein represents an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.



(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5. Property Rights

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

## 6. Bank Accounts

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "**Cause**" means (i) fraud, gross negligence, or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay any undisputed Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of undisputed invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder, provided that the Company retains the right to dispute such amounts in good faith.

(d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and



assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8.  No Representations or Warranties

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9.  Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "*Indemnified Parties*") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable and documented counsel fees and expenses) (collectively, "*Losses*") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include (a) any liabilities resulting from claims by any third parties against any Indemnified Party, and (b) indemnification obligations of Kroll to its vendors.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's fraud, gross negligence, or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's fraud, gross negligence, or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy

4



and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all reasonable and documented fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the reasonable and documented expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the Company.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll or the Company of any obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's or the Company's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>



The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17. <u>Effectiveness of Counterparts</u>

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18. <u>Notices</u>

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Kroll:  Kroll Restructuring Administration LLC
1 World Trade Center, 31st Floor
New York, NY 10007



KRULL
RESTRUCTURING
ADMINISTRATION

|  | Attn: Legal Department |
|---|---|
|  | Tel: 212-257-5450 |
|  | Email: Legal@kbs.kroll.com |
| If to the Company: | Bitcoin Depot Inc. |
|  | 8601 Dunwoody Place |
|  | Sandy Springs, GA 30350 |
|  | Attn: Chris Ryan |
|  | Tel: 859-912-0437 |
|  | Email: chris.ryan@bitcoindepot.com |
| With a copy to: | Vinson & Elkins LLP |
|  | 1114 Avenue of the Americas |
|  | 32nd Floor |
|  | New York, NY 10036 |
|  | Attn: Jessica Peet |
|  | Tel: 212-237-0108 |
|  | Email: jpeet@velaw.com |

*[Signature page follows]*



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Christina Pullo
Title: Managing Director

**Bitcoin Depot Inc.**

By: Chris Ryan
Title: General Counsel & Corporate Secretary

8

**Docusign**

## Certificate Of Completion

Envelope Id: ACA8F7D6-56A4-45A0-835D-F5BE15417C68
Subject: Complete with Docusign: Vinson  Elkins Client 5.5.26 - Kroll Engagement Agreement (Execution Ve...
Source Envelope:
Document Pages: 8
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-06:00) Central Time (US & Canada)

Signatures: 1
Initials: 0

Status: Completed

Envelope Originator:
Christian Cattan
845 Texas Avenue
Suite 4700
Houston, TX  77002
ccattan@velaw.com
IP Address: 144.125.1.114

## Record Tracking

Status: Original
    5/8/2026 9:45:47 PM

Holder: Christian Cattan
    ccattan@velaw.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Chris Ryan<br>chris.ryan@bitcoindepot.com<br>General Counsel<br>Security Level: Email, Account Authentication (None) | Signed by:<br>*Chris Ryan*<br>6F7A8C39541F475...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 199.27.35.25 | Sent: 5/8/2026 9:46:47 PM<br>Viewed: 5/8/2026 10:10:42 PM<br>Signed: 5/8/2026 10:10:54 PM |

**Electronic Record and Signature Disclosure:**
    Accepted: 5/8/2026 10:10:42 PM
    ID: 7471debc-64e1-4999-b305-2fcb9adb9da3

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Sara Zoglman<br>szoglman@velaw.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>    Not Offered via Docusign | COPIED | Sent: 5/8/2026 9:46:48 PM<br>Viewed: 5/8/2026 10:21:44 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/8/2026 9:46:48 PM |
| Certified Delivered | Security Checked | 5/8/2026 10:10:42 PM |
| Signing Complete | Security Checked | 5/8/2026 10:10:54 PM |
| Completed | Security Checked | 5/8/2026 10:10:54 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 10/8/2015 4:24:30 PM
Parties agreed to: Chris Ryan

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Vinson & Elkins LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Vinson & Elkins LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

 To contact us by email send messages to: bjfarmahini@velaw.com


**To advise Vinson & Elkins LLP of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at bjfarmahini@velaw.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Vinson & Elkins LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to bjfarmahini@velaw.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Vinson & Elkins LLP**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to bjfarmahini@velaw.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies<br><br>•Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**
To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.
By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Vinson & Elkins LLP as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Vinson & Elkins LLP during the course of my relationship with you.



# RATES

Quality.
Partnership.
Expertise.
Innovation.

| Claims and Noticing Rates | |
| --- | --- |
| TITLE | HOURLY RATE |
| Analyst<br><br>The Analyst processes data, including proofs of claim, ballots and return mail, and executes outgoing mailings with adherence to strict quality control standards. | $30 - $50 |
| Technology Consultant<br><br>The Technology Consultant provides database support for complex reporting requirements and administers complicated variable data mailings. | $55 - $95 |
| Consultant<br><br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing claims objections and transfers. | $75 - $165 |
| Senior Consultant<br><br>The Senior Consultant directs the data collection process for the master mailing list, oversees all mailings, performs quality control checks on claim and other data processes, and generates claim and other reports. | $175 |
| Director<br><br>The Director is the lead contact for the company, counsel and advisors on the engagement and oversees all aspects of the bankruptcy administration, including managing the internal client service team and coordinating among case professionals. | $175 - $185 |

**About Kroll**

Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2025 Kroll, LLC. All rights reserved. KR21035106



# RATES

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation
## Statements of Financial Affairs/Schedules of Assets and Liabilities

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant; SOFA/Schedule Consultant**<br><br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.<br>The SOFA/Schedule Consultant directs the data collection process for the SOFAs and Schedules and prepares the official forms. | $195 |
| **Solicitation Director; SOFA/Schedule Director**<br><br>The Director of Solicitation is the lead client service contact in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes.<br>The SOFA/Schedule Director works closely with the company and advisors to oversee all aspects of collecting SOFA/Schedule data and preparing the official forms. | $225 |

## Managing Directors and Experts

| TITLE | HOURLY RATE |
|---|---|
| **Executives**<br><br>Kroll Restructuring Administration's Executives are former restructuring professionals averaging more than 15 years of experience across hundreds of restructuring engagements. | No charge |

---

**About Kroll**

Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2025 Kroll, LLC. All rights reserved. KR21035106



# RATES

Quality.
Partnership.
Expertise.
Innovation.

| Printing & Noticing Services | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard Email Noticing (Blast Email pricing on request) | No charge |
| Fax Noticing | No charge |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |
| **Newspaper and Legal Notice Publishing** | |
| Coordinate and publish legal notices | Available on request |
| **Case Website** | |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| **Electronic Data Collection Platform** | |
| Electronic claim filing, ballot submission and complex data collection platform | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |

**About Kroll**

Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2025 Kroll, LLC. All rights reserved. KR21035106



# RATES

Quality.
Partnership.
Expertise.
Innovation.

| | |
|---|---|
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Payment issuance (check, wire, ACH, digital) and/or Form 1099 | Available on request |
| W-9 solicitation and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2025 Kroll, LLC. All rights reserved. KR21035106

**Exhibit C**

**Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) |
| | ) |
| BITCOIN DEPOT INC., *et al.*, | ) |
| | ) |
| Debtors.[1] | ) |
| | ) |
| | ) |
| | ) |

Chapter 11

Case No. 26–90528 (CML)

(Joint Administration Requested)
(Emergency Hearing Requested)

**DECLARATION OF BENJAMIN J. STEELE**
**IN SUPPORT OF DEBTORS' <u>EMERGENCY</u> *EX PARTE***
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.       I am a Managing Director at Kroll Restructuring Administration LLC ("*Agent*" or

"*Claims and Noticing Agent*" ), a chapter 11 administrative services firm whose headquarters are

located at 1 World Trade Center, 31st Floor, New York, New York 10007.  Except as otherwise

noted in this declaration (this "*Declaration*"), I have personal knowledge of the matters set forth

herein, and if called and sworn as a witness, I could and would testify competently as follows.

2.       I submit this Declaration in support of the above-captioned Debtors' (collectively,

the "*Debtors*") *Emergency Ex Parte Application for Entry of an Order Authorizing the*

*Employment and Retention of Kroll Restructuring Administration LLC as Claims, Noticing, and*

*Solicitation Agent*, filed contemporaneously herewith (the "*Application*").[2]

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Application.

3.      Agent represents the following:

(a)      Agent, its members, and employees are not and were not, within two years before the date of the filing of these chapter 11 cases, creditors, equity security holders, insiders, or employees of the Debtors;

(b)      Agent will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)      by accepting employment in these chapter 11 cases, Agent waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Agent will not be an agent of the United States and will not act on behalf of the United States;

(e)      Agent will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)      Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)      in its capacity as Claims and Noticing Agent in these chapter 11 cases, Agent will not intentionally misrepresent any fact to any person;

(h)      Agent shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)      Agent will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)      none of the services provided by Agent as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

4.      I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "***Potential Parties in Interest***") in these chapter 11 cases.  The results of the conflict check were compiled and reviewed by Agent professionals under my supervision.  Agent is not aware of any connection that would present a disqualifying conflict of interest.  Should Agent discover any new relevant facts or connections bearing on the matters

2

described herein during the period of its retention, Agent will use reasonable efforts to promptly file a supplemental declaration.

5. To the best of my knowledge, neither Agent, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors, or other relevant parties. Agent may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Agent serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

6. Agent discloses the following connections, each of which Agent believes does not present an interest adverse to the Debtors:

- I was previously an associate at Kirkland & Ellis LLP ("*K&E*"), one of the top unsecured creditors in these chapter 11 cases. I left K&E in August 2013. I did not work on any matters involving the Debtors while employed by K&E.

- I understand that K&E has represented and currently represents Agent in matters unrelated to the Debtors and these chapter 11 cases. Agent also acts as a technology services vendor to K&E in connection with matters unrelated to these chapter 11 cases. I do not believe that these connections preclude Kroll from meeting the disinterestedness standard under the Bankruptcy Code.

- My wife, Yoomi Lee Steele, is a Director, Office of Cyber Resiliency at Google, one of the Debtors' vendors and top unsecured creditors in these chapter 11 cases. My wife's role at Google is not customer-facing and is wholly unrelated to the Debtors and these cases.

- Oleg Bitman, a Director at Agent, was previously an associate at BakerHostetler LLP ("*Baker*"), one of the Debtors' vendors. Mr. Bitman left Baker in 2016. Mr. Bitman did not work on any matters involving the Debtors during his time at Baker. Additionally, Eric Usitalo, a director at Agent, is the spouse of Michelle Usitalo. Ms. Usitalo is a partner at Baker. On information and belief, Ms. Usitalo does not work on any matters involving the Debtors.

- Mariah Dubin is a Director at Agent. Mrs. Dubin's husband is an Executive Director, Technology Consulting, at Ernst & Young LLP, one of the Debtors' vendors. Mr. Dubin's role is not restructuring related and he is not involved in these chapter 11 cases.

- Stacey Corr-Irvine, a Director at Agent, was formally a partner at Jones Day, one of the Debtors' vendors. Ms. Corr-Irvine left Jones Day in 2020. Ms. Corr-Irvine did not work on any matters involving the Debtors during her time at Jones Day.

3

- The son of Pedro A. Jimenez, a Partner at Paul Hastings LLP, one of the Debtors' vendors, is currently employed as a consultant at Kroll.

- Jordan Searles, a Director at Agent, was previously an audit associate at KPMG LLP, one of the Debtors' ordinary course professionals. Mr. Searles left KPMG in 2014. Mr. Searles did not work on any matters involving the Debtors during his time at KPMG.

- Albert Alonzo is a Vice President of Agent. Mr. Alonzo was formerly a case manger for this Court, prior to joining Agent in November 2023.

- Agent is an indirect subsidiary of Kroll, LLC ("**_Kroll Parent_**"). Kroll Parent is the leading independent provider of financial and risk advisory solutions. Within the Kroll Parent corporate structure, Agent operates independently from Kroll Parent. As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Agent's that is materially adverse to the Debtors' estates or any class of creditors or security holders. Agent and its affiliates (which include Kroll Parent and other subsidiaries of Kroll Parent discussed herein) share various intra-firm services (_e.g._, human resources, legal, certain technology functions, mailroom and certain finance functions). The boards of directors of Kroll Parent and its other subsidiaries are separate and independent from the board of directors of Agent. Kroll Parent and its other subsidiaries do not have access to Agent's files or systems, and Agent does not have access to Kroll Parent's files or systems. Kroll Parent is not currently identified on the Potential Parties in Interest list, but I understand that Kroll Parent's expert services and valuation practices are currently providing services to the Debtors. As of the filing of this declaration, I am unable to determine whether Kroll Parent is a creditor in these cases. To the extent Kroll Parent is a creditor in these cases, I will file a supplemental declaration informing the court of such. Agent makes this disclosure out of an abundance of caution.

- Agent further declares that Agent does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Agent provides, provided, or will provide exclusive access to claims data or under which Agent would be compensated for claims data made available by Agent.

7. I believe that Agent is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

4

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Date: May 18, 2026

/s/ Benjamin J. Steele
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC

5