**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26–90528 (CML) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |
| | ) | |

**EMERGENCY MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO PAY (A) CRITICAL VENDORS, (B) LIEN CLAIMANTS,**
**AND (C) FOREIGN VENDORS; AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than 2:00 p.m. (prevailing Central Time) on May 19, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Tuesday, May 19, 2026 at 2:00 p.m. (prevailing Central Time) in Courtroom 402, Floor 4, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's home page.  The meeting code is "JudgeLopez".  Click the settings**

---

[1]  The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

**icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), file this motion (this "**Motion**") and in support respectfully submit the following:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), and 1107(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 6003 and 6004, rules 1075-1, 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas.

**EMERGENCY CONSIDERATION**

4.      In accordance with Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion.  The Debtors submit that an immediate and orderly transition into chapter 11 is critical to the preservation of value at this important juncture and the success of these Chapter 11 Cases.  As discussed in detail below and in the First Day Declaration (as defined below), any delay in granting the relief requested could cause immediate and irreparable harm to the Debtors.  As such, the Debtors submit that emergency consideration is necessary and respectfully request that this Motion be heard at the Debtors' first day hearing.

**BACKGROUND**

5.      Bitcoin Depot Inc. and its Debtor and non-Debtor subsidiaries (collectively, the "***Company***") own and operate the largest network of Bitcoin kiosks across North America, providing users with a simple, efficient, and intuitive means of converting cash into Bitcoin.  The Company operates a portfolio of approximately 9,700 kiosks deployed in retailer locations throughout the United States, Canada, and Australia, and also offers BDCheckout, a product accepted at approximately 16,300 retail locations that enables users to load cash into their accounts at the checkout counter and then use those funds to purchase Bitcoin.  The Company is headquartered in Sandy Springs, Georgia, with additional corporate offices in Ottawa, Ontario, Canada.

6.      On May 17, 2026 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the Petition Date, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

7.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Thomas Studebaker in Support of the Chapter 11 Cases and First-Day Motions* (the "***First Day Declaration***"), filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek entry of an interim order (the "***Interim Order***"), substantially in the form attached hereto as **Exhibit A**, and subsequently a final order (the "***Final Order***"), substantially in the form attached hereto as **Exhibit B**:  (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business, based on their sound business judgment, prepetition amounts owed to (i) Critical Vendors (as defined below), (ii) Lien Claimants (as defined below), and (iii) Foreign Vendors (as defined below) (together with the Critical Vendors and the Lien Claimants, the "***Vendors***," and the Vendors' prepetition claims, collectively, the "***Vendor Claims***"); and (b) granting related relief.[3]  The Debtors respectfully request authority to pay Vendor Claims in an amount not to exceed $448,000 on an interim basis and in an amount not to exceed $888,000 on a final basis, in each case as they become due in the ordinary course of business, and only on such terms and conditions as the Debtors deem appropriate, in their business judgment, to minimize any disruptions to the Debtors' businesses.[4]  In addition, the Debtors

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings set forth in the First Day Declaration.

[3]    To the best of the Debtors' knowledge, Vendor Claims do not include prepetition claims of non-Debtor affiliates, insiders of the Debtors (as defined in section 101(31) of the Bankruptcy Code), or affiliates of any insiders, and for the avoidance of doubt, the Debtors do not seek authority to pay prepetition claims of non-Debtor affiliates, insiders of the Debtors (as defined in section 101(31) of the Bankruptcy Code), or affiliates of any insiders.

[4]    In the event Debtors will exceed the aggregate amounts to be paid to the Vendors during the interim period, the Debtors shall file a notice with the Court describing the category and overage amount.

request that the Court schedule a final hearing within approximately 21 days of the commencement of these Chapter 11 Cases to consider approval of this Motion on a final basis.

**THE DEBTORS' VENDORS AND CLAIMS**

9.      The Debtors rely on uninterrupted access to and relationships with various Vendors that supply goods and services critical to an orderly wind-down of the Debtors' operations.  The value of the Debtors' estates is largely comprised of the Debtors' fleet of kiosks, and to maximize and preserve the value of the kiosks through a wind-down process the Debtors depend on Vendors that provide: (i) necessary software and internet services that allow the Debtors to operate the kiosks and conduct other operational tasks necessary to the wind-down process; (ii) warehousing services to properly store kiosks not in use, pending liquidation of those assets; (iii) high-traffic retail space for in-use kiosks to maintain the value of those kiosks through a sale or wind-down process; and (iv) armored carrier services to move cash from the kiosks into the Debtors' operating accounts.  These goods and services are essential for maintaining and maximizing the value of the Debtors' estates, and failure to pay the Vendor Claims may cause such Vendors to refuse to provide the goods and services necessary for the Debtors' postpetition activities, including limited operations related to liquidation of their kiosk fleet and the wind-down of their businesses. Accordingly, the Debtors seek authority to pay certain prepetition Vendor Claims in the amounts summarized below.

| Vendors[5] | Requested Interim Amount | Requested Final Amount[6] |
|---|---|---|
| Critical Vendors | $424,000 | $848,000 |
| Lien Claimants | $4,500 | $10,000 |
| Foreign Vendors | $19,500 | $30,000 |
| | **$448,000** | **$888,000** |

## A.    Critical Vendors

### i.    *The Debtors' Determination of Critical Vendors*

10.    In the ordinary course of business and continuing during the wind-down process, the Debtors engage a number of providers of essential products and services, which the Debtors historically require to run their operations and service their businesses.  In order to effectuate necessary wind-down activities, the Debtors will rely on a small subset of specialized providers of products and services (the "***Critical Vendors***" and such Critical Vendors' prepetition claims, the "***Critical Vendor Claims***") that are unaffiliated with the Debtors and whose continued provision of such goods and/or services is crucial to allowing the Debtors to conduct such an orderly wind-down of their operations.

11.    The Debtors only intend to make payments contemplated herein to the extent that the Debtors believe a Critical Vendor's failure to do business with the Debtors would materially harm the Debtors' ability to effectuate an orderly wind-down.  Prior to filing these Chapter 11 Cases, the Debtors reviewed their accounts payable and vendor lists and consulted with the Debtors' advisors to identify those vendors most essential to the Debtors' postpetition activities

---

[5]    For the avoidance of doubt, the amounts proposed to be paid to each Vendor on account of its claims are only captured once.  For instance, if a Critical Vendor Claim (defined below) is subject to a valid lien, that claim will instead be categorized as a Lien Claim (defined below). Additionally, amounts proposed to be paid to the Vendors do not include claims of creditors whose prepetition claims are addressed in any other first-day motion filed contemporaneously herewith.

[6]    For the avoidance of doubt, requested amounts of Critical Vendor Claims, Lien Claims, and Foreign Vendor Claims the Debtors seek authority to pay on a final basis are inclusive of Critical Vendor Claims, Lien Claims, and Foreign Vendor Claims, respectively, paid on an interim basis.

that will be critical to maximizing the value of their estates in light of a variety of factors, including, among other things:

- whether a vendor is critical to maximizing property of the estates during a sale process;

- whether a vendor is a sole- or limited-source or high-volume supplier for goods or services critical to the Debtors' limited business operations;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal or better terms and, if so, whether the Debtors would be able to transition business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales of future revenue) exceed the amount of a vendor's prepetition claim;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms without paying such vendor's prepetition claim at the outset of these Chapter 11 Cases;

- whether certain specification or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or replacement parts or to provide critical services on a postpetition basis; and

- whether authorization for payment of a particular vendor is being sought under another motion of the Debtors for first day relief.

12.     Following this analysis, the Debtors identified a limited number of Critical Vendors who constitute less than 10% of the total prepetition vendor population for purposes of the relief requested herein.  The Debtors believe that their relationships with these Critical Vendors may materially deteriorate without such payments, thereby causing disruption to the Debtors' limited operations and wind-down process if the Debtors are unable to pay Critical Vendor Claims as provided herein.  The Critical Vendors which the Debtors have identified fall into the following categories:

a.  <u>Software and Internet Providers</u>

- The Debtors must maintain an internal enterprise resource planning system to manage their cash management system and other operational functions necessary to an orderly wind-down.  The Debtors must also maintain their data providers for internal operational functions during the wind-down process.

b. Warehousers

- The Debtors currently have approximately 438 kiosks in storage with third-party warehousers. These kiosks are estate property, the maintenance and possible sale of which are integral to maximizing and preserving value of the estates.

c. Armored Carriers and Cash Logistics Providers

- The Debtors' business relies on armored carriers to retrieve cash from the Debtors' kiosks on varying collection schedules and to facilitate the deposit of cash into the Debtors' operating accounts. Due to the geographically dispersed and expansive network of the Debtors' operations, the Debtors are required to maintain multiple armored carrier vendors and cash logistics providers to cover all geographic locations wherein the Debtors have operations to be wound down.

d. Retail Hosts

- The Debtors have key relationships with retailers across the country that allow the Debtors to place their kiosks in high-traffic retail locations. Certain of such retail locations account for a significant portion of revenue streams from the Debtors' kiosks, and it is critical to preserving the value of the Debtors' assets and estates that the Debtors are able to keep their kiosks in such retail locations.[7]

ii.     *Critical Vendor Claims*

13.     The Debtors submit that their estates would be immediately and irreparably harmed if they were to lose access to the goods and services provided by the Critical Vendors. The Debtors therefore seek authority to honor prepetition obligations to Critical Vendors and pay all or a portion of the Critical Vendors' prepetition claims on an interim basis in an amount not to exceed $424,000, and on a final basis in an amount not to exceed $848,000 (the "*Critical Vendor Claims*"). The Debtors submit that the requested relief will allow them to preserve the value of their estates by paying the prepetition claims of certain parties that are critical to an orderly and value-maximizing wind-down of their businesses. Moreover, the relief requested herein is

---

[7]     The Debtors have made good-faith efforts to identify and disclose the categories of Critical Vendors that may be paid pursuant to this Motion. While the Debtors believe that the categories described herein accurately represent the Critical Vendor Claims (as defined below), nothing in this Motion shall limit the Debtors' authority to pay any Critical Vendor on the basis of these categories, provided that the aggregate amount of Critical Vendor Claims paid does not exceed the total amount authorized.

necessary because many of the Critical Vendors have no obligation to continue providing goods and services under relevant contracts, and, as a result, the Debtors would be unable to force those vendors to continue to perform under section 365 of the Bankruptcy Code. Additionally, the Debtors do not seek authorization to honor prepetition obligations arising under contract, except where the Debtors determine, in their business judgment, such parties may be capable of terminating their contracts notwithstanding section 362(a) of the Bankruptcy Code or may otherwise inflict immediate and irreparable harm on the Debtors by their refusal to continue providing goods or services.

**B.      Lien Claimants**

14.      The Debtors also rely on services from certain third parties, including carriers and warehousers, who may hold, or claim to hold, a variety of statutory, common law, or possessory liens (such parties, collectively, the "***Lien Claimants***"), that, if asserted, could materially impair the Debtors' postpetition asset sale and wind-down efforts.

15.      Unless the Lien Claimants are paid for outstanding prepetition amounts, the Debtors believe that the Lien Claimants may refuse to continue performing obligations to the Debtors – including refusal to release from their possession certain property of the Debtors – causing immediate harm to the Debtors and their estates. Such refusal may materially impede the Debtors' ability to efficiently liquidate certain of their assets.

16.      The Debtors intend to pay prepetition Lien Claims only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the cost, including the expenses and delay of contesting asserted liens, to their estates. The Debtors have determined, in their business judgment, that paying approximately $10,000 in prepetition Lien Claims will benefit their estates, approximately $4,500 of which will become due and payable within the first twenty-one days after the Petition Date.

**C.     Foreign Vendors**

17.     Certain of the Debtors' vendors are foreign entities (the "***Foreign Vendors***") with prepetition claims (the "***Foreign Vendor Claims***") against the Debtors.  As of the Petition Date, the Debtors believe that approximately $30,000 in Foreign Vendor Claims has accrued and is outstanding, approximately $19,500 of which will become due and payable within the first twenty-one days after the Petition Date.

18.     Based on the reactions of foreign suppliers in other chapter 11 cases, the Debtors believe there is a significant material risk that the nonpayment of even a single invoice could cause a Foreign Vendor to stop shipping goods or providing supplies to the Debtors on a timely basis and/or completely sever its business relationship with the Debtors.  Suppliers and vendors located in foreign countries are often unfamiliar with the chapter 11 process and react skeptically to its debtor protections.  Short of severing their relations with the Debtors, nonpayment of certain Foreign Vendor Claims may also cause Foreign Vendors to take other harmful actions.  Timely access to services, such as armored carrier services for kiosks located abroad, is critical to the Debtors' business and postpetition wind-down operations. Accordingly, the Debtors seek authority, in their sole discretion and business judgment, to make payments on account of such Foreign Vendor Claims.

<u>**POSTPETITION CONTINUATION OF CUSTOMARY TRADE TERMS**</u>

19.     The Debtors seek authority, but not direction, to pay Vendor Claims in the ordinary course of business; *provided* that any such payment of Vendor Claims shall be contingent upon each Vendor's (a) agreement to continue—or recommence—providing goods or services to the

Debtors on "Customary Trade Terms,"[8] and (b) agreement that they shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide such goods and services to the Debtors during the course of these Chapter 11 Cases (*provided*, that the Debtors continue to pay for such goods and services and are not otherwise in breach of such contract or agreement).

20.     The Debtors further propose that if any Vendor accepts payment for a Vendor Claim and thereafter refuses to continue to supply goods or services to the Debtors on the Customary Trade Terms for the applicable period, then the Debtors may assert and request that the Court order: (a) that the payment of such Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Vendor in cash upon written demand, (b) that the Vendor immediately return such payments in respect of its Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Debtors, such Vendor Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Vendor to their original positions, as if the payment of the Vendor Claim had not been made.

21.     To ensure that Vendors transact business with the Debtors on Customary Trade Terms, the Debtors propose the following procedures as a condition to paying any Vendor Claim: (a) the Debtors may (i) require a Vendor to enter into a contractual agreement evidencing such Customary Trade Terms substantially in the form attached to this Motion as **Exhibit C** (a "***Vendor***

---

[8]     As used herein, "***Customary Trade Terms***" means, with respect to a Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such Vendor and the Debtors in the twelve-month period prior to the Petition Date or (b) such other trade terms as agreed by the Debtors and such Vendor that, in the reasonable business judgment of the Debtors, are more favorable to the Debtors than the terms in the preceding clause (a).

*Agreement*"), or (ii) otherwise obtain a written communication from the Vendor evidencing such Vendor's agreement to such Customary Trade Terms, and (b) that payment of the Vendor Claim include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the United States Bankruptcy Court for the Southern District of Texas, Houston Division, dated [●], 2026, in the jointly administered Chapter 11 Cases of Bitcoin Depot Inc., entitled "*[Interim] [Final] Order (I) Authorizing the Debtors to Pay (A) Critical Vendors, (B) Lien Claimants, and (C) Foreign Vendors; and (II) Granting Related Relief*" and submits to the jurisdiction of that Court for enforcement thereof.

22. By this Motion, the Debtors respectfully request authorization to enter into Vendor Agreements when the Debtors determine that entry into such Vendor Agreements is in the best interest of the Debtors' estates. The Debtors also request authorization to make payments on account of Vendor Claims in the absence of a Vendor Agreement if the Debtors determine, in their business judgment, that entry into such Vendor Agreement will result in harm to the Debtors' estates. The Debtors request discretion to enter into Vendor Agreements because certain of the Vendors hold claims of modest size, and the anticipated cost to the Debtors' estates, in both time and expense, for the Debtors and their advisors to enter into Vendor Agreements with these Vendors would outweigh the size of the potential Vendor Claims being resolved. However, the Debtors request that to the extent the Debtors do not enter into a Vendor Agreement with a Vendor, such Vendor's acceptance of payment on account of its Vendor Claim be deemed as the Vendor's agreement (a) to continue providing goods or services on Customary Trade Terms and (b) that they shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide such goods or services to the Debtors during the course of these Chapter 11 Cases

(*provided*, that the Debtors continue to pay for such goods and services and are not otherwise in breach of such contract or agreement).[9]

23.     The Debtors further request authority to require, as a further condition of receiving payment on account of a Vendor Claim, that a Vendor agree to take whatever action is necessary to remove any existing liens on the Debtors' property at such Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Vendor Claim.

24.     To the extent that any agreement relating to a Vendor Claim is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, by this Motion, seek to assume the same.  Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute postpetition assumption, reaffirmation, or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code, and the Debtors reserve all of their rights under the Bankruptcy Code in connection therewith.

## BASIS FOR RELIEF REQUESTED

**A.     The Debtors Should be Authorized to Pay the Critical Vendor Claims and Foreign Vendor Claims.**

25.     Allowing the Debtors to pay the Critical Vendor Claims and the Foreign Vendor Claims is especially appropriate where, as here, doing so is consistent with the policies of chapter 11 of the Bankruptcy Code, including maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate . . . for the benefit of its creditors and (if the value

---

[9]     For the avoidance of doubt, nothing in this Motion should be construed as a waiver by any of the Debtors of their rights to contest any claim of a Vendor under applicable bankruptcy or non-bankruptcy law.

justifies) equity owners." *In re CoServ L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Inherent in a debtor in possession's fiduciary duties is the "implied duty of the debtor-in-possession to 'protect and preserve the estate.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004).  Indeed, the *CoServ* court specifically noted several examples, including "the foreign creditor beyond the bankruptcy court's reach that enforces its prepetition claim against foreign assets of the estate or refuses, absent payment, to supply a unique piece of equipment or manufacturing component," or when "payment of a prepetition unsecured claim is the only means to effect a substantial enhancement of the estate." *CoServ,* 273 B.R. at 497.  Moreover, under section 105(a) of the Bankruptcy Code and the doctrine of necessity, the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to achieving the aims of chapter 11.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity).  The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the value of the debtors' estate, as is the case here.

26.     If the Debtors do not pay certain of the Foreign Vendor Claims, certain Foreign Vendors may refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims. The Foreign Vendors may take other actions against the Debtors based on the incorrect belief that they are not bound by the automatic stay. As a result, the Debtors would be unable to procure related products and services, potentially causing the Debtors to fail or delay their wind-down and asset sale processes.

27.     The Debtors depend on the goods and services provided by the Critical Vendors and the Foreign Vendors and will continue to do so in connection with their wind-down activities.

Ensuring these Critical Vendors and Foreign Vendors continue to supply certain goods and provide services is therefore vital to the ability of the Debtors to maximize the value of their estates. Accordingly, for the reasons set forth herein, it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims and Foreign Vendor Claims.

**B.       The Lien Claimants May Be Entitled to Assert Statutory Liens if They Are Not Paid.**

28.       The Lien Claimants may assert liens against the Debtors' property under applicable law (the "***Liens***"), which Liens and/or interests arising from the same (the "***Interests***").  Under most state laws, a carrier may have a lien on the goods in its possession, which lien secures the charges or expenses incurred in connection with the transportation or storage of such goods.[10]  As a result, certain carriers may refuse to deliver or release property of the estates in their possession or control before the prepetition amounts owed to them by the Debtors are satisfied and their liens redeemed.

29.       Lien Claimants also may possess a state-law lien on certain equipment or property for which prepetition services or improvements were provided. Unless the Debtors are authorized to pay the Lien Claims, the Debtors may fall victim to "self-help" remedies, thereby disrupting the Debtors' wind-down process and dramatically reducing the value of the Debtors' estates to the detriment of the Debtors' creditors and all parties in interest.

30.       Payment of the Lien Claims is not only important to the wind-down of the Debtors' operations, but also critical to preserving the value of the Debtors' estates. Payment of the Lien

---

[10]     *See* U.C.C. § 7-209(a) ("A *warehouse* has a lien against the bailor on the *goods* covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.") (emphasis added).

Claims will save the Debtors the considerable time and expense of having to negotiate or litigate for the return of or right to use property of the estate that may be subject to these lien claims.

31.     Courts in this district have routinely granted relief similar to that requested herein. *See, e.g.*, *In re ZYNEX, Inc.*, No. 25-90810 (ARP) (Bankr. S.D. Tex. Jan. 13, 2026) (authorizing the debtors to pay prepetition claims of lien claimants); *In re Pine Gate Renewables, LLC*, No. 25-90669 (CML) (Bankr. S.D. Tex. Dec. 9, 2025) (same); *In re First Brands Group, LLC*, No. 25-90399 (CML) (Bankr. S.D. Tex. Nov. 4, 2025) (same); *In re Aleon Metals, LLC*, No. 25-90305 (CML) (Bankr. S.D. Tex. Sept. 12, 2025) (same); *In re TPI Composites, Inc.*, No. 25-34655 (CML) (Bankr. S.D. Tex. Sept. 8, 2025) (same); *In re Strategic Materials, Inc.*, No. 23-90907 (CML) (Bankr. S.D. Tex. Jan. 9, 2024) (same).

**C.     The Debtors' Banks Should Be Authorized to Honor Checks, Wire Transfers, and Electronic Fund Transfers.**

32.     The Debtors have sufficient liquidity to pay the amounts described in this Motion in the ordinary course of business.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks, wire transfers, or electronic fund transfer requests as relating to an authorized payment in respect of the Vendor Claims.  Accordingly, the Debtors submit that there is minimal risk that checks, wire transfers, and electronic fund transfer requests that the Court has not authorized will be honored inadvertently.  The Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfers, or electronic fund transfer requests in respect of the relief requested in this Motion.  Further, the Debtors also seek authority to issue new postpetition checks, wire transfers, or electronic fund transfer requests to replace any prepetition checks, wire transfers, or fund transfers that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

## REQUEST FOR IMMEDIATE RELIEF

33.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed herein and in the First Day Declaration, authorizing the Debtors to pay Vendor Claims, as well as granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors. Failure to receive such authorization and other relief during the first twenty-one days of these Chapter 11 Cases could impact the Debtors' operations at this important juncture and inhibit the Debtors' ability to focus on preserving and maximizing the value of the Debtors' estates.  The requested relief is necessary to ensure a successful transition into chapter 11, preserve the ongoing value of the Debtors' estates, and maximize value for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

34.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

35.     Unless specifically provided herein, and notwithstanding any actions taken hereunder, nothing in this Motion shall constitute, nor is it intended to constitute (a) an implication or admission as to the validity, priority, enforceability, or perfection of any claim, lien, security interest in, or other encumbrances against the Debtors and the property of their estates; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim, lien, or interest; (c) a promise or requirement to pay any prepetition claim or

interest; (d) an implication or admission that any particular claim or interest is of a type specified or defined in this Motion or any proposed order; (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## NOTICE

36.    Notice of this Motion has been provided to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) Alston & Bird LLP, as counsel to the Term Loan Agent; (c) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (d) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules.  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

37.    No prior motion for the relief requested herein has been made to this Court or any other court.

*[The remainder of this page is intentionally left blank]*

## **PRAYER**

The Debtors respectfully request that the Court enter the Interim Order and the Final Order,

substantially in the forms attached hereto as **Exhibits A** and **B**, respectively, and grant them such

other and further relief to which the Debtors may be justly entitled.


Dated: May 18, 2026
Houston, Texas

*/s/  Paul E. Heath*
**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Sara Zoglman (TX 24121600)
845 Texas Avenue, Suite 4700
Houston, Texas 77002
Tel: 713.758.2222
Fax: 713.758.2346
Email: pheath@velaw.com
        szoglman@velaw.com

-and-

David S. Meyer (*pro hac vice* pending)
Jessica C. Peet (*pro hac vice* pending)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Tel:  212.237.0000
Fax:  212.237.0100
Email: dmeyer@velaw.com
        jpeet@velaw.com

*Proposed Counsel to the Debtors and Debtors*
*in Possession*

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made in accordance with Bankruptcy Local Rule 9013-1(i).

<i>/s/ Sara Zoglman</i>
One of Counsel

## CERTIFICATE OF SERVICE

I certify that on May 18, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<i>/s/ Sara Zoglman</i>
One of Counsel

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26–90528 (CML) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO PAY (A) CRITICAL VENDORS, (B) LIEN CLAIMANTS,
AND (C) FOREIGN VENDORS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for entry of an interim order (this "***Interim Order***") (a) authorizing the Debtors to pay in the ordinary course of business, based on their sound business judgment, prepetition amounts owed to the Vendors; and (b) granting related relief, all as more fully set forth in the Motion and in the First Day Declaration; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the First Day Declaration; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 6003; and

---

[1]   The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.   The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after considering the Motion and all of the proceedings before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing on the Motion shall be held on _____, 2026, at __:__ _.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 5:00 p.m., prevailing Central Time, on _____, 2026, and shall be served on:  (a) proposed counsel to the Debtors, Vinson & Elkins LLP, The Grace Building, 1114 Avenue of the Americas, 32nd Floor, New York, New York 10036-7708, Attn: David S. Meyer and Jessica C. Peet, and 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath and Sara Zoglman; (b) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Andrew Jimenez and Ha Nguyen; (c) counsel to the Term Loan Agent, Alston & Bird LLP, 90 Park Avenue, New York, New York 10016, Attn: Paul Hespel; and (d) the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases and their counsel.

3.      Subject to this Interim Order, the Debtors are authorized but not directed to pay the prepetition Vendor Claims described in the Motion, in the ordinary course of business, as the Debtors determine to be necessary or appropriate, in an aggregate amount not to exceed $448,000 on an interim basis as set forth in the categories and amounts set forth in the Motion.  For the avoidance of doubt, the Debtors may pay Vendor Claims without regard to any Vendor category

2

described in the Motion, provided that the total amount of Vendor Claims paid on an interim basis does not exceed the aggregate amount authorized pursuant to this Interim Order.

4.      As a condition to receiving any payment under this Interim Order, a Vendor must maintain or apply, as applicable, Customary Trade Terms[3] during the pendency of these Chapter 11 Cases, which for the avoidance of doubt, the Debtors may not waive or modify. Further, if a Vendor, after receiving a payment under this Interim Order, ceases to provide goods or services on Customary Trade Terms, the Debtors may assert and request that the Court order: (a) that the payment of such Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Vendor in cash, (b) that the Vendor immediately return such payment(s) in respect of its Vendor Claim to the extent that the aggregate amount of such payment(s) exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment(s) by the Debtors, such Vendor Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Vendor to their original positions, as if the payment of the Vendor Claim had not been made.

5.      The form of Vendor Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved in its entirety.  The Debtors are authorized to enter into Vendor Agreements with Vendors or otherwise obtain a written communication from the Vendor evidencing such Vendor's agreement to continue providing goods or services on Customary Trade Terms.  To the extent that the Debtors do not enter into a Vendor Agreement with a Vendor, such Vendor's

---

[3]     As used herein, "***Customary Trade Terms***" means, with respect to a Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such Vendor and the Debtors in the twelve-month period prior to the Petition Date or (b) such other trade terms as agreed by the Debtors and such Vendor that, in the reasonable business judgment of the Debtors, are more favorable to the Debtors than the terms in the preceding clause (a).

3

acceptance of payment on account of its Vendor Claim shall be deemed as the Vendor's agreement to continue providing goods or services on Customary Trade Terms.

6.      The Debtors are authorized to negotiate, modify, or amend the form of the Vendor Agreement (provided that any such modification or amendment must require the Vendor to provide the trade terms set forth above) and to settle all or some of the Vendor Claims for less than the face amount of such claims without further notice or hearing, each in the Debtors' reasonable business judgment.

7.      The Debtors are authorized to require, as a further condition of receiving payment on a Vendor Claim, that a Vendor agree to take whatever action is necessary to remove any existing liens on the Debtors' property at such Vendor's sole cost and expense and waive any right to assert a trade lien on account of a paid Vendor Claim.

8.      Any party that accepts payments from the Debtors on account of a Vendor Claim shall be deemed to have agreed to the terms and provisions of this Interim Order.  Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such Vendor with a copy of this Interim Order (unless previously provided to such Vendor).

9.      If any party accepts payment on behalf of a Vendor Claim under this Interim Order, and such claim is determined by the Court after notice and hearing not to give rise to a Lien or Interest, the Debtors are authorized to avoid such payment as a postpetition transfer under section 549 of the Bankruptcy Code, and the party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to such party on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then

outstanding, without the right of setoff, claims, or otherwise.  Upon recovery of such payments by the Debtors, the obligations shall be reinstated as a prepetition claim in the amount so recovered.

10.     Nothing herein shall impair or prejudice the Debtors' or any other party in interest's ability to contest the extent, perfection, priority, validity, or amount of any Vendor Claim.

11.     In the event that the Debtors will exceed the aggregate amounts to be paid to the Critical Vendors, Lien Claimants, or Foreign Vendors during the interim period, the Debtors shall file a notice with the Court describing the category and overage amount.  Nothing herein shall prejudice the Debtors' ability to seek a further order from this Court authorizing the Debtors to exceed the aggregate amounts of Vendor Claims as set forth in the Motion and herein or any party in interest's right to contest such relief.

12.     The Debtors shall maintain a matrix/schedule of payments made pursuant to this Interim Order, including the following information:  (a) the name of the payee; (b) the nature, date, and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases every thirty days beginning upon entry of this Interim Order.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

14.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

designation of any particular check or electronic payment request as approved by this Interim Order.

15.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts that are authorized to be paid pursuant to this Interim Order.

16.    Unless specifically provided herein, and notwithstanding any actions taken hereunder, nothing in the Motion or this Interim Order shall constitute, nor is it intended to constitute (a) an implication or admission as to the validity, priority, enforceability, or perfection of any claim, lien, security interest in, or other encumbrances against the Debtors and the property of their estates; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim, lien, or interest; (c) a promise or requirement to pay any prepetition claim or interest; (d) an implication or admission that any particular claim or interest is of a type specified or defined in the Motion or any proposed order; (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

17.    Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made or obligation, relief, or authorization granted hereunder shall be consistent with, and shall be subject to, the requirements imposed on the Debtors under the terms

6

of any interim or final order (as applicable) entered by the Court in these Chapter 11 Cases approving the Debtors' use of cash collateral (the "***Cash Collateral Order***") and any budgets in connection therewith governing any such use of cash collateral. To the extent there is any conflict between this Interim Order and the Cash Collateral Order, the Cash Collateral Order shall govern.

18.     Bankruptcy Rule 6003(b) has been satisfied.

19.     The requirements of Bankruptcy Rule 6004(a) are waived.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon entry of this Interim Order.

21.     The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: ___, 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

7

## EXHIBIT B

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26–90528 (CML) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO PAY (A) CRITICAL VENDORS, (B) LIEN CLAIMANTS, AND
(C) FOREIGN VENDORS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for entry of an order (this "***Final Order***") (a) authorizing the Debtors to pay in the ordinary course of business, based on their sound business judgment, prepetition amounts owed to the Vendors; and (b) granting related relief, all as more fully set forth in the Motion and in the First Day Declaration; and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the Interim Order; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and the Court having found that proper and adequate notice of the

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Motion and hearing thereon has been given and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after considering the Motion and all of the proceedings before the Court in connection with the Motion, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      Subject to this Final Order, the Debtors are authorized but not directed to pay the prepetition Vendor Claims described in the Motion, in the ordinary course of business, as the Debtors determine to be necessary or appropriate, in an aggregate amount not to exceed $888,000 on a final basis as set forth in the categories and amounts set forth in the Motion.  For the avoidance of doubt, the Debtors may pay Vendor Claims without regard to any Vendor category described in the Motion, provided that the total amount of Vendor Claims paid does not exceed the aggregate amount authorized pursuant to this Final Order.

3.      As a condition to receiving any payment under this Final Order, a Vendor must maintain or apply, as applicable, Customary Trade Terms[3] during the pendency of these Chapter 11 Cases, which for the avoidance of doubt, the Debtors may not waive or modify.  If a Vendor, after receiving a payment under this Final Order, ceases to provide goods or services on Customary Trade Terms, the Debtors may assert and request that the Court order: (a) that the payment of such Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Vendor in cash, (b) that the Vendor immediately return such payment(s) in respect of its Vendor Claim to the extent that the aggregate

---

[3]     As used herein, "***Customary Trade Terms***" means, with respect to a Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such Vendor and the Debtors in the twelve-month period prior to the Petition Date or (b) such other trade terms as agreed by the Debtors and such Vendor that, in the reasonable business judgment of the Debtors, are more favorable to the Debtors than the terms in the preceding clause (a).

amount of such payment(s) exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment(s) by the Debtors, such Vendor Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Vendor to their original positions, as if the payment of the Vendor Claim had not been made.

4.　　The form of Vendor Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved in its entirety.  The Debtors are authorized to enter into Vendor Agreements with Vendors or otherwise obtain a written communication from the Vendor evidencing such Vendor's agreement to continue providing goods or services on Customary Trade Terms.  To the extent that the Debtors do not enter into a Vendor Agreement with a Vendor, such Vendor's acceptance of payment on account of its Vendor Claim shall be deemed as the Vendor's agreement to continue providing goods or services on Customary Trade Terms.

5.　　The Debtors are authorized to negotiate, modify, or amend the form of a Vendor Agreement (provided that any such modification or amendment must require the Vendor to provide the trade terms set forth above) and to settle all or some of the Vendor Claims for less than the face amount of such claims without further notice or hearing, each in the Debtors' reasonable business judgment.

6.　　The Debtors are authorized to require, as a further condition of receiving payment on a Vendor Claim, that a Vendor agree to take whatever action is necessary to remove any existing liens on the Debtors' property at such Vendor's sole cost and expense and waive any right to assert a trade lien on account of a paid Vendor Claim.

7.　　Any party that accepts payments from the Debtors on account of a Vendor Claim shall be deemed to have agreed to the terms and provisions of this Final Order.  Notwithstanding

3

anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such Vendor with a copy of this Final Order (unless previously provided to such Vendor).

8.      If any party accepts payment on behalf of a Vendor Claim under this Final Order, and such claim is determined by the Court after notice and hearing not to give rise to a Lien or Interest, the Debtors are authorized to avoid such payment as a postpetition transfer under section 549 of the Bankruptcy Code, and the party who had accepted such payment shall be required to immediately repay to the Debtors any payment made to it on account of its asserted claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff, claims, or otherwise.  Upon recovery of such payments by the Debtors, the obligations shall be reinstated as a prepetition claim in the amount so recovered.

9.      Nothing herein shall impair or prejudice the Debtors' or any other party in interest's ability to contest the extent, perfection, priority, validity, or amount of any Vendor Claim.

10.      Nothing herein shall prejudice the Debtors' ability to seek a further order from this Court authorizing the Debtors to exceed the aggregate amounts of Vendor Claims as set forth in the Motion and herein or any party in interest's right to contest such relief.

11.      The Debtors shall maintain a matrix/schedule of payments made pursuant to this Final Order, including the following information:  (a) the name of the payee; (b) the nature, date, and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment.  The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases every thirty days beginning upon entry of this Final Order.

4

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

14.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts that are authorized to be paid pursuant to this Final Order.

15.     Unless specifically provided herein, and notwithstanding any actions taken hereunder, nothing in the Motion or this Final Order shall constitute, nor is it intended to constitute (a) an implication or admission as to the validity, priority, enforceability, or perfection of any claim, lien, security interest in, or other encumbrances against the Debtors and the property of their estates; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim, lien, or interest; (c) a promise or requirement to pay any prepetition claim or interest; (d) an implication or admission that any particular claim or interest is of a type specified or defined in the Motion or any proposed order; (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion

are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

16.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made or obligation, relief, or authorization granted hereunder shall be consistent with, and shall be subject to, the requirements imposed on the Debtors under the terms of any interim or final order (as applicable) entered by the Court in these Chapter 11 Cases approving the Debtors' use of cash collateral (the "*Cash Collateral Order*") and any budgets in connection therewith governing any such use of cash collateral.  To the extent there is any conflict between this Final Order and the Cash Collateral Order, the Cash Collateral Order shall govern.

17.     The requirements of Bankruptcy Rule 6004(a) are waived.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon entry of this Final Order.

19.     The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: ___, 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

6

## **EXHIBIT C**

**Vendor Agreement**

**[Name of Applicable Debtor]**

_____, 2026

TO:   [Vendor]
      [Name]
      [Address]

Dear Valued Supplier:

As you are aware, Bitcoin Depot Inc. and certain of its affiliates (collectively, the "***Company***") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Cases***" and the "***Bankruptcy Court***," respectively) on [•], 2026 (the "***Petition Date***").  On the Petition Date, the Company requested the Bankruptcy Court's authority to pay certain suppliers and service providers (collectively, "***Vendors***") in recognition of the importance of the Company's relationship with those Vendors and the Company's desire that the Bankruptcy Cases have minimal effect on the Company's business relationships with certain Vendors.  On [_____], the Bankruptcy Court entered an [interim/final] order (the "***Order***") authorizing the Company, under certain conditions, to pay prepetition claims of certain Vendors that agree to the terms below as well as agree to be bound by the terms of the Order.  A copy of the Order is annexed hereto (collectively with this letter, the "***Letter Agreement***").

To receive payment on prepetition claims pursuant to the Order, each selected Vendor must agree to continue to supply goods or services to the Company based on "Customary Trade Terms."  As used herein and in the Order, "Customary Trade Terms" are (a) the normal and customary trade terms, practices, and programs that were most favorable to the Company and in effect between such Vendor and the Company in the twelve-month period prior to the Petition Date or (b) such

other trade terms as agreed by the Company and such Vendor that, in the reasonable business judgment of the Debtors, are more favorable to the Debtors than the terms in the preceding clause (a).

For purposes of administration of this program, the Company and you agree as follows:

1. The estimated balance of your aggregate prepetition claim(s) against the Debtors is $[____] (the "*Agreed Vendor Claim*").

2. The Company will provisionally pay you $[____] (the "*Payment*") on account of the Agreed Vendor Claim (net of any setoffs, credits, or discounts, if applicable).

3. Nothing herein waives the Company's or your rights under section 365 of the Bankruptcy Code.

4. You will provide Customary Trade Terms as follows (if more space is required, continuation pages are attached):

   _____

   _____

   _____

5. You will hereafter extend to the Company all Customary Trade Terms and agree to abide by any purchase order terms and conditions between you and the Company as in effect before the Petition Date.

Payment of your Agreed Vendor Claim in the manner set forth in the Order may only occur upon execution of this Letter Agreement by a duly authorized representative of your company and the return of this letter to the Company.  Your execution and return of this Letter Agreement constitutes a legally binding agreement between you and the Company:

a. that you will continue providing goods and/or services to the Company on Customary Trade Terms subject to the reservations contained in the Order;

b. that, for a period lasting until two years from the Petition Date, you will continue to supply the Company with goods and/or services pursuant to Customary Trade Terms, and the Company will pay for those goods and/or services in accordance with Customary Trade Terms;

c. that the Customary Trade Terms cannot be modified, adjusted, or reduced in any way adverse to the Company;

d.       that you will continue to supply goods and/or provide services, as applicable, to any non-debtor affiliate of the Company with which you do business, on the terms set forth in the applicable contracts or purchase orders and will not cancel any contract, agreement, or arrangement pursuant to which you provide services to the Company for the duration of the Bankruptcy Cases;

e.       that you have reviewed the terms and provisions of the Order and consent to be bound by the same;

f.       that you will not separately seek payment for reclamation or other claims outside of the terms of the Order unless your participation in the vendor payment program authorized by the Order (the "***Vendor Payment Program***") is terminated;

g.       that, in consideration for the Payment, you agree not to file or otherwise assert against the Company, their estates, or any other person or entity, or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which the lien is asserted) on account of any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into before the Petition Date. Furthermore, if you have taken steps to file or assert a lien before entering into this Letter Agreement, you agree to take all necessary steps to remove the lien as soon as possible at your sole cost and expense;

h.       that this Letter Agreement enumerates the entire understanding of you and the Company regarding the subject matter hereof and supersedes any and all prior oral or written agreements;

i.       that this Letter Agreement cannot be changed, modified, amended, or supplemented unless an amendment is executed by you and the Company;

j.       that if you fail to comply with the terms and provisions of this Letter Agreement, the Company may, in its discretion, assert and request that the Bankruptcy Court order: (a) that the payment of such Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Company may recover from such Vendor in cash, (b) that the Vendor immediately return such payments in respect of its Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Company, such Vendor Claim shall be reinstated in such an amount as to restore the Company and the applicable Vendor to their original positions, as if this Letter Agreement had never been entered into and the payment of the Vendor Claim had not been made; and

k.       that you will keep the existence and the terms of this Letter Agreement confidential and will not disclose it to any person or entity without the prior written consent of the Company, other than as required by law to any court or governmental authority.

The Company and you also hereby agree that any dispute with respect to this Letter Agreement, the Order, or your participation in the Vendor Payment Program shall be determined exclusively by the Bankruptcy Court and that all litigation arising out of or relating to this Letter Agreement, the Order, or your participation in the Vendor Payment Program or its subject matter must be commenced in the Bankruptcy Court.

If you have any questions about this Letter Agreement or our Bankruptcy Cases, do not hesitate to call.

Sincerely,
[Name of Applicable Debtor]

By: _____

Title: _____

Agreed and Accepted by:
[Vendor]

By: _____

Title: _____

Dated: _____