**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BITCOIN DEPOT INC., *et al.*, | ) | Case No. 26 – 90528 (CML) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | (Emergency Hearing Requested) |
| | ) | |

**DECLARATION OF THOMAS**
**STUDEBAKER, MANAGING DIRECTOR OF**
**PORTAGE POINT PARTNERS LLC IN SUPPORT OF THE**
**DEBTORS' MOTION FOR ENTRY OF AN INTERIM ORDER**
**(I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION, (III) CONFIRMING**
**APPLICATION OF THE AUTOMATIC STAY, (IV) SCHEDULING**
**A FURTHER HEARING, AND (V) GRANTING RELATED RELIEF**

I, Thomas Studebaker, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Managing Director and the Co-Head of Turnaround & Restructuring of Triple P TRS, LLC, a restructuring advisory firm with numerous offices throughout the United States. Triple P TRS, LLC ("***Portage Point***") and its service provider affiliates are wholly owned by Portage Point Partners, LLC. Portage Point has been retained as proposed financial advisor by each of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"). I have also been appointed the Debtors' chief restructuring officer (the "***CRO***"). Prior to and since becoming the Debtors' CRO, I also have led the Portage Point team who served as financial advisor to the Debtors beginning in April 2026.

---

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

2. I hold a Bachelor of Business Administration in Accounting and Psychology from the University of Notre Dame and an MBA in Finance and Strategy from Northwestern University's Kellogg School of Management. I have been employed at Portage Point for over three years and have been a Managing Director throughout that time. During that time I have been involved in numerous restructurings and financing transactions on behalf of companies, lenders, investors and other constituencies. I have negotiated plans of reorganization, conducted sales of distressed assets, and participated in several chapter 11 cases, including, *In re RUNITONETIME LLC*, Case No. 25-90191 (ARP) (Bankr. S.D. Tex. Aug. 13, 2025); *In re Linqto Texas, LLC*, Case No. 25-90186 (ARP) (Bankr. S.D. Tex. July 7, 2025); *In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex. Aug. 8, 2024); *In re Supply Source Enterprises, Inc.*, Case No. 24-11054 (BLS) (Bankr. D. Del. May 21, 2024); *In re Appgate, Inc.*, Case No. 24-10956 (CTG) (Bankr. D. Del. May 6, 2024); *In re Benitago Inc.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y. Aug. 30, 2023); and *In re AppHarvest Products, LLC*, Case No. 23-90745 (DRJ) (Bankr. S.D. Tex. July 23, 2023), among others.

3. On May 17, 2026 (the "***Petition Date***"), each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Court***"). The Debtors have filed these chapter 11 cases (the "***Chapter 11 Cases***") to allow them to preserve and maximize the value of their estates, all as more fully described below.

4. I am authorized to submit this Declaration on behalf of the Debtors. I am over twenty-one (21) years of age, and, if called upon to testify, I would testify competently to the facts and opinions set forth herein. All facts and opinions set forth in this declaration (the "***Declaration***") are based upon: (a) my knowledge of the Debtors' day-to-day operations, business

2

and financial affairs, books and records, and employees; (b) information I learned from my review of relevant documents, including unaudited financial documents; (c) information supplied to me or verified by other members of the Portage Point team working directly with me or under my supervision, direction, or control, and the management team of Bitcoin Depot Inc. ("***Bitcoin Depot***," and, together with its debtor and non-debtor subsidiaries, the "***Company***"), and the Company's other third-party advisors; and/or (d) my opinions based upon my knowledge, training, and experience. Unless otherwise indicated, any financial information contained in this Declaration is subject to change but is true and correct as of the date of this Declaration. Such financial information is presented on a consolidated basis for the Debtors, except where specifically noted.

## BACKGROUND

5. In April 2026, the Company engaged Portage Point as financial advisor to work with the Company on assessing the current business model, forecasting cash flow, analyzing and preserving liquidity, and evaluating a potential marketing process or strategic alternatives.

6. Concurrently with this Declaration, the Debtors filed the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing on the Motion, and (V) Granting Related Relief* (the "***Cash Collateral Motion***")

7. By the Cash Collateral Motion, the Debtors request, among other things, an interim order (the "***Interim Order***") granting authority for the Debtors to use the alleged Cash Collateral of the their prepetition secured lenders.

## DEBTORS' LIQUIDITY NEEDS AND THE NEED
## FOR CASH COLLATERAL DURING THE INTERIM PERIOD

8. Once it became clear that the Debtors would need to commence these Chapter 11 Cases, Portage Point and the Company's other advisors worked to finalize the filing of these Chapter 11 Cases, including verifying the Company's liquidity situation and funding needs. Portage Point continued to evaluate the Company's cashflow projections and liquidity needs and determined that without access to the Cash Collateral the Debtors would not be able to fund these Chapter 11 Cases. I and several other Portage Point professionals have had a substantial number of discussions with the Company and the Company's other advisors regarding the preservation of the Debtors' assets and their need for access to the Cash Collateral.

9. Based on that analysis and discussions, I submit that that the Debtors require access to the Cash Collateral to finance their limited operations, maintain sufficient minimum liquidity for the first thirty days of these Chapter 11 Cases, and push these Chapter 11 Cases towards confirmation.

10. The use of the Cash Collateral is essential to sustain the value of the Debtors' assets. The Debtors will use the Cash Collateral funds to pay critical costs of their limited operations and the costs associated with these Chapter 11 Cases while seeking a value maximizing outcome. Further, the Cash Collateral will allow the Debtors to, among other things, fund payroll and related benefits for employees and satisfy the Debtors' other working capital and general corporate funding requirements.

11. Absent the ability to access the Cash Collateral, even for a limited period of time, there is a substantial risk that the Debtors will: (a) suffer immediate and irreparable harm resulting from their inability to pay employees, critical vendors, and other key stakeholders and fund the administrative costs of the Chapter 11 Cases, (b) be unable to preserve and maintain estate assets,

4

and (c) instead be forced to immediately liquidate, resulting in a significant deterioration in the value of all of the Debtors' estates.

12.    The Debtors are entering chapter 11 with approximately $22.6 million in cash. Consistent with the budget attached hereto as **Exhibit 1**, which I developed together with the Debtors' management team and other Portage Point professionals working under my supervision, based on my evaluation of the Debtors' cash flow projections and liquidity needs I submit that the Debtors will use approximately $5.8 million in Cash Collateral during the first thirty days of these Chapter 11 Cases.[2]

13.    I understand from the Company's other advisors that all of the Debtors' cash on hand as of the Petition Date, including the cash in deposit accounts, is alleged to be subject to the liens of the Debtors' prepetition secured lenders.  If the Cash Collateral Motion is approved the Debtors will deposit $16,950,000 into their segregated account held at People First Bank ending in x2024 which funds shall not be utilized by the Debtors or any other party except by further order of the Court.  I determined that this amount was appropriate given the Debtors' prepetition secured lender likely asserts that the Debtors owe approximately $13.3 million in principal, a $3.1 million exit fee, $198,784 in accrued but unpaid interest, and $215,227 in interest which will accrue during the first thirty days of these Chapter 11 Cases under the Debtors' prepetition credit agreement, in addition to a professional fee reserve for the Debtors' prepetition secured lenders of $100,000 which amounts are set forth in the table below.[3]

---

[2]    I submit that the Debtors will also receive additional liquidity post-petition from (among other sources) cash receipts received from their kiosk network and proceeds from the sale of their cryptocurrency holdings (subject to any necessary Court approvals).

[3]    As of the Petition Date, I understand from the Company's other advisors that the Company is not able to stipulate to the allowed amount of the Debtors' prepetition secured lenders' claim or the validity, perfection, or priority of their alleged liens and therefore the Company reserves all rights with respect to these issues.  A review of these issues is ongoing.

| Silverview Facility | $ |
|---|---|
| Principal Outstanding (as of 5/17/2026) | 13,337,500 |
| Interest Accured and Unpaid (as of 5/17/2026) | 198,784 |
| Interest Forward Accrual (5/18/2026 - 6/17/2026) | 215,227 |
| Exit Fee | 3,098,250 |
| **Total** | **16,849,761** |
| (+) Professional Fee Reserve | 100,000 |
| **Total Holdback** | **16,949,761** |

[1] *Forward accruals reflect the 200 bps default-rate increase*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2026

/s/ *Thomas Studebaker*
Thomas Studebaker
Chief Restructuring Officer
Bitcoin Depot Inc.

**<u>Exhibit 1</u>**

**Budget**

Case 26905288 Document 2652 Filed in TXSB on 05199226 Page 7 of 8

## Cash Flow Forecast

| Week Ending | | 5/22/2026 | | 5/29/2026 | | 6/5/2026 | | 6/12/2026 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| *Operating Cash Flow* | | | | | | | | | | |
| **Cash Deposits from Kiosks** | $ | 765 | $ | 551 | $ | 397 | $ | 286 | $ | 1,998 |
| *Operational Disbursements* | | | | | | | | | | |
| Crypto Costs | $ | - | $ | - | $ | - | $ | - | $ | - |
| Payroll | | (720) | | (70) | | (613) | | (60) | | (1,463) |
| Other Operating Expenses | | (116) | | (406) | | (1,395) | | (482) | | (2,399) |
| **Total Operating Disbursements** | $ | (836) | $ | (476) | $ | (2,008) | $ | (542) | $ | (3,862) |
| **Operating Cash Flow** | $ | (70) | $ | 75 | $ | (1,611) | $ | (257) | $ | (1,864) |
| **Cumulative Operating Cash Flow** | | (70) | | 4 | | (1,607) | | (1,864) | | (1,864) |
| Restructuring Disbursements | $ | (769) | $ | (1,039) | $ | (1,109) | $ | (1,043) | $ | (3,960) |
| **Net Cash Flow** | $ | (839) | $ | (964) | $ | (2,720) | $ | (1,300) | $ | (5,823) |
| **Starting Cash Balance** | $ | 22,594 | $ | 21,754 | $ | 20,790 | $ | 18,070 | $ | 22,594 |
| (+/-) Net Cash Flow | | (839) | | (964) | | (2,720) | | (1,300) | | (5,823) |
| **Ending Cash Balance** | $ | 21,754 | $ | 20,790 | $ | 18,070 | $ | 16,771 | $ | 16,771 |
| (-) Silverview Reserve[1] | | (16,950) | | (16,950) | | (16,950) | | (16,950) | | (16,950) |
| (+) Bitcoin Investment (net of fees) | | 9,349 | | 9,349 | | 9,349 | | 9,349 | | 9,349 |
| **Total Liquidity** | $ | 14,154 | $ | 13,190 | $ | 10,469 | $ | 9,170 | $ | 9,170 |

1. As of the Petition Date, the Company is not able to stipulate to the allowed amount of the Debtors' prepetition secured lenders' claim or the validity, perfection, or priority of their alleged liens and therefore the Company reserves all rights with respect to these issues. A review of these issues is ongoing.