United States Bankruptcy Court
Southern District of Texas
**ENTERED**
July 24, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 26-90528 (CML) |
| BITCOIN DEPOT INC., et al., | Chapter 11 |
| Debtors.[1] | (Jointly Administered) |

# ORDER APPROVING SALE AND ASSIGNMENT OF CLAIM TO GPD HOLDINGS LLC D/B/A COINFLIP

Upon the *Emergency Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale Of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* [Docket No. 98] (the "***Motion***"),[2] filed by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order (this "***Sale Order***") approving the sale and assignment of the Claim (as defined in the Agreement) to GPD Holdings LLC d/b/a CoinFlip (the "***Purchaser***"), pursuant to that certain Asset Purchase and Assignment Agreement (the "***Agreement***"),[3] by and between Bitcoin Depot Operating, LLC (the "***Seller***") and Purchaser; and upon consideration of the *Declaration of Thomas Studebaker, Managing Director of Portage Point Partners LLC in*

---

1 The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Agreement (as defined herein), as applicable.

3 An unsigned substantially final copy of the Agreement is attached hereto as **Exhibit A**.

*Support of the Emergency Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale Of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* [Docket No. 99] and the *Supplemental Declaration of Thomas Studebaker in Support of the Sale*, filed contemporaneously herewith, and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, dated May 24, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having entered the *Order (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; and (C) Granting Related Relief* [Docket No. 193] (the "***Bidding Procedures Order***"), approving, among other things, the Bidding Procedures for the Assets; and the Court having conducted a hearing on July 24, 2026, (the "***Sale Hearing***") to consider the relief requested in the Motion as set forth in this Sale Order; and all parties in interest having been heard or having had the opportunity to be heard regarding the Motion, the Sale Transaction, the Agreement, and all relief set forth herein; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and upon the record of the Sale Hearing and all of the proceedings had before this Court;

and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates; and the Court having found that proper and adequate notice of the Motion and hearing thereon has been given and that no other or further notice is necessary, it is HEREBY FOUND AND DETERMINED THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334. Without limiting the generality of the foregoing, this Court has exclusive in rem jurisdiction over the Assets, including the Claim, pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein. This is a core proceeding within the meaning of 28 U.S.C. § 157(b); this Court has the authority to enter a Final Order.

C. Venue of these Chapter 11 Cases and approval of the Motion and the Sale Transaction is proper in this district under 28 U.S.C. §§ 1408 and 1409.

D. The statutory and legal predicates for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, and Rules 2002, 6004, 6006, 9006, 9007, 9008, 9014, and 9019 of the Bankruptcy Rules, rules 4002-1(e) and 9013-1 of the Local Rules, and the Complex Case Procedures. The consummation of the

transactions contemplated by the Agreement and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures and the Debtors and the Purchaser have complied with all of the applicable requirements of such sections and rules with respect to such transactions.

E. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, and notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and authorizes the closing of all transactions contemplated hereby, including, without limitation, the Sale Transaction, without regard to any stay or delay in its implementation.

F. Debtor has articulated good and sufficient business reasons for entering into the Agreement and consummating the sale and assignment contemplated thereby.

G. Findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference.

H. Notice of the Motion, the Sale Hearing, the Sale Transaction, and the deadlines related thereto was provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Term Loan Agent, NFS, and VFS; (c) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (d) counsel to the Committee; (e) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002; (f) the Internal Revenue Service; (g) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (h) all state attorneys' generals in states where the Assets are located; (i) all municipalities in which the Assets are located; (j) all entities

known to have asserted a lien or security interest against any of the Assets; (k) all potential bidders previously identified or solicited; and (l) all counterparties to the executory contracts and unexpired leases to be assumed and assigned in connection with the Sale Transaction.

I. The Claim sought to be sold and assigned by the Debtors to the Purchaser pursuant to the Agreement is property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J. The Sale Transaction, including the form and total consideration to be realized by the Debtors under the Agreement, (i) constitutes the highest or otherwise best offer received by the Debtors for the Claim, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

K. The Debtors have demonstrated that entry into and consummation of the Agreement constitutes the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest. The Debtors have demonstrated compelling circumstances for the Sale Transaction outside (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization or liquidation (as the case may be), in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to preserve and to maximize the value of the Debtors' estates. This Court finds that the Debtors have articulated good and sufficient business reasons justifying the sale of the Claim to the Purchaser pursuant to the terms and conditions set forth in the Agreement.

L. The Debtors' decision to enter into the Agreement and consummate the Sale Transaction constitutes a proper exercise of the fiduciary duties of the Debtors and their directors, officers, and managers. Because the entry into and consummation of the Agreement constitutes

the exercise by the Debtors of sound business judgment, the Debtors, their respective current and former members, managers, officers, directors, employees, advisors, professionals or agents, and the Consultation Parties shall have or incur no liability to the estates or any holder of a claim against or interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of the Agreement or the consummation of the Sale Transaction contemplated thereunder, other than liability of the Debtors arising out of or relating to any act or omission that constitutes a breach of the Agreement, willful misconduct, or fraud, in each case as determined by a court of competent jurisdiction.

M. The Debtors (i) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, (ii) have all of the power and authority necessary to consummate the Sale Transaction, and (iii) have taken all corporate action necessary to authorize and approve the Agreement and any actions required to be performed by the Debtors to consummate the Sale Transaction. No further consents or approvals of the Debtors, are required for the Debtors to consummate the Sale Transaction.

N. The Agreement and the transactions contemplated thereby were negotiated, proposed, and entered into by the Debtor and Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

O. Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections afforded thereby.

P. The Agreement and the Sale Transaction do not constitute a *sub rosa* chapter 11 plan. The Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for the Debtors.

Q. The consideration provided by Purchaser under the Agreement constitutes fair and reasonable value for the Claim, as defined in the Agreement.

R. The sale and assignment of the Claim to Purchaser pursuant to the Agreement is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

S. To the extent applicable, the transfer of the Claim pursuant to the Agreement shall constitute a legal, valid, binding, and effective transfer and assignment of all of Debtor's right, title, and interest in and to the Claim.

T. Based on the record of the Sale Hearing, and for the reasons stated on the record at the Sale Hearing, time is of the essence in effectuating the Agreement. As such, the Debtors and the Purchaser intend to close the sale of the Claim, will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in doing so, and may close the Sale Transaction contemplated by the Agreement at any time after the entry of this Sale Order subject to the terms and conditions of the Agreement. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Agreement. Accordingly, cause has been shown as to why this Sale Order should not be subject to any stay, including, without limitation, as provided by Bankruptcy Rules 6004(h), 6006(d), and any applicable Local Bankruptcy Rule.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Agreement, attached hereto as **Exhibit A**, and the consummation of the sale and assignment of the Claim contemplated thereby (the "***Sale Transaction***") is authorized and approved in all respects. The Debtor is authorized to enter into and perform under the Agreement and to consummate the Sale Transaction in accordance with the terms of the Agreement.

2. Any objections and responses to the Motion or the relief requested therein that relate to the Sale Transaction and that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Agreement is hereby approved as set forth herein, and Seller is authorized to take any and all actions necessary to consummate the Sale Transaction, including the sale, transfer, and assignment of the Claim to Purchaser free and clear of any and all liens, claims, encumbrances, and interests in accordance with the terms of the Agreement. Debtor has satisfied all requirements of sections 363(b) and 363(f) of the Bankruptcy Code and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of all liens, claims, encumbrances, and interests.

4. Upon the closing of the transaction contemplated by the Agreement, all of Debtor's right, title, and interest in and to the Claim shall be sold, transferred, conveyed, and assigned to Purchaser.

5. For the avoidance of doubt, any avoidance actions under Chapter 5 of the Bankruptcy Code or other claims, causes of action, or defenses of the Debtors or their estates which are not expressly identified as the Claim in the Agreement, including any claims, causes of action or defenses the Debtors or their estates may have against current and former officers and directors, shall be retained by the Debtors and their estates to the extent any such claims and causes of action exist.

6. This Sale Order and the Agreement shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders

of Liens, Claims, and Interests in, against, or on all or any portion of the Claim (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons," or other fiduciaries in these Chapter 11 Cases or upon a conversion to case under chapter 7 of the Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted to the Purchaser hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest. The Agreement, this Sale Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, any order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Purchaser. To the extent of any conflict between this Sale Order or the Agreement and such future plan or order, the terms of this Sale Order and the Agreement shall control.

7. The Agreement and any related agreements, documents, or other instruments in effect as of the date hereof may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; *provided*, *however*, that any such modification, amendment, or supplement does not (x) have an adverse effect on the Purchaser or the Debtors or their estates or (y) adversely affect the rights of the Prepetition Secured Parties as to the proceeds of the Sale Transaction; *provided further* that the Debtors shall provide notice of any such proposed modification, amendment, supplement, or restatement to the Committee; *provided further* that any such proposed

modification, amendment, supplement, or restatement that would have an adverse effect on the Debtors or their estates shall require a further order of this Court.

8. The "Claim" shall have the meaning ascribed to such term in the Agreement, including all rights, claims, causes of action, remedies, proceeds, and interests transferred thereunder.

9. The Sale Transaction contemplated by the Agreement is undertaken by Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Purchaser has acted without collusion in undertaking the Sale Transaction. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the sale and assignment of the Claim to Purchaser unless such authorization is duly stayed pending such appeal. Purchaser is a good-faith purchaser of the Claim and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

10. From and after Closing, Purchaser shall have the exclusive right and authority to prosecute, pursue, settle, compromise, release, dismiss, assign, or otherwise resolve the Claim in its sole discretion, subject only to any limitations expressly set forth in the Agreement.

11. From and after Closing, any proceeds, recoveries, settlement payments, judgments, returned funds, or other consideration arising from or relating to the Claim shall belong solely to Purchaser, subject to the terms of the Agreement.

12. Purchaser is authorized, from and after Closing, to file any notices, assignments, substitutions, or other papers in the underlying litigation or appeal necessary or appropriate to reflect its acquisition of the Claim and its authority to prosecute or otherwise control the Claim.

13. To the extent applicable, the sale and assignment approved by this Sale Order shall be free and clear of all liens, claims, encumbrances, interests, and other interests of any kind or

nature, with any such liens, claims, encumbrances, or interests attaching solely to the proceeds of the sale with the same validity, priority, force, and effect as existed immediately prior to the sale, subject to any rights, claims, defenses, or objections of the Debtor and other parties in interest.

14. For the avoidance of doubt, nothing in this Sale Order or the Agreement shall impair any defenses, rights, arguments, claims, counterclaims, setoff rights, recoupment rights, appellate rights, or other positions of any party to the Claim, including in the Appeal or any related trial-court, remand, or further proceeding, all of which are preserved.

15. Except as expressly provided in the Agreement, Purchaser shall not assume, and shall not be deemed to have assumed, any liability, claim, debt, or obligation of Seller, the Debtors, or their respective estates.

16. The Debtor and its professionals are authorized and directed to execute and deliver such documents and take such further actions as are reasonably necessary to effectuate the Agreement and this Sale Order, including any assignment documents or notices reasonably required to evidence the transfer of the Claim to Purchaser.

17. The Debtor shall provide reasonable cooperation to Purchaser in connection with the transfer and prosecution of the Claim, including by providing access to non-privileged documents and information in the Debtor's possession, custody, or control to the extent reasonably necessary and consistent with the Agreement.

18. Nothing in this Sale Order shall require Seller, the Debtors, or their professionals to waive any attorney-client privilege, work-product protection, common-interest protection, or other applicable privilege or protection; provided, however, that the Debtor and Purchaser are authorized to enter into appropriate common-interest or confidentiality arrangements in connection with the transfer or prosecution of the Claim.

19. The consideration payable by Purchaser under the Agreement shall be paid and applied in accordance with the Agreement and further order of the Court, as applicable.

20. The failure specifically to include or reference any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be approved in its entirety.

21. The provisions of this Sale Order are non-severable and mutually dependent.

22. The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to permit the Debtor and Purchaser to take all actions necessary or appropriate to consummate the transactions approved by this Sale Order.

23. Notwithstanding any provision of the Bankruptcy Rules, including Bankruptcy Rule 6004(h), this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale Transaction, and the Debtor and Purchaser are free to close the Sale Transaction under the Agreement at any time pursuant to the terms thereof and take any other action or perform any act authorized by this Sale Order.

24. This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation, or enforcement of this Sale Order and the Agreement.

Signed: July 24, 2026

Christopher Lopez
United States Bankruptcy Judge

# Exhibit A

## Asset Purchase and Assignment Agreement

# ASSET PURCHASE AND ASSIGNMENT AGREEMENT

This Asset Purchase and Assignment Agreement (this "Agreement") is entered into as of July [•], 2026 (the "Effective Date"), by and between Bitcoin Depot Operating, LLC, a Delaware limited liability company, as a debtor and debtor in possession in the Chapter 11 Cases defined below ("Seller"), and GPD Holdings LLC d/b/a CoinFlip, a Delaware limited liability company ("Purchaser"). Seller and Purchaser are each referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

A. On May 17, 2026 (the "Petition Date"), Seller and certain of its affiliates, including Bitcoin Depot Inc., filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), jointly administered under Case No. 26-90528 (CML) (the "Chapter 11 Cases").

B. Seller is the claimant-appellant in the pending Iowa Supreme Court appeal captioned *In the Matter of $11,500.00 Seized from Bitcoin Depot Operating, LLC*, Iowa Supreme Court No. 25-1639, arising from Black Hawk County No. SPCR263450 (the "Appeal"). The Appeal concerns Seller's application under Iowa Code chapter 809 for return of $11,500.00 in cash seized by the Cedar Falls Police Department from a Bitcoin Depot kiosk on or about August 15, 2024 (the "Seized Funds").

C. Seller desires to sell, assign, transfer, and convey to Purchaser, and Purchaser desires to purchase and acquire from Seller, the Claim (as defined below), subject to the terms and conditions of this Agreement and approval by the Bankruptcy Court.

D. The Parties intend for the transaction contemplated by this Agreement to be implemented pursuant to an order of the Bankruptcy Court approving the sale and assignment of the Claim under section 363 of the Bankruptcy Code (the "Sale Order").

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Purchase and Sale of the Claim.** Subject to the terms and conditions of this Agreement, at the Closing, Seller shall sell, assign, transfer, convey, and deliver to Purchaser, and Purchaser shall purchase and acquire from Seller, all of Seller's right, title, and interest in and to the Claim, free and clear of all liens, claims, encumbrances, and interests to the extent provided in the Sale Order. "Claim" means the assets, rights, and interests described with specificity on Exhibit A, but excludes the Excluded Assets expressly identified therein.

2. **Purchase Price.** The aggregate purchase price for the Claim is Thirty Thousand Dollars ($30,000.00) (the "Purchase Price"). Purchaser shall pay the Purchase Price by wire transfer of immediately available funds at the Closing to an account designated by Seller in writing at least one (1) business day before the Closing.

3. **Bankruptcy Court Approval; Conditions to Closing.** The obligations of each Party to consummate the transactions contemplated by this Agreement are subject to the satisfaction or written waiver by Purchaser of each of the following conditions: (i) entry of the Sale Order approving the sale and assignment of the Claim to Purchaser pursuant to section 363(b) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests to the extent provided therein; (ii) the Sale Order having become effective and not being stayed, reversed, modified, or vacated; and (iii) the Sale Order and any related sale motion being in form and substance reasonably acceptable to Purchaser. Purchaser may waive any such condition in its sole discretion. No Party shall have any obligation to close unless and until the foregoing conditions have been satisfied or waived.

4. **Closing.** The closing of the transaction (the "Closing") shall occur remotely on the second (2nd) business day after the conditions in Section 3 are satisfied or waived, or at such other date and time as the Parties may agree in writing. At the Closing: (i) Purchaser shall pay the Purchase Price; (ii) Seller shall execute and deliver any assignment, notice, stipulation, substitution, or other instrument reasonably requested to evidence or effectuate Purchaser's ownership and control of the Claim; and (iii) the Parties shall take all actions reasonably necessary to effectuate the Sale Order and the transactions contemplated hereby.

5. **Litigation Control; Substitution; Proceeds.** From and after the Closing, Purchaser shall have sole authority to prosecute, settle, compromise, abandon, or otherwise control the Claim, including the Appeal, in Purchaser's name or, where required by applicable law or court rule, in Seller's name for Purchaser's benefit. Seller shall promptly execute and support any motion, stipulation, or other filing reasonably requested by Purchaser to substitute Purchaser as the claimant-appellant or otherwise recognize Purchaser as the owner of the Claim. All proceeds, recoveries, settlements, judgments, returned funds, and other value received on account of the Claim after the Closing shall belong solely to Purchaser. To the extent Seller receives any such proceeds after the Closing, Seller shall hold them in trust for Purchaser and remit them to Purchaser promptly, and in no event later than two (2) business days after receipt.

6. **Cooperation and Files.** Following the Closing, and prior to the transition of relevant documentation to a liquidating trust under any plan of reorganization or otherwise, Seller shall reasonably cooperate with Purchaser in connection with the prosecution, settlement, collection, or other administration of the Claim, including, to the extent practicable, making available documents, information, and witnesses within Seller's possession or control. Seller shall authorize its current and former counsel, to the extent permitted by applicable law and ethical obligations, to represent Purchaser and/or to deliver to Purchaser the litigation file relating solely to the Claim and shall execute appropriate waivers, consents, and other instruments reasonably requested by Purchaser to permit Purchaser to obtain and use such file relating solely to the Claim.

7. **Interim Covenants.** From the Effective Date until the earlier of the Closing or termination of this Agreement, Seller shall not, without Purchaser's prior written consent: (a) settle, compromise, dismiss, abandon, waive, release, or otherwise adversely affect the Claim or the Appeal; (b) amend any material position asserted in the Appeal; (c) consent to any disposition of the Seized Funds; or (d) incur any material fees, costs, or expenses relating to the Claim other than those necessary to preserve the Appeal and comply with applicable deadlines.

8. **Seller Representations and Warranties.** Seller represents and warrants to Purchaser, as of the Effective Date and the Closing, that:

a. **Organization and Authority.** Seller is duly organized, validly existing, and, upon entry of the Sale Order, has all requisite authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.

b. **Title.** Subject to the Sale Order, Seller owns the Claim and has not previously sold, assigned, transferred, or otherwise conveyed the Claim to any person. Seller has not knowingly taken any action that would impair its ability to transfer the Claim as contemplated by this Agreement.

c. **No Conflict.** Seller's execution, delivery, and performance of this Agreement, and the consummation of the transactions contemplated hereby, do not violate Seller's organizational documents or any agreement binding upon Seller, except as may be cured or authorized by the Sale Order.

9. **Purchaser Acknowledgments; Disclaimer.** EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 7, THE CLAIM IS BEING SOLD, ASSIGNED, AND TRANSFERRED "AS IS," "WHERE IS," "WITH ALL FAULTS," AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE. WITHOUT LIMITING THE FOREGOING, SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO THE MERITS, VALIDITY, ENFORCEABILITY, COLLECTABILITY, VALUE, LIKELIHOOD OF RECOVERY, OR PROCEDURAL STATUS OF THE CLAIM, OR AS TO ANY FACT OR CIRCUMSTANCE RELATING TO THE APPEAL OR THE SEIZED FUNDS. Purchaser acknowledges that it has had the opportunity to conduct such investigation and diligence as it considers appropriate.

10. **No Assumption of Liabilities.** Purchaser is acquiring only the Claim and shall not acquire liabilities of any kind, whether known or unknown, fixed or contingent, or arising before, on, or after the Closing, other than Purchaser's express obligations under this Agreement. Without limiting the foregoing, Purchaser shall be responsible for fees, costs, and expenses first incurred after the Closing in connection with the prosecution or administration of the Claim; provided, however, Purchaser shall not be liable for fees, costs, or expenses incurred by Seller or its counsel before the Closing.

11. **Further Assurances.** Each Party shall execute and deliver such additional documents and take such additional actions as may be reasonably necessary or desirable to carry out the intent and purposes of this Agreement, the Sale Order, and the transactions contemplated hereby.

12. **Termination.** This Agreement may be terminated by mutual written agreement of the Parties. Purchaser may terminate this Agreement upon written notice to Seller if: (i) the Sale Order has not been entered by [August __, 2026]; (ii) the Bankruptcy Court enters an order denying approval of the transaction contemplated hereby; (iii) the Sale Order is stayed, reversed, modified, or vacated in a manner materially adverse to Purchaser; or (iv) Seller breaches this Agreement in

a material respect and fails to cure such breach within five (5) business days after written notice. Upon termination, neither Party shall have further liability to the other except for obligations that expressly survive termination and liability arising from a prior breach.

13. **Miscellaneous.**

a. **Entire Agreement; Amendments.** This Agreement, including Exhibit A, constitutes the entire agreement between the Parties with respect to its subject matter and supersedes all prior agreements, negotiations, and understandings. This Agreement may be amended only by a written instrument signed by both Parties and, if required, approved by the Bankruptcy Court.

b. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to its conflicts-of-law principles; provided that matters arising under the Bankruptcy Code or the Sale Order shall be governed by applicable federal law.

c. **Jurisdiction.** The Bankruptcy Court shall retain exclusive jurisdiction to interpret, implement, and enforce the Sale Order and this Agreement to the extent related to the Sale Order or the Chapter 11 Cases.

d. **Notices.** All notices under this Agreement shall be in writing and delivered by email (with confirmation of transmission), nationally recognized overnight courier, or certified mail, return receipt requested, to the addresses set forth below each Party's signature block (or to such other address as a Party designates in writing).

e. **Assignment.** Purchaser may assign its rights under this Agreement and the Claim to an affiliate or designee without Seller's consent; provided that Purchaser remains liable for its obligations hereunder. Seller may not assign this Agreement without Purchaser's prior written consent.

f. **Counterparts; Electronic Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one agreement. Signatures delivered electronically or by PDF shall be deemed effective as originals.

[*signature page to follow*]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**BITCOIN DEPOT OPERATING, LLC,**
*as debtor and debtor in possession and Seller*

By: ______________________________
Name: ____________________________
Title: _____________________________
Email for Notices: ___________________

**GPD HOLDINGS LLC d/b/a COINFLIP,**
*as Purchaser*

By: ______________________________
Name: ____________________________
Title: _____________________________
Email for Notices: ___________________

# EXHIBIT A

## DESCRIPTION OF CLAIM

**Included Claim Assets.** The "Claim" consists solely of all of Seller's right, title, and interest in and to the following: (a) the proceeding and appeal captioned *In the Matter of $11,500.00 Seized from Bitcoin Depot Operating*, LLC, Iowa Supreme Court No. 25-1639, arising from Black Hawk County No. SPCR263450, including the July 18, 2025 Application for Return of Seized Property Pursuant to Iowa Code chapter 809, all appellate and trial-court filings, and any remand or further proceeding arising therefrom; (b) the $11,500.00 in cash seized by the Cedar Falls Police Department from a Bitcoin Depot kiosk on or about August 15, 2024 (the "Seized Funds"); (c) all claims, rights, causes of action, remedies, judgments, orders, settlements, recoveries, proceeds, and other rights arising from or relating exclusively to the Appeal, the application for return of the Seized Funds, and the Seized Funds; and (d) all files, books, records, pleadings, correspondence, and other documents in Seller's possession or control that relate solely to the foregoing.

**Excluded Assets.** The Claim does not include: (a) any claim, cause of action, right, asset, or property of Seller or any of its affiliates that is not expressly described above; and (b) any claims against Seller or its affiliates, including customer claims, refund obligations, regulatory claims, or claims arising from the underlying customer transaction, except to the limited extent that a right is inseparable from the Appeal or the right to recover the Seized Funds.