United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 11, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90528 (CML)** |
| | § | |
| **BITCOIN DEPOT INC.,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMING PLAN OF LIQUIDATION OF BITCOIN DEPOT INC. AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:

   a. Commenced, on May 17, 2026 (the "***Petition Date***"), their respective chapter 11 cases (the "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

   b. operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

   c. filed, on July 17, 2026, the *Affidavit of Service* [Docket No. 485] with respect to the *Order (I) Establishing Bar Dates and Procedures; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 331] (the "***Bar Date Affidavit of Service***");

   d. filed, on June 18, 2026, the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 304];

   e. filed, on June 18, 2026, the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 305];

   f. filed, on June 23, 2026, the *Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 318];

---

[1] The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

4903-6728-2372

g.   filed, on July 13, 2026, the *Notice of Adjournment of Combined Hearing to Commence on August 10, 2026 at 1:00 pm (Prevailing Central Time)* [Docket No. 470] (the "***Confirmation Hearing Notice***"), which contained notice of the date and time set for the hearing to consider Confirmation of the Plan and final approval of the Disclosure Statement (the "***Combined Hearing***") and the deadline for filing objections to Confirmation of the Plan or final approval of Disclosure Statement;

h.   filed, on July 16, 2026, the *Certificate of Publication* of the Combined Hearing Notice in the New York Times [Docket No. 480] (the "***Publication Affidavit of Service***");

i.   filed, on July 16, 2026, the *Notice of Filing of Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 484] (the "***Initial Plan Supplement***");

j.   filed, on July 20, 2026, the *Notice of Filing of Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 493] (the "***First Amended Plan Supplement***");

k.   filed, on July 30, 2026, the *Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 570] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "***Combined Disclosure Statement and Plan***" or, separately in relevant part, the "***Disclosure Statement***" or the "***Plan***") which is attached hereto as **Exhibit A**;[2]

l.   filed, on August 4, 2026, the *Notice of Filing of Second Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 589] (the "***Second Amended Plan Supplement***").

m.   filed, on August 4, 2026, the *Affidavit of Service of Solicitation Materials* [Docket No. 587] (the "***Solicitation Affidavit of Service***");

n.   filed, on August 4, 2026, the *Affidavit of Service of Amended Supplemental Notice* [Docket No. 595] (the "***Supplemental Notice Affidavit of Service***");

o.   filed, on August 4, 2026, the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast On the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 590] (the "***Voting Declaration***");

p.   filed, on August 4, 2026, the *Debtors' Memorandum of Law in Support of Approval and Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 591] (the "***Confirmation Brief***");

q.   filed, on August 5, 2026, the *Declaration of Thomas Studebaker in Support of Plan Confirmation* [Docket No. 593] (the "***Studebaker Confirmation Declaration***");

r.   filed on August 6, 2026, *Affidavit of Service of Combined Hearing Notice* [Docket No. 597] (the "***Combined Hearing Notice Affidavit of Service***", and collectively with the Publication Affidavit of Service, the Bar Date Affidavit of Service, the Solicitation Affidavit of Service, and the Supplemental Notice Affidavit of Service, the "***Affidavits of Service***");

s.   filed, on August 7, 2026, the *Declaration of Ivona Smith, Sole Member of the Investigation Subcommittee of the Restructuring Committee of Bitcoin Depot Inc., in Support of the Debtors' First Amended Combined Disclosure Statement and*

---

[2]   Capitalized terms used but not defined in this Confirmation Order shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan.

2

*Chapter 11 Plan of Liquidation* [Docket No. 605] (the "**Smith Confirmation Declaration**" and together with the Voting Declaration and the Studebaker Confirmation Declaration, the "**Declarations**"); and

t.   filed, on August 9, 2026, the *Notice of Filing of Third Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 611] (the "**Third Amended Plan Supplement**" and together with the Initial Plan Supplement, First Amended Plan Supplement, and Second Amended Plan Supplement, the "**Plan Supplement**").

The Bankruptcy Court having:

a.   entered, on June 25, 2026, the *Order (I) Establishing Bar Dates and Procedures; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 331] (the "**Bar Date Order**");

b.   entered, on June 25, 2026, the *Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 332] (the "**Solicitation Procedures Order**");

c.   reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Confirmation Hearing Notice, the Affidavits of Service, and all pleadings filed with respect to final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights with respect thereto, if any, filed on the docket in these Chapter 11 Cases or made at the Combined Hearing;

d.   held the Combined Hearing on August 10, 2026, at 1:00 p.m. Central Time;

e.   considered the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto; and

f.   considered all oral representations, Affidavits of Services, testimony, documents, filings, and other evidence regarding Confirmation of the Plan and the objections thereto.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, it hereby is **DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT**:

3

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.      **Findings of Fact and Conclusions of Law.** The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "***Confirmation Order***") constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.      **Jurisdiction, Venue, and Core Proceeding.** The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Bankruptcy Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Final approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with section III of the United States Constitution.

C.      **Eligibility for Relief.** The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      **Commencement and Joint Administration of These Chapter 11 Cases.** On the Petition Date, each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. On May 28, 2026, the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") appointed an Official

Committee of Unsecured Creditors (the "**Committee**") [Docket No. 101].  In accordance with the *Amended Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 34], the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

**E.     Judicial Notice.**     The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, all declarations, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**F.     Notice.**

(i)   Due, timely, proper, and adequate notice of the Plan, the Claims Bar Date, and the Combined Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan or opting out of the Releases (as defined herein), has been provided substantially in accordance with the Solicitation Procedures Order and the Bar Date Order, as set forth in the Voting Declaration and the Affidavits of Service.

(ii)  Such notice was appropriate and satisfactory based upon the facts and circumstances of these Chapter 11 Cases and pursuant to sections 1125, 1126(b)(1), and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Combined Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy laws, rules, and regulations.

5

G.      Solicitation.

(i)    The Solicitation Packages, the Opt-Out Form, the Notice of Non-Voting Status, the Combined Hearing Notice (each as defined in the Solicitation Procedures Order), and all other materials approved by and/or transmitted pursuant to the Solicitation Procedures Order (collectively, the "*Solicitation Materials*") were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and all other applicable rules, laws, and regulations applicable to such solicitation.   Transmission and service of the Solicitation Materials was timely, adequate, and sufficient.   No further notice is required.

(ii)   As set forth in the Voting Declaration, on June 30, 2026, the Solicitation Package was transmitted to and served on the eligible Holders of Claims in Classes 3, 4, and 5, which were the only Classes of Claims entitled to vote to accept or reject the Plan (the "*Voting Classes*").

(iii)  The Holders of Claims in the Voting Classes received Ballots.   The form of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for the Holders of Claims in the Voting Classes.   The instructions on each Ballot advised that for the Ballot to be counted, the Ballot had to be properly executed, completed, and delivered to the Voting Agent so that it was actually received by the Voting Agent on or before the Voting Deadline.   The period during which the Debtors solicited acceptance of the Plan was a reasonable period of time for the Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

(iv)  The Debtors were not required to solicit votes from the Holders of Claims in Classes 1 or 2 (collectively, the "*Unimpaired Classes*"), as each such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

6

Code.  The Holders of Claims in Classes 1 and 2 received the Notice of Non-Voting Status, the Combined Hearing Notice, and the Opt-Out Forms.

(v)  The Debtors were not required to solicit votes from the Holders of Claims or Interests in Classes 6, 7, 8, or 9, as the Holders of Claims or Interests in such Classes are not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and were not entitled to vote to accept or reject the Plan.  The Holders of Claims or Interests in Classes 6, 7, 8, and 9 received the Notice of Non-Voting Status and the Combined Hearing Notice.

(vi) As described in and as evidenced by the Voting Declaration, the transmittal and service of the Solicitation Materials (all of the foregoing, the "***Solicitation***") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures the Solicitation Procedures Order, and any other applicable rules, laws, and regulations governing the adequacy of disclosure in connection with such Solicitation. The applicable Released Parties and Exculpated Parties acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law, rules, and regulations, including with respect to solicitation of the acceptance or rejection of the Plan, and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

H. **Adequacy of the Disclosure Statement.** The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all

applicable non-bankruptcy rules, laws, and regulations, including the Securities Act of 1933 (the "**Securities Act**"), as applicable, (b) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is hereby approved on a final basis in all respects.  The Disclosure Statement also provides Holders of Claims and Interests and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

  **I.**  **Voting.**  On August 4, 2026, the Debtors filed the Voting Declaration with the Bankruptcy Court, certifying the method and results of the Ballots tabulated for the Voting Classes. The procedures used to tabulate Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and all other applicable rules, laws, and regulations. As set forth in the Plan and the Disclosure Statement, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Senior Priority Lien Claims) and Class 2 (Other Priority Claims) are Unimpaired and are conclusively presumed to have accepted the Plan. Holders of Class 7 (Subordinated Claims) and Class 9 (Equity Interests) are Impaired and deemed to have not accepted the Plan. Holders of Class 6 (Intercompany Claims) and Class 8 (Intercompany Interests) are either Unimpaired and are conclusively presumed to have accepted the Plan or Impaired and deemed to have not accepted the Plan, at the election of the Liquidation Trustee.  As evidenced by the Voting Declaration, each of the Voting Classes voted to accept the Plan.

8

J.       **Plan Supplement.**

(i)     The Debtors filed the Plan Supplement, consisting of:  (a) the Schedule of Retained Causes of Action; (b) a schedule identifying the Non-Contributed Assets; (c) the Liquidation Trust Agreement; (d) the Schedule of Retained Executory Contracts and Unexpired Leases; (d) the Liquidation Analysis; (e) a summary of the findings of the Investigation Subcommittee; (f) the identity of the Released Parties; (g) the identity of, and the proposed compensation to be paid to, the Liquidation Trustee; (h) and the Term Loan Settlement Term Sheet.

(ii) The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Bankruptcy Court), complies with the terms of the Plan, and the Debtors provided good and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and all other applicable laws, rules, and regulations.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtors are authorized to alter, amend, update, modify, or supplement the Plan Supplement on or before the Effective Date.  The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and were conducted in good faith. No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

K.       **Bankruptcy Rule 3016.**       In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents.  The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

9

**L.      Burden of Proof: Confirmation of the Plan.**      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.  Each witness who testified or submitted a declaration or proffer of testimony on behalf of the Debtors or any other party, in support of Confirmation of the Plan, in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**M.      Compliance with Bankruptcy Code Requirements: Section 1129(a)(1).** Based on the evidentiary record at the Combined Hearing, the Declarations, the contents of the Plan and the Disclosure Statement, the Affidavits of Service, the Confirmation Brief, and the Bankruptcy Court's judicial notice of the complete record of the Chapter 11 Cases, the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      <u>Proper Classification: Sections 1122 and 1123(a)(1)</u>.      Article IV of the Plan designates Classes of Claims and Interests, other than Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated. The Plan designates nine Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims and Interests that are substantially similar to the other Claims and Interests within the applicable Class. Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Such classifications were not implemented for improper purposes, and such Classes do not unfairly

10

discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) <u>Specified Unimpaired Classes: Section 1123(a)(2)</u>.   Article IV of the Plan specifies that Claims in Class 1 and Class 2 are Unimpaired under the Plan, and Claims in Class 6 and Class 7 may be Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

(iii) <u>Specified Treatment of Impaired Classes: Section 1123(a)(3)</u>.   Article IV of the Plan specifies that the Claims and Equity Interests in Classes 3, 4, 5, 8 and 9 are Impaired under the Plan and that the Claims in Classes 6 and 7 may be Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv) <u>No Discrimination: Section 1123(a)(4)</u>.   Article IV of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v) <u>Adequate Means for Plan Implementation: Section 1123(a)(5)</u>.   The Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation:  (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (b) appointment of the Liquidation Trustee; (c) the Wind Down; (d) to the extent necessary, the sale and abandonment of Assets by the Liquidation Trust; (e) the cancellation of certain existing securities, agreements, obligations, instruments, and Interests; (f) the release of Liens; (g) the continuation of existing director and officer liability insurance; (h) provisions governing the distributions under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code; and

11

(i) the general authority for the Debtors to take all actions necessary or appropriate to effectuate any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, as set forth more fully in Articles V, VI, and X of the Plan.

(vi) Voting Power of Equity Securities: Section 1123(a)(6). All existing voting securities will be canceled pursuant to the Plan, therefore the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii) Designation of Directors and Officers: Section 1123(a)(7). The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article V of the Plan describes the powers of the Liquidation Trustee, which shall initially be Thomas A. Pitta, as set forth and disclosed in the Plan and the Plan Supplement. The Liquidation Trust Agreement included with the Plan Supplement also discloses the compensation of the Liquidation Trustee. The foregoing appointment of the Liquidation Trustee is consistent with the interests of Holders of Claims and with public policy. The foregoing provisions regarding the Liquidation Trustee satisfy section 1123(a)(7) of the Bankruptcy Code.

(viii) Impairment / Unimpairment of Classes: Section 1123(b)(1). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article IV of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix) Assumption and Rejection of Executory Contracts and Unexpired Leases: Section 1123(b)(2). The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article VI of the Plan provides for the assumption or rejection, as applicable, of all of the executory contracts or unexpired leases of the Debtors that have not already been assumed or rejected in the Chapter 11 Cases; *provided however*, that nothing in the Plan shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and

12

directors, the Liquidation Trustee, and/or the Liquidation Trust. Nothing in the Plan shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

(x)  Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action: Section 1123(b)(3).

a.  The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable and entry into such compromises and settlements represented a sound exercise of the Debtors' business judgment.  The foregoing includes, without limitation, the UCC Settlement and Term Loan Settlement and the corresponding settlement of Claims, Causes of Action, and controversies embodied in the Plan.

b.  Article V of the Plan describes the terms of the UCC Settlement and Term Loan Settlement between the UCC Settlement Parties and Term Loan Settlement Parties.  The provisions of the UCC Settlement and Term Loan Settlement constitute good faith compromises and settlements among the UCC Settlement Parties and Term Loan Settlement Parties of all Claims, Causes of Action, and controversies among such parties, are in consideration of the value

provided to the Estates by the UCC Settlement Parties and Term Loan Settlement Parties pursuant to the UCC Settlement and Term Loan Settlement and are fair and equitable and in the best interests of the Estates and their creditors.  The Plan shall be deemed a motion to approve the UCC Settlement and Term Loan Settlement as a good faith compromise and settlement of all of the Claims, Causes of Action, and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable).  Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the UCC Settlement and Term Loan Settlement, as well as a finding by the Bankruptcy Court that the UCC Settlement and Term Loan Settlement are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and reasonable.  If a UCC Settlement Party or Term Loan Settlement Party is in breach of the terms of the UCC Settlement or Term Loan Settlement, the parties that are not in breach shall not be obligated to perform any obligations for the benefit of such breaching party.

c.      Article IX.B of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***").  The Debtor Releases are granted in exchange for the good and valuable consideration provided by the Released Parties, including the Cooperation Covenant, as applicable.  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at or prior to the Combined Hearing, such Debtor Releases are a necessary and integral part of the Plan.  The Debtor Releases are "fair and equitable" and "in the best interests of the estate" and the Holders of Claims and Interests considering: (a) the probability of success in litigation of the released claims and Causes of Action given uncertainty in fact and law with respect to such claims and Causes of Action;

14

(b) the complexity and likely duration and expense of litigating the released claims and Causes of Action; and (c) the arm's-length negotiations that produced the settlements embodied in the Plan, including the UCC Settlement and Term Loan Settlement.  Additionally, the Debtor Releases are: (x) a good-faith settlement and compromise of the claims and Causes of Action released by Article IX.B of the Plan; (y) given and made, after due notice and opportunity for hearing; and (z) a bar to any of the Debtors, the Liquidation Trust, or the Liquidation Trustee (as applicable) or any other entity on behalf of the Debtors' Estates asserting any claim or Cause of Action released by Article IX.B of the Plan.

d.      Article IX.C of the Plan describes certain releases granted by the Releasing Parties (the "***Releases***").  The Releases provide finality for the Debtors, the Liquidation Trust, the Liquidation Trustee, and the Released Parties (as applicable) regarding the parties' respective historic relationships with the Debtors, obligations under the Plan, and with respect to the Liquidation Trust.  The Ballots unambiguously stated that the Plan contains the Releases, set forth the terms of the Releases, and provided the option for the Holder of a Claim in the Voting Class to elect to opt-out of granting the Releases by indicating such election on the Ballot.  The Notice of Non-Voting Status was transmitted to all Holders of Claims and Interests who were not entitled to vote on the Plan (Classes 1, 2, 6, 7, 8, and 9), and unambiguously stated that the Plan contains the Releases, set forth the terms of the Releases, and included an explanation of how to object to the Plan.  The Notice of Non-Voting Status sent to all Holders of Claims receiving a recovery under the Plan but not entitled to vote on the Plan (collectively, the "***Opt-Out Classes***") similarly and unambiguously included information regarding the Releases and detailed the process by which Holders of Claims in the Opt-Out Classes could opt-out of granting the Releases, including by submitting an Opt-Out Form by which such Holders could indicate that they wished to opt-out of

15

granting the Releases and providing instructions for, alternatively, opting-out of granting the Releases electronically through the Debtors' case website. The Confirmation Hearing Notice transmitted to all Holders of Claims and Interests included the terms of the Releases and an explanation of how to object to the Plan. In addition, the Confirmation Hearing Notice advised careful review of the release, exculpation, and injunction provisions of the Plan and emphasized in bold and capitalized typeface that any party who opposed the Plan, including the release, exculpation, or injunction provisions set forth therein, should timely file an objection to the Plan in accordance with the Confirmation Hearing Notice.

       e.      The Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) not violative of the Bankruptcy Code or any applicable non-bankruptcy law; and (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Releases. The Releases are consensual because all parties in interest granting the Releases, including all Releasing Parties, were provided with extensive and sufficient notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan, and the process for opting-out of giving the Releases and the consequences for failing to timely do so, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights.

       f.      The Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Releases are conspicuous and

emphasized with boldface type in the Combined Disclosure Statement and Plan, the Ballots, the Opt-Out Form, the Notice of Non-Voting Status, and the Confirmation Hearing Notice.

g.       The Releases are integral to the Plan because they, *inter alia*, facilitated participation in both the formulation of the Plan and the chapter 11 process generally and were critical in incentivizing the parties to support the Plan.  As such, the Releases offer certain protections to parties that participated constructively in the Debtors' chapter 11 process by, among other things, supporting the Plan.

h.       The Releases are consistent with established practice in this jurisdiction and others because they are, among other things:  (a) consensual; (b) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Releases.

i.       The exculpation, described in Article IX.D of the Plan (the "***Exculpation***"), is appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.,* 48 F.4th 419 (5th Cir. 2022), because it was proposed in good faith and is appropriately limited in scope.  The Exculpated Parties reasonably relied upon the Exculpation provisions as a material inducement to engage in postpetition work for the Debtors that culminated in the Plan.  The record in the Chapter 11 Cases supports that the Exculpation is appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contains appropriate carve-outs for actions determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

j.       The injunction provision set forth in Article IX.E of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Releases, and the Exculpation and, by

17

extension, the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose. Subject in all respects to Article IX.E of the Plan, no Entity or Person may commence or pursue a claim or Cause of Action of any kind against any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such claim or Cause of Action represents a colorable claim or Cause of Action of any kind, including negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against an Exculpated Party and (b) specifically authorizing such entity or person to bring such claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article IX of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.

k.      Articles V.B and V.L of the Plan appropriately provide that, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and any other actions specifically enumerated in the List of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

l.        The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against the property of the Estates described in Article V.I of the Plan (the "***Lien Release***") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)  Additional Plan Provisions: Section 1123(b)(6).        The    other    discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims, (b) resolution of Disputed Claims, (c) allowance of certain Claims, and (d) retention of Bankruptcy Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**N.        Debtor Compliance with the Bankruptcy Code: Section 1129(a)(2).**    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

(i)   is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

(ii)  has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(iii) complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable non-bankruptcy law, rule and regulation, the Solicitation Procedures Order, and all other applicable law, in transmitting the

19

Solicitation Materials and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.      Plan Proposed in Good Faith: Section 1129(a)(3).** The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In so determining, the Bankruptcy Court has considered the facts and record of these Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at or prior to the Combined Hearing, and examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, and the process leading to Confirmation.  The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to distribute the proceeds from the sale of certain of the Debtors' Assets and conduct the Wind Down.  The Plan (including all documents necessary to effectuate the Plan) and the Plan Supplement were negotiated in good faith and at arm's-length among the Debtors and their key stakeholders, including the Term Loan Secured Parties and the Committee.  Additionally, compromises and settlements embodied in the Plan, including the UCC Settlement and Term Loan Settlement, were negotiated in good faith and at arm's-length and reflect the best possible compromises and settlements that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, and necessary for the Debtors' successful implementation of the Plan.

**P.        Payment for Services or Costs and Expenses: Section 1129(a)(4).        The Debtors** have satisfied section 1129(a)(4) of the Bankruptcy Code.  Any payment made or to be made by the Debtors for services or for costs and expenses of the Professionals in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  All such costs and expenses of the Professionals shall be paid in accordance with the Plan, and all other estimated costs and expenses of the Professionals shall be escrowed in the Professional Fee Reserve Account no later than the Effective Date.

**Q.        Directors, Officers, and Insiders: Section 1129(a)(5).**        The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement discloses the identity and affiliations of the individual proposed to serve as the Liquidation Trustee.  The proposed Liquidation Trustee is qualified, and the appointment to such position is consistent with the interests of the Holders of Claims and Interests and with public policy.

**R.        No Rate Changes: Section 1129(a)(6).**        Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.        Best Interest of Creditors: Section 1129(a)(7).**        The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis included in the Plan Supplement and described in the Studebaker Confirmation Declaration and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and

assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were hypothetically liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

T.        **Acceptance by Certain Classes: Section 1129(a)(8).**

(i)   Classes 1 and 2 are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 3, 4, and 5 are Impaired and have voted to accept the Plan, as established by the Voting Declaration.

(ii)   Classes 6, 7, 8, and 9 are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan. Holders of Claims and Equity Interests in such Classes will not receive or retain any property on account of their Claims or Interests.  Therefore, the Plan does not satisfy the requirements of section 1129(a)(8) with respect to such Classes.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies section 1129(a)(10) of the Bankruptcy Code because Classes 3, 4, and 5 voted to accept the Plan, and, with respect to Classes 6, 7, 8, and 9, section 1129(b) of the Bankruptcy Code is satisfied as set forth below.

U.        **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code: Section 1129(a)(9).**        The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Adequate Protection Claims, Priority Tax Claims, Allowed Other Priority Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article III of the

Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code (as applicable).

**V.        Acceptance by At Least One Impaired Class: Section 1129(a)(10).**        The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Declaration, Classes 3, 4, and 5, which are Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**W.        Feasibility: Section 1129(a)(11).**        The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at or prior to the Combined Hearing:   (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, including the Liquidation Trust, except as provided for under the Plan; and (e) establishes that the Debtors and the Liquidation Trust will have sufficient funds available to meet their obligations under the Plan.

**X.        Payment of Fees: Section 1129(a)(12).**        The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article III.B of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**Y.      Continuation of Employee Benefits: Section 1129(a)(13).** The Debtors maintain no programs providing for employee retirement benefits, as defined in section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

**Z.      Non-Applicability of Certain Sections: 1129(a)(14), (15), and (16).** Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**AA.      "Cram Down" Requirements: Section 1129(b).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Classes 6, 7, 8, and 9 are deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Combined Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the

Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.    Only One Plan: Section 1129(c).**    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed with respect to each Debtor in each of these Chapter 11 Cases.

**CC.    Principal Purpose of the Plan: Section 1129(d).** The    Plan    satisfies    the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.    Not Small Business Cases: Section 1129(e).**    These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**EE.    Good Faith Solicitation: Section 1125(e).** Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Combined Hearing, the Debtors and the other Exculpated Parties (a) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (b) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and therefore are not, and on account of such offer, issuance, and solicitation

will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article IX.D of the Plan.

**FF.    Satisfaction of Confirmation Requirements.**    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan, and all testimony, evidence, and arguments made, proffered, admitted, or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.** Without limiting or modifying the rights of any party set forth in the Plan, each of the conditions precedent to the Effective Date, as set forth in Article X.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article X.C of the Plan.

**HH.    Implementation; Binding and Enforceable.**    The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order.  Consummation of each such Plan Document is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests, and such Plan Documents are hereby approved.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have

been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.  The Plan and the Plan Documents, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

II.     **Settlements Embodied in the Plan Satisfy Bankruptcy Rule 9019.**     All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.  The foregoing includes, without limitation, the UCC Settlement and Term Loan Settlement and the corresponding settlement of Claims, Causes of Action and controversies embodied in the Plan pursuant thereto.

JJ.     **Liquidation Trust Agreement.**     The Debtors have exercised sound business judgment in determining to enter into the Liquidation Trust Agreement and have provided

adequate notice thereof.  The Liquidation Trust Agreement has been negotiated in good faith and at arm's length and is deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the Liquidation Trust Agreement are fair and reasonable.

**KK.** **Authority to Pursue, Settle, or Abandon Retained Causes of Action.**  All Retained Causes of Action are reserved and preserved and shall not be impacted or affected in any way by deemed consolidation of the Estates.  From and after the Effective Date, except as otherwise set forth in Article V.L of the Plan, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Liquidation Trustee pursuant to the Plan and the Confirmation Order.  From and after the Effective Date, the Liquidation Trustee shall retain and may enforce any claims, demands, rights, and Causes of Action that the Debtors' Estates may hold.  The Liquidation Trustee may pursue any such retained claims, demands, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Liquidation Trust as the sole representative of the Liquidation Trust pursuant to section 1123(b)(3) of the Bankruptcy Code.

**LL.** **Good Faith.**  The Debtors, the Term Loan Secured Parties, the Committee, and other Released Parties, the Exculpated Parties, and their respective successors, assigns, predecessors, control persons, affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, investment bankers, advisors and agents, as applicable, acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan and the Plan Documents; and (b) take the actions authorized and directed by this Confirmation Order.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that (a) each Released Party's in-court or out-of-court efforts to develop, negotiate, and propose the Plan were, with respect to each other Released Party and any other Person, in good

faith and not by any means forbidden by law and (b) the settlements reflected in the Plan are (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable, and reasonable, and (iii) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**MM.   Retention of Jurisdiction.**   The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, these Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.  The transactions contemplated in these Chapter 11 Cases should not be subject to any stay, and thus this Confirmation Order should not be subject to any stay under Bankruptcy Rule 3020(e) or any other Bankruptcy Rules such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. **Findings of Fact and Conclusions of Law**.  The findings of fact and conclusions of law set forth herein and on the record at the Combined Hearing are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. **Approval of Disclosure Statement**. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the

Debtors, the Plan, and the transactions contemplated therein, and (c) is **APPROVED** on a final basis in all respects.

3. **Confirmation of the Plan**. The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement and other Plan Documents, are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

4. **Objections**. All objections to Confirmation of the Plan or final approval of the Disclosure Statement and other responses, comments, statements, or reservations of rights, if any, in opposition to the Plan or Disclosure Statement that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits. All objections to Confirmation of the Plan or final approval of the Disclosure Statement not Filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

5. **Plan Classification Controlling.** The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classification set forth on the Ballots tendered in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification

of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes. All rights of the Debtors, the Liquidation Trustee, and the Liquidation Trust, as applicable, to challenge, object to, or seek to reclassify Claims or Interests are expressly reserved.

6. **Confirmation Hearing Notice**. The Confirmation Hearing Notice complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law, rule, and regulation.

7. **Solicitation**. The solicitation of votes on the Plan complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law, rule, and regulation.

8. **No Action Required.** No action of the respective directors, equity holders, managers, or members of the Debtors or the Liquidation Trust is required to authorize the Debtors or the Liquidation Trustee to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Liquidation Trust Agreement and the other Plan Documents.

9. **Binding Effect**. On the date of and after entry of this Confirmation Order, in accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors, Liquidation Trust, or the Liquidation Trustee (as applicable), and any and all Holders of Claims or Interests and such Holder's respective successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Articles IX.B and IX.C of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and Interests shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10. **Vesting of Certain Assets in the Liquidation Trust.** On the Effective Date, the Debtors shall fund the Liquidation Trust with the Minimum Trust Funding in accordance with Article V.G.2 of the Plan. For the avoidance of doubt, the condition precedent set forth in Article

X.B.8 of the Plan regarding the Minimum Trust Funding may only be waived by the Committee. Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, all Assets (other than the Non-Contributed Assets) not sold pursuant to the 363 Asset Sales (including all interests, rights, and privileges related thereto) in each Estate and all Causes of Action that are retained under the Plan shall vest in the Liquidation Trust, to be administered by the Liquidation Trustee in accordance with the Plan, free and clear of all Claims, Liens, and encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trust may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  To the extent that the retention by the Liquidation Trust of assets or property held immediately prior to the Effective Date in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Liquidation Trust (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Liquidation Trust with good title to such property, free and clear of all Liens, Claims, charges, or other encumbrances, except as expressly provided in the Plan, the Plan Documents, or the Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, and (d) does not and shall not subject the Liquidation Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, including by laws affecting or creating successor or transferee liability.

11. **Abandonment of Non-Contributed Assets.**  Notwithstanding anything in the Combined Disclosure Statement and Plan or this Confirmation Order, the Non-Contributed Assets shall not vest in the Liquidation Trust and as of the Effective Date the Liquidation Trust shall have

no ownership interest in the Non-Contributed Assets.  The Non-Contributed Assets are hereby abandoned under section 554 of the Bankruptcy Code effective as of the Effective Date.

12. **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors, or the Liquidation Trustee and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders or the Liquidation Trustee.

13. **Plan Implementation**.

(a) Consistent with section 1142 of the Bankruptcy Code and any provisions of the business corporation law and limited liability company law of any applicable jurisdiction, and without further action by the Bankruptcy Court or the equity holders, members, managers, officers, or directors of any of the Debtors or the Liquidation Trustee, the Debtors, and the Liquidation Trustee are authorized to: (a)  take any and all actions as may be necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby, and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby.

(b) Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including: (a) the rejection or assumption,

34

as appropriate, of any Executory Contracts and Unexpired Leases, (b) the sale and/or abandonment of Assets, (c) vesting of Assets in the Liquidation Trust, and (d) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan are hereby approved and shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of the Bankruptcy Court, or further action by the Debtors or the Liquidation Trustee.

(c)     To the extent that, under applicable non-bankruptcy law, rule, or regulation, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or the Liquidation Trustee, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the equity holders, members, managers, or directors of any of the Debtors or the Liquidation Trustee.

(d)     All such transactions effectuated by the Debtors during the pendency of these Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

14.     **UCC Settlement Approved**.  The UCC Settlement, as incorporated in the Plan, constitutes a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 among the UCC Settlement Parties.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and, controversies that were, or could have been asserted by the UCC Settlement Parties in connection with these Chapter 11 Cases.

15.     The UCC Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the UCC Settlement, including the settlement of all such Claims, Interests, and controversies and the approval of all such releases granted in connection therewith.

16.     **Term Loan Settlement Approved**.  The Term Loan Settlement, as incorporated in the Plan, constitutes a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 among the Term Loan Settlement Parties.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and, controversies that were, or could have been asserted by the Term Loan Settlement Parties in connection with these Chapter 11 Cases.

17.     The Term Loan Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Term Loan Settlement, including the settlement of all such Claims, Interests, and controversies and the approval of all such releases granted in connection therewith.

18.     **Cancellation of Existing Securities and Agreements**.  On the Effective Date, except to the extent otherwise provided herein or in the Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (including the Term Loan Documents, Equipment Financing Agreements, and Equity Interests), and any Equity Interests that are not represented by certificates or other instruments, shall be deemed canceled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be released, discharged, deemed satisfied in full, canceled, and of no force or effect against the

Debtors or the Liquidation Trust without any further action on the part of the Debtors, the Liquidation Trustee, or any other Person.  Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding the foregoing, the Term Loan Documents and Equipment Financing Agreements shall continue in effect as between all non-Debtors to permit: (a) Holders of Term Loan Claims and Equipment Financing Agreement Claims to receive their respective distributions under the Combined Disclosure Statement and Plan, as applicable; (b) the respective agents or trustees under any of the foregoing to assert any charging or similar liens or future claims against the Liquidation Trustee and the Liquidation Trust for indemnification obligations under the applicable Term Loan Documents and Equipment Financing Agreements, and to make distributions on account of the Allowed Claims under the relevant documents and deduct therefrom such reasonable compensation, fees, and expenses; (c) preserving the Term Loan Agent's exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of the applicable Term Loan Claims, including permitting the Term Loan Agent to enforce their payment priority rights with respect to any such distributions; and (d) permitting the Term Loan Agent to enforce any obligation owed to them under the Plan.

19. **Directors and Officers of the Debtors**.

(a)     As of the Effective Date, the term of the current members of the boards of directors, boards of managers, or executive committee, as applicable, of the Debtors shall expire automatically and each person serving as a director or manager, as applicable, of each of the Debtors shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, each of the Estates will vest in the Liquidation Trust effective as of the

Effective Date and, the Liquidation Trustee shall automatically be appointed as the sole director and sole officer of the Debtors and their non-Debtor subsidiaries, and shall succeed to the powers of such Debtors' directors, managers, and officers.

(b)     As of the Effective Date, any and all powers of the Debtors' officers, managers, directors, members, employees, or other persons to act as an authorized signatory on behalf of the Debtors shall vest in the Liquidation Trustee who shall succeed to all such authority, and the Liquidation Trustee may act as a signatory on behalf of the Debtors and the Liquidation Trust.

20.     **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust will retain and may enforce, as successors to the Debtors, any claims, demands, rights and Causes of Action that any Estate may hold against any Person to the extent not satisfied, settled, and released under the Plan or otherwise, including the Retained Causes of Action; provided that, the Liquidation Trust will not retain any Causes of Action that were assigned to a Purchaser in connection with the 363 Asset Sales, each of which are automatically and irrevocably waived and/or abandoned hereunder. The Liquidation Trustee shall have standing and authority to pursue any such retained claims, demands, rights, or Retained Causes of Action, as appropriate, in accordance with the best interests of the Liquidation Trust. Except as otherwise provided herein or in the Plan, in accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Debtors or Estates may hold against any Person. The Debtors intend to preserve all such claims, demands, rights, or causes of action as Retained Causes of Action (except as assigned to a Purchaser in connection with the 363 Asset Sales or otherwise

provided herein or to the extent any such claim or Cause of Action is specifically satisfied, settled, and released herein or in the Plan).

21.     **Substitution in Pending Legal Actions.**  On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be the same litigation party as the applicable Debtor(s) and are authorized to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (a) pending contested matters or adversary proceedings in the Bankruptcy Court, (b) any appeals of orders of the Bankruptcy Court and (c) any state court or federal or state administrative proceedings or equivalent in any other applicable jurisdiction pending as of the Petition Date.  The Liquidation Trustee and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

22.     **Liquidation Trust**.  On and after the Effective Date, the Liquidation Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Assets vested in the Liquidation Trust (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (c) review, reconcile, settle, or object to all Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (d) calculate and make distributions of the proceeds to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (e) pursue Retained Causes of Actions; (f) retain, compensate, and employ professionals to represent the Liquidation Trust; (g) file appropriate tax returns and other reports on behalf of the Liquidation Trust and pay taxes or other obligations owed by the Liquidation Trust; (h) file, to the extent reasonably feasible,

appropriate tax returns on behalf of the Debtors and pay taxes or other obligations arising in connection therewith; (i) exercise such other powers as may be vested in the Liquidation Trust under the Plan, or as deemed by the Liquidation Trustee to be necessary and proper to implement the provisions of the Plan; (j) take such actions as are necessary or appropriate to close the Chapter 11 Cases; (k) dissolve the entities comprising the Debtors; and (l) undertake the Wind Down.

23.     **Liquidation Trustee**.   Thomas A. Pitta is hereby appointed to serve as the Liquidation Trustee for the Liquidation Trust in accordance with the terms of this Confirmation Order, the Plan, and the Liquidation Trust Agreement.  The Liquidation Trustee shall be authorized to take all actions necessary to establish, maintain, and administer the Liquidation Trust pursuant to the terms of the Plan, this Confirmation Order, and the Liquidation Trust Agreement.

24.     **Liquidation Trust Agreement**.  The Liquidation Trust Agreement, substantially in the form filed with the Plan Supplement, is hereby approved in its entirety, and the Debtors are authorized to enter into the Liquidation Trust Agreement, and the Liquidation Trustee is authorized to perform its duties thereunder.

25.     **Professional Compensation**.    The provisions governing compensation of Professionals set forth in Article III.D of the Plan are approved in their entirety.  All final requests for Professional Claims through and including the Effective Date shall be Filed no later than 45 days after the Effective Date.  Any objections to Professional Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Claims.

26.     **Payment of Professional Fee Claims**.  On the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Claim Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the benefit

of the Professionals. Such funds shall not be considered property of the Debtors' Estates or of the Liquidation Trust. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Liquidation Trustee from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Claims are Allowed.

27.      When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be irrevocably paid to the Liquidation Trust without any further action or order of the Bankruptcy Court.

28.      **Subordination.**   The allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidation Trustee reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

29.      **Release of Liens.**  Except for as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Articles III and IV of the Plan, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate (including the Liquidation Trust) shall be deemed fully released and discharged.

30.      **Insurance.**

(a)　　On the Effective Date, the Debtors' rights under and to each Insurance Contract shall automatically vest in the Liquidation Trust as of the Effective Date without necessity for further approvals or orders. Confirmation and consummation of the Plan, and the vesting of the Insurance Contracts in the Liquidation Trust as set forth therein, shall not impair or otherwise affect (x) any party's rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, including any claims pursued or made by the Liquidation Trustee on behalf of the Liquidation Trust, or (y) any available defenses of the Debtors or the Liquidation Trustee or any Insurer under the Insurance Contracts.

(b)　　To the extent that any Insurance Contracts are deemed Executory Contracts or Unexpired Leases, unless such Insurance Contracts have been rejected pursuant to an order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan: (a) from and after the Effective Date, all Insurance Contracts will be assumed by the Liquidation Trust pursuant to section 365 of the Bankruptcy Code or continued in accordance with their terms, such that each of the parties' contractual, legal and equitable rights under each Insurance Contract shall remain unaltered; (b) the parties to each Insurance Contract will continue to be bound by such Insurance Contract as if the Chapter 11 Cases had not occurred; (c) nothing in the Plan shall affect, impair or prejudice the rights and defenses of the insurers or the Liquidation Trustee under the Insurance Contracts in any manner, and such insurers and the Liquidation Trustee shall retain all rights and defenses under the Insurance Contracts, and the Insurance Contracts shall apply to, and be enforceable by and against, the Liquidation Trustee and the applicable Insurer(s) as if the Chapter 11 Cases had not occurred; (d) nothing in the Plan shall in any way operate to, or have the effect of, impairing any party's legal, equitable or contractual rights, obligations and/or claims under any Insurance Contract, if any, in any respect, and any such rights and obligations shall be

determined under the Insurance Contracts, any agreement of the parties and applicable law and (e) to the extent any Insurance Contracts provide for a self-insured retention on the part of any Debtor or its Estate, such self-insured retention shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Plan.

31.     **Rejection of Contracts and Leases.**     Except with respect to any Executory Contract or Unexpired Lease: (a) that has been assumed by the Debtors and assigned to a Purchaser in connection with the 363 Asset Sales; (b) that has been previously rejected or assumed by a Final Order; (c) that is the subject of a separate motion to assume or reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (d) that is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; (e) that is a Retained Executory Contract or Unexpired Lease, or (f) that has previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code; *provided however*, that nothing herein or in the Plan shall cause the rejection, breach, or termination of any contract of insurance (including the Insurance Contracts) benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, the Liquidation Trustee, and/or the Liquidation Trust. Notwithstanding anything in the Plan, this Confirmation Order, any Order of the Bankruptcy Court, or stipulation to the contrary, all Executory Contracts or Unexpired Leases which are rejected under the Plan, any Order of the Bankruptcy Court, or a stipulation between the applicable Debtor(s) and the counterparty are rejected effective as of the earlier of (a) the Effective Date and (b) the date of rejection designated in such Order or stipulation.

43

32. **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved.

33. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, settlements, releases, and other benefits provided pursuant to the Plan, which distributions, settlements, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of this Confirmation Order constitutes approval of the compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trust or the Liquidation Trustee (as applicable) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

34. In accordance with Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the UCC Settlement Parties and Term Loan Settlement Parties regarding the matters set forth in the UCC Settlement and the Term Loan Settlement Term Sheet, and reflects and implements such compromise and settlement. Such compromise and settlement

is made in exchange for consideration and is in the best interests of the UCC Settlement Parties, Term Loan Settlement Parties, and the Holders of Allowed General Unsecured Claims, is within the reasonable range of possible litigation outcomes, is fair, equitable, and reasonable, and is an essential element of the resolution of these Chapter 11 Cases.

35.     **Release, Discharge, Exculpation, and Injunction Provisions**.  All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Article IX of the Plan, are approved and shall be effective and binding on all Persons and Entities to the extent provided therein.  For the avoidance of doubt, the right of any party to object to any Professional Claim, subject to applicable objection deadlines, is preserved, notwithstanding the approval of the Releases herein.

36.     **Tax Withholding**.  To the extent applicable, pursuant to the Plan, the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent shall comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent to comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit,

45

including an Internal Revenue Service Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors and Liquidation Trustee reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other Tax obligations, on account of such distribution.

37.     **Payment of Statutory Fees**.  All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Liquidation Trustee on behalf of the Liquidation Trust, shall file with the Bankruptcy Court quarterly, Post-Confirmation Reports when they become due. Each and every one of the Debtors shall be and shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Plan.

38.     **Dissolution of the Committee**.  On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof

shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.

39.    **Documents, Mortgages and Instruments**.  Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

40.    **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all Persons or Entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

41.    **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan, the Confirmation Order, or any other Final Order entered by the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

42. **Debtors' Actions Post-Confirmation Through the Effective Date**. During the period from the entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

43. **Authorization to Consummate**. The Debtors are authorized to consummate the Plan at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article X.C of the Plan, of the conditions precedent to the Effective Date set forth in Article X.B of the Plan.

44. **Conditions Precedent to the Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Article X.B of the Plan have been satisfied or waived pursuant to Article X.C of the Plan.

45. **Nonseverability of Plan Provisions Upon Confirmation**. Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

46. **Post-Confirmation Modifications**. Subject to the terms of the Plan and without need for further order or authorization of the Bankruptcy Court, the Debtors or Liquidation Trustee, are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on

48

modifications set forth in the Plan, the Debtors and Liquidation Trustee reserve their respective rights prior to the Effective Date to withdraw, alter, amend, or modify materially the Plan with respect to such Debtor or the Liquidation Trust and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

47.     **Reversal/Stay/Modification/Vacatur of Confirmation Order**.   Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

48.     **Applicable Non-Bankruptcy Law.**  The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

49. **Governmental Approvals Not Required**.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to therein, or contemplated by, the Plan.

50. **U.S. Securities and Exchange Commission**.  Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or the Plan Confirmation Order, no provision of this Plan or the Plan Confirmation Order shall (i) preclude the United  States Securities and Exchange Commission ("*SEC*") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or entity in any forum.

51. **Police and Regulatory Authority**.  Notwithstanding anything to the contrary contained in the Plan and any other Plan Document, nothing shall limit or be intended to or be construed to bar any Governmental Unit, from pursuing any police or regulatory action or relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy law.

52. **IRS Provisions**.   Any Allowed Priority Tax Claims held by the Internal Revenue Service (the "*IRS*") shall be paid in equal monthly payments within 5 years of the Effective Date, with interest from the Effective Date at the rate determined under applicable nonbankruptcy law pursuant to 11 U.S.C., §§ 1129(a)(9)(C) and 511, unless otherwise agreed by the IRS and the Liquidation Trustee.

53. The IRS may pursue ordinary course collection remedies after the Effective Date for the collection of taxes for taxable years ending after the Petition Date.

54.     **Texas Taxing Authorities**.     Notwithstanding anything to contrary in the Plan or

this Confirmation Order, any Allowed Claims held by the Texas Taxing Authorities[3] (the "***Texas***

---

[3]   Texas Taxing Authorities shall include all taxing entities represented by Linebarger Goggan Blair, McCreary Veselka Bragg, and Perdue Brandon Fielder Collins and Mott, including but not limited to: Anderson County, Bell County TAD, Bowie CAD, Brazos County, Brown CAD, Burnet CAD, Callahan County, Comal County, Coryell County, Dallam CAD, Denton County, Erath County, Guadalupe County, Hardin County, Harrison County, Harrison CAD, Hays County, Henderson County, Hill County, Hill CAD, Jasper County Tax Units, City of Waco et al, Medina County, Midland CAD, Pine Tree ISD, Taylor County CAD, Williamson County, Hunt County, et al, Nacogdoches Central Appraisal District, Dripping Springs ISD, Kerrville ISD, Copperas Cove ISD, Kendall County Appraisal District, Weslaco Independent School District, Mercedes Independent School District, City of Alamo, City of Mercedes, Brownsville Independent School District, Ochiltree County Appraisal District, Hale County Appraisal District, Taxing Districts Collected by Randall County, Taxing Districts Collected by Potter County, Deaf Smith County Appraisal District, Hutchinson County Tax Office, Andrews Independent School District, Andrews County Tax Office, Bailey Central Appraisal District, Lubbock Central Appraisal District, Scurry County Tax Office, Howard County Tax Office, Jones County Appraisal District, Midland County, City of Garland, Garland Independent School District, Carrollton-Farmers Branch Independent School District, City of Bonham, Bonham Independent School District, Frisco Independent School District, Whitney Independent School District, City of Mineral Wells, Mineral Wells Independent School District, Palo Pinto County, Forney Independent School District, Richardson Independent School District, City of Garrett, Eagle Mountain-Saginaw Independent School District, City of Lake Worth, City of Grapevine, Grapevine-Colleyville Independent School District, City of Burleson, Burleson Independent School District, City of Cleburne, Cleburne Independent School District, City of Venus, Johnson County, Wichita County, Burkburnett ISD, Iowa Park ISD, Wilbarger County, Cooke County, Washington County Appraisal District, Walker County Appraisal District, Magnolia Independent School District, Woodlands Metro Municipal Utility District, Woodlands Road Utility District #1, Humble Independent School District, Alief Independent School District, Chelford City Municipal Utility District, Tomball Independent School District, Galena Park Independent School District, Huffman Independent School District, La Porte Independent School District, Pasadena Independent School District, Sheldon Independent School District, Spring Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District #168, Harris County Municipal Utility District #68, Harris County Municipal Utility District #157, Harris County Municipal Utility District #53, Harris County Municipal Utility District #364, Friendswood City, Friendswood ISD, Santa Fe ISD/WCID, Clear Creek ISD, Dickinson ISD, Galveston Co MUD #44, Santa Fe ISD, Galveston Co MUD #54, Brazoria Co Tax Office, Brazoria Co MUD 34, Brazoria Co-Fort Bend County MUD #1, Brazoria County MUD 23, City of Rosenberg, Fort Bend County Municipal Utility District #94, Fort Bend County Municipal Utility District #225, Fort Bend Independent School District, West Keegans Bayou Improvement District, Fort Bend County Municipal Utility District #151, Fort Bend County Levee Improvement District #12, Grand Mission Municipal Utility District #1, Fort Bend Improvement District #24, Cornerstone Municipal Utility District, Harris County Municipal Utility District #61, Clear Lake Water Authority, Addicks Utility District, Harris County Municipal Utility District #173, Harris County Municipal Utility District #33, Harris County Municipal Utility District #120, Northhampton Municipal Utility District, Post Wood Municipal Utility District, Bridgestone Municipal Utility District, Harris County Municipal Utility District 167, Harris County Municipal Utility District #278, Harris County Municipal Utility District 423, Harris County Municipal Utility District #152, Barker Cypress Municipal Utility District, Waller County Tax Assessor-Collector, West Harris County Municipal Utility District #6, Harris County Municipal Utility District #368, Mission Bend Municipal Utility District #2, Austin County Appraisal District, Aransas County, Atascosa County, Bexar County, Cameron County, Camp CAD, City of Carrollton, Cypress-Fairbanks Independent School District, Dallas County, Eagle Pass Independent School District, Ector CAD, City of El Paso, Ellis County, Fannin CAD, Fort Bend County MUD #26, Fort Bend County, Frio Hospital District, City of Frisco, Gainesville Independent School District, Galveston County, Gonzales County, Grayson County, Greenville Independent School District, Gregg County, Harris-Fort Bend Emergency Service District #100, Harris County Emergency Service District #01, Harris County Emergency Service District #02, Harris County Emergency Service District #06, Harris County Emergency Service District #07, Harris County Emergency Service District #08, Harris County Emergency Service District #09, Harris County Emergency Service District #10, Harris

*Tax Claims*") shall be treated as Senior Priority Lien Claims.  Any Allowed Texas Tax Claims on account of tax years 2025 and prior shall be treated in accordance with Allowed Claims in Class 1 (Senior Priority Lien Claims) and any Allowed Texas Tax Claims on account of taxes for 2026 will be paid in the ordinary course of business as such taxes come due unless otherwise agreed by the Texas Taxing Authorities and the Liquidation Trustee.  The Texas Tax Claims shall include pre and post-petition interest as allowed under state law and the Bankruptcy Code. The Liquidation Trustee shall maintain and continue to segregate the Texas Lien Segregated Account established in the Final Cash Collateral Order. Further, to the extent applicable the Liquidation Trustee shall continue to segregate any sale proceeds attributable to the collateral subject to the Texas Tax Claims into the Texas Lien Segregated Account upon the closing of a sale of such assets by the Liquidation Trust. The Texas Taxing Authorities shall retain their asserted liens on the Texas Lien Segregated Account and/or the assets securing their asserted liens with the same validity, priority, and scope as existed on such property as of the Petition Date until the claims are paid in full.  In the event that, following the Effective Date, any assets subject to the Texas Taxing Authorities' liens are abandoned, the Texas Taxing Authorities shall be notified of such abandonment.  For the

---

County Emergency Service District #11, Harris County Emergency Service District #12, Harris County Emergency Service District #13, Harris County Emergency Service District #15, Harris County Emergency Service District #16, Harris County Emergency Service District #17, Harris County Emergency Service District #20, Harris County Emergency Service District #24, Harris County Emergency Service District #25, Harris County Emergency Service District #28, Harris County Emergency Service District #46, Harris County Emergency Service District #47, Harris County Emergency Service District #48, Harris County Emergency Service District #50, Harris County Emergency Service District #60, Harris County Improvement District #03, Harris County WCID #21, Hidalgo County, Hood CAD, Hopkins County, City of Houston, Houston City College, Houston Independent School District, City of Humble, Irving Independent School District, Jasper County, Jefferson County, Jim Wells CAD, Kaufman County, Kerr County, Kleberg County, Lewisville Independent School District, Liberty County, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Northwest Independent School District, Nueces County, Orange County, Parker CAD, City of Pasadena, City of Pearsall, Pearsall Independent School District, Quinlan Independent School District, Rockwall CAD, Rusk County, San Marcos CISD, San Patricio County, Smith County, City of Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Texas City Independent School District, Tom Green CAD, Val Verde County, Venus Independent School District, Victoria County, and Wilson County.

avoidance of doubt, except with respect any General Unsecured Claim, the Texas Taxing Authorities are not subject to Article VII (E)(3) of the Plan, and the Disbursing Agent is authorized and directed to pay any Allowed Texas Tax Claim that is under the $250 minimum distribution threshold.

55. **Texas Taxing Entities**.       Notwithstanding anything to the contrary herein or in the Combined Disclosure Statement and Plan, any liens asserted by Royse City ISD, McKinney ISD, Princeton ISD, Plano ISD, City of Mckinney, City of Plano, City of New Hope, City of Josephine, City of Sherman, Collin County,  and Collin College (collectively, the "***Texas Taxing Entities***") against the Debtors or their property on account of ad valorem taxes shall continue to exist with the same validity, priority, and scope  as existed on such property as of the Petition Date and all rights of the Debtors and the Liquidation  Trustee to object to the priority, validity, amount, and extent of any liens or claims related thereto are expressly preserved.  All rights and defenses of the Debtors and the Liquidation Trustee under bankruptcy and non-bankruptcy law are fully and expressly reserved and preserved with respect to claims by the Texas Taxing Entities.

56. **Governmental Unit Administrative Claims**.       Consistent with 11 U.S.C. § 503(b)(1)(D), a Governmental Unit shall not be required to file a request for payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or 11 U.S.C. § 503(b)(1)(C) as a condition of its being an Allowed Administrative Claim.

57. **Texas Comptroller**.  Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "***Comptroller***"): (a) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (b) nothing in the Plan or Confirmation Order shall affect or impair the

Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (c) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's Allowed Administrative Claims (if any); (d) to the extent that interest is payable on any Allowed Administrative Claim or Allowed Priority Tax Claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (e) the Comptroller is not required to file a motion or application for payment of Administrative Claims *provided, however*, that notwithstanding the foregoing, the Comptroller shall submit to the Liquidation Trustee any asserted Administrative Claim within 30 days after the Liquidation Trustee files the 2026 annual and 2026 final franchise tax returns on behalf of the Debtors and the Estates and provides notice of the same to counsel to the Comptroller.

58.     The Comptroller's Allowed Priority Tax Claims will be paid in cash, in full, (a) upon allowance, (b) in equal monthly installments in accordance with section 1129(a)(9)(C) over a period ending not later than five (5) years after the Petition Date, or (c) as otherwise agreed to by the Comptroller.  Interest on the Comptroller's Allowed Priority Tax Claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

59.     In the event of any default in payment, interest on any Allowed Administrative Claim or Allowed Priority Tax Claim of the Comptroller shall accrue at the statutory rate of interest.  The Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on any Allowed Claims as set forth above.

60.     **Preservation of Police and Regulatory Powers.** Notwithstanding any provision in the Plan, the Plan Supplement or this Confirmation Order (collectively, the "***Plan and Confirmation Documents***"), nothing in the Plan and Confirmation Documents discharges, releases, precludes, or enjoins: (a) any liability to a Governmental Unit, as defined in 11 U.S.C.§

101(27), that is not a Claim, as defined in 11 U.S.C. § 101(5); (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any liability to a Governmental Unit under police powers or regulatory statutes or regulations that any entity would be subject to as the owner, permittee, or operator of property or a business arising after the Effective Date; or (d) any liability to a Governmental Unit on the part of any non-Debtor.  Nothing in the Plan and Confirmation Documents shall enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence—except to the extent a Governmental Unit attempts to enforce or collect upon a monetary judgment obtained against any Debtor arising from pre-Effective Date acts, events or omissions. Nothing in the Plan and Confirmation Documents shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in the Plan and Confirmation Documents shall divest any tribunal of any jurisdiction it may otherwise have under police powers or regulatory law.

61.     **Opt-Out of Non-Debtor Releases.** Notwithstanding anything in the Plan and Confirmation Documents giving effect to releases: (a) Governmental Units are deemed to have opted out of the releases contained in Article IX.C of the Plan (the "***Non-Debtor Releases***") and (b) all individuals that used Debtors' cryptocurrency services or products as a consumer, including without limitation the Debtors' Bitcoin ATM machines or kiosks, before the Effective Date, are deemed to have opted out of the Non-Debtor Releases with respect to any claims arising out of such use of the Debtors' cryptocurrency services or products. An individual qualifies herein regardless of whether he or she filed a Proof of Claim.  For the avoidance of doubt, Holders of State Regulatory Claims (as defined below) shall be deemed to opt out of the Non-Debtor Releases and any injunction or provision enforcing or giving effect to the Non-Debtor Releases, regardless of whether or how such Holders have voted on the Plan.

62. **Compliance with State Laws Regarding Transfer or Discontinuance.** Notwithstanding any provision of the Plan and Confirmation Documents, nothing authorizes the transfer or assignment of any governmental: (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under state law or regulations, except that any fines or other monetary penalties assessed against, or agreed-to by, a Debtor in connection with discontinuation of such license, permit, registration, authorization, or obligation arising from pre-Effective Date acts, events or omissions shall be treated as Claims and paid as provided under the Plan (subject to the rights of the Liquidation Trustee to object to the allowance of such Claims). Nothing in the Plan and Confirmation Documents shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit, to the extent reasonably practicable.

63. **Police and Regulatory Actions and Claims.** Any and all orders, judgments, or Claims held by a Governmental Unit: (a) against the Debtor(s), (b) arising from actions before the Effective Date, and (c) arising out of the enforcement of consumer protection laws, money transmitter licensure laws, or similar police and regulatory laws (collectively, the "*State Regulatory Claims*") are not discharged, released, precluded, or enjoined by confirmation of the Plan; provided however, that any monetary amounts provided for therein shall be treated as Claims and paid as provided under the Plan (subject to the rights of the Liquidation Trustee to object to the allowance of such Claims), and such treatment shall not limit or otherwise affect any nonmonetary relief. For the avoidance of doubt, nothing herein limits the rights of any Governmental Units as to any applicable surety bonds or financial assurance.

56

64. **Deletion of Article IX.F of the Plan.** Article IX.F of the Plan, entitled, "Protections Against Discriminatory Treatment" is hereby deleted.

65. **Definition of "Effective Date."** As used in the Plan and Confirmation Documents, "*Effective Date*" means the day, as determined by the Debtors in consultation with the Committee, that is the Business Day as soon as reasonably practicable after all conditions precedent to the effectiveness of the Combined Disclosure Statement and Plan set forth herein have been satisfied or waived in accordance with the requirements of the Combined Disclosure Statement and Plan, but, in no event, later than 30 days after the Confirmation Date.

66. **State Regulatory Claims Reconciliation.** Notwithstanding anything in the Plan and Confirmation Documents, the Debtors, the Liquidation Trustee, and Holders of State Regulatory Claims agree to work in good faith and cooperate with each other to resolve disputes and reach agreements on Allowed State Regulatory Claim amounts and treatment thereof within five months after the Effective Date.

67. **VFS**. VFS expressly reserves all rights with respect to asserting an Administrative Claim in connection with fifty-six (56) Bitcoin kiosks upon which VFS asserts a lien and which the Debtors are unable to locate in their records at this time. All rights and defenses of the Debtors and the Liquidation Trustee under any relevant agreement and bankruptcy and non-bankruptcy law are fully and expressly reserved and preserved with respect to any Administrative Claims asserted by VFS.

68. **Waiver of Filings**. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or the Office of the United States Trustee (except for monthly operating reports

or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

69.     **Notice of Entry of the Confirmation Order and Effective Date**.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>**, to all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of Confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

70.     **Waiver of Stay.**  The Confirmation Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Sufficient cause has been shown to waive the stays contemplated by Bankruptcy Rule 3020(e) or any other Bankruptcy Rule such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.

71.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

72.     **References to and Omissions of Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order. The failure to specifically describe, include, or refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all of the foregoing are incorporated herein by this reference.

73.     **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

74.     **Effect of Conflict**.  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

75.     **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

76.     **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Bankruptcy Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

Signed:  August 11, 2026

_____

Christopher Lopez
United States Bankruptcy Judge

**Exhibit A**

**Combined Disclosure Statement and Plan**

4903-6728-2372

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90528 (CML)** |
| | § | |
| **BITCOIN DEPOT INC.,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

---

## DEBTORS' FIRST AMENDED COMBINED DISCLOSURE
## STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION

(as modified on July 30, 2026)

---

| | |
|---|---|
| Paul E. Heath (TX 09355050) | David S. Meyer (admitted *pro hac vice*) |
| Sara Zoglman (TX 24121600) | Jessica C. Peet (admitted *pro hac vice*) |
| 845 Texas Avenue, Suite 4700 | 1114 Avenue of the Americas, 32nd Floor |
| Houston, Texas 77002 | New York, New York 10036 |
| Tel: 713.758.2222 | Tel:  212.237.0000 |
| Fax: 713.758.2346 | Fax:  212.237.0100 |
| Email:  pheath@velaw.com | Email:  dmeyer@velaw.com |
|     szoglman@velaw.com |     jpeet@velaw.com |

**VINSON & ELKINS LLP**

*Counsel to the Debtors and Debtors in Possession*

Dated: July 30, 2026

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| Important Disclaimers | | 1 |
| ARTICLE I INTRODUCTION AND GENERAL OVERVIEW | | 3 |
| A. | Company Overview | 3 |
| B. | The Debtors' Corporate Structure | 3 |
| C. | Governmental Regulatory Changes and Enforcement Actions | 4 |
| D. | Commencement of the Chapter 11 Cases | 5 |
| E. | Summary of Capital Structure as of the Petition Date | 6 |
| | 1. Term Loan Facility | 6 |
| | 2. Equipment Financing Agreements | 6 |
| F. | Negotiation of the Use of Cash Collateral | 7 |
| G. | Independent Investigation | 8 |
| H. | Committee Investigation | 8 |
| I. | Released Parties and Plan Supplement | 9 |
| J. | The Debtors' Operational First-Day Motions and Certain Related Relief | 10 |
| K. | Canadian Recognition Proceeding | 10 |
| L. | Appointment of the Committee | 10 |
| M. | Rejection Procedures Order | 10 |
| N. | Postpetition Sales Process and Bidding Procedures Order | 11 |
| O. | Treatment and Estimated Recoveries of Claims and Interests under the Combined Disclosure Statement and Plan | 12 |
| P. | Releases and Exculpation | 13 |
| ARTICLE II CONFIRMATION AND VOTING PROCEDURES | | 14 |
| A. | Confirmation Procedure | 14 |
| | 1. Confirmation Hearing | 14 |
| | 2. Procedure for Objections | 14 |
| | 3. Eligibility to Vote on the Combined Disclosure Statement and Plan | 14 |
| | 4. Solicitation Notice | 15 |
| | 5. Procedure/Voting Deadlines for Classes 3, 4, and 5 | 15 |
| | 6. Acceptance of the Combined Disclosure Statement and Plan | 16 |
| | 7. Elimination of Vacant Classes | 16 |
| B. | Statutory Requirements for Confirmation | 16 |
| | 1. Classification of Claims and Interests | 17 |

2. Impaired Claims or Interests ................................................................. 17

3. Best Interests Test and Liquidation Analysis .................................... 17

4. Feasibility ................................................................................................ 18

ARTICLE III TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ................. 18

A. Administrative Claims .................................................................................... 19

B. Statutory Fees .................................................................................................. 19

C. Administrative Claims Bar Date .................................................................... 19

D. Professional Claims ........................................................................................ 20

1. Final Fee Applications and Payment of Professional Claims .......... 20

2. Professional Fee Escrow Account ....................................................... 20

3. Professional Claim Reserve Amount ................................................. 20

4. Post-Effective Date Professional Fees and Expenses....................... 21

E. Adequate Protection Claims .......................................................................... 21

F. Priority Tax Claims.......................................................................................... 21

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ....................................................................................................... 21

A. Classification of Claims and Interests ........................................................... 21

B. Treatment of Claims and Interests ................................................................ 22

1. Class 1 – Senior Priority Lien Claims ................................................. 22

2. Class 2 – Other Priority Claims........................................................... 23

3. Class 3 – Term Loan Claims ................................................................ 23

4. Class 4 – Equipment Financing Agreement Claims.......................... 25

5. Class 5 – General Unsecured Claims .................................................. 25

6. Class 6 – Intercompany Claims........................................................... 25

7. Class 7 – Subordinated Claims............................................................ 26

8. Class 8 – Intercompany Interests........................................................ 26

9. Class 9 – Equity Interests .................................................................... 27

C. Special Provision Governing Unimpaired Claims........................................ 27

D. Elimination of Vacant Classes....................................................................... 27

E. Voting Classes, Presumed Acceptance by Non-Voting Classes.................. 27

F. Controversy Concerning Impairment ........................................................... 27

G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
Code .................................................................................................................. 28

H. Subordinated Claims........................................................................................ 28

ARTICLE V MEANS FOR IMPLEMENTATION OF THE COMBINED
    DISCLOSURE STATEMENT AND PLAN ................................................................. 28

    A.    Asset Sales and Abandonment of Other Assets.............................................. 28

    B.    General Settlement of Claims and Interests.................................................... 29

    C.    Professional Claim Escrow Account ............................................................... 29

    D.    Claims Reserve ................................................................................................ 29

    E.    Corporate Existence and Dissolution Transactions ....................................... 29

    F.    Recourse Solely to Liquidation Trust Assets.................................................. 30

    G.    Liquidation Trust ............................................................................................ 30

        1.    Liquidation Trust Generally ............................................................... 30

        2.    Funding of and Transfer of Assets into the Liquidation Trust ........... 31

        3.    Liquidation Trustee, Liquidation Trust Oversight Board, and
            Liquidation Trust Agreement .............................................................. 32

        4.    Fees and Expenses of the Liquidation Trust ...................................... 32

        5.    Indemnification .................................................................................. 33

        6.    Tax Treatment .................................................................................... 33

        7.    Settlement of Claims .......................................................................... 34

        8.    Sales of Assets by the Liquidation Trust............................................ 34

        9.    Abandonment of Assets by Liquidation Trust ................................... 34

        10.    Cooperation of the Debtors ................................................................ 35

        11.    Cooperation of the Specified Released Parties................................... 36

    H.    Cancellation of Existing Securities and Agreements..................................... 36

    I.    Release of Liens.............................................................................................. 37

    J.    Corporate Governance, Directors, and Officers ............................................ 37

        1.    Certificates of Formation and Bylaws................................................ 37

        2.    Directors and Officers ....................................................................... 37

    K.    Director and Officer Liability Insurance ....................................................... 37

    L.    Preservation of Causes of Action.................................................................... 37

    M.    Substitution in Pending Legal Actions .......................................................... 38

    N.    Effectuating Documents; Further Transactions ............................................. 38

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES............................................................................................................... 39

    A.    Rejection of Executory Contracts and Unexpired Leases ............................. 39

    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.................. 39

    C.    Insurance Contracts......................................................................................... 40

D.    Reservation of Rights...................................................................................... 40

E.    Nonoccurrence of Effective Date ................................................................. 41

F.    Contracts and Leases Entered into After the Petition Date .......................... 41

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS.............................................. 41

A.    Distributions for Claims Allowed as of the Effective Date .......................... 41

B.    Entitlement to Distributions.......................................................................... 41

C.    Disbursing Agent .......................................................................................... 42

D.    Rights and Powers of Disbursing Agent....................................................... 42

    1.    Powers of the Disbursing Agent.......................................................... 42

    2.    Expenses Incurred on or After the Effective Date .............................. 42

    3.    No Liability .......................................................................................... 42

E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ................... 43

    1.    Record Date for Distribution................................................................ 43

    2.    Delivery of Distributions in General ................................................... 43

    3.    Minimum Distributions ....................................................................... 43

    4.    Undeliverable Distributions and Unclaimed Property ........................ 43

    5.    Surrender of Cancelled Instruments or Securities............................... 43

F.    Manner of Payment....................................................................................... 44

G.    Compliance with Tax Requirements.............................................................. 44

H.    Allocations .................................................................................................... 45

I.    No Postpetition Interest on Claims ............................................................... 45

J.    Foreign Currency Exchange Rate ................................................................. 45

K.    Setoffs and Recoupment ............................................................................... 45

L.    No Double Payment of Claims ...................................................................... 45

M.    Claims Paid or Payable by Third Parties ...................................................... 46

    1.    Claims Paid by Third Parties............................................................... 46

    2.    Claims Payable by Third Parties ......................................................... 46

    3.    Applicability of Insurance Contracts................................................... 46

ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ................................................. 47

A.    Allowance of Claims .................................................................................... 47

B.    Claims and Interests Administration Responsibilities .................................. 47

C.    Authority to Amend Schedules..................................................................... 47

D.    Estimation of Claims .................................................................................... 47

E.    Adjustment to Claims or Interests without Objection ................................... 48

F.      Time to File Objections to Claims ........................................................... 48

G.     Disallowance of Claims or Interests ....................................................... 48

H.     Amendments to Claims ........................................................................... 49

I.       No Distributions Pending Allowance ...................................................... 49

J.      Distributions After Allowance ................................................................ 49

ARTICLE IX SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
        PROVISIONS ........................................................................................... 49

A.     Release and Channeling of Claims and Termination of Interests ............... 49

B.     Releases by the Debtors .......................................................................... 50

C.     Releases by the Releasing Parties Other Than the Debtors ....................... 51

D.     Exculpation ........................................................................................... 52

E.     Injunction ............................................................................................. 53

F.      Protections Against Discriminatory Treatment ........................................ 54

G.     Document Retention ............................................................................... 54

H.     Reimbursement or Contribution .............................................................. 54

ARTICLE X CONDITIONS PRECEDENT TO  CONFIRMATION AND
        CONSUMMATION  OF THE COMBINED DISCLOSURE STATEMENT AND
        PLAN ....................................................................................................... 55

A.     Conditions Precedent to Confirmation .................................................... 55

B.     Conditions Precedent to the Effective Date .............................................. 55

C.     Waiver of Conditions ............................................................................. 56

D.     Effect of Failure of Conditions ............................................................... 56

E.     Substantial Consummation ..................................................................... 56

ARTICLE XI MODIFICATION, REVOCATION, OR  WITHDRAWAL OF THE
        COMBINED DISCLOSURE STATEMENT AND PLAN ............................. 56

A.     Modification and Amendments ............................................................... 56

B.     Effect of Confirmation on Modifications ................................................. 57

C.     Revocation or Withdrawal of Plan ........................................................... 57

ARTICLE XII CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO
        VOTING ................................................................................................... 57

A.     General Bankruptcy Law and Combined Disclosure Statement and Plan
        Considerations ....................................................................................... 58

     1.     The Combined Disclosure Statement and Plan May Not Be Accepted ........... 58

     2.     The Debtors May Not Be Able to Secure Confirmation of the
         Combined Disclosure Statement and Plan or Confirmation May Be
         Delayed .................................................................................................. 58

3. Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes ............................................................................................. 58

4. Failure to Consummate the Combined Disclosure Statement and Plan ........... 58

5. Plan Releases May Not Be Approved ................................................. 59

B. Risks Associated with Forward Looking Statements ........................................ 59

C. Alternatives to Confirmation and Consummation of the Combined Disclosure Statement and Plan.......................................................................... 59

ARTICLE XIII CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ......................................................................................................... 59

A. Certain U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Term Loan Claims and Allowed Equipment Financing Agreement Claims ................ 61

1. Taxable Exchange ........................................................................... 62

2. Accrued Interest ............................................................................. 62

3. Market Discount ............................................................................. 63

B. Certain U.S. Federal Income Tax Consequences for U.S. Holders of Allowed General Unsecured Claims .................................................................. 63

C. Back-up Withholding and Information Reporting.......................................... 63

D. Certain United States Federal Income Tax Consequences Relating to the Liquidation Trust ...................................................................................... 64

1. Classification of the Liquidation Trust............................................... 64

2. Creation of the Liquidation Trust...................................................... 65

3. Allocation of Income and Loss and Disposition of Liquidation Trust Assets................................................................................................ 65

4. Tax Compliance of the Liquidation Trust ........................................... 66

5. Disputed Claims Reserves................................................................. 66

ARTICLE XIV RETENTION OF JURISDICTION ..................................................... 66

ARTICLE XV MISCELLANEOUS PROVISIONS ....................................................... 68

A. Injunctions or Stays ................................................................................. 68

B. Severability ............................................................................................. 68

C. Binding Effect.......................................................................................... 69

D. Notices ................................................................................................... 69

E. Governing Law ........................................................................................ 69

F. Withholding and Reporting Requirements .................................................. 69

G. Headings ................................................................................................ 70

H. Computation of Time................................................................................ 70

J.      Exhibits/Schedules ............................................................................... 70

K.      Filing of Additional Documents ........................................................... 70

L.      No Admissions ...................................................................................... 70

M.      Successors and Assigns ........................................................................ 71

N.      Reservation of Rights ........................................................................... 71

O.      Implementation .................................................................................... 71

P.      Inconsistency ........................................................................................ 71

Q.      Dissolution of the Committee ............................................................... 71

R.      Closing of the Chapter 11 Cases .......................................................... 71

S.      Request for Expedited Determination of Taxes .................................... 72

T.      Votes Solicited in Good Faith ............................................................... 72

ARTICLE XVI DEFINITIONS AND CONSTRUCTION OF TERMS ..................................... 72

A.      Definitions ............................................................................................ 72

B.      Rules of Interpretation ......................................................................... 90

## **Important Disclaimers**

This first amended combined disclosure statement and chapter 11 plan of liquidation (as may be further revised, amended, or modified from time to time in accordance with the terms hereof, this "***Combined Disclosure Statement and Plan***") describes certain statutory provisions, events in the Chapter 11 Cases, the proposed terms of, and certain documents related to the Combined Disclosure Statement and Plan that may be attached and are incorporated by reference. Although the Debtors believe that the information set forth herein is fair and accurate, the summaries set forth herein are qualified in their entirety by the specific provisions of the Bankruptcy Code and the underlying documents being summarized.

The information contained herein or attached hereto is made only as of the date of this Combined Disclosure Statement and Plan unless another time is specified. No representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' business. Except where specifically noted, the financial information contained in this Combined Disclosure Statement and Plan and in the related exhibits has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles in the United States or any other jurisdiction.

This Combined Disclosure Statement and Plan has been prepared in accordance with sections 1123 and 1125 of the Bankruptcy Code and Bankruptcy Rule 3016. This Combined Disclosure Statement and Plan is not an offer to sell any securities and is not soliciting an offer to buy any securities. The information contained in this Combined Disclosure Statement and Plan is included for the purpose of soliciting acceptances of the Combined Disclosure Statement and Plan and may not be relied upon for any purpose other than determining how to vote on the Combined Disclosure Statement and Plan. The Debtors are proposing the Combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Debtors are the proponents of the Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code and will ask the Bankruptcy Court to approve this Combined Disclosure Statement and Plan.

This Combined Disclosure Statement and Plan is being proposed on a separate, or debtor-by-debtor, basis for each Debtor for both voting and distribution purposes.

This Combined Disclosure Statement and Plan has not been approved or disapproved by the United States Securities and Exchange Commission (the "***SEC***"), any state securities commission or any securities exchange or association, nor has the SEC, any state securities commission or any securities exchange or association passed upon the accuracy or adequacy of the statements contained herein.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving the Debtors or any other party or be deemed conclusive evidence of the tax or other legal effects of the Combined Disclosure Statement and Plan. Certain statements contained herein, by nature, are forward-looking and contain estimates and assumptions. **There can be no assurance that such statements, including estimated potential recoveries of claimants, will reflect actual outcomes.**

2

This Combined Disclosure Statement and Plan should not be construed as providing any business, financial, legal, or tax advice.  Therefore, each Holder of a Claim or Interest should consult with its own business, financial, legal, and tax advisors as to any such matters concerning the Combined Disclosure Statement and Plan and the transactions contemplated hereby.

**The Debtors and the Official Committee of Unsecured Creditors (the "Committee") support approval of the Combined Disclosure Statement and Plan and recommend all Holders of Claims entitled to vote on the Combined Disclosure Statement and Plan vote to accept the Combined Disclosure Statement and Plan.**

However, prior to deciding whether or how to vote on this Combined Disclosure Statement and Plan, each Holder of a Claim that is entitled to vote should carefully review all of the information in this Combined Disclosure Statement and Plan, including the risk factors described in greater detail herein.

## ARTICLE I
## INTRODUCTION AND GENERAL OVERVIEW

### A.    Company Overview

As of the Petition Date, the Company[2] owned and operated the largest network of Bitcoin ATMs ("**BTMs**" or "**Kiosks**") across North America, which enabled customers to buy and sell Bitcoin using cash by providing one-way exchanges of cash-to-Bitcoin.  The Company also offered related software products that support BTM operational capabilities and programs allowing customers to purchase Bitcoin through an in-person process and the Bitcoin Depot mobile app (the "**BD App**").

The Company traces its origins to Lux Vending, LLC ("**Lux**"), a Georgia limited liability company founded by Brandon Mintz and formed on June 7, 2016; Lux was solely owned by BT Assets, Inc. ("**BT Assets**"), which also served as Lux's sole manager.  In July 2021, Lux obtained a controlling interest in BitAccess Inc. ("**BitAccess**"), a Canadian corporation, via a business combination.  Lux and BT Assets later entered into a transaction agreement with GSR II Meteora Acquisition Corp., a Delaware special purpose acquisition company formed in October 2021, for the purpose of effectuating a merger.  This de-SPAC transaction closed on June 30, 2023, resulting in the formation of Bitcoin Depot, with Bitcoin Depot Operating LLC surviving as an indirect wholly-owned subsidiary of Bitcoin Depot.

Following the de-SPAC transaction, the Company continued its efforts to develop and expand its businesses, with a particular focus on its network of Kiosks and overseas Bitcoin businesses.  As of December 31, 2025, the Company operated approximately 9,700 owned and leased Kiosks across 48 U.S. states, 10 Canadian provinces, and 6 Australian states, generating $613.6 million in revenue for the year ended December 31, 2025, representing approximately 99.8% of the Company's total revenue.  The Company also operated BDCheckout, a program launched in June 2022 allowing users to purchase Bitcoin at retail checkout counters through transactions initiated on the BD App, which was available at approximately 16,300 retail locations across North America as of December 31, 2025.  In addition, the Company operated BitAccess, a leading BTM device and transaction processing system; Kutt, Inc. ("**Kutt**"), a peer-to-peer social betting platform acquired on February 27, 2026 for $4.5 million; and ReadyBucks, a business advance platform launched on March 10, 2026.  Bitcoin Depot's subsidiaries are located in 9 countries including the United States, and, in connection with the Company's decision to commence these Chapter 11 Cases, the Company is winding down its foreign subsidiaries in parallel with its domestic operations to preserve value both domestically and abroad.

### B.    The Debtors' Corporate Structure

As of the Petition Date, the Company's organizational structure consisted of twenty-four Entities.  Bitcoin Depot is the ultimate parent entity and is publicly owned.  Brandon Mintz remains the controlling shareholder of Bitcoin Depot, with remaining shares owned by public shareholders.  Bitcoin Depot directly or indirectly owns 23 subsidiaries, 17 of which, together with Bitcoin

---

[2]    Capitalized terms not immediately defined in this Combined Disclosure Statement and Plan have the meanings ascribed to them in Art. XVI(A) hereto.

Depot, are Debtors in these Chapter 11 Cases, including the borrower and each entity that is a guarantor under the Term Loan Facility.  The non-Debtor entities are all foreign entities which, with the exception of non-Debtor AUS BTM Pty. Ltd., have few or no creditors and de minimis assets and operations.  Non-Debtor AUS BTM Pty. Ltd. owns approximately 140 Kiosks in Australia and is commencing a wind-down of its assets and operations through an Australian insolvency proceeding.  All of the remaining non-Debtor entities have also begun or will imminently begin the process of liquidating and winding down their affairs in their respective jurisdictions.  The Company's Canadian subsidiaries are Debtors in these Chapter 11 Cases and commenced insolvency recognition proceedings in Canada following the filing of these Chapter 11 Cases as described in more detail in Art.I.J.  Below is a simplified organizational chart of the Company as of the Petition Date, with the Debtor entities highlighted in yellow.[3]



## C.    **Governmental Regulatory Changes and Enforcement Actions**

As discussed in more detail in Bitcoin Depot's Annual Report on Form 10-K filed on March 18, 2026 (the "**Annual Report**") [4] and the First Day Declaration, several state and local governments have introduced or have pending legislation regarding cryptocurrency, digital or virtual currency and cryptocurrency kiosks specifically.  In addition to these new regulations, as described in detail in the Annual Report, various states, including Iowa and Massachusetts,

---

[3]    Copies of all Filings in the Chapter 11 Cases can be obtained and viewed free of charge at the following website: https://restructuring.ra.kroll.com/bitcoindepot.

[4]    Copies of the Annual Report can be obtained and viewed free of charge at the following website: https://ir.bitcoindepot.com/sec-filings/annual-reports.

4

initiated actions against the Company alleging, among other things, violations of state regulations regarding consumer protection, consumer safety, and consumer privacy.

### D.      Commencement of the Chapter 11 Cases

As explained more fully in the First Day Declaration, prior to the Petition Date, the Company faced significant legal, regulatory, and operational challenges, including lawsuits and investigations from eleven state agencies generally alleging that certain of the Company's operating platforms were being used by third parties to perpetuate fraud in violation of federal and state statutes and anti-money laundering regulations.  The Company was also the subject of a voluntary information request by the Securities and Exchange Commission and an investigation by the Federal Trade Commission based on similar allegations.  In addition, the Company faced various private civil actions, including an arbitration award in favor of Cash Cloud, Inc. against BitAccess in the approximate amount of $18.5 million.

In October 2025, the Company announced implementation of a Know Your Customer ("*KYC*") verification process that required customers to provide identification before transacting for any amount of money at a Kiosk.  Following implementation of the KYC verification procedures, the Company's revenues declined significantly in the fourth quarter of 2025 and the first quarter of 2026, including a revenue decrease of $80.7 million, or 49.2%, for the first quarter of 2026 as compared to the first quarter of 2025, primarily due to a decrease in transaction volume driven by a combination of regulatory impacts and enhanced compliance controls.   In November 2025, the Company announced a strategic leadership transition effective January 1, 2026, with Brandon Mintz resigning as CEO and taking on the role of Executive Chairman, Scott Buchanan succeeding Mr. Mintz as CEO, and Elizabeth Simer succeeding Mr. Buchanan as COO.  On February 13, 2026, Christopher Ryan resigned as Chief Legal Officer and Corporate Secretary and Philip Brown resigned as Chief Compliance Officer, both citing concerns about the Company's compliance practices; in March 2026, Scott Buchanan resigned as CEO, Elizabeth Simer resigned as COO, and Brandon Mintz stepped down as Executive Chairman but remains a member of the Board.  In March 2026, the Board appointed Alex Holmes as CEO and Chairman of the Board, and shortly thereafter Christopher Ryan rejoined Bitcoin Depot as General Counsel and Corporate Secretary.  In April 2026, the Company retained Portage Point as financial advisor and, effective April 24, 2026, retained V&E as restructuring counsel to evaluate strategic alternatives.  On May 13, 2026, the Board appointed Ivona Smith as an independent director, and on May 14, 2026, the Board appointed Thomas Studebaker as the Company's Chief Restructuring Officer and approved the formation of the Restructuring Committee.  Ultimately, the new management team's assessment of the business caused the Company to determine to take the Company's BTMs offline and otherwise pause the majority of its operations to focus on asset monetization through a chapter 11 process for the benefit of all stakeholders.

5

E.       **Summary of Capital Structure as of the Petition Date**

The Debtors entered these Chapter 11 Cases with approximately $15,713,027 in principal amount of funded debt liabilities as summarized directly below:

| Debt Facilities[5] | Approximate Total Principal Amount Outstanding as of the Petition Date | Maturity |
|---|---|---|
| Term Loan Facility | $13,338,000 | December 2027 |
| Equipment Financing Agreements | $2,375,027 | 2026 - 2027 |
| *Total Funded Debt* | *$15,713,027* | |

1.       Term Loan Facility

Kiosk HoldCo LLC, a wholly-owned indirect subsidiary of Bitcoin Depot, is the borrower under the Term Loan Agreement.  The Term Loan Agreement provides for a term loan credit facility in the initial aggregate principal amount of $36,450,000.  In connection with Amendment No. 2, the borrower was required to make a prepayment of $7,000,000, applied to reduce the aggregate principal amount outstanding under the Term Loan Facility.  The obligations under the Term Loan Facility are purported to be secured by a first-priority lien on substantially all of the assets of Debtors Kiosk HoldCo LLC, HoldCo, Bitcoin Depot Operating, Intuitive Software LLC, Digital Gold Ventures Inc., BitAccess Inc., Mintz Assets, Inc., Express Vending Inc., and Kiosk Technicians, LLC.

The Term Loan Facility bears interest at a rate of 17.00% per annum and is scheduled to mature on December 15, 2027.  As of the Petition Date, the Debtors prepetition secured lender asserted that the Debtors owed approximately $13,338,000 in principal, $198,784 in accrued but unpaid interest, and a $3,100,000 exit fee (the "***Exit Fee***") under the Term Loan Facility.

2.       Equipment Financing Agreements

In 2023 and 2024, Debtor Bitcoin Depot Operating LLC, as successor to Lux Vending, LLC, became party to approximately ten equipment lease agreements with NFS Leasing, Inc. and five collateralized term loan agreements with VFS LLC to facilitate the lease or purchase of certain kiosks, each as described in more detail below.

Pursuant to that certain Master Equipment Lease, dated as of November 22, 2021, by and between NFS Leasing, Inc. ("***NFS***" and together with VFS and the Term Loan Secured Parties, the "***Prepetition Secured Parties***") and Lux Vending, LLC (n/k/a Bitcoin Depot Operating) (as amended or otherwise modified prior to the Petition Date, the "***NFS Financing Agreement***," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended or otherwise modified prior to the Petition Date, the "***NFS Financing Documents***"), NFS extended loans and other financial accommodations to Lux Vending, LLC (n/k/a Bitcoin Depot Operating), as customer, pursuant to the NFS Financing

---

5       More information on each of these debt facilities is set forth in the First Day Declaration.

Documents. As more fully set forth in the NFS Financing Documents, prior to the Petition Date, NFS asserts a security interest in, and lien on certain collateral and all proceeds and products thereof, in each case whether then owned or existing or thereafter acquired or arising (the "***NFS Collateral***").

Pursuant to that certain Master Equipment Finance Agreement, dated as of June 29, 2021, by and between VFS LLC ("***VFS***") and Lux Vending, LLC (n/k/a Bitcoin Depot Operating) (as amended or otherwise modified prior to the Petition Date, the "***VFS Financing Agreement***," and collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended or otherwise modified prior to the Petition Date, the "***VFS Financing Documents***" and together with the NFS Financing Documents, the "***Equipment Financing Agreements***"), VFS extended loans and other financial accommodations to Lux Vending, LLC (n/k/a Bitcoin Depot Operating), as customer, pursuant to the VFS Financing Documents. As more fully set forth in the VFS Financing Documents, prior to the Petition Date, VFS asserts a security interest in, and lien on all Collateral (as defined in the VFS Financing Documents) and all proceeds and products thereof, in each case whether then owned or existing or thereafter acquired or arising (the "***VFS Collateral***" and together with the NFS Collateral, the "***Equipment Financing Agreement Collateral***").  In addition, in connection with the VFS Financing Agreement, on December 12, 2023, Bitcoin Depot entered into a corporate guaranty with VFS.

As of the Petition Date, the Debtors' aggregate principal amount of the funded debt obligations on account of the Equipment Financing Agreements totaled approximately $2,375,027 consisting of approximately $963,921 under the NFS Equipment Agreements and approximately $1,411,106 under the VFS Equipment Agreements.

**F.     <u>Negotiation of the Use of Cash Collateral</u>**

Prior to and immediately following the Petition Date, the Debtors and certain of their Advisors engaged in extensive arm's-length, good-faith negotiations with the Term Loan Secured Parties to negotiate the use of Cash Collateral.  The Bankruptcy Court authorized the use of Cash Collateral pursuant to the Cash Collateral Orders. The access to Cash Collateral enabled the Debtors to, among other things, honor employee benefits and wages, procure goods and services, and fund general and corporate business needs, and the administration of these Chapter 11 Cases.

Pursuant to the Interim Cash Collateral Orders, on May 21, 2026, the Debtors deposited $17,220,000 into the Adequate Protection Account which funds shall be maintained in such account and not utilized by the Debtors or any other party except by further order of the Court.

On July 24, 2026, the Bankruptcy Court entered the Final Cash Collateral Order which authorized the Debtors' use of Cash Collateral through the Effective Date.  Further, the Term Loan Settlement Term Sheet was attached to the Final Cash Collateral Order as **<u>Exhibit 1</u>**.  Pursuant to the Final Cash Collateral Order if there is not a Challenge commenced by a party in interest (other than the Debtors and the Committee) prior to the expiration of the Non-Debtor Challenge Period (as defined in the Final Cash Collateral Order), the Debtors will distribute $14,018,139.60 to the Term Loan Secured Parties in partial satisfaction of the Term Loan Claims.

**G. Independent Investigation**

In connection with their restructuring and liquidation efforts, the Debtors appointed Alex Holmes and Ivona Smith to the Restructuring Committee and appointed Ms. Smith to the investigation subcommittee thereof ("***Investigation Subcommittee***"). The Investigation Subcommittee is vested with authority to investigate, evaluate, and advise the Board on whether the Company holds any valuable claims or causes of action, including, without limitation, claims against current or former officers, directors, insiders, or third parties, and to make a final determination of appropriate action with respect to any such claims. The Investigation Subcommittee has retained Debevoise & Plimpton LLP as independent counsel and Shannon Lee Beatty LLP as local and conflicts counsel.

The Investigation Subcommittee, with the support of Debevoise and the cooperation of the Company and the Debtors' advisors, conducted an investigation consistent with its mandate during these Chapter 11 Cases (the "***Investigation***"). The Investigation was conducted for purposes of identifying claims that should be preserved and assessing the appropriate scope of releases, if any, and does not constitute a final adjudication of liability, damages, solvency, or any other ultimate merits determination.

In furtherance of the Investigation, at the outset, at the direction of the Investigation Subcommittee, Debevoise had numerous discussions with V&E and Company personnel in order to identify sources of documents and information, custodians, and witnesses of potential relevance to the Investigation. Debevoise also made targeted information requests to the Company and Portage Point, including but not limited to requests for board materials, financial information, internal communications, debt documents, information concerning prepetition transactions, and other materials. In addition, Debevoise collected hundreds of gigabytes of electronic documents and data from the Company and relevant document custodians, conducted targeted searches of such materials to locate additional material germane to the Investigation, and has leveraged that material to conduct numerous witness interviews, which activities remain ongoing. Debevoise also engaged in discussions with counsel to the Committee and coordinated with Committee counsel to provide documents and information and rolling updates on the progress of the Investigation and to receive information from the Committee and its constituents that may be helpful in the Investigation.

On July 7, 2026, the Investigation Subcommittee filed the *Notice of Filing of Identity of the Released Parties* identifying the Released Parties and the Non-Released Parties which are incorporated herein. Interested parties will be able to obtain and view such filing free of charge at the following website: https://restructuring.ra.kroll.com/bitcoindepot.

**H. Committee Investigation**

The Combined Disclosure Statement and Plan provides that holders of allowed General Unsecured Claims will receive Series B Liquidation Trust Interests. In order to help maximize the value of the Series B Liquidation Trust Interests, the Committee conducted its own investigation into estate claims or causes of action and whether or not certain parties should be released (the "***Committee Investigation***"). The Committee Investigation helped identify valuable causes of action for the Liquidation Trustee and helped ensure that the Debtors would take a narrow

8

approach to releases under the Combined Disclosure Statement and Plan.  The Committee worked closely with the Investigation Subcommittee and its advisors and believes the Investigation Subcommittee's recommendations with respect to which parties will be Released Parties and Non-Released Parties, as applicable, are appropriate and preserve valuable causes of action for the Liquidation Trust.

## I.      Released Parties and Plan Supplement

Upon the conclusion of the Investigation, the Investigation Subcommittee made final recommendations regarding the Persons and Entities to be included as Released Parties, if any, pursuant to the Combined Disclosure Statement and Plan.  The Investigation Subcommittee's final recommendations and a summary of its conclusions, along with the identities of the Persons and Entities that will be deemed Released Parties, were included in the Plan Supplement.  For the avoidance of doubt, those Persons and Entities not expressly determined by the Investigation Subcommittee to be Released Parties shall be Non-Released Parties.

"Released Parties" means each of the following solely in its, his, or her capacity as such and to the extent permitted by applicable law (but excluding, for the avoidance of doubt, the Non-Released Parties): (a)(i) the Debtors; (ii) the Estates; (iii) each Debtor's current and former directors, each Debtor's managers, officers, and employees in each case as of the Petition Date, the Investigation Subcommittee, the Restructuring Committee, the Chief Restructuring Officer, and the Information Officer; (b) the Committee and its members solely in their capacity as such; and (c) all retained Professionals in these Chapter 11 Cases, including Professionals retained by the Debtors and their Estates, the Committee, and the Investigation Subcommittee; provided, however, that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases set forth in Article IX of the Combined Disclosure Statement and Plan; or (y) timely objects to the releases set forth in Article IX of the Combined Disclosure Statement and Plan and such objection is not resolved before Confirmation.  For the avoidance of doubt, no Non-Released Party shall be a "Released Party" under the Combined Disclosure Statement and Plan and the Non-Released Parties shall not receive a release under the Combined Disclosure Statement and Plan.

## J.      The Debtors' Operational First-Day Motions and Certain Related Relief

In addition to the Cash Collateral Motion, to minimize disruption to the Debtors' operations and monetization efforts, upon the commencement of these Chapter 11 Cases, the Debtors filed various motions seeking authority to, among other things: (a) continue using the Debtors' existing cash management system; (b) pay certain prepetition Claims owed to employees and on account of employee benefit programs and to continue offering employee benefit programs postpetition; and (c) pay certain vendor Claims in the ordinary course of business.  On May 19, 2026, the Bankruptcy Court granted the relief sought by the Debtors. Subsequently, on June 9, 2026, the Bankruptcy Court granted such relief, and other relief, on a final basis.

## K.      Canadian Recognition Proceeding

On May 22, 2026, Bitcoin Depot, in its capacity as foreign representative, commenced an ancillary proceeding in Canada (the "***Canadian Proceedings***") on behalf of the Debtors' estates, including the estates of Debtors' Digital Gold Ventures Inc., BitAccess Inc., and Express Vending

Inc. (collectively, the "***Canadian Debtors***"), under the Companies' Creditors Arrangement Act (the "***CCAA***") in the Ontario Superior Court of Justice (Commercial List) (the "***Canadian Court***") in order to, among other things, protect the Debtors' assets in Canada. Alvarez & Marsal Canada Inc. was appointed by the Canadian Court as the information officer in the Canadian Proceedings (the "***Information Officer***"). On June 11, 2026, the Canadian Court granted the Canadian Debtors' requests to recognize and give effect in Canada to subsequent orders entered by the U.S. Court, including the Bidding Procedures Order and the Rejection Procedures Order.

### L.        Appointment of the Committee

On May 28, 2026, the U.S. Trustee appointed the Committee [Docket No. 101]. The six members of the Committee are: Cash Cloud, Inc., WPS Kiosk Partners LLC, Loomis Armored US, LLC, OptConnect, Inc., Legacy Vending Fund I, LLC, and Bibbeo.  The Committee has proposed to retain Willkie Farr & Gallagher LLP as legal counsel and Berkeley Research Group, LLC as its financial advisor.

### M.        Rejection Procedures Order

On June 9, 2026, the Bankruptcy Court entered an order (the "***Rejection Procedures Order***") approving certain procedures for the rejection of the Debtors' executory contracts and unexpired leases and the abandonment of personal property in connection therewith (as applicable) (the "***Rejection Procedures***"). On June 10, 2026, the Debtors filed six Omnibus Rejection Notices, each accompanied by a schedule listing the contracts and/or personal property (if any) the Debtors propose to reject and/or abandon and the effective date of such rejection or abandonment. The Debtors are continuing to evaluate the potential rejection of additional executory contracts and unexpired leases and the abandonment of additional personal property in the Debtors' business judgment.

### N.        Postpetition Sales Process and Bidding Procedures Order

The Debtors are conducting a sale process led by Hilco for the sale of substantially all of their Assets. On June 10, 2026, the Bankruptcy Court entered the Bidding Procedures Order, which approved the Bidding Procedures, the form and manner of notice of the sale, any Auction, the Sale Hearing, and the Assumption and Assignment Procedures, and authorized the Debtors to implement and modify the Bidding Procedures, subject to the Bidding Procedures Order. The Bidding Procedures Order also provides that the Debtors will not sell state money-transmitter licenses or Bitcoin ATM customer information without further Court order, except for certain Kutt or ReadyBucks customer information to the extent permitted by applicable law and the Debtors' privacy policies. The key dates and deadlines established by the Bidding Procedures Order are set forth below:[6]

---

[6]    To the extent such terms are not otherwise defined herein, capitalized terms are used as defined in the Bidding Procedures Order.

10

| Date and Time | Event or Deadline |
|---|---|
| **10 days after service of the Assumption and Assignment Notice** | **Assumption and Assignment Objection Deadline.**<br><br>Deadline by which parties must file any Assumption and Assignment Objection. |
| **June 22, 2026 at 5:00 p.m. (prevailing Central Time)** | **Bid Deadline.** |
| **June 23, 2026 at 9:00 a.m. (prevailing Central Time)** | **Auction (if any).**<br><br>The Auction will be held either (a) at the offices of Vinson & Elkins, LLP, 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, (b) virtually, or (c) at such later date and time or other location, as selected by the Debtors in accordance with the Bidding Procedures. |
| **June 24, 2026 at 5:00 p.m. (prevailing Central Time)** | **Notice of Winning Bidder(s).**<br><br>The date by which the Debtors will file with the Court the notice identifying the Winning Bidder(s). |
| **June 29, 2026 at 5:00 p.m. (prevailing Central Time)** | **Sale Objection Deadline.**<br><br>Deadline by which parties must file any Sale Objection. |
| **July 2, 2026 at 9:00 a.m. (prevailing Central Time)** | **Sale Hearing.**[7] |

On the Bid Deadline, the Debtors received several bids for Assets. Pursuant to the Bidding Procedures, and in consultation with the Consultation Parties, the Debtors filed the Notice of Adjournment of Auction to allow more time to evaluate the bids submitted. Subsequently, the Debtors conducted the Auction and designated Winning Bidders for certain of its Assets, and on July 8, 2026 and July 10, 2026 the Bankruptcy Court entered the four sale Orders approving sales of certain of the Debtors Assets. Following the entry of such Orders the Debtors continued to market their remaining Assets, evaluate further Bids, and sought approval of additional Orders approving such sales. On July 24, 2026, the Bankruptcy Court entered an additional six sale Orders approving the sale of various other of the Debtors' Assets.

---

[7] If applicable, Bitcoin Depot Inc., in its capacity as foreign representative, shall also seek an Order of the Canadian Court (the "***Canadian Sale Order***"), among other things, (a) recognizing and enforcing the Sale Order in Canada, and (b) approving the sale of the Assets of the Canadian Debtors and of the other Debtors in Canada (collectively, the "***Canadian Assets***") to the applicable Winning Bidder or Winning Bidders in accordance with the applicable binding purchase agreement(s).

11

**O.** **Treatment and Estimated Recoveries of Claims and Interests under the Combined Disclosure Statement and Plan**

The Debtors expect to be able to pay all Allowed Administrative Claims and Priority Claims in full from Cash on hand and the proceeds of any 363 Asset Sale.

The following table summarizes: (a) the treatment of Claims and Interests under the Combined Disclosure Statement and Plan; (b) which Classes are Impaired by the Combined Disclosure Statement and Plan; (c) which Classes are entitled to vote on the Combined Disclosure Statement and Plan; and (d) the estimated recoveries for Holders of Claims and Interests. The following table is qualified in its entirety by reference to the full text of the Combined Disclosure Statement and Plan.

| Class | Claim or Interest | Projected Principal Amount of Claims | Summary of Treatment | Estimated Recovery |
|---|---|---|---|---|
| 1 | Senior Priority Lien Claims | N/A | Payment in full in Cash | 100% |
| 2 | Other Priority Claims | N/A | Payment in full in Cash | 100% |
| 3 | Term Loan Claims | $17,118,140[8] | Cash and Series A Liquidation Trust Interests | Greater than 0% |
| 4 | Equipment Financing Agreement Claims | $2,375,027 | Cash and Series B Liquidation Trust Interests | Greater than 0% |
| 5 | General Unsecured Claims | Impaired | Series B Liquidation Trust Interests | Greater than 0% |
| 6 | Intercompany Claims | Unimpaired/Impaired | N/A | N/A |
| 7 | Subordinated Claims | Impaired | N/A | None |
| 8 | Intercompany Interests | Unimpaired/Impaired | N/A | N/A |
| 9 | Equity Interests | Impaired | N/A | None |

**P.** **Releases and Exculpation**

**As more fully detailed in Article IX hereof, the Combined Disclosure Statement and Plan contains Debtor Releases, releases of the Released Parties by the Releasing Parties, and an exculpation of the Exculpated Parties.  Please carefully review the release and exculpation provisions.**

---

[8]   Pursuant to the Final Cash Collateral Order, on the Effective Date the Term Loan Claims are projected to be approximately $3,098,000 unless a party in interest (other than the Debtors or Committee) file a Challenge prior to the expiration of the Non-Debtor Challenge Period (as defined in the Cash Collateral Orders) pursuant to the Term Loan Settlement.

# ARTICLE II
# CONFIRMATION AND VOTING PROCEDURES

**A.**     **Confirmation Procedure**

      1.     Confirmation Hearing

On June 24, 2026, the Bankruptcy Court entered the Conditional Approval and Procedures Order conditionally approving the Combined Disclosure Statement and Plan, for solicitation purposes only and authorizing the Debtors to solicit acceptances of the Combined Disclosure Statement and Plan.  The Confirmation Hearing has been scheduled for August 10, 2026 in Courtroom 402, Floor 4, 515 Rusk Avenue, Houston, Texas 77002 to consider, among other things, (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code, and (b) confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.  Parties wishing to participate in the Confirmation Hearing may do so in person or remotely through video or audio access as provided on the Bankruptcy Court's website.

      2.     Procedure for Objections

Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or Confirmation of the Combined Disclosure Statement and Plan must be made in writing and Filed with the Bankruptcy Court and served on (a) proposed counsel to the Debtors, Vinson & Elkins LLP, 845 Texas Avenue, Suite 4700, Houston, Texas 77002, Attn: Paul E. Heath and Sara Zoglman, and 1114 Avenue of the Americas, 32nd Floor New York, New York 10036, Attn: David S. Meyer and Jessica C. Peet; (b) counsel to the Term Loan Agent, Alston & Bird LLP, 90 Park Avenue, New York, New York 10016, Attn: James Vincequerra (c) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Andrew Jimenez and Ha Nguyen; (d) proposed counsel to the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn: James H. Burbage and Emma Karim; and (e) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002, in each case, by no later than **July 30, 2026 at 5:00 p.m. (CT).  Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

      3.     Eligibility to Vote on the Combined Disclosure Statement and Plan

Unless otherwise ordered by the Bankruptcy Court, only Holders of Claims in Classes 3, 4, and 5 may vote on the Combined Disclosure Statement and Plan.  Further, subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, to vote on the Combined Disclosure Statement and Plan, you must hold a Claim in Class 3, 4, or 5.

4.      Solicitation Notice

All Holders of Claims in Classes 3, 4, and 5 will receive (a) notice of the Confirmation Hearing on the Combined Disclosure Statement and Plan (the "***Confirmation Hearing Notice***") setting forth: (i) the deadline to vote on the Combined Disclosure Statement and Plan, (ii) the deadline to object to Confirmation of the Combined Disclosure Statement and Plan, (iii) procedures for Filing objections and responses to the final approval of the adequacy of the Combined Disclosure Statement and Plan or to confirmation thereof, (iv) the time, date, and place of the Confirmation Hearing, and (v) a QR Code that provides electronic access to the website maintained by the Claims and Noticing Agent which contains all documents required to vote on the Combined Disclosure Statement and Plan; and (b) a form of ballot.

**The Debtors are soliciting votes from Holders of Claims or Interests in Classes 3, 4, and 5.  The votes are being solicited on a Debtor by Debtor basis.  All other Classes of Claims and Interests are not being solicited (collectively, the "*Non-Voting Classes*").  Holders of Claims and Interests in the Non-Voting Classes will receive the Notice of Non-Voting Status that allows such Holders to opt out of the releases provided and disclosed in this Combined Disclosure Statement and Plan. In addition, subject to approval by the Bankruptcy Court, the Debtors proposed not to distribute Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice and Opt-Out Form to: (a) any party to whom the notice of the Disclosure Statement Motion was sent but was subsequently returned as undeliverable without a forwarding address; and (b) the Holders of Class 6 Intercompany Claims, Class 7 Subordinated Claims, Class 8 Intercompany Interests, and Class 9 Equity Interests.**

**The deadline for Holders of Claims and Interests in the Non-Voting Classes to submit their Opt-Out Forms is July 30, 2026 at 5:00 p.m. (prevailing Central Time) (the "*Opt-Out Deadline*").**

5.      Procedure/Voting Deadlines for Classes 3, 4, and 5

In order for your ballot to count, you must either (1) complete an electronic ballot at https://restructuring.ra.kroll.com/bitcoindepot by clicking "EBallot" under the case action section of the website and following the instructions for ballot submission, or (2) complete, date, sign and properly mail, courier, or personally deliver a paper ballot to the Claims and Noticing Agent at the following applicable addresses: (a) if by first-class mail, Bitcoin Depot Inc. Ballot Processing Center c/o Kroll Restructuring Administration LLC 850 3rd Avenue, Suite 412 Brooklyn, NY 11232 or (b) if by hand delivery or overnight mail, Bitcoin Depot Inc. Ballot Processing Center c/o Kroll Restructuring Administration LLC 850 3rd Avenue, Suite 412 Brooklyn, NY 11232. BALLOTS SENT BY FACSIMILE TRANSMISSION OR E-MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Ballots must be submitted electronically, or the Claims and Noticing Agent must physically receive original ballots by mail or overnight delivery, on or before **July 30, 2026 at 5:00 p.m. (CT)** (unless such time is extended by the Debtors) (the "***Voting Deadline***").  Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a ballot is submitted electronically, or the Claims and Noticing Agent

14

receives your original paper ballot.  Notwithstanding anything to the contrary in the Conditional Approval and Procedures Order and for the avoidance of doubt, the inclusion of an asserted Claim amount by the Debtors on any ballot submitted by a Holder in accordance with the solicitation procedures is (i) for voting purposes only, and (ii) shall in no circumstances be treated as an admission of the amount or allowance of such Claim.

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection, or abstention, as the case may be, of the Combined Disclosure Statement and Plan.

6.       Acceptance of the Combined Disclosure Statement and Plan

Your acceptance of the Combined Disclosure Statement and Plan is important.  In order for the Combined Disclosure Statement and Plan to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and at least two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Combined Disclosure Statement and Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.  The Debtors and the Committee recommend that you vote to accept the Combined Disclosure Statement and Plan. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

7.       Elimination of Vacant Classes

Any Class of Claims or Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**B.     Statutory Requirements for Confirmation**

The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if it meets all of the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, because certain Impaired Classes are deemed to reject the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to such Classes and must be feasible.  The Bankruptcy Court must also find, among other things, that:

a.      the Combined Disclosure Statement and Plan has classified Claims and Interests in a permissible manner;

b.      the Combined Disclosure Statement and Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

15

c.      the Combined Disclosure Statement and Plan has been proposed in good faith.

1.      Classification of Claims and Interests

Section 1122 of the Bankruptcy Code requires the Combined Disclosure Statement and Plan to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class.  The Debtors believe that the Combined Disclosure Statement and Plan's classifications place substantially similar Claims or Interests in the same Classes, and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

2.      Impaired Claims or Interests

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes Impaired by the Combined Disclosure Statement and Plan and that may potentially receive a payment or distribution under the Combined Disclosure Statement and Plan may vote on the Combined Disclosure Statement and Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Interests may be Impaired if the Combined Disclosure Statement and Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class.  The Holders of Claims in Classes not Impaired by the Combined Disclosure Statement and Plan are deemed to accept the Combined Disclosure Statement and Plan and do not have the right to vote on the Combined Disclosure Statement and Plan.  The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Combined Disclosure Statement and Plan are deemed to reject the Combined Disclosure Statement and Plan and do not have the right to vote.  Finally, the Holders of Claims or Interests whose Claims or Interests are not classified under the Combined Disclosure Statement and Plan are not entitled to vote on the Combined Disclosure Statement and Plan.

3.      Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Combined Disclosure Statement and Plan, or (b) receive or retain under the Combined Disclosure Statement and Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  A hypothetical chapter 7 liquidation analysis (the "*Liquidation Analysis*") will be included in the Plan Supplement.

To calculate the probable distribution to Holders of each Impaired Class of Claims and Interests if the Debtors were liquidated under chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Assets if the Chapter 11 Cases were converted to chapter 7 cases under the Bankruptcy Code.  Because the Combined Disclosure Statement and Plan is a liquidating plan, the "liquidation value" in the Liquidation Analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan.  The Debtors believe, however, that in a chapter 7 liquidation, there would be additional costs, expenses and delays that would be incurred as a result of the appointment of one or more chapter 7 trustees who likely would hire a new and different set of professional advisors to evaluate the situation before

16

making any distributions to creditors in accordance with the priorities established under chapter 7 of the Bankruptcy Code.

Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of counsel and other professionals retained by a chapter 7 trustee, all unpaid expenses incurred by the Debtors in these Chapter 11 Cases (such as compensation of attorneys, financial advisors and accountants that are allowed in the chapter 7 cases), litigation costs, and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases. Moreover, a chapter 7 trustee would be entitled to statutory fees relating to the distribution of the Debtors' Assets. Accordingly, a portion of the Cash currently estimated to be available for distribution to Liquidation Trust Beneficiaries would instead be paid to a chapter 7 trustee and her/his advisors.

The Debtors believe that anticipated recoveries to each Class of Impaired Claims under the Combined Disclosure Statement and Plan will provide Holders of Claims in each Class with a recovery greater than or equal to the recovery available in a chapter 7 liquidation. Accordingly, the Debtors believe that the "best interests" test of section 1129 of the Bankruptcy Code is satisfied.

4.      Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan).

As noted, the Debtors have undertaken a Sales Process pursuant to the Bid Procedures Order in an effort to monetize Assets. The Debtors anticipate that any proceeds received from the Sales Process together with Cash on hand and any other funds to be generated from the Wind Down contemplated by the Combined Disclosure Statement and Plan should be sufficient to meet the obligations hereunder without the need for further financial reorganization. Accordingly, the Debtors submit that the Combined Disclosure Statement and Plan should satisfy the requirements of section 1129(a)(11) of the Bankruptcy Code.

In light of these factors, the Debtors do not anticipate filing a valuation analysis. *See* 11 U.S.C. § 1125(b) ("The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets."); *In re Steward Health Care Sys., LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 25, 2025) [Docket No. 5774] (approving disclosure statement without a valuation analysis where plan was a liquidating plan); *In re Sunnova Energy International, Inc.*, Case No. 25-90160 (ARP) (Bankr. S.D. Tex. Nov. 10, 2025) [Docket No. 1205] (same).

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, Adequate Protection Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

**A.      Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidation Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the Claims Reserve equal to the unpaid amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Liquidation Trustee, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**B.      Statutory Fees**

All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Liquidation Trustee shall pay any and all Statutory Fees when due and payable.  The Liquidation Trustee shall file all monthly operating reports due prior to the Effective Date when they become due.  After the Effective Date, the Liquidation Trustee shall file with the Bankruptcy Court quarterly, Post-Confirmation Reports when they become due.  Each and every one of the Debtors shall be and shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Combined Disclosure Statement and Plan.

**C.      Administrative Claims Bar Date**

Except as otherwise provided herein, requests for payment of Administrative Claims arising on or after the Petition Date but prior to the Effective Date (other than Professional Claims) must be Filed and served on the Liquidation Trustee pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 30 days after the Effective Date.

Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Liquidation Trustee, the Liquidation Trust, the Estates, or their respective properties.  Objections to such requests, if any, must be Filed and served on the Liquidation Trustee and the requesting party no later than 60 days after the Effective Date.

18

**D.** **Professional Claims**

1. <u>Final Fee Applications and Payment of Professional Claims</u>

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date; *provided* that, the Debtors or the Liquidation Trustee may pay Professionals or other Entities in the ordinary course of business for services rendered after the Effective Date; *provided*, *further*, that the Debtors or the Liquidation Trustee shall pay the retained Professionals for fees and expenses incurred after the Effective Date in connection with the preparation of final fee applications in the ordinary course without the need for approval of the Bankruptcy Court. Objections to any Professional Claim, if any, must be Filed and served on the Debtors or the Liquidation Trustee and the applicable Professional no later than 21 days after such Professional Claim is filed with the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and opportunity for a hearing in accordance with the Interim Compensation Order. The Debtors or Liquidation Trustee, as applicable, shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which will be held in trust for the Professionals and funded with Cash equal to the Professional Claim Reserve Amount on the Effective Date.

2. <u>Professional Fee Escrow Account</u>

On the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Claim Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the benefit of the Professionals. Such funds shall not be considered property of the Debtors' Estates or of the Liquidation Trust. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Liquidation Trustee from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Claims are Allowed. When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be irrevocably transferred to the Liquidation Trust without any further action or order of the Bankruptcy Court.

3. <u>Professional Claim Reserve Amount</u>

Professionals shall reasonably estimate their unpaid Professional Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, as well as the estimated fees and expenses to be incurred in connection with preparing and filing any final fee applications, and shall deliver such estimate to the Debtors no later than five days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or the Liquidation Trustee may estimate the unpaid and unbilled fees and expenses of such Professional.

4. <u>Post-Effective Date Professional Fees and Expenses</u>

Except as otherwise specifically provided in this Combined Disclosure Statement and Plan, from and after the Effective Date, subject only to the terms of the Combined Disclosure Statement

and Plan and the Liquidation Trust Agreement, the Liquidation Trustee may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.  Any such funding for Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets.

**E.      Adequate Protection Claims**

On the Effective Date, any Adequate Protection Claims shall be deemed to be waived and released.

**F.      Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Liquidation Trustee, payment in full in Cash from the Claims Reserve on the Effective Date, or treatment otherwise consistent with section 1129(a)(9) of the Bankruptcy Code, unless the Holder of such Claim and the applicable Debtor or the Liquidation Trustee, as applicable, agree to a less favorable different treatment.

Notwithstanding the foregoing, a Holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.  Any such Claims or demands for any such penalty shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Combined Disclosure Statement and Plan, if not subordinated to General Unsecured Claims pursuant to an order of the Bankruptcy Court.  The Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidation Trustee, the Liquidation Trust or their respective property (other than as a Holder of a General Unsecured Claim and treated in accordance with Article IV of the Combined Disclosure Statement and Plan).

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.      Classification of Claims and Interests**

Except for the Claims addressed in Article III hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest fits within the description of that Class and is classified in other Class(es) to the extent that any portion of the Claim or Interest fits within the description of such other Class(es).  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  Holders of Allowed Claims against more than one Debtor shall be treated as having a single Allowed Claim solely for purposes of any distribution.

20

The classification of Claims and Interests against the Debtors pursuant to the Combined Disclosure Statement and Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Senior Priority Lien Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Equipment Financing Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Equity Interests | Impaired | Not Entitled to Vote (Presumed to Reject) |

## B.    Treatment of Claims and Interests

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Combined Disclosure Statement and Plan the treatment described below, and such Claims and Interests shall, for the avoidance of doubt, be subject to the injunction contained in Article IX.E. of this Combined Disclosure Statement and Plan, except to the extent different treatment is agreed to by the Debtors or the Liquidation Trustee, as applicable, on the one hand, and the Holder of such Allowed Claim or Allowed Interest, on the other hand.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is considered Disallowed and shall be expunged without further action by the Debtors or the Liquidation Trustee, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.    Class 1 – Senior Priority Lien Claims

a.    *Classification:* Class 1 consists of all Senior Priority Lien Claims.

b.    *Treatment:* To the extent there are any Allowed Senior Priority Lien Claims, unless the Holder of such Claim and the applicable Debtor or the Liquidation Trustee, as applicable, agree to a different treatment, on the Effective Date, or as soon as practicable thereafter, each Holder of an

21

Allowed Senior Priority Lien Claim (if any) shall receive, at the option of the applicable Debtor or the Liquidation Trustee:

(i) payment in full in Cash from the Claims Reserve of its Allowed Senior Priority Lien Claim;

(ii) the collateral securing its Allowed Senior Priority Lien Claim; or

(iii) such other treatment that renders its Allowed Senior Priority Lien Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

c. *Voting:* Class 1 is Unimpaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

2. Class 2 – Other Priority Claims

a. *Classification:* Class 2 consists of all Other Priority Claims.

b. *Treatment:* Each Holder of an Allowed Other Priority Claim shall receive, at the option of the Debtors or the Liquidation Trustee, payment in full in Cash from the Claims Reserve on the Effective Date, or treatment otherwise consistent with section 1129(a)(9) of the Bankruptcy Code, unless the Holder of such Claim and the applicable Debtor or the Liquidation Trustee, as applicable, agree to a less favorable different treatment.

c. *Voting:* Class 2 is Unimpaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

3. Class 3 – Term Loan Claims

a. *Classification:* Class 3 consists of all Term Loan Claims.

b. *Allowance:* The Term Loan Claims shall be Allowed in an amount equal to such amount as agreed upon by the Term Loan Agent, the Debtors, and the Committee, pursuant to the Term Loan Settlement (subject to any necessary approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019, which may be effectuated, for the avoidance of doubt, pursuant to the Confirmation Order).

c. *Treatment:* In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less

22

favorable treatment), each Holder of an Allowed Term Loan Claim shall receive on or before the Effective Date or as soon as reasonably practicable thereafter (i) the Term Loan Settlement Amount, and (ii) Series A Liquidation Trust Interests.

d.    *Voting:* Class 3 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4.    <u>Class 4 – Equipment Financing Agreement Claims</u>

a.    *Classification:* Class 4 consists of all Equipment Financing Agreement Claims.

b.    *Allowance:* The Equipment Financing Agreement Claims shall be Allowed in an amount equal to: (i) $963,921 in principal with respect to NFS Financing Agreement Claims and (ii) $1,411,106 in principal with respect to VFS Financing Agreement Claims; plus in each case, any accrued interest on such Claim and any other reasonable fees, costs, or charges as may be agreed to by the Debtors or Allowed by a Final Order of the Bankruptcy Court pursuant to section 506(b) of the Bankruptcy Code.

c.    *Treatment:* In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed Equipment Financing Agreement Claim shall receive on the Effective Date or as soon as reasonably practicable thereafter: (i) Cash in an amount equal to such Holder's applicable Equipment Financing Agreement Collateral Proceeds, and (ii) solely to the extent the amount of such Holder's Allowed Equipment Financing Agreement Claims as of the Petition Date exceeds the applicable Equipment Financing Agreement Collateral Proceeds (such claims "***Equipment Financing Agreement Deficiency Claims***"), such Holder's *Pro Rata* share of Series B Liquidation Trust Interests.

d.    *Voting:* Class 4 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

5.    <u>Class 5 – General Unsecured Claims</u>

a.    *Classification:* Class 5 consists of all General Unsecured Claims.

b.    *Treatment:* Each Holder of an Allowed General Unsecured Claim shall receive on the Effective Date or as soon as reasonably practicable thereafter its *Pro Rata* share of the Series B Liquidation Trust Interests.

23

c.      *Voting:* Class 5 is Impaired under the Combined Disclosure Statement and Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

6.      Class 6 – Intercompany Claims

a.      *Classification:* Class 6 consists of all Intercompany Claims.

b.      *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, Allowed Intercompany Claims, shall, at the election of the Liquidation Trustee, and subject to the orders of the CCAA Court in the Canadian Proceedings, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Liquidation Trustee without any distribution, in each case in accordance with the Liquidation Trust Agreement. For the avoidance of doubt, no Intercompany Claim shall be entitled to vote or to receive a distribution under this Combined Disclosure Statement and Plan.  For the avoidance of doubt, no Holder of an Intercompany Claim shall become a beneficiary of the Liquidation Trust.

c.      *Voting:* Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Combined Plan and Disclosure Statement pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Combined Disclosure Statement.

7.      Class 7 – Subordinated Claims

a.      *Classification:* Class 7 consists of all Subordinated Claims.

b.      *Treatment:* Holders of Subordinated Claims shall not receive any distribution on account of such Subordinated Claims.  On the Effective Date, all Subordinated Claims shall be discharged, cancelled, released, and extinguished as of the Effective Date, and shall be of no further force or effect.

c.      *Voting:* Class 7 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 7 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

8.      Class 8 – Intercompany Interests

a.      *Classification:* Class 8 consists of all Intercompany Interests.

24

b. *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, Allowed Intercompany Interests shall, at the election of the Liquidation Trustee, and subject to the orders of the CCAA Court in the Canadian Proceedings, be (a) Reinstated, (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Liquidation Trustee, without any distribution, in each case in accordance with the Liquidation Trust Agreement. For the avoidance of doubt, no Holder of an Intercompany Interest shall become a beneficiary of the Liquidation Trust.

c. *Voting:* Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Interests are conclusively presumed to have accepted the Combined Disclosure Statement and Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

9. <u>Class 9 – Equity Interests</u>

a. *Classification:* Class 9 consists of Equity Interests.

b. *Treatment:* Holders of Equity Interests will not receive any distribution or property, on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

c. *Voting:* Class 9 is conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 9 is not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

## C. **Special Provision Governing Unimpaired Claims**

Except as otherwise provided herein, nothing under the Combined Disclosure Statement and Plan shall affect the Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## D. **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Combined Disclosure Statement and Plan for purposes of voting to accept or reject the Combined Disclosure Statement and Plan and for purposes of determining acceptance or rejection of the Combined Disclosure Statement and Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.**     **Voting Classes, Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Combined Disclosure Statement and Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Combined Disclosure Statement and Plan.

**F.**     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**G.**     **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Combined Disclosure Statement and Plan by one or more of the Classes entitled to vote pursuant to Article IV.B herein. The Debtors shall seek Confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Combined Disclosure Statement and Plan in accordance with Article XI herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**H.**     **Subordinated Claims**

Except as described in the Combined Disclosure Statement and Plan, the allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Combined Disclosure Statement and Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidation Trustee, as applicable, reserve the right to reclassify any Claim or Interest, upon notice and a hearing and pursuant to a Final Order of the Bankruptcy Court, in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION**
**OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.**     **Asset Sales and Abandonment of Other Assets**

As described above, during the Chapter 11 Cases the Debtors have sold various of their Assets pursuant to the Bidding Procedures Order. The Debtors have also sought to abandon certain Assets in connection with the rejection of executory contracts and unexpired leases pursuant to the

26

Rejection Procedures. Unless otherwise specified in this Combined Disclosure Statement and Plan, all Assets not sold pursuant to the Sales Process or abandoned pursuant to the Rejection Procedures Order (other than the Non-Contributed Assets) will be contributed to the Liquidation Trust as part of the Liquidation Trust Assets pursuant to this Combined Disclosure Statement and Plan.

The Combined Disclosure Statement and Plan shall constitute a motion to abandon the Non-Contributed Assets. The Confirmation Order shall constitute: (i) an authorization of the Bankruptcy Court to abandon the Non-Contributed Assets under section 554 of the Bankruptcy Code and (ii) an order of abandonment of the Non-Contributed Assets as of the Effective Date. The Non-Contributed Assets shall not be contributed to the Liquidation Trust, and the Liquidation Trust shall have no ownership interest in the Non-Contributed Assets.

## B.        General Settlement of Claims and Interests

On July 28, 2026, following arms'-length, good faith negotiations, the UCC Settlement Parties agreed to the terms of the UCC Settlement. The terms of the UCC Settlement are incorporated into the Combined Disclosure Statement and Plan and include, among other things, the Minimum Trust Funding, the funding of the Claims Reserve, the continued cooperation of the Specified Released Parties, a standstill by the Committee on any potential disputes, and the Committee's agreement to support confirmation of the Combined Disclosure Statement and Plan.

On July 24, 2026, following arms'-length good faith negotiations, the Term Loan Settlement Parties agreed to the terms of the Term Loan Settlement and agreed to the Term Loan Settlement Term Sheet. The terms of the Term Loan Settlement are incorporated into the Combined Disclosure Statement and Plan and include, among other things, the payment of the principal and accrued interest under the Term Loan Debt, the release of the remaining funds from the Adequate Protection Account, the receipt of Series A Liquidation Trust Interests and Cash distributions in satisfaction of the remaining Term Loan Claims, and the Term Loan Secured Parties' agreement to support confirmation of the Combined Disclosure Statement and Plan.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Combined Disclosure Statement and Plan, upon the Effective Date, the provisions of the Combined Disclosure Statement and Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and controversies that were, or could have been asserted in connection with the Debtors and the Chapter 11 Cases, except for those expressly preserved by the Combined Disclosure Statement and Plan and the Retained Causes of Action, which are being contributed to the Liquidation Trust.

The Combined Disclosure Statement and Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, issues, disputes and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to the provisions herein, all distributions made to Holders of

27

Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

**C.      Professional Claim Escrow Account**

The Professional Claim Reserve Amount shall be held in trust in a segregated Professional Fee Escrow Account for distributions or payment in accordance with the terms of Article III of the Combined Disclosure Statement and Plan.  Any Cash held in the Professional Fee Escrow Account after all applicable distributions and/or payments are made shall be promptly transferred to the Liquidation Trust without any further action or order of the Bankruptcy Court.

**D.      Claims Reserve**

The Claims Reserve shall be held in trust in a segregated account by the Liquidation Trustee for distributions and/or payment in accordance with the terms herein. Any Cash held in the Claims Reserve after all applicable distributions and/or payments are made shall promptly be transferred to the Liquidation Trust without any further action or order of the Bankruptcy Court.

**E.      Corporate Existence and Dissolution Transactions**

On or after the Effective Date, each of the Debtors will be subject to a Dissolution Transaction.  The equity or membership interests of each Debtor entity that is not subject to a Dissolution Transaction on the Effective Date will vest in the Liquidation Trust pursuant to this Combined Disclosure Statement and Plan.  For the avoidance of doubt, the Debtor entities that are not subject to a Dissolution Transaction on the Effective Date will continue to exist after the Effective Date for the limited purpose of completing the Wind Down.  Promptly after completing the Wind Down, such entities shall be dissolved by the Liquidation Trustee.

The actions to effect the Dissolution Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Combined Disclosure Statement and Plan and that satisfy the requirements of applicable law, as well as other terms to which these entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Combined Disclosure Statement and Plan and having such other terms as these entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation, continuance, or dissolution or similar instruments with the applicable governmental authorities; and (iv) the taking of all other actions that the Liquidation Trustee determines to be reasonably necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Dissolution Transactions.

**F.      Recourse Solely to Liquidation Trust Assets**

All Claims against and Interests in the Debtors are deemed satisfied, waived and released as to the Debtors in exchange for the treatment of such Claims under the Combined Disclosure Statement and Plan, and Holders of Allowed Claims and Allowed Interests against any Debtor will have recourse solely to the assets of the Liquidation Trust for the payment of their Allowed Claims

and Allowed Interests in accordance with the terms of the Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

## G.     **Liquidation Trust**

### 1.     Liquidation Trust Generally

On or prior to the Effective Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all distributions to holders of Allowed Claims in accordance with the terms of this Combined Disclosure Statement and Plan and otherwise implementing this Combined Disclosure Statement and Plan. The Liquidation Trust will be overseen by the Liquidation Trust Oversight Board.

The Liquidation Trust shall be administered by the Liquidation Trustee and governed by the Liquidation Trust Agreement, and the Liquidation Trustee shall have the sole power and authority to distribute the proceeds of the Liquidation Trust Assets to Liquidation Trust Beneficiaries in accordance with the treatment set forth in Article IV.B of the Combined Disclosure Statement and Plan and the terms and conditions of the Liquidation Trust Agreement. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4) of the Tax Code. The Liquidation Trust, acting through the Liquidation Trustee, shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Liquidation Trust Assets (including the Retained Causes of Action). The Liquidation Trust, acting through the Liquidation Trustee, shall be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code for all purposes in these Chapter 11 Cases. The Confirmation Order shall contain a finding that the Liquidation Trust has standing to pursue any claim or Cause of Action that is not released pursuant to Article IX.B and Article IX.C hereof, including any Retained Causes of Action, on behalf of the Debtors and the Estates.

Upon the Effective Date, the Debtors shall share all communications or documents that are subject to the attorney-client privilege, work product protection, or other applicable privilege with the Liquidation Trust. The sharing of such information shall not operate as a waiver of any applicable privileges. Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition documents or communications relating to such Retained Causes of Action shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust's receipt of such privileges, including those associated with the Retained Causes of Action,  shall not operate as a waiver of those privileges possessed or retained by any Debtor, nor shall it operate to eliminate the rights of any codefendant to any applicable joint privilege. The Liquidation Trust shall also be vested with each Debtor's rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004. The Liquidation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of any Debtor other than expressly provided for by this Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such

persons shall be deemed to have resigned, solely in their capacities as such, and the Liquidation Trustee shall be appointed by each Debtor as the sole director and the sole officer of the Debtors and their non-Debtor subsidiaries, and shall succeed to the powers of such Debtor's directors and officers.

Notwithstanding anything to the contrary herein, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

2.      Funding of and Transfer of Assets into the Liquidation Trust

Except as otherwise provided in the Combined Disclosure Statement and Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Combined Disclosure Statement and Plan or in the Confirmation Order, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Liquidation Trust Assets, including the Minimum Trust Funding, shall immediately, automatically, and irrevocably vest in the Liquidation Trust free and clear of all Claims, Liens, Interests, encumbrances, charges, and other interests, other than the Canadian Charges. All Claims, Liens, Interests, encumbrances, charges, and other interests (other than the Canadian Charges) shall be deemed fully released as of the Effective Date, except as otherwise provided in the Combined Disclosure Statement and Plan or the Confirmation Order.  The Canadian Charges shall be deemed fully released as of the date the Canadian Proceedings are terminated.  After the Effective Date, neither the Debtors nor any other party shall have any interest in the Liquidation Trust Assets except as expressly set forth herein.

In addition to the Liquidation Trust Assets otherwise vesting in the Liquidation Trust pursuant to this Article V.F.2, pursuant to the Committee Settlement, on the Effective Date, the Debtors shall fund the Liquidation Trust with no less than $550,000 in Cash and shall transfer to the Liquidation Trust the Retained Causes of Action against the Non-Released Parties, in each case for the benefit of the Liquidation Trust Beneficiaries.

3.      Liquidation Trustee, Liquidation Trust Oversight Board, and Liquidation Trust Agreement

The Liquidation Trustee shall be selected by the Committee.  The Liquidation Trustee shall be the successor to and representative of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidation Trust Oversight Board shall be a four-member body with membership appointed by the Committee, one member of which will be the Term Loan Agent.  The Liquidation Trust Oversight Board shall, as and when requested by the Liquidation Trustee, or as is otherwise required under the Combined Disclosure Statement and Plan, the Confirmation Order, or the Liquidation Trust Agreement, consult with and advise the Liquidation Trustee as to the administration and management of the Liquidation Trust in accordance with the terms of this Combined Disclosure Statement and Plan, the Confirmation Order, and/or the Liquidation Trust Agreement. The Liquidation Trust Oversight Board shall be appointed on the Effective Date and, in the event of the resignation of a member of the Liquidation Trust Oversight Board, a replacement may be appointed in accordance with the Liquidation Trust

30

Agreement; provided, that unless and until any such vacancy is filled, the Liquidation Trust Oversight Board shall function with such reduced membership.  The powers, rights and responsibilities of the Liquidation Trustee and the Liquidation Trust Oversight Board, respectively, shall be specified in the Liquidation Trust Agreement.

The Liquidation Trustee, with the consent of the Liquidation Trust Oversight Board, shall have the responsibility for establishing an allocation for apportioning Liquidation Trust Assets allocated for distribution to Holders of Claims against the applicable Debtor, except as set forth in the Liquidation Trust Agreement (the "*Liquidation Trust Assets Allocation*").  Upon approval by the Liquidation Trust Oversight Board, the Liquidation Trust Assets Allocation shall be deemed to be conclusive regarding the maximum amount of Liquidation Trust Assets Allocation available for distribution to Holders of Claims against each respective Debtor.  If the Liquidation Trust Oversight Board does not approve the Liquidation Trust Assets Allocation, the Liquidation Trustee may seek approval of the Liquidation Trust Assets Allocation by the Bankruptcy Court, and such Liquidation Trust Assets Allocation will be deemed conclusive upon entry of a Final Order by the Bankruptcy Court approving the proposed allocation.

4. <u>Fees and Expenses of the Liquidation Trust</u>

The Liquidation Trust Expenses shall be paid after the Effective Date pursuant to the terms and conditions of the Liquidation Trust Agreement. The Liquidation Trustee, on behalf of the Liquidation Trust, may, without further notice to the Bankruptcy Court, Liquidation Trust Beneficiaries, or any other Person or Entity, or any further order of the Bankruptcy Court: (a) retain and rely upon advice of counsel, (b) retain counsel on a contingent basis to pursue Retained Causes of Action and/or (c) to obtain litigation financing or similar financing in the name of, and on behalf of, the Liquidation Trust, as may be necessary or appropriate, including, without limitation, to facilitate the pursuit by the Liquidation Trustee and/or Liquidation Trust of the Retained Causes of Action or otherwise to liquidate or monetize the Liquidation Trust Assets, which financing shall be subject to approval by the Liquidation Trust Oversight Board.

The Liquidation Trustee and all professionals retained by the Liquidation Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Debtors. The Liquidation Trustee may obtain, at the expense of the Liquidation Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors. The Liquidation Trustee may rely upon written information previously generated by the Debtors.  The Liquidation Trustee shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.

5. <u>Indemnification</u>

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee, the Liquidation Trust Oversight Board and its members, and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

31

6.     Tax Treatment

Except to the extent that all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9, the Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation § 301.7701-4(d).

For U.S. federal income tax purposes, the Liquidation Trust shall be treated as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code and the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and the owners of the Liquidation Trust Assets. Accordingly, for U.S. federal income tax purposes, all parties shall treat the transfer of Liquidation Trust Assets (subject to any liabilities) by the Debtors to the Liquidation Trust as the transfer of the Liquidation Trust Assets (subject to any liabilities) by the Debtors to the Liquidation Trust Beneficiaries, followed by the transfer of the Liquidation Trust Assets (subject to any liabilities) by such Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for their *Pro Rata* share of the Liquidation Trust Interests. The Liquidation Trust Beneficiaries will be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets (subject to such liabilities), depending on their rights to distributions under the Combined Disclosure Statement and Plan. As grantors and deemed owners of such transferred Liquidation Trust Assets, the Liquidation Trust Beneficiaries will be required to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such transferred Liquidation Trust Assets. The Liquidation Trust Agreement shall require that the Liquidation Trust terminate no later than five (5) years after the Effective Date; *provided*, *however*, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its liquidating purpose, the term of the Liquidation Trust may be extended one or more times for a finite period pursuant to the terms of the Liquidation Trust Agreement (which such extension shall require such approval of the Bankruptcy Court within six months of the beginning of the extended term).

As soon as practicable after the Effective Date, the Liquidation Trustee shall make (or shall cause to be made) a good faith valuation of the Liquidation Trust Assets. All parties (including, but not limited to, the Debtors, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) will be required to use the values assigned to such Liquidation Trust Assets by the Liquidation Trustee for all U.S. federal income tax purposes. The Liquidation Trustee shall be responsible for filing all tax returns, including, but not limited to, any documentation related thereto, for the Liquidation Trust. The Liquidation Trustee shall file all tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and in accordance with the Combined Disclosure Statement and Plan. Within a reasonable time following the end of the taxable year, the Liquidation Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit and each such holder shall report such items on their U.S. federal income tax returns. The Liquidation Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Liquidation Trust with respect to each holder of a Liquidation Trust Interest to the extent required by the Tax Code and applicable law. A holder of a Liquidation Trust Interest may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidation Trust's income even if the Liquidation Trust does not make a concurrent distribution to such holder.

32

To the extent all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 (each of which will be taxable as a qualified settlement fund if all of the assets are passive investment assets for U.S. federal income tax purposes), any appropriate elections with respect thereto shall be made, and such treatment will also be applied to the extent possible for state and local tax purposes. The Liquidation Trustee will be responsible for payment of any taxes imposed on a disputed ownership fund. Accordingly, distributions from a disputed ownership fund will be net of any taxes relating to the retention, disposition and distribution of assets in such disputed ownership fund. In the event, and to the extent, any cash of a disputed ownership fund is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such disputed ownership fund (including any income that may arise upon the distribution of the assets in such disputed ownership fund), assets of such disputed ownership fund may be sold to pay such taxes.

7.      Settlement of Claims

Except as otherwise provided in this Combined Disclosure Statement and Plan or the Liquidation Trust Agreement, on and after the Effective Date, the Liquidation Trustee may compromise or settle any Claims (including Claims between Debtor entities) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and may pay the charges that it incurs on or after the Effective Date for Liquidation Trust Expenses without application to the Bankruptcy Court.

8.      Sales of Assets by the Liquidation Trust

The Liquidation Trustee may conduct any sales or liquidations of non-Cash Liquidation Trust Assets on any terms it deems reasonable, without further order of the Bankruptcy Court. Upon the sale, liquidation, transfer or other disposition of the Liquidation Trust Assets by the Liquidation Trustee, the Liquidation Trustee shall deposit the proceeds of all such sales, liquidations, transfers or dispositions into one or more of the Liquidation Trust accounts.

9.      Abandonment of Assets by Liquidation Trust

The Liquidation Trustee may abandon any Liquidation Trust Assets which the Liquidation Trustee determines in his or her reasonable discretion to be of de minimis value or burdensome to the Liquidation Trust, including any pending adversary proceeding or other legal action commenced or capable of being commenced by the Debtors prior to the Effective Date.

10.     Cooperation of the Debtors

Prior to the Effective Date, the Debtors shall, at the cost and expense of the Debtors, and on or after the Effective Date, the Debtors shall, at the sole cost and expense of the Liquidation Trust (which shall, in each case, constitute Liquidation Trust Fees and Expenses hereunder), use commercially reasonable efforts to preserve (including through device imaging) and provide to the

33

Liquidation Trust the following: (a) all documents,[9] communications,[10] and other information (or copies thereof) (collectively, "*Information*") provided to (i) Debevoise in connection with the Investigation and (ii) to Goodwin Procter LLP in connection with the special committee's investigation of the Debtors' compliance practices, as well as complete and unredacted versions of the reports prepared by the Investigation Subcommittee, the special committee, and/or their counsel (which unredacted reports may be provided to the Liquidation Trustee and the members of the Liquidation Trust Oversight Board on a confidential basis), (b) all Information produced, or that are otherwise ready to be produced, by the Debtors in discovery in the Chapter 11 Cases, and (c) such other Information relating to the Retained Causes of Action in the possession, custody and control of the Debtors that the Debtors and the Liquidation Trust may agree upon after conferring in good faith; provided that the Debtors shall preserve all Information subject to existing litigation holds, which shall remain in effect; provided, further, that, notwithstanding anything to the contrary herein, the Debtors shall not be required to (i) incur any liability for any fees or expenses (including any indemnification obligations) that may result from any such preservation or production and any documented costs and expenses incurred by the Debtors in connection therewith shall be borne or promptly reimbursed by Liquidation Trust (which shall, in each case, constitute Liquidation Trust Expenses hereunder), or (ii) take any actions in connection with any of the Debtor's cooperation obligations hereunder that the Debtors reasonably determine would harm the merits of, create defenses to, or otherwise prejudice the Liquidation Trust Assets, including the Retained Causes of Action, following good-faith consultation and coordination between the Debtors and the Liquidation Trustee or subject to any further court order requiring production.

---

[9]  For the avoidance of doubt, for the purposes of this Article V, "documents" shall include any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, in draft or final form, including, but not limited to: any letter, correspondence, or Communication of any sort; photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, Bloomberg messages, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper, or draft; computer or computer network output or input, portable storage devices, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias on the cloud or otherwise, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, or press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, register, canceled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, or tabulation, and any and all other writings and recordings of whatever nature, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writing" or "recording" set forth in Rule 1001 of the Federal Rules of Evidence. Any document with any marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

[10]  For the avoidance doubt, for purposes of this Article V, "communications" shall include any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more Persons, by or to whomsoever made, and including without limitation, correspondence, documents, conversations, dialogues, discussions, e-mail, interviews, text messages, consultations, agreements, and other understandings.

Subject to Article X.A, to the extent the Liquidation Trust receives information from the Debtors in connection with the Liquidation Trust Assets, including the Retained Causes of Action, the Liquidation Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege.

Notwithstanding anything herein, the Debtors shall transfer all Information to the Liquidation Trust on the Effective Date.

11.     Cooperation of the Specified Released Parties

In exchange for the Debtor Releases provided by Article IX.B of this Combined Disclosure Statement and Plan, as of the Effective Date, the Specified Released Parties shall, on reasonable advance notice from the Liquidation Trustee, reasonably cooperate with, support, and not obstruct the Liquidation Trustee in carrying out its obligations hereunder and in the Liquidation Trust Agreement, including the prosecution of Retained Causes of Action (the "***Cooperation Covenant***"); *provided*, the Liquidation Trustee shall work with the Specified Released Parties in good faith to (i) minimize any interference with any personal and professional commitments or engagements of the Specified Released Parties, and (ii) minimize any expense to the Specified Released Parties on account of the Cooperation Covenant.  For the avoidance of doubt, the Cooperation Covenant shall require the Specified Released Parties to reasonably support the Liquidation Trustee in the investigation and prosecution of the Retained Causes of Action, including by (i) providing general background knowledge about the Debtors (including their business operations, personnel, and historic transactions) and the contents of their books and records, to the extent such Specified Released Party has knowledge of such information as a result of his prior service to the Debtors, (ii) helping to identify and obtain access to documents, repositories, systems, and other information relevant to the Retained Causes of Action, in each case, about which the Specified Released Party has knowledge as a result of his prior service to the Debtors; (iii) participating in preparation for and the provision of witness testimony. The Cooperation Covenant shall remain in effect for a period of two years following the Effective Date; provided that, if the Liquidation Trustee asserts claims on the basis of the Retained Causes of Action within two years following the Effective Date, the Specified Released Parties' obligations under the Cooperation Covenant shall continue with respect to such claims until those claims are fully and finally resolved through a final, non-appealable judgment or a binding settlement agreement.  If any Specified Released Party incurs necessary, reasonable, and documented out-of-pocket travel expenses in the course of providing the assistance and cooperation contemplated by the Cooperation Covenant, then, upon submission of substantiating documentation to the Liquidation Trustee, the Liquidation Trustee shall reimburse such Specified Released Party for such necessary, reasonable and documented expenses incurred by him as a result of providing such assistance or cooperation, *further*, if any Specified Released Party incurs documented out-of-pocket, non-professional expenses unrelated to travel (e.g., printing, courier, or notary charges) in the course of providing the assistance and cooperation contemplated by the Cooperation Covenant, then upon submission of substantiating documentation to the Liquidation Trustee, the Liquidation Trustee shall reimburse such Specified Released Party for such documented expenses if, in good faith, the Liquidation Trustee determines such documented expenses to have been reasonable and necessary for such Specified Released Party to provide the assistance and cooperation contemplated by the Cooperation Covenant.

**H.** **Cancellation of Existing Securities and Agreements**

On the Effective Date, except to the extent otherwise provided in the Combined Disclosure Statement and Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests, and any Equity Interests that are not represented by certificates or other instruments shall be cancelled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be of no force or effect against the Debtors or the Liquidation Trust, without any further action on the part of the Debtors, the Liquidation Trust, or any other party. Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Combined Disclosure Statement and Plan.

Notwithstanding anything to the contrary in this Article V, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, a Debtor or its Interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Article V shall be deemed null and void and shall be of no force and effect.

**I.** **Release of Liens**

Except as otherwise provided in the Combined Disclosure Statement and Plan, any order of the CCAA Court with respect to the Canadian Charges, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Combined Disclosure Statement and Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Articles III and IV, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or Interests in property of any Estate shall be deemed fully released and discharged.

**J.** **Corporate Governance, Directors, and Officers**

1. <u>Certificates of Formation and Bylaws</u>

[Reserved].

2. <u>Directors and Officers</u>

As of the Effective Date, the term of the current members of the board of directors, or board of managers, as applicable, of each of the Debtors shall expire automatically and each person serving as a director, manager, or officer of the Debtors shall be removed and shall automatically be deemed to have resigned and cease to serve. Consistent with Section V.F.1 herein, as of the Effective Date, the Liquidation Trustee shall automatically be appointed as the sole director and the sole officer of the Debtors and their non-Debtor subsidiaries, and shall succeed to the powers of such Debtor's directors and officers.

**K.    Director and Officer Liability Insurance**

The Debtors (i) have made arrangements to continue the Debtors' current fiduciary liability policy through the purchase of the D&O Tail Coverage, for the six-year period from and after the Effective Date, for the benefit of any person who is serving or has served as one of the Debtors' directors, officers, managers, or employees at any time prior to the Effective Date, and (ii) have fully paid the premium for such insurance. Any and all directors and officers liability insurance and fiduciary liability insurance (including all D&O Liability Insurance Policies) in existence as of the Effective Date shall be continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by, or otherwise transferred to, the Liquidation Trust pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the foregoing deemed assumption and transfer of such insurance in existence as of the Effective Date. All directors, officers, managers, or employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies, to the extent set forth therein, regardless of whether such directors, officers, managers, or employees remain in such positions after the Effective Date.

**L.    Preservation of Causes of Action**

Except as provided herein or in any contract, instrument, release or other agreement entered into or delivered in connection with this Combined Disclosure Statement and Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust will retain and may enforce, as successors to the Debtors, any claims, demands, rights and Causes of Action that any Estate may hold against any Person to the extent not satisfied, settled, and released under this Combined Disclosure Statement and Plan or otherwise, including the Retained Causes of Action. The Liquidation Trustee, on behalf of the Liquidation Trust, shall have standing and authority to pursue any such retained claims, demands, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Liquidation Trust Beneficiaries. Except as otherwise provided herein, in accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Debtors or Estates may hold against any Person. The Debtors intend to preserve all such claims, demands, rights, or causes of action as Retained Causes of Action (except as otherwise provided herein or to the extent any such claim is specifically satisfied, settled, and released herein).

**M.    Substitution in Pending Legal Actions**

On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including (i) pending contested matters or adversary proceedings in the Bankruptcy Court, (ii) any appeals of orders of the Bankruptcy Court, (iii) any state court or federal or state administrative proceedings pending as of the Petition Date, and (iv) any arbitration proceedings pending as of the Petition Date. The Liquidation Trustee and its professionals are not required to, but may take such steps as are appropriate to provide notice of such substitution.

37

**N.** **Effectuating Documents; Further Transactions**

The Debtors (prior to the Effective Date) and the Liquidation Trustee, on behalf of the Liquidation Trust (following the Effective Date), are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and evidence the terms and conditions of this Combined Disclosure Statement and Plan and the Dissolution Transactions, in each case, in the name of and on behalf of any Debtor or the Liquidation Trust, as applicable, without the need for any approvals, authorization or consents except those expressly required pursuant to this Combined Disclosure Statement and Plan.

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording Tax, stamp Tax, conveyance fee, intangibles or similar Tax, real estate transfer Tax, sale or use Tax, mortgage recording Tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar Tax: (a) any transfer made by the Debtors to the Liquidation Trust; (b) any sales made by the Liquidation Trust to liquidate such assets in the trust and convert such assets into Cash; (c) any sales of assets made by the Debtors under section 363 of the Bankruptcy Code, to the extent that title to the assets being sold transfers pursuant to the Combined Disclosure Statement and Plan after the Confirmation Date; (d) the making or assignment of any lease or sublease; (e) any Dissolution Transactions; or (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Combined Disclosure Statement and Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to the Combined Disclosure Statement and Plan.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** **Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the Combined Disclosure Statement and Plan shall serve as a motion under sections 365 and 1123(b)(2) of the Bankruptcy Code to reject all Executory Contracts and Unexpired Leases, other than the Retained Executory Contracts and Unexpired Leases, and all Executory Contracts and Unexpired Leases shall be rejected as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court, except for any Executory Contract or Unexpired Lease: (1) that has been assumed by the Debtors and assigned to any Purchaser in connection with a 363 Asset Sale; (2) that has been previously rejected or assumed by a Final Order; (3) that is the subject of a separate motion or notice pursuant to the Rejection Procedures to assume or reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) that is subject to a motion or notice pursuant to the Rejection Procedures to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; (5) that is a Retained Executory Contract or Unexpired Lease or (6) that has previously expired or terminated pursuant to its own terms or by agreement of the parties thereto.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's order approving the rejection of Executory Contracts or Unexpired Leases as set forth herein pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, the rejection of Executory Contracts and Unexpired Leases pursuant to the Combined Disclosure Statement and Plan is effective as of the Effective Date. Any motions to reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date.

**B.** **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Combined Disclosure Statement and Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court in accordance with the Bar Date Order by the Rejection Damages Bar Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, or the Liquidation Trust, or any of their respective properties without the need for any objection by the Liquidation Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of this Combined Disclosure Statement and Plan.

**C.** **Insurance Contracts**

On the Effective Date, the Debtors' rights under and to each Insurance Contract shall automatically vest in the Liquidation Trust as of the Effective Date without necessity for further approvals or orders. Confirmation and consummation of this Combined Disclosure Statement and Plan, and the vesting of the Insurance Contracts in the Liquidation Trust as set forth herein, shall not impair or otherwise affect (x) any party's rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, including any claims pursued or made by the Liquidation Trustee on behalf of the Liquidation Trust, or (y) any available defenses of the Debtors or the Liquidation Trust or any insurer under the Insurance Contracts.

To the extent that any Insurance Contracts are deemed Executory Contracts or Unexpired Leases, unless such Insurance Contracts have been rejected pursuant to an Order of the Bankruptcy Court, notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan: (a) from and after the Effective Date, all Insurance Contracts will be assumed by, and transferred to, the Liquidation Trust pursuant to section 365 of the Bankruptcy Code or continued in accordance with their terms, such that each of the parties' contractual, legal and equitable rights under each Insurance Contract shall remain unaltered; (b) the parties to each Insurance Contract will continue to be bound by such Insurance Contract as if the Chapter 11 Cases had not occurred; (c) nothing in the Combined Disclosure Statement and Plan shall affect, impair or prejudice the rights and defenses of the insurers or the Liquidation Trustee, on behalf of the Liquidation Trust,

39

under the Insurance Contracts in any manner, and such insurers and the Liquidation Trustee, on behalf of the Liquidation Trust, shall retain all rights and defenses under the Insurance Contracts, and the Insurance Contracts shall apply to, and be enforceable by and against, the Liquidation Trustee, on behalf of the Liquidation Trust, and the applicable insurer(s) as if the Chapter 11 Cases had not occurred; (d) nothing in the Combined Disclosure Statement and Plan shall in any way operate to, or have the effect of, impairing any party's legal, equitable or contractual rights, obligations and/or claims under any Insurance Contract, if any, in any respect, and any such rights and obligations shall be determined under the Insurance Contracts, any agreement of the parties and applicable law; and (e) to the extent any Insurance Contracts provide for a self-insured retention on the part of any Debtor or its Estate, such self-insured retention shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of this Combined Disclosure Statement and Plan.

### D.     Reservation of Rights

Nothing contained in the Combined Disclosure Statement and Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidation Trustee or Liquidation Trust has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidation Trustee, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### E.     Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts or Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### F.     Contracts and Leases Entered into After the Petition Date

All of the Debtors' rights and obligations under any 363 Asset Purchase Agreement or any transaction documents related to any 363 Asset Sale shall be assigned to and vest in the Liquidation Trust.

Unless otherwise provided herein, contracts and leases entered into or assumed by the Debtors after the Petition Date that are not assigned to any Purchaser or the Liquidation Trust shall be considered repudiated by the Debtors as of the Effective Date, and the counterparties to such contracts, if they believe that such repudiation constitutes a breach of such contract or lease, must File a Claim within 30 days of the Effective Date in accordance with this Combined Disclosure Statement and Plan or have their rights forever satisfied, settled, released, and discharged.

40

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Distributions for Claims Allowed as of the Effective Date**

Unless otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, including any portion of a Claim that is an Allowed Claim notwithstanding that other portions of such Claim are a Disputed Claim, shall receive the full amount of the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth herein.  Holders of Claims shall not be entitled to postpetition interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered before, on or at any time after the Effective Date.  Notwithstanding the foregoing, all distributions to holders of Liquidation Trust Interests shall be made by the Liquidation Trustee pursuant to the terms of the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidation Trust Agreement.

**B.      Entitlement to Distributions**

On and after the Effective Date, the Disbursing Agent shall be authorized to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date. Accordingly, the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of such Claims (or participants therein) as of the close of business on the Distribution Record Date.

**C.      Disbursing Agent**

All distributions under the Combined Disclosure Statement and Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust.

**D.      Rights and Powers of Disbursing Agent**

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Combined

41

Disclosure Statement and Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Combined Disclosure Statement and Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Combined Disclosure Statement and Plan.

2.       Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including Taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Liquidation Trustee.

3.       No Liability

Except on account of gross negligence or willful misconduct, the Disbursing Agent shall have no (a) liability to any party for actions taken in accordance with this Combined Disclosure Statement and Plan or in reliance upon information provided to it in accordance with this Combined Disclosure Statement and Plan or (b) obligation or liability to any party who does not hold a Claim against the Debtors as of the Distribution Record Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of this Combined Disclosure Statement and Plan.

## E.    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.       Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred 20 or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.       Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Liquidation Trustee.

3. Minimum Distributions

No distribution shall be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the Holder of such Claim on the applicable Distribution Date has an economic value of less than $250.

4. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of Allowed Claims (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

5. Surrender of Cancelled Instruments or Securities

On the Effective Date, and as a condition precedent to receiving any distribution, each Holder of a certificate or instrument evidencing a Claim or an Interest shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Unless otherwise provided herein, such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Combined Disclosure Statement and Plan, charging liens, priority of payment, and indemnification rights. On the Effective Date each Holder of an Equity Interest that is not represented by a certificate or other instrument shall be deemed to have surrendered such Equity Interests to the Disbursing Agent, which Equity Interests shall be cancelled in accordance with the immediately preceding sentence.

**F. Manner of Payment**

All distributions of Cash to the Holders of the applicable Allowed Claims under the Combined Disclosure Statement and Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor. At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

**G. Compliance with Tax Requirements**

In connection with the Combined Disclosure Statement and Plan, to the extent applicable, the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent shall comply with all Tax withholding and reporting requirements imposed on them by any

Governmental Unit, and all distributions made pursuant to the Combined Disclosure Statement and Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Combined Disclosure Statement and Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Combined Disclosure Statement and Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. For these purposes, all distributions made on behalf of the Debtors pursuant to the Combined Disclosure Statement and Plan shall, if applicable, be first in satisfaction of the portion of Claims that are not subject to any withholding tax obligation. All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent to comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, including an IRS Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors and Liquidation Trustee reserve the right to allocate all distributions made under the Combined Disclosure Statement and Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Combined Disclosure Statement and Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Combined Disclosure Statement and Plan. Notwithstanding any other provision of the Combined Disclosure Statement and Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other Tax obligations, on account of such distribution.

## H.    Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## I.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Combined Disclosure Statement and Plan, the Confirmation Order or the Cash Collateral Orders, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim.

## J.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

**K.**     **Setoffs and Recoupment**

Except as expressly provided herein, the Liquidation Trustee or Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtors held against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Liquidation Trustee and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor, the Liquidation Trustee, or the Disbursing Agent, of any Retained Causes of Action that the Liquidation Trust may possess against the Holder of a Claim.

**L.**     **No Double Payment of Claims**

To the extent that a Claim is Allowed against more than one Debtor's Estate, the Holder of such Allowed Claim against more than one Debtor may recover Distributions under the Combined Disclosure Statement and Plan for all co-obligor Debtors until the Holder has received payment in full on such Allowed Claim.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Combined Disclosure Statement and Plan only until payment in full on that Allowed Claim.

**M.**     **Claims Paid or Payable by Third Parties**

1.     Claims Paid by Third Parties

Any Claim will be deemed satisfied in full or in part (as applicable) without a Claims objection having to be Filed by the Debtors or the Liquidation Trustee (as applicable) and without any further order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim (a) receives payment in full or in part (as applicable) on account of such Claim from an entity that is not a Debtor (as applicable) and (b) does not File an objection to such Claim being deemed satisfied within 21 days from service of notice thereof.  To the extent a Holder of a Claim receives, on account of such Claim, both a Distribution under the Combined Disclosure Statement and Plan and a payment from a party that is not a Debtor or the Liquidation Trustee, as applicable, on account of such Claim, the Debtors or the Liquidation Trustee (as applicable) will serve a notice of such duplicative payment and such Holder must, within 21 days of receipt thereof, either (a) repay or return the Distribution to the Debtors or Liquidation Trustee (as applicable) to the extent the Holder's total recovery on account of such Claim from the third party and under the Combined Disclosure Statement and Plan exceeds the Allowed amount of such Claim or (b) file an objection setting forth the reasons that the Holder asserts that such Distribution does not have to be returned.

2.     Claims Payable by Third Parties

No distributions under the Combined Disclosure Statement and Plan will be made on account of an Allowed Claim that is payable pursuant to an Insurance Contract until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contract.  If the

Debtors or the Liquidation Trustee (as applicable) believe a Holder of an Allowed Claim has recourse to an Insurance Contract and intend to withhold a Distribution pursuant to this Article VII, the Debtors or the Liquidation Trustee (as applicable) shall cause the Disbursing Agent to provide written notice to such Holder as to what the Debtors or the Liquidation Trustee (as applicable) believe to be the nature and scope of applicable insurance coverage. To the extent that one or more of the Debtors' insurers (as applicable) agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim (or the applicable portion of such Claim) may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3. Applicability of Insurance Contracts

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Combined Disclosure Statement and Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Allowance of Claims

On or after the Effective Date, and except as otherwise provided herein, the Liquidation Trustee, with respect to all Claims, shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Except as expressly provided in the Combined Disclosure Statement and Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Combined Disclosure Statement and Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Final Cash Collateral Order and the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. All settlements of Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court (including the Final Cash Collateral Order and the Confirmation Order), pursuant to Bankruptcy Rule 9019, or otherwise shall be binding on all parties.

### B. Claims and Interests Administration Responsibilities

Except as otherwise specifically provided herein, the Debtors (prior to the Effective Date) and the Liquidation Trustee (following the Effective Date), with respect to all Claims, have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the

46

Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Liquidation Trustee, with respect to all Claims, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to the Combined Disclosure Statement and Plan.

### C. Authority to Amend Schedules

The Debtors (prior to the Effective Date) and the Liquidation Trustee (following the Effective Date) will have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules (if no proof of claim is timely filed in response thereto) without approval of the Bankruptcy Court; *provided* that if any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors or the Liquidation Trustee will provide the holder of such Claim with notice of such amendment and such parties will have 21 days to file a proof of claim with respect to such claim.

### D. Estimation of Claims

The Debtors (prior to the Effective Date) and the Liquidation Trustee (following the Effective Date) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Combined Disclosure Statement and Plan (including for purposes of distributions), and the Debtors or the Liquidation Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### E. Adjustment to Claims or Interests without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Liquidation Trustee, without the Liquidation Trustee having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval.

**F.**      <u>**Time to File Objections to Claims**</u>

Any objections to Claims, which, prior to the Effective Date, may be Filed by any party, shall be Filed on or before the Claims Objection Deadline.

**G.**      <u>**Disallowance of Claims or Interests**</u>

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidation Trustee.

**ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS DISPUTED, CONTINGENT, OR UNLIQUIDATED, AND FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED, SHALL BE DEEMED DISALLOWED AND SHALL BE EXPUNGED WITHOUT FURTHER ACTION AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**H.**      <u>**Amendments to Claims**</u>

On or after the Effective Date, except as provided herein or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

**I.**      <u>**No Distributions Pending Allowance**</u>

No payment or distribution provided under the Combined Disclosure Statement and Plan shall be made to the extent that any Claim is a Disputed Claim, including if an objection to a Claim or portion thereof is Filed as set forth herein, unless and until such Disputed Claim becomes an Allowed Claim; *provided* that any portion of a Claim that is an Allowed Claim shall receive the payment or distribution provided under the Combined Disclosure Statement and Plan thereon notwithstanding that any other portion of such Claim is a Disputed Claim.

**J.** **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes Allowed, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions herein. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Combined Disclosure Statement and Plan as of the Effective Date, without any interest to be paid on account of such Claim.

**ARTICLE IX**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.** **Release and Channeling of Claims and Termination of Interests**

Except as otherwise specifically provided herein or in any contract, instrument, or other agreement or document created or entered into pursuant to the Combined Disclosure Statement and Plan, the Holders of Claims and Interests subject to this Combined Disclosure Statement and Plan shall, on account of their Claims and Interests, only be entitled to the distributions, rights, and treatment set forth in the Combined Disclosure Statement and Plan, and such Claims and Interests and any other Causes of Action treated, exculpated or released under this Combined Disclosure Statement and Plan shall be subject to Article IX. For the avoidance of doubt, the Claims and Interests subject to this Combined Disclosure Statement and Plan, include all Claims against, Interests in, liabilities of, Liens on, obligations of, and rights against the Debtors, the Estates, or any of their assets or properties, whether known or unknown, and any interest accrued on such Claims or Interests from and after the Petition Date, regardless of whether any property shall have been distributed or retained pursuant to the Combined Disclosure Statement and Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Combined Disclosure Statement and Plan.

**B.** **Releases by the Debtors**

**Notwithstanding anything contained herein to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on the Effective Date, each Released Party is deemed released by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim against, or Interest in, a Debtor or other Entity**

49

could have asserted on behalf of the Debtors or the Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the Term Loan Facility, the Equipment Financing Agreements, the Debtors' in or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims actually asserted and pursued against the Debtors), intercompany transactions, the Chapter 11 Cases, the Canadian Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, or any 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, any 363 Asset Sale, the Chapter 11 Cases, the Canadian Proceedings, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the administration and implementation of the Combined Disclosure Statement and Plan or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (a) any post-Effective Date obligations of any Person or Entity under the Combined Disclosure Statement and Plan, any 363 Asset Sale Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Combined Disclosure Statement and Plan or any 363 Asset Sale; (b) any Non-Released Party; or (c) any Person or Entity from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person or Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Chapter 11 Cases, the Canadian Proceedings, and implementing the Combined Disclosure Statement and Plan; (b) a good faith settlement and compromise of the claims released by the Debtor Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Liquidation Trust, Liquidation Trustee, Debtors or the Debtors' Estates asserting any claim or Cause of Action released pursuant to the Debtor Releases. Notwithstanding anything to the contrary in the foregoing, only those Parties or Entities recommended by the Investigation Subcommittee to be a Released Party shall be eligible to receive a release hereunder. Any such determination along with a summary of the findings of the Investigation Subcommittee with respect to each of the Released Parties will be included in the Plan Supplement. To the extent that the Investigation Subcommittee determines to recommend that any Debtor and the Estate thereto should not grant releases in favor of any Person or Entity with respect to any claims, obligation, rights, suits, damages, Causes of

50

**Action, remedies, and liabilities whatsoever, such Person or Entity shall be deemed a Non-Released Party.**

**C.**      <u>**Releases by the Releasing Parties Other Than the Debtors**</u>

     **Notwithstanding anything contained herein to the contrary, upon and as of the Effective Date, each Releasing Party (other than the Debtors and the Estates) releases each Debtor, the Estates, and each other Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors and the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), any securities issued by the Debtors and the ownership thereof, the Term Loan Facility, the Equipment Financing Agreements, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims actually asserted and pursued against the Debtors), intercompany transactions, the Chapter 11 Cases, the Canadian Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, or any 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, any 363 Asset Sale, the Chapter 11 Cases, the Canadian Proceedings, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the administration and implementation of the Combined Disclosure Statement and Plan, the Sales Process, or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (a) any post-Effective Date obligations of any Person or Entity under the Combined Disclosure Statement and Plan, any 363 Asset Sale Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Combined Disclosure Statement and Plan or any 363 Asset Sale; (b) any Non-Released Party; or (c) any Person or Entity from any claim or Causes of Action related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence by such Person or Entity.**

     **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing releases, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (a) consensual; (b) essential to the Confirmation of the Combined Disclosure Statement and Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the claims released by the Releasing Parties; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing releases.**

**D.**     **Exculpation**

Except as otherwise specifically provided herein, no Exculpated Party shall have or incur liability for and each Exculpated Party is hereby exculpated from any Cause of Action for any claim related to any act or omission taking place between the Petition Date and the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the Canadian Proceedings, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, or any 363 Asset Sale, contract, instrument, release, or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan, the Cash Collateral Orders, the Plan Supplement, any 363 Asset Sale, the Chapter 11 Cases, the Canadian Proceedings, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the Sales Process, the administration and implementation of the Combined Disclosure Statement and Plan, the Sales Process, or the distribution of property under the Combined Disclosure Statement and Plan, the Sales Process, or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence; *provided* that, to the fullest extent permitted by applicable law, such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities regarding the Chapter 11 Cases, the Canadian Proceedings, and pursuant to the Combined Disclosure Statement and Plan.

The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Combined Disclosure Statement and Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Combined Disclosure Statement and Plan or distributions made pursuant to the Combined Disclosure Statement and Plan.

**E.**     **Injunction**

Except as otherwise expressly provided herein, for Claims or Causes of Action preserved by a Holder that timely opts out of the releases set forth in Article IX.C, or for obligations issued or required to be paid pursuant to the Combined Disclosure Statement and Plan or the Confirmation Order, all Holders of Claims and Interests who have held, hold, or may hold Claims or Interests that are treated under this Combined Disclosure Statement and Plan, or are barred by exculpation, are enjoined, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in any Purchaser or the Liquidation Trust, as applicable, has been liquidated and distributed to any Purchaser, creditors, or otherwise in accordance with the terms of the Combined Disclosure Statement and Plan, and the Confirmation Order and the Combined Disclosure Statement and Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, from taking any of the following actions against, as applicable, the

52

**Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing, in any manner or in any place, any suit, action, or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Persons or Entities or the property of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Persons or Entities or against the property of such Persons or Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or in connection with or with respect to any such Claims or Interests treated under the Combined Disclosure Statement and Plan.**

No Person or Entity may commence or pursue a claim or Cause of Action, as applicable, of any kind against the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action, as applicable, subject to Article IX hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or Cause of Action, as applicable, represents a colorable claim of any kind that has not been exculpated, released, or otherwise barred, and (ii) specifically authorizing such Person or Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party; *provided, however*, that no claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer or any Related Party thereto without leave of the CCAA Court. At the hearing for the Bankruptcy Court to determine whether such claim or Cause of Action represents a colorable claim of any kind that has not been exculpated, released, or otherwise barred, the Bankruptcy Court may, or shall if any Exculpated Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

## F.     Protections Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entity, including Governmental Units, shall discriminate against the Liquidation Trustee or the Liquidation Trust or deny, revoke, suspend, or refuse to renew a license, permit,

charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Liquidation Trustee, or another Entity with whom the Liquidation Trustee has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## G.     Document Retention

On and after the Effective Date, the Liquidation Trustee shall preserve all books, records, electronically stored information, and other documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Liquidation Trustee in accordance with the Liquidation Trust Agreement and applicable law.

## H.     Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE X**
**CONDITIONS PRECEDENT TO**
**CONFIRMATION AND CONSUMMATION**
**OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

## A.     Conditions Precedent to Confirmation

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to the terms herein:

1.     The Bankruptcy Court shall have entered an Order approving the adequacy of the Combined Disclosure Statement and Plan.

2.     The Combined Disclosure Statement and Plan shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan as Filed, unless such material amendment, alteration or modification has been made in accordance with the terms herein.

54

**B.      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the terms herein:

1.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Combined Disclosure Statement and Plan and each of the other transactions contemplated herein;

2.      the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order is not subject to any stay and has been recognized by the CCAA Court;

3.      the Professional Fee Escrow Account shall have been established and fully funded with Cash in an amount equal to the Professional Claim Reserve Amount;

4.      the Claims Reserve shall have been established and fully funded with Cash in an amount equal to the Claims Reserve Amount;

5.      the Combined Disclosure Statement and Plan and all documents in the Plan Supplement shall not have been materially amended, altered, or modified from the Combined Disclosure Statement and Plan and the Plan Supplement as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with the terms herein;

6.      the final version of all schedules, documents, and exhibits in the Plan Supplement shall have been Filed;

7.      conditions 1-6 above have been satisfied or waived by the Debtors, in consultation with the Committee, on or before August 14, 2026; and

8.      the Liquidation Trust shall be funded in Cash with the Minimum Trust Funding; *provided*, this condition 8 may only be waived by the Committee

**C.      Waiver of Conditions**

The conditions to Confirmation and/or consummation set forth herein may be waived by the Debtors, in consultation with the Committee,  without notice, leave, or Order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Combined Disclosure Statement and Plan.

**D.      Effect of Failure of Conditions**

If consummation does not occur, the Combined Disclosure Statement and Plan shall be null and void in all respects and nothing contained in the Combined Disclosure Statement and Plan shall: (1) constitute a waiver or release of any claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any

55

other Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity; or (4) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.

**E.      Substantial Consummation**

"Substantial Consummation" of the Combined Disclosure Statement and Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**ARTICLE XI**
**MODIFICATION, REVOCATION, OR**
**WITHDRAWAL OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.      Modification and Amendments**

Except as otherwise specifically set forth herein, the Debtors reserve the right to, in consultation with the Committee, modify the Combined Disclosure Statement and Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Combined Disclosure Statement and Plan. Subject to those restrictions on modifications set forth herein and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to in consultation with the Committee, revoke or withdraw, or to alter, amend, or modify the Combined Disclosure Statement and Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Combined Disclosure Statement and Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Combined Disclosure Statement and Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Combined Disclosure Statement and Plan.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Combined Disclosure Statement and Plan without further Order or approval of the Bankruptcy Court.

**B.      Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Combined Disclosure Statement and Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

Holders of Claims that have accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim of such Holder; *provided*, *however*, that any Holders of Claims who were deemed to accept the Combined Disclosure Statement and Plan because such Claims were Unimpaired shall continue to be deemed to accept the Combined Disclosure

56

Statement and Plan only if, after giving effect to such amendment, modification, or supplement, such Claims continue to be Unimpaired.

## C.      <u>Revocation or Withdrawal of Plan</u>

The Debtors reserve the right to, in consultation with the Committee, revoke or withdraw the Combined Disclosure Statement and Plan as to any individual Debtor, combination of Debtors or all of the Debtors prior to the Confirmation Date and to File subsequent plans of reorganization or liquidation or disclosure statements.   If the Debtors revoke or withdraw the Combined Disclosure Statement and Plan, or if Confirmation or consummation does not occur as to any or all of the Debtors, then: (1) the Combined Disclosure Statement and Plan shall be null and void in all respects with respect to such Debtor(s); (2) any settlement or compromise embodied in the Combined Disclosure Statement and Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Combined Disclosure Statement and Plan, and any document or agreement executed pursuant to the Combined Disclosure Statement and Plan, shall be deemed null and void as to such Debtor(s); and (3) nothing contained in the Combined Disclosure Statement and Plan shall: (a) constitute a waiver or release of any Claims or Interests as to such Debtor(s); (b) prejudice in any manner the rights of such Debtor(s) or any other Entity; (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity; or (d) be used by the Debtors or any Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims.  The revocation or withdrawal of the Combined Disclosure Statement and Plan with respect to one or more Debtors shall not require the resolicitation of the Combined Disclosure Statement and Plan with respect to the remaining Debtors.

## ARTICLE XII
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW.  HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH HEREIN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN.  THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION.

**A.      General Bankruptcy Law and Combined Disclosure Statement and Plan Considerations**

1.      The Combined Disclosure Statement and Plan May Not Be Accepted

The Debtors can make no assurances that the requisite acceptances to the Combined Disclosure Statement and Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, may be forced to liquidate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Holders of Allowed Claims as those proposed in the Combined Disclosure Statement and Plan.

2.      The Debtors May Not Be Able to Secure Confirmation of the Combined Disclosure Statement and Plan or Confirmation May Be Delayed

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is not confirmed, it is unclear what distributions Holders of Allowed Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation.

3.      Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the Claims Reserve available for distribution.  There can be no assurance that the estimated Claim amounts set forth in the Combined Disclosure Statement and Plan are correct.  If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for Distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

4.      Failure to Consummate the Combined Disclosure Statement and Plan

The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Combined Disclosure Statement and Plan, there can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived).

5.      Plan Releases May Not Be Approved

There can be no assurance that the releases, as provided in Article IX of the Combined Disclosure Statement and Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Combined Disclosure Statement and Plan, or the Combined Disclosure Statement and Plan not being confirmed.

58

**B.     Risks Associated with Forward Looking Statements**

The financial information contained in this Combined Disclosure Statement and Plan has not been audited.  In preparing this Combined Disclosure Statement and Plan, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided herein, and while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

**C.     Alternatives to Confirmation and Consummation of the Combined Disclosure Statement and Plan**

The Debtors believe that the Combined Disclosure Statement and Plan affords the Holders of Claims the potential for a better realization on the Debtors' Assets than a chapter 7 liquidation, and therefore, is in the best interests of such Holders.  If, however, the Combined Disclosure Statement and Plan is not confirmed, the theoretical alternatives include (a) formulation of an alternative plan or plans of liquidation under chapter 11, or (b) liquidation of one or more of the Debtors under chapter 7 of the Bankruptcy Code.

**ARTICLE XIII**
**CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN**

The following discussion summarizes certain U.S. federal income tax consequences of the Combined Disclosure Statement and Plan to the U.S. Holders (as defined below) of Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, and Allowed General Unsecured Claims.  This discussion is provided for informational purposes only and is based on the Tax Code, the Treasury Regulations, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change, possibly with retroactive effect.  Events subsequent to the date of this Combined Disclosure Statement and Plan, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the U.S. federal income tax consequences of the Combined Disclosure Statement and Plan and the transactions contemplated thereunder.  No representations are being made regarding the particular tax consequences of the Combined Disclosure Statement and Plan to any specific holder of a Claim.  The Debtors will not seek a ruling from the IRS and have not obtained an opinion of counsel regarding any tax consequences of the Combined Disclosure Statement and Plan to any holder of a Claim.  No assurances can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.  This discussion only addresses U.S. federal income tax consequences and does not address any other U.S. federal tax consequences (such as estate and gift tax consequences), or the tax consequences arising under the laws of any foreign, state, local or other jurisdiction or any income tax treaty.  This discussion assumes that the Term Loan Claims and Equipment Financing Agreement Claims are treated in accordance with their form for U.S. federal income tax purposes and that the Liquidation Trust is classified as a liquidating trust under Treasury Regulation § 301.7701-4(d) (except to the extent all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury

59

Regulation § 1.468B-9 for U.S. federal income tax purposes, as discussed below). If the terms set forth in the Liquidation Trust Agreement do not permit the Liquidation Trust to be classified as a liquidating trust, the tax consequences for such holders of the Liquidation Trust Interests may differ materially from that described below. This discussion does not describe the tax consequences arising from a U.S. Holder owning or disposing of the Liquidation Trust Interests, which will be dependent in part on the nature of the Liquidation Trust Assets and the activities of the Liquidation Trust.

This discussion does not address any U.S. federal income tax consequences to a beneficial owner of an Allowed Term Loan Claim, Allowed Equipment Financing Agreement Claim, or Allowed General Unsecured Claim that is an individual, corporation (or other entity taxable as a corporation), estate or trust that is not a U.S. Holder (a "***Non-U.S. Holder***"). Non-U.S. Holders should consult their own independent tax advisors regarding the U.S. federal and state income tax consequences of the implementation of the Combined Disclosure Statement and Plan, including (i) whether Non-U.S. Holders may be subject to any U.S. federal withholding tax or U.S. federal income tax with respect to any payment on Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims or Allowed General Unsecured Claims and with respect to income of the Liquidation Trust and (ii) whether Non-U.S. Holders may be treated as engaged in a trade or business within the United States with respect to the assets and activities of the Liquidation Trust and obligated to file U.S. federal income tax returns and pay U.S. federal income tax on their share of income and gain recognized by the Liquidation Trust.

This discussion does not describe all of the tax consequences that may be relevant in light of a U.S. Holder's particular circumstances, including, but not limited to, the potential application of provisions of the Medicare tax on net investment income, or tax consequences applicable to U.S. Holders that are otherwise subject to special treatment under the Tax Code, such as: financial institutions; banks; broker-dealers; insurance companies; tax-exempt organizations; retirement plans or other tax-deferred accounts; mutual funds; real estate investment trusts; traders in securities that elect mark-to-market treatment; persons subject to the alternative minimum tax; persons who hold Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, Allowed General Unsecured Claims and/or Liquidation Trust Interests as part of a hedge, straddle, constructive sale, conversion or other integrated transaction; persons that have a functional currency other than the U.S. dollar; persons who hold Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, Allowed General Unsecured Claims and/or Liquidation Trust Interests through non-U.S. brokers or other non-U.S. intermediaries; governments or governmental organizations; partnerships or other pass-through entities or holders of interests therein; persons required to accelerate the recognition of any item of gross income with respect to the Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims or Allowed General Unsecured Claims as a result of such income being recognized on an "applicable financial statement" (within the meaning of Section 451(b) of the Tax Code); and holders not entitled to vote on the Combined Disclosure Statement and Plan. If an entity that is classified as a partnership for U.S. federal income tax purposes holds Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, Allowed General Unsecured Claims and/or Liquidation Trust Interests, the U.S. federal income tax treatment of a partner will generally depend on the status of such partner and the activities of the partnership. Partnerships holding Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, Allowed General Unsecured Claims and/or Liquidation Trust Interests and partners in such partnerships should consult their tax

advisors as to the particular U.S. federal income tax consequences of owning and disposing of the Allowed Term Loan Claims, Allowed Equipment Financing Agreement Claims, Allowed General Unsecured Claims and/or Liquidation Trust Interests.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of an Allowed Term Loan Claim, Allowed Equipment Financing Agreement Claim, Allowed General Unsecured Claim and/or a Liquidation Trust Interest that is, for U.S. federal income tax purposes:

- an individual who is a U.S. citizen or U.S. resident alien;

- a corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, that was created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- an estate the income of which is subject to U.S. federal income taxation regardless of its source; or

- a trust (a) the administration of which is subject to the primary supervision of a U.S. court and that has one or more United States persons that have the authority to control all substantial decisions of the trust or (b) that has made a valid election under applicable Treasury Regulations to be treated as a United States person.

**THE FOLLOWING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A U.S. HOLDER. ALL U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

A.     <u>Certain U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Term Loan Claims and Allowed Equipment Financing Agreement Claims</u>

Pursuant to the Combined Disclosure Statement and Plan, a U.S. Holder of an Allowed Term Loan Claim will be treated as exchanging such Allowed Term Loan Claim on the Effective Date for (i) Cash and (ii) such U.S. Holder's share of the Liquidation Trust Assets attributable to the Series A Liquidation Trust Interests received in exchange for such Allowed Term Loan Claim. Pursuant to the Combined Disclosure Statement and Plan, a U.S. Holder of an Allowed Equipment Financing Agreement Claim will be treated as exchanging such Allowed Equipment Financing Agreement Claim on the Effective Date for (i) Cash in an amount equal to such U.S. Holder's applicable Equipment Financing Agreement Collateral Proceeds and (ii) solely to the extent the amount of such U.S. Holder's Allowed Equipment Financing Agreement Claims as of the Petition Date exceeds the applicable Equipment Financing Agreement Collateral Proceeds, such U.S. Holder's *Pro Rata* share of the Liquidation Trust Assets attributable to the Series B Liquidation Trust Interests received in exchange for such Allowed Equipment Financing Agreement Claim.

61

### 1. Taxable Exchange

Each U.S. Holder of an Allowed Term Loan Claim should recognize gain or loss in a taxable exchange of such Claim equal to the difference between (x) the sum of (a) the amount of Cash received by such U.S. Holder and (b) the fair market value of the Liquidation Trust Assets deemed received by such U.S. Holder for such Claim (in the case of clause (a) and (b) excluding any amount attributable to accrued but unpaid interest or original issue discount ("**OID**"), if any, on such Claim, which amount will be taxable as described below), and (y) such U.S. Holder's adjusted tax basis, if any, in such Claim. Each U.S. Holder of an Allowed Equipment Financing Agreement Claim should recognize gain or loss in a taxable exchange of such Claim equal to the difference between (i) the sum of (A) the amount of Cash received by such U.S. Holder and (B) if applicable, the fair market value of the Liquidation Trust Assets deemed received by such U.S. Holder for such Claim (in the case of clause (A) and (B), excluding any amount attributable to accrued but unpaid interest or OID, if any, on such Claim, which amount will be taxable as described below) and (ii) such U.S. Holder's adjusted tax basis, if any, in such Claim. Whether such gain or loss is capital or ordinary in character will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Allowed Term Loan Claim or Allowed Equipment Financing Agreement Claim in such U.S. Holder's hands, whether such Claim was purchased at a discount, whether there is any accrued but unpaid interest or OID on such Claim, whether any fees are treated as additional interest or OID on such Claim and whether and to what extent the U.S. Holder previously has claimed a bad debt deduction with respect to such Claim. See Articles XIII.A.2. and XIII.A.3 below entitled "Accrued Interest" and "Market Discount."

### 2. Accrued Interest

To the extent that any amount received by a U.S. Holder is attributable to accrued but unpaid interest (or OID, if any) on the debt instruments constituting such surrendered Allowed Term Loan Claim or Allowed Equipment Financing Agreement Claim, the receipt of such amount should be taxable to the U.S. Holder as ordinary interest income (to the extent not already taken into account by the U.S. Holder). Conversely, a U.S. Holder may be able to recognize a deductible loss (or, possibly, a write off against a reserve for worthless debts) to the extent any accrued interest (or OID, if any) was previously included in the U.S. Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

If the fair market value of the consideration is not sufficient to fully satisfy all principal and interest on an Allowed Term Loan Claim or Allowed Equipment Financing Agreement Claim, the extent to which such consideration will be attributable to accrued but unpaid interest is unclear. Under the Combined Disclosure Statement and Plan, the aggregate consideration to be distributed to U.S. Holders will be allocated first to the principal amount of such Allowed Term Loan Claims or Allowed Equipment Financing Agreement Claims, with any excess allocated to unpaid interest that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes, and certain case law generally indicates that a final payment on a distressed debt instrument that is insufficient to repay outstanding principal and interest will be allocated to principal, rather than interest, while certain Treasury Regulations treat payments as allocated first to any accrued but unpaid interest. The IRS could take the position that the consideration received by a U.S. Holder should be allocated in a manner other than as provided

in the Combined Disclosure Statement and Plan, which could include allocating consideration first to any accrued but unpaid interest under the aforementioned Treasury Regulations.

**U.S. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE ALLOCATION OF CONSIDERATION RECEIVED UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE U.S. FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST (AND OID, IF ANY).**

3. <u>Market Discount</u>

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the holder's adjusted tax basis in the debt instrument is less than (i) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (ii) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a specified de minimis amount. Any gain recognized by a U.S. Holder on the taxable disposition of an Allowed Term Loan Claim or Allowed Equipment Financing Agreement Claim that had been acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such Claim was considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

**U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS CONCERNING THE APPLICATION OF THE MARKET DISCOUNT RULES TO THEIR ALLOWED TERM LOAN CLAIMS OR ALLOWED EQUIPMENT FINANCING AGREEMENT CLAIMS.**

B. **<u>Certain U.S. Federal Income Tax Consequences for U.S. Holders of Allowed General Unsecured Claims</u>**

Pursuant to the Combined Disclosure Statement and Plan, a U.S. Holder will be treated as exchanging an Allowed General Unsecured Claim for its *Pro Rata* share of the Liquidation Trust Assets attributable to the Series B Liquidation Trust Interests received in exchange for such Claim. Each U.S. Holder should recognize gain or loss in a taxable exchange of such Allowed General Unsecured Claim equal to the difference between (x) the fair market value of the Liquidation Trust Assets deemed received by such U.S. Holder for such Claim and (y) such U.S. Holder's adjusted tax basis, if any, in such Claim. Whether such gain or loss is capital or ordinary in character will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Allowed General Unsecured Claim in such U.S. Holder's hands, and whether such Allowed General Unsecured Claim was purchased at a discount. Similar rules to those described in Articles XIII.A.2 and XIII.A.3 above entitled "Accrued Interest" and "Market Discount" could apply, depending on the nature of the Allowed General Unsecured Claims.

C. **<u>Back-up Withholding and Information Reporting</u>**

Under the Tax Code, interest and other reportable payments may, under certain circumstances, be subject to backup withholding. Backup withholding may apply to payments made pursuant to the Combined Disclosure Statement and Plan, unless the U.S. Holder provides

to the applicable withholding agent its taxpayer identification number, certified under penalties of perjury, as well as certain other information or otherwise establishes an exemption from backup withholding. Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against such U.S. Holder's U.S. federal income tax liability, and such U.S. Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

In addition, information reporting may apply to (i) payments made to a U.S. Holder and (ii) certain transactions under the Combined Disclosure Statement and Plan that result in such U.S. Holder claiming a loss in excess of specified thresholds. U.S. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Combined Disclosure Statement and Plan would be subject to these Treasury Regulations and require disclosure on the U.S. Holders' tax returns.

**D.** **Certain United States Federal Income Tax Consequences Relating to the Liquidation Trust**

      1.      Classification of the Liquidation Trust

Pursuant to the Combined Disclosure Statement and Plan, the Liquidation Trust shall be organized for the primary purpose of liquidating the Liquidation Trust Assets and making distributions to holders of the Liquidation Trust Interests on account of any Liquidation Trust Interests received by such holders. The Liquidation Trust is not organized with an objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose. Thus, except to the extent all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 for U.S. federal income tax purposes, the Liquidation Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d). Under the Combined Disclosure Statement and Plan, all relevant parties are required to treat the Liquidation Trust as a liquidating trust, subject to definitive guidance to the contrary from the IRS. In general, a liquidating trust is not a separate taxable entity but rather is treated as a grantor trust, pursuant to §§ 671 through 679 of the Tax Code, owned by the grantors of the trust. For this purpose, the beneficiaries of a liquidating trust are treated as the grantors and owners of the trust.

Although the Liquidation Trust has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for obtaining an IRS ruling as to the grantor trust status of a liquidating trust, it is possible that the IRS could require a different characterization of the Liquidation Trust, which could result in a different and possibly greater tax liability to the Liquidation Trust or the holders of the Liquidation Trust Interests. No request for a ruling from the IRS will be sought on the classification of the Liquidation Trust, and there can be no assurance that the IRS will not take a contrary position to the classification of the Liquidation Trust. If the IRS were to successfully challenge the classification of the Liquidation Trust as a grantor trust, the U.S. federal income tax consequences to the Liquidation Trust and the holders of the Liquidation Trust Interests could be materially different from those discussed herein. The following discussion assumes treatment of the Liquidation Trust as a grantor trust for U.S. federal

income tax purposes, except to the extent that all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 for purposes.

2.  Creation of the Liquidation Trust

Except to the extent that all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 for purposes, upon its creation, for U.S. federal income tax purposes, each U.S. Holder of a Liquidation Trust Interest would be treated as having received and as owning an undivided interest in the Liquidation Trust Assets in exchange for surrendering all or a portion of such U.S. Holder's Allowed Term Loan Claim, Allowed Equipment Financing Agreement Claim or Allowed General Unsecured Claim followed by a transfer by the U.S. Holder of such Liquidation Trust Assets to the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets as more fully set forth in the Liquidation Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidation Trust Assets. Under the Combined Disclosure Statement and Plan, all parties (including, without limitation, the Debtors, the Liquidation Trustee, the Liquidation Trust and the holders of Liquidation Trust Interests) are required to report consistently with the foregoing for U.S. federal and applicable state and local income tax purposes. The tax basis of such Liquidation Trust Interests in the Liquidation Trust Assets received will be equal to the fair market value of such Liquidation Trust Assets as of the Effective Date (the "***Liquidation Trust Asset Value***"). The Liquidation Trust Asset Value will be determined by the Liquidation Trustee as the trustee of the Liquidation Trust, and all parties must utilize and report consistently with the Liquidation Trust Asset Value for U.S. federal and applicable state and local income tax purposes. The determination of the Liquidation Trust Asset Value is factual in nature and the IRS may challenge any such determination.

3.  Allocation of Income and Loss and Disposition of Liquidation Trust Assets

Except to the extent all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 for U.S. federal income tax purposes, each U.S. Holder of a Liquidation Trust Interest must report on its U.S. federal income tax return its allocable share of income, gain, loss, deduction and credit recognized or incurred by the Liquidation Trust (including as a result of the sale or other disposition of any Liquidation Trust Assets). Deductions attributable to activities and administrative expenses of the Liquidation Trust may be subject to limitation in the hands of U.S. Holders. The character of items of income, gain, loss or deduction to any U.S. Holder, and the ability of such U.S. Holder to benefit from any deductions, losses or credits, will depend on the particular circumstances and/or status of any such U.S. Holder.

As noted above, except to the extent all or any portion of the Liquidation Trust is treated as one or more disputed ownership funds under Treasury Regulation § 1.468B-9 for U.S. federal income tax purposes, each U.S. Holder of a Liquidation Trust Interest has an obligation to report its share of the Liquidation Trust's tax items (including gain on the sale or other disposition of a Liquidation Trust Asset). Accordingly, U.S. Holders may incur a tax liability as a result of owning a beneficial interest in the Liquidation Trust, regardless of whether the Liquidation Trust distributes Cash or other Liquidation Trust Assets. Although the Liquidation Trust Agreement provides that it will make Cash distributions of net income and net proceeds at least annually, due

to the Liquidation Trust's requirements to satisfy certain liabilities, and due to possible differences in the timing of income on, and the receipt of Cash from, the Liquidation Trust Assets, a U.S. Holder may, in certain years, be required to report and pay tax on a greater amount of income than the amount of Cash received from the Liquidation Trust by such U.S. Holder in such year.

4. Tax Compliance of the Liquidation Trust

Except as described in Article XIII.D(5) below in respect of Disputed Claims, the Liquidation Trust will file annual information tax returns with the IRS as a grantor trust pursuant to Treasury Regulations § 1.671-4(a) that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidation Trust Assets (e.g., income, gain, loss, deduction and credit). Each U.S. Holder will receive a copy of the information returns and must report on its U.S. federal income tax return its share of all such items.

5. Disputed Claims Reserves

To the extent the Liquidation Trustee treats any Liquidation Trust Assets reserved for Holders of Disputed Claims as one or more Disputed Claims reserves held in a disputed ownership fund governed by Treasury Regulation § 1.468B-9 (which would be taxable as a "qualified settlement fund" if all assets of the disputed reserve were passive assets for tax purposes), all parties will be required to report for tax purposes consistently with such treatment. In such case, any Disputed Claims reserve would be a separate taxable entity for U.S. federal income tax purposes, and all interest and earnings of any such Disputed Claims reserve would be taxable to such entity. In the event of such U.S. federal income tax treatment, a separate U.S. federal income tax return would be filed with the IRS for any such Disputed Claims reserve, and any such Disputed Claims reserve would be subject to tax annually on a separate entity basis. The Liquidation Trustee would be responsible for payment of any taxes imposed on any Disputed Claims reserve. Accordingly, distributions from any Disputed Claims reserve would be net of any taxes relating to the retention, disposition and distribution of assets in such Disputed Claims reserve. In the event, and to the extent, any Cash of a Disputed Claims reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such Disputed Claims reserve (including any income that may arise upon the distribution of the assets in such Disputed Claims reserve), assets of each Disputed Claims reserve may be sold to pay such taxes.

**U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS CONCERNING THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF RECEIVING AND HOLDING LIQUIDATION TRUST INTERESTS**.

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Disclosure Statement and Plan are carried out. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of the Chapter 11 Cases and the Combined Disclosure Statement and Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code (provided that the CCAA Court

shall retain jurisdiction over the Canadian Proceedings and all matters arising out of, or related to, the Canadian Proceedings, the Information Officer and the orders of the CCAA Court) and for, among other things, the following purposes:

1.      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.      To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

3.      To issue such Orders in aid of execution and consummation of the Combined Disclosure Statement and Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

4.      To consider any amendments to or modifications of the Combined Disclosure Statement and Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

5.      To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

6.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan, the UCC Settlement, the Term Loan Settlement, or the Cooperation Covenant;

7.      To hear and determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidation Trustee for an expedited determination of Tax under section 505(b) of the Bankruptcy Code);

8.      To hear any other matter not inconsistent with the Bankruptcy Code, including any future litigations relating to the Retained Causes of Action;

9.      To enter a final decree closing the Chapter 11 Cases;

10.     To ensure that distributions to Holders of Claims and Interests are accomplished pursuant to the provisions of the Combined Disclosure Statement and Plan;

11.     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

12.     To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Disclosure Statement and Plan, except as otherwise provided herein;

67

13. To determine any other matters that may arise in connection with or related to the Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Disclosure Statement and Plan;

14. To hear any disputes and determine any other matters that may arise in connection with or related to any 363 Asset Sale, or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with any 363 Asset Sale;

15. To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

16. To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

17. To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the General Bar Date, the Governmental Bar Date, the Rejection Damages Bar Date, the Amended Schedules Bar Date, the Administrative Claims Bar Date, and/or the conditional or final hearing on the approval of the Combined Disclosure Statement and Plan for the purpose of determining whether a Claim, or Interest is released, satisfied and/or enjoined hereunder or for any other purpose;

18. To resolve any other matter or for any purpose specified in the Combined Disclosure Statement and Plan, the Confirmation Order, or any other document entered into in connection with any of the foregoing;

19. To enter and enforce any order in furtherance of the Liquidation Trust Agreement;

20. To resolve any cases, controversies, suits, disputes, or Causes of Action relating to the Liquidation Trustee's administration of the Liquidation Trust or the performance by the Liquidation Trustee of any of its obligations (including prosecution of the Retained Causes of Action), or the exercise by the Liquidation Trustee of any of its rights or powers, under the Liquidation Trust Agreement; and

21. To resolve any cases, controversies, suits, disputes, or Causes of Action asserted by the Liquidation Trust or the Liquidation Trustee, or by or on behalf of any non-debtor subsidiary of any Debtor, against any current or former director or officer of any Debtor or non-debtor subsidiary of any Debtor.

### ARTICLE XV
### MISCELLANEOUS PROVISIONS

**A.** **Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect.

68

**B.**     **Severability**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Disclosure Statement and Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Disclosure Statement and Plan.

**C.**     **Binding Effect**

The Combined Disclosure Statement and Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, and the Holders of Interests, and their respective successors and assigns.

**D.**     **Notices**

All notices, requests and demands to or upon the Debtors or the Liquidation Trust (as applicable) to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the notice of the Effective Date.

**E.**     **Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Disclosure Statement and Plan provides otherwise, the rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law of such jurisdiction.

**F.**     **Withholding and Reporting Requirements**

In connection with the consummation of the Combined Disclosure Statement and Plan, the Debtors, the Liquidation Trustee and/or the Disbursing Agent (as applicable) shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim or, if applicable, Allowed Interest, that is to receive a Distribution under the Combined Disclosure Statement and Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtors, the Liquidation Trustee, the Disbursing Agent or any withholding agent (as applicable) has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations. The Debtors, the Liquidation Trustee, the Disbursing Agent or any withholding agent (as applicable) may require, as a condition to receipt of a Distribution, that the Holder of the applicable Claim or Interest or the Liquidation Trust

69

Beneficiary complete and return an IRS Form W-8, W-9 or a similar tax form, as applicable to each such Holder or Liquidation Trust Beneficiary. If the Debtors, the Liquidation Trustee, the Disbursing Agent or any withholding agent (as applicable) makes such a request and Holder or Liquidation Trust Beneficiary fails to comply before the date that is 90 days after the request is made, the applicable requester, in its sole discretion, may (i) make a Distribution net of any applicable withholding or (ii) determine that such Holder or Liquidation Trust Beneficiary shall be deemed to have forfeited the right to receive any Distribution, in which case, (a) any such Distribution shall revert to the Debtors, the Liquidation Trustee or the Disbursing Agent (as applicable) for Distribution to the other Holders of Claims or Liquidation Trust Beneficiaries in accordance with the Combined Disclosure Statement and Plan and (b) the Allowed Claim or Interest of the Holder or Liquidation Trust Beneficiary originally entitled to such Distribution shall be waived and forever barred without further order of the Bankruptcy Court.

## G.       Headings

Headings are used in the Combined Disclosure Statement and Plan for convenience and reference only and shall not constitute a part of the Combined Disclosure Statement and Plan for any other purpose.

## H.       Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Combined Disclosure Statement and Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## I.       Reference to Monetary Figures

All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## J.       Exhibits/Schedules

All exhibits and schedules to the Combined Disclosure Statement and Plan, including the Plan Supplement, are incorporated into and are a part of the Combined Disclosure Statement and Plan as if set forth in full herein.

## K.       Filing of Additional Documents

On or before substantial consummation of the Combined Disclosure Statement and Plan, the Debtors shall File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

**L.    No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Disclosure Statement and Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**M.    Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**N.    Reservation of Rights**

Except as expressly set forth herein, the Combined Disclosure Statement and Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Combined Disclosure Statement and Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or Holders of Claims or Interests before the Effective Date.

**O.    Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Disclosure Statement and Plan.

**P.    Inconsistency**

In the event of any inconsistency among the Combined Disclosure Statement and Plan and any other instrument or document created or executed pursuant to the Combined Disclosure Statement and Plan, the provisions of the Combined Disclosure Statement and Plan shall govern.

**Q.    Dissolution of the Committee**

Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be discharged and released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of its Professionals or attending to any other issues related to applications for payment of fees and reimbursement of expenses of its Professionals, (iii) any motions or other actions seeking enforcement or implementation of the provisions of this Combined Disclosure Statement and Plan, and (iv) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof.

**R.      Closing of the Chapter 11 Cases**

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to issue a final decree closing the Chapter 11 Cases and file materials with the CCAA Court to terminate the CCAA Proceedings. The Liquidation Trustee may determine to close certain of the Debtors' Chapter 11 Cases before others.

**S.      Request for Expedited Determination of Taxes**

The Debtors and the Liquidation Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to the determination of any unpaid tax liability of each Debtor or its Estate, for any and all taxable periods ending after the Petition Date through the liquidation of such Debtors as determined under applicable tax laws.

**T.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Combined Disclosure Statement and Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective agents, representatives, members, principals, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals nor the Liquidation Trust or Liquidation Trustee, as applicable, will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Combined Disclosure Statement and Plan.

**ARTICLE XVI**
**DEFINITIONS AND CONSTRUCTION OF TERMS**

**A.      Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:[11]

1.      "***363 Asset Sale***" means any sale of the Debtors' Assets approved by a Sale Order.

2.      "***363 Asset Purchase Agreement***" means the applicable asset purchase agreement by and between the Debtors and any Purchaser effectuating a 363 Asset Sale.

3.      "***363 Asset Sale Transaction Documents***" means, collectively, the 363 Asset Purchase Agreement and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time in connection with the applicable 363 Asset Sale.

---

[18]    Copies of all Filings in the Chapter 11 Cases (as defined herein) can be obtained and viewed free of charge at the following web address:  https://restructuring.ra.kroll.com/bitcoindepot/.

4. "*Acquired Assets*" means any and all of the Assets of the Debtors which are sold pursuant to any 363 Asset Sale.

5. "*Adequate Protection Claim*" means the superpriority administrative expense Claims as provided for in section 503(b) and 507(b) of the Bankruptcy Code granted to the Term Loan Secured Parties pursuant to the Cash Collateral Orders, which are subject and subordinate only to the Carve Out (as defined in the Cash Collateral Orders).

6. "*Adequate Protection Account*" is used as defined in the Interim Cash Collateral Orders.

7. "*Administrative Claim*" means a Claim (other than Adequate Protection Claims) arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration of the Chapter 11 Cases that is entitled to priority under sections 365, 503(b), 503(c), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; (c) Allowed Professional Claims; and (d) any cure payment in connection with the assumption and assignment of any Executory Contract or Unexpired Lease to a Purchaser which has not been satisfied pursuant to the 363 Asset Sale Transaction Documents.

8. "*Administrative Claims Bar Date*" means the date by which a request for payment of an Administrative Claim (other than Professional Claims or any Statutory Fee) must be filed, which date shall be 30 days after the Effective Date.

9. "*Administrative Claims Reserve Amount*" means the estimated amount to be distributed in payment of Allowed Administrative Claims (other than Professional Fee Claims).

10. "*Advisors*" means, collectively, Hilco, Portage Point, and V&E.

11. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the Entity were a debtor in a case under the Bankruptcy Code.

12. "*Allowed*" means with respect to any Claim, (a) a Claim that is timely Filed and is evidenced by a Proof of Claim or request for payment of an Administrative Claim; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to this Combined Disclosure Statement and Plan, or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that (i) such Claim is not otherwise a Disputed Claim (including as to the priority of such Claim), (ii) with respect to such Claim no objection, request for estimation to the allowance, or other dispute with respect to priority or classification thereof has been Filed (or no motion to deem the Schedules amended has been Filed) and the applicable period of time fixed by the Combined Disclosure Statement and Plan to file an objection or such motion has passed, or such an objection or motion is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order and (iii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code. Except as otherwise

provided in the Combined Disclosure Statement and Plan or an order of the Bankruptcy Court or with respect to Priority Tax Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable. "*Allow*" and "*Allowing*" shall have correlative meanings.

13. "*Amended Schedules Bar Date*" means the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (prevailing Central Time), on the date that is 21 days from the date on which the Debtors provide notice of the previously unfiled Schedule or amendment or supplement to the Schedules.

14. "*Assets*" means all of the Debtors' property, rights, and interests that are property of the Estates pursuant to section 541 of the Bankruptcy Code.

15. "*Auction*" has the meaning set forth in the Bidding Procedures Order.

16. "*Avoidance Actions*" means all avoidance and recovery actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 550, 551, 552, or 553 of the Bankruptcy Code.

17. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

18. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

19. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court, as amended from time to time.

20. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates and Procedures; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 331].

21. "*Bid Deadline*" has the meaning set forth in the Bidding Procedures Order.

22. "*Bidding Procedures*" has the meaning set forth in the Bidding Procedures Order.

23. "*Bidding Procedures Order*" means the *Order (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; and (C) Granting Related Relief* [Docket No. 193].

24. "*Bitcoin Depot*" means Bitcoin Depot Inc.

25. "*Bitcoin Depot Operating*" means Bitcoin Depot Operating LLC.

74

26. "***Board***" means the board of directors of Bitcoin Depot.

27. "***Business Day***" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

28. "***Canadian Assets***" means all of the Assets of the Canadian Debtors' and all of the Assets of the Debtors located in Canada.

29. "***Canadian Charges***" means the court-ordered charges granted by the CCAA Court in the Canadian Proceedings on the Canadian Assets.

30. "***Canadian Debtors***" means Digital Gold Ventures Inc., BitAccess Inc., and Express Vending Inc.

31. "***Canadian Proceedings***" means the recognition proceedings commenced pursuant to Part IV of the *Companies' Creditors Arrangement Act (Canada)* in respect of the Chapter 11 Cases of the Debtors.

32. "***Cash***" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

33. "***Cash Collateral Motion***" means the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing on the Motion, and (V) Granting Related Relief* [Docket No. 24].

34. "***Cash Collateral Orders***" means the Interim Cash Collateral Orders and the Final Cash Collateral Order.

35. "***Cause of Action***" or "***Causes of Action***" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff or counterclaim and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code, including Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law equivalents of any of the foregoing.

36. "***CCAA***" means the *Companies' Creditors Arrangement Act*, R.S.C.**,** 1985, c. C-36.

37. "***CCAA Court***" means the Ontario Superior Court of Justice (Commercial List).

38. "***Challenges***" means, in accordance with the Interim Cash Collateral Orders, any adversary proceeding or contested matter (i) objecting to or challenging the amount, allowance,

validity, perfection, enforceability, priority, or extent of the Term Loan Debt or the Term Loan Liens, or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests, or defenses against any of the Term Loan Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

39. "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court under the case caption Bitcoin Depot Inc., et al., Case No. 26-90528 (CML).

40. "***Chief Restructuring Officer***" means Thomas Studebaker in his capacity as chief restructuring officer of the Debtors.

41. "***Claim***" means any claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor or its Estate.

42. "***Claims and Noticing Agent***" means Kroll, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

43. "***Claims Objection Deadline***" means the deadline for objecting to a Claim against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court, (b) 90 days after the Filing of a Proof of Claim, or (c) such other period of limitation as may be fixed by the Combined Disclosure Statement and Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to a Claim; *provided* that the deadline for objecting to Administrative Claims (other than Professional Claims) filed by the Administrative Claims Bar Date shall be 60 days after the Effective Date.

44. "***Claims Register***" means the official register of Claims maintained by the Claims and Noticing Agent.

45. "***Claims Reserve***" means the reserve for payment of Allowed Administrative Claims (excluding Professional Fee Claims), Priority Tax Claims, Senior Priority Lien Claims, and Other Priority Claims, to be funded pursuant to this Combined Disclosure Statement and Plan.

46. "***Claims Reserve Amount***" means the sum of (a) the Other Priority Claims Reserve Amount, (b) the Senior Priority Claims Reserve Amount, (c) the Administrative Claims Reserve Amount, and (d) the Priority Tax Claims Reserve Amount.

47. "***Class***" means a class of Claims or Interests as set forth in the Combined Disclosure Statement and Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

48. "***Clerk***" means the clerk of the Bankruptcy Court.

49. "***Combined Disclosure Statement and Plan***" means this disclosure statement and chapter 11 plan including, without limitation, the Plan Supplement, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time in accordance with the terms hereof.

50. "***Committee***" means any official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

51. "***Common Stock***" means Bitcoin Depot's issued and outstanding shares of common stock.

52. "***Company***" means the Debtors and the Non-Debtor Affiliates.

53. "***Conditional Approval and Procedures Order***" means the *Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 332].

54. "***Confirmation Date***" means the date on which the Confirmation Order is entered on the Docket.

55. "***Confirmation***" means the Bankruptcy Court's entry of the Confirmation Order on the Docket of the Chapter 11 Cases, subject to all conditions specified in the Combined Disclosure Statement and Plan having been (a) satisfied or (b) waived pursuant to the Combined Disclosure Statement and Plan.

56. "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Disclosure Statement and Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

57. "***Confirmation Order***" means the Order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.

58. "***Consultation Parties***" has the meaning set forth in the Bidding Procedures Order.

59. "***Cooperation Covenant***" has the meaning set forth in Article V.F.11 of the Combined Disclosure Statement and Plan.

60. "***D&O Liability Insurance Policies***" means all unexpired directors', managers', and officers' liability insurance policies (including any D&O Tail Coverage) of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

61. "***D&O Tail Coverage***" means coverage under an applicable D&O Liability Insurance Policy that extends beyond the end of the policy period.

62. "***Debevoise***" means Debevoise & Plimpton LLP.

63. "***Debtor Releases***" means the releases granted pursuant to Article IX.B of the Combined Disclosure Statement and Plan.

64. "***Debtor***" or "***Debtors***" mean BCD Merger Sub LLC; BitAccess Inc.; Bitcoin Depot; Bitcoin Depot Operating; HoldCo; BTM International Holdings I LLC; BTM International Holdings II LLC; Cash Ramp LLC; Digital Gold Ventures Inc.; Express Vending Inc.; Intuitive Software LLC; Kiosk HoldCo LLC; Kiosk Technicians, LLC; Kutt, Inc.; Lux Vending Kiosk, LLC; MCA Services Group, LLC; and Mintz Assets, Inc.

65. "***Disallowed***" means, with respect to any Claim, or any portion thereof, that is not Allowed, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is considered Disallowed and shall be expunged without further action by the Debtors or the Liquidation Trustee, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court; *provided, further,* that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order or by agreement between the holder thereof and the Debtors or the Liquidation Trustee, as applicable.

66. "***Disbursing Agent***" means the Entity or Entities selected by the Liquidation Trustee to make or facilitate distributions pursuant to the Combined Disclosure Statement and Plan.

67. "***Disclosure Statement Motion***" means the *Emergency Motion for Entry of an Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 305].

68. "***Disputed***" means, with respect to any Claim or Interest, that such Claim or Interest (a) is not yet Allowed, (b) is not Disallowed by the Combined Disclosure Statement and Plan, the Bankruptcy Code, or a Final Order, as applicable, (c) as to which a dispute is being adjudicated by the Bankruptcy Court, including a dispute about the priority or the extent of the secured amount of such claim under section 506(a) of the Bankruptcy Code or otherwise, or another court of competent jurisdiction in accordance with non-bankruptcy law, or (d) is or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim is or has been timely Filed in accordance with the Bar Date Order or the Combined Disclosure Statement and Plan.

69. "***Dissolution Transactions***" means the transactions that the Debtors or Liquidation Trustee determine to be necessary or appropriate to implement the terms of the Combined Disclosure Statement and Plan and ultimately result in the dissolution or other termination of the legal entities that comprise the Debtors.

70. "***Distribution Date***" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Liquidation Trustee, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Combined Disclosure Statement and Plan.

71. "*Distribution Record Date*" means 5:00 p.m., Central Time, on the Confirmation Date.

72. "*Docket*" means the docket in the Chapter 11 Cases maintained by the Clerk.

73. "*Effective Date*" means the day, as determined by the Debtors in consultation with the Committee, that is the Business Day as soon as reasonably practicable after all conditions precedent to the effectiveness of the Combined Disclosure Statement and Plan set forth herein have been satisfied or waived in accordance with the requirements of the Combined Disclosure Statement and Plan.

74. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

75. "*Equipment Financing Agreements*" means, collectively, the VFS Financing Agreement and the NFS Financing Agreement.

76. "*Equipment Financing Agreement Claim*" means any Claim, including, for the avoidance of doubt, Equipment Financing Agreement Deficiency Claims, arising under, derived from, secured by, based on, or related to the Equipment Financing Agreements or any other agreement, instrument, or document executed at any time in connection therewith, or any guaranty thereof.

77. "*Equipment Financing Agreement Collateral*" means, collectively, the NFS Collateral and VFS Collateral.

78. "*Equipment Financing Agreement Collateral Proceeds*" means Cash in an amount attributable to any net proceeds of the sale of the applicable Equipment Financing Agreement Collateral, as determined by the Debtors in accordance with the Bidding Procedures Order.

79. "*Equipment Financing Agreement Deficiency Claims*" has the meaning set forth in Article IV.B of the Combined Disclosure Statement and Plan.

80. "*Equipment Financing Liens*" means, collectively, the NFS Liens and VFS liens.

81. "*Equity Interest*" means all Interests arising from or related to the Common Stock.

82. "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

83. "*Exculpated Parties*" means the following Entities, each in their respective capacities as such: (a) the Debtors; (b) the Investigation Subcommittee; (c) the Committee; and (d) the members of the Committee and any other statutory committee appointed in the Chapter 11 Cases.

84.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

85.     "*Fifth Interim Cash Collateral Order*" means the *Fifth Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 488].

86.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

87.     "*Final Cash Collateral Order*" means the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 516].

88.     "*Final Order*" means as applicable, an order, or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

89.     "*First Day Declaration*" means the *Declaration of Thomas Studebaker in Support of the Chapter 11 Cases and First-Day Motions* [Docket No. 23].

90.     "*First Interim Cash Collateral Order*" means the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Second Interim Hearing, and (V) Granting Related Relief* [Docket No. 44].

91.     "*Fourth Interim Cash Collateral Order*" means the *Fourth Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 454].

92.     "*General Bar Date*" means July 21, 2026, at 5:00 p.m. (prevailing Central Time), pursuant to the Bar Date Order.

93.     "*General Unsecured Claim*" means any Claim against any Debtor that is not a Secured Claim, Administrative Claim, Professional Claim, Priority Tax Claim, Senior Priority Lien Claim, Other Priority Claim, Adequate Protection Claim, Term Loan Claim, Equipment Financing Agreement Claim, Intercompany Claim, or Subordinated Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases or assumed by a Purchaser under a 363 Asset Purchase Agreement.

94. "*Governmental Bar Date*" means November 23, 2026, at 5:00 p.m. (prevailing Central Time), pursuant to the Bar Date Order.

95. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

96. "*Hilco*" means, collectively, Hilco Corporate Finance, LLC, Hilco Commercial Industrial, LLC, Hilco Real Estate, LLC, and Hilco IP Services, LLC.

97. "*Holder*" means a Person or Entity holding a Claim against or Interest in a Debtor, as applicable.

98. "*HoldCo*" means BT HoldCo LLC.

99. "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

100. "*Independent Member*" means Ivona Smith in her capacity as independent member of the Board and the Investigation Subcommittee.

101. "*Information Officer*" means Alvarez & Marsal Canada Inc. and their counsel, Blake, Cassels & Graydon LLP.

102. "*Insurance Contract*" means any policy of insurance, including the D&O Liability Insurance Policies, under which any of the Debtors could have asserted, did assert or may in the future assert a right to coverage for any claim, together with any other contracts, documents or instruments that pertain or relate to such policy.

103. "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate against a Debtor or an Affiliate.

104. "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

105. "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

106. "*Interim Cash Collateral Orders*" means, together, the First Interim Cash Collateral Order, the Second Cash Collateral Order, the Third Interim Cash Collateral Order, the Fourth Interim Cash Collateral Order, and the Fifth Interim Cash Collateral Order.

107. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 406].

81

108. "*Investigation*" means the investigation by the Investigation Subcommittee into whether the Debtors hold any valuable claims or Causes of Action, including, without limitation, claims against current or former officers, directors, insiders, or third parties.

109. "*Investigation Subcommittee*" means the subcommittee of the Restructuring Committee, consisting of Ivona Smith, with the authority to conduct the Investigation and to make a final determination of appropriate action with respect to any Claims or Causes of Action that are the subject of the Investigation.

110. "*IRS*" means the Internal Revenue Service.

111. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

112. "*Kroll*" means Kroll Restructuring Administration LLC.

113. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

114. "*Liquidation Trust*" means the trust established on the Effective Date in accordance with the Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

115. "*Liquidation Trust Accounts*" means the bank accounts to be held in the name of the Liquidation Trustee that are created pursuant to the Combined Disclosure Statement and Plan and the Liquidation Trust Agreement.

116. "*Liquidation Trust Assets Allocation*" has the meaning set forth in Article V.G.3 of the Combined Disclosure Statement and Plan.

117. "*Liquidation Trust Agreement*" means that certain agreement establishing and governing the Liquidation Trust.

118. "*Liquidation Trust Assets*" means all Assets held by the Debtors as of the Effective Date (including the Minimum Trust Funding") (other than the Non-Contributed Assets), which shall be treated as transferred to and beneficially owned by the Liquidation Trust as of the Effective Date.

119. "*Liquidation Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Term Loan Claims, and, if applicable, Holders of Allowed Equipment Financing Agreement Deficiency Claims.

120. "*Liquidation Trust Expenses*" means the actual expenses (including any taxes imposed on or payable by the Liquidation Trust or in respect of the Liquidation Trust Assets and professional fees) incurred by the Liquidation Trust, any professionals retained by the Liquidation Trust, and any additional amount determined to be necessary by the Liquidation Trustee to adequately reserve for the operating expenses of the Liquidation Trust that shall be paid out of the Liquidation Trust Assets.

82

121.     "*Liquidation Trust Interests*" means, together, the Series A Liquidation Trust Interests and the Series B Liquidation Trust Interests.

122.     "*Liquidation Trust Oversight Board*" means a four-member board with membership appointed by the Committee on the Effective Date, one member of which shall be the Term Loan Agent, pursuant to the Liquidation Trust Agreement.

123.     "*Liquidation Trustee*" means Thomas A. Pitta.

124.     "*Minimum Trust Funding*" means no less than $550,000 in Cash.

125.     "*NFS*" means NFS Leasing, Inc.

126.     "*NFS Collateral*" means certain collateral and all proceeds and products thereof, in each case whether then owned or existing or thereafter acquired or arising under the NFS Financing Agreement.

127.     "*NFS Financing Agreement*" means that certain *Master Equipment Lease* dated as of November 22, 2021 by and between NFS and Lux Vending, LLC (n/k/a Bitcoin Depot Operating) (as amended or otherwise modified prior to the Petition Date).

128.     "*NFS Liens*" means NFS's asserted security interest in, and lien on the NFS Collateral.

129.     "*Non-Contributed Asset*" means (i) property of any Debtor's Estate that is abandoned under section 554 of the Bankruptcy Code prior to the Effective Date, and (ii) any asset, right, arrangement, non-executory contract, or other property that is listed in the Plan Supplement as a Non-Contributed Asset.

130.     "*Non-Debtor Affiliates*" means Brazil BTM Limitada; BTM Solutions India Privat Ltd.; NZ BTM Ltd.; AUS BTM Pty. Ltd.; UK BTM Ltd.; HK BTM Ltd.; and Bitcoin Depot, S.de.R.L. de C.V.

131.     "*Non-Released Parties*" means (a) Brandon Mintz; (b) C. Scott Buchanan; (c) each Debtor's former managers, officers, and employees in each case prior to the Petition Date; and (d) any Entity or Person that is not a Released Party.

132.     "*Non-Voting Classes*" means all Classes under this Combined Disclosure Statement and Plan other than Classes 3, 4, and 5.

133.     "*Notice of Adjournment of Auction*" means, together, the *Notice of Adjournment of Auction for the Sale of the Debtors' Assets Free and Clear of any and all Claims, Interests, and Encumbrances* [Docket No. 313], and any other subsequent notices filed on the docket of the Bankruptcy Court further adjourning the Auction.

134.     "*Notice of Non-Voting Status*" means the notice to Holders of Claims or Interests not entitled to vote on this Combined Disclosure Statement and Plan informing those Holders of their non-voting status.

83

135.     "*Notice of Winning Bidder*" has the meaning set forth in the Bidding Procedures Order.

136.     "*Opt-Out Deadline*" means July 30, 2026 at 5:00 p.m. (prevailing Central Time).

137.     "*Opt-Out Form*" means the form received by Holders of Claims and Interests who receive a Notice of Non-Voting Status that allows such Holders to opt out of the releases provided and disclosed in the Combined Disclosure Statement and Plan.

138.     "*Order*" means an order or judgment of the Bankruptcy Court as entered on the Docket.

139.     "*Other Priority Claims*" means any Claim that is: (a) entitled to priority of payment under section 507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim; or (b) secured by a CCAA Court-ordered charge on the Canadian Assets in the Canadian Proceedings.

140.     "*Other Priority Claims Reserve Amount*" means the estimated amount to be distributed in payment of Allowed Other Priority Claims.

141.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

142.     "*Petition Date*" means the date on which each Debtor filed its voluntary petition for relief commencing the Chapter 11 Cases.

143.     "*Plan Objection Deadline*" means the date the Bankruptcy Court establishes as the deadline to File an objection to Confirmation of the Combined Disclosure Statement and Plan.

144.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Combined Disclosure Statement and Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than seven (7) days before the Plan Objection Deadline (*provided*, *however,* that the identity of the Released Parties will be filed no later than July 7, 2026), including the following, as applicable: (a) the Schedule of Retained Causes of Action; (b) a schedule identifying the Non-Contributed Assets; (c) the Liquidation Trust Agreement; (d) the Schedule of Retained Executory Contracts and Unexpired Leases; (d) the Liquidation Analysis; (e) a summary of the findings of the Investigation Subcommittee; (f) the identity of the Released Parties; (g) the identity of, and the proposed compensation to be paid to, the Liquidation Trustee; (h) and the Term Loan Settlement Term Sheet.

145.     "*Post-Confirmation Report*" means post-confirmation reports in accordance with the U.S. Trustee's Region 7 Guidelines for Debtors-in-Possession.

146.     "*Portage Point*" means Triple P TRS, LLC.

147.  "**Priority Tax Claim**" means a Claim held by a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

148.  "**Priority Tax Claims Reserve Amount**" means the estimated amount to be distributed in payment of Allowed Priority Tax Claims.

149.  "**Pro Rata**" means the proportion that an Allowed Claim in Classes 4, and 5 for each Debtor bears to the aggregate amount of all Allowed Claims in such Classes for each such Debtor.  Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their face amount for purposes of calculating *Pro Rata* distributions of property to Holders of Allowed Claims in such Class, and Disputed Claims that do not specify an amount shall be treated as Allowed Claims in an amount to be determined in the reasonable discretion of the Debtors or the Liquidation Trustee, as applicable, for purposes of calculating *Pro Rata* distributions of property to Holders of Allowed Claims in such Class.

150.  "**Professional**" means any professional Person employed in the Chapter 11 Case pursuant to section 327, 328 or 1103 of the Bankruptcy Code pursuant to an Order of the Bankruptcy Court and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

151.  "**Professional Claim**" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Professional Claim.

152.  "**Professional Claim Reserve Amount**" means the reasonable estimate of the aggregate amount of Allowed Professional Claims relating to the period prior to the Effective Date as well as an estimated aggregate amount related to the preparation, filing and prosecution of fee applications following the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article III.D of the Combined Disclosure Statement and Plan.

153.  "**Professional Fee Escrow Account**" means the escrow account at Kroll the Debtors were authorized and directed to fund pursuant to the Cash Collateral Orders for the sole purpose of reserving for and paying unpaid Allowed Professional Claims which will be funded by the Debtors with Cash as soon as possible after Confirmation and not later than the Effective Date in an amount equal to the Professional Claim Reserve Amount.  For the avoidance of doubt, (i) to the extent that the Professional Fee Escrow Account is not sufficient to satisfy in full all Allowed Professional Claims, such Allowed Professional Claims shall nevertheless be paid in full in Cash by the Liquidation Trustee from other available Cash in the Claims Reserve prior to making any distributions to the Holders of Allowed Claims, and (ii) any fees and expenses by Professionals in connection with preparing fee applications shall be paid by the Liquidation Trustee from the

85

Professional Fee Escrow Account or, if exhausted, from other available Cash in the Claims Reserve prior to making any distributions to the Holders of Allowed Claims.

154. "**_Proof of Claim_**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

155. "**_Purchaser_**" means any Entity or Entities which will acquire any Assets in connection with a 363 Asset Sale.

156. "**_Rejection Damages Bar Date_**" means the deadline to File a Proof of Claim for damages relating to the rejection of an Executory Contract or Unexpired Lease, which, pursuant to the Bar Date Order, is the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (prevailing Central Time) on the date that is 30 days after the effective date of rejection of any executory contracts or unexpired leases of the Debtors and/or abandonment of property in connection therewith.

157. "**_Related Party_**" means, with respect to any Entity, such Entity's predecessors, successors, assigns, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective managed accounts or funds or investment vehicles, and each of their respective current and former direct and indirect equity holders, officers, directors, managers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, in each case acting in such capacity.

158. "**_Released Party_**" means each of the following solely in its, his, or her capacity as such and to the extent permitted by applicable law (but excluding, for the avoidance of doubt, the Non-Released Parties): (a)(i) the Debtors; (ii) the Estates; (iii) each Debtor's current and former directors, each Debtor's managers, officers, and employees in each case as of the Petition Date and solely to the extent such parties are individuals, the Investigation Subcommittee, the Restructuring Committee, the Chief Restructuring Officer, and the Information Officer; (b) the Committee and its members in their capacity as such; and (c) all retained Professionals in these Chapter 11 Cases, including Professionals retained by the Debtors and their Estates, the Committee, and the Investigation Subcommittee; provided, however, that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases set forth in Article IX of the Combined Disclosure Statement and Plan; or (y) timely objects to the releases set forth in Article IX of the Combined Disclosure Statement and Plan and such objection is not resolved before Confirmation.

159. "**_Releasing Parties_**" means each of the following, solely in its capacity as such: (a)(i) the Debtors; and (ii) the Estates; (b)(i) all Holders of Claims and Interests that vote to accept the Combined Disclosure Statement and Plan but do not opt out of granting the releases set forth herein; (ii) all Holders of Claims or Interests whose vote to accept or reject the Combined Disclosure Statement and Plan is solicited but that do not vote either to accept or to reject the Combined Disclosure Statement and Plan and do not opt out of granting the releases set forth herein; (iii) all Holders of Claims or Interests that are presumed to accept the Combined Disclosure Statement and Plan but do not opt out of granting the releases set forth herein; (iv) with respect to

86

each of the foregoing parties in clauses (b)(i) through (b)(iii), each of such Entity's current and former Affiliates; (v) with respect to each of the foregoing parties in clauses (b)(i) through (b)(iv), each of such Entity's Related Party for which such Entity is legally entitled to bind such Related Party to the releases contained in the Combined Disclosure Statement and Plan under applicable law (in each case, solely in its capacity as such); and (c)(i) the members of any statutory committee appointed in the Chapter 11 Cases, solely in their capacity as members of such Committee (and not in their individual capacities) and (ii) such committee's Professionals, in each case solely with respect to Claims and Causes of Action held in such capacity.

160. "***Restructuring Committee***" means the special committee of the board of directors of Bitcoin Depot, consisting of Alex Holmes and Ivona Smith, which Restructuring Committee is tasked with, among other things, advising the full Board on matters related to the evaluation of Bitcoin Depot's strategic alternatives and approving conflict matters.

161. "***Retained Causes of Action***" means those Causes of Action identified on the Schedule of Retained Causes of Action. The Retained Causes of Action will not include any Acquired Assets or claims or Causes of Action released pursuant to the Combined Disclosure Statement and Plan or by separate agreement of the Debtors and approval of the Bankruptcy Court.

162. "***Retained Executory Contracts and Unexpired Leases***" means those Executory Contracts and Unexpired Leases identified on the Schedule of Retained Executory Contracts and Unexpired Leases. The Retained Executory Contracts and Unexpired Leases will not include any Acquired Assets.

163. "***Sale Objection Deadline***" means the deadline set by the Bankruptcy Court pursuant to the Bidding Procedures Order for parties in interest to object to any proposed 363 Asset Sale.

164. "***Sale Order***" means any Order approving the sale of the Acquired Assets.

165. "***Sales Process***" means, together, the sales process for the Debtors' Assets conducted pursuant to the Bidding Procedures Order.

166. "***Schedule of Retained Causes of Action***" means the schedule of Retained Causes of Action that are to be retained by the Debtors and the Estates and contributed to the Liquidation Trust, which schedule will be filed with the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

167. "***Schedule of Retained Executory Contracts and Unexpired Leases***" means the schedule of Retained Executory Contracts and Unexpired Leases that are to be retained by the Debtors and the Estates and vested in the Post-Sale Estates, which schedule will be filed with the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

168. "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial conformance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

169. "*Second Interim Cash Collateral Order*" means the Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 184].

170. "*Secured*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Combined Disclosure Statement and Plan as a Secured Claim.

171. "*Senior Priority Liens*" means all enforceable, valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, as determined by a Final Order (which may include the Final Cash Collateral Order or the Confirmation Order) or by agreement between the Holder of such Lien and the Debtors or the Liquidation Trustee, other than Term Loan Liens and Equipment Financing Liens.

172. "*Senior Priority Lien Claims*" means any Claims Secured by Senior Priority Liens.

173. "*Senior Priority Lien Claims Reserve Amount*" means the estimated amount to be distributed in payment of Allowed Senior Priority Lien Claims.

174. "*Series A Liquidation Trust Interests*" means the beneficial interests in the Liquidation Trust and rights with respect to the Liquidation Trust Assets to be distributed to the Holders of Allowed Term Loan Claims.

175. "*Series B Liquidation Trust Interests*" means the beneficial interests in the Liquidation Trust and rights with respect to the Liquidation Trust Assets to be distributed on a *Pro Rata* basis to the Holders of Allowed General Unsecured Claims and, if applicable, Holders of Allowed Equipment Financing Agreement Deficiency Claims.

176. "*Silverview*" means Silverview Credit Partners LP.

177. "*Solicitation Package*" means all ballots, notices, and other materials used by the Debtors in respect of the solicitation of votes to accept or reject the Combined Disclosure Statement and Plan.

178. "*Specified Released Parties*" means Brian Sweatt, Christopher Ryan, David Gray, and W. Alexander Holmes.

179. "*Statutory Fees*" means any fees due and payable pursuant to 28 U.S.C. § 1930, together with the statutory rate of interest set forth in 31 U.S.C. § 3717 to the extent applicable.

180. "***Subordinated Claim***" means any Claim, whether or not the subject of an existing lawsuit, (a) arising from rescission of a purchase or sale of any debt or equity securities of the Debtors issued as Interests existing immediately prior to the Effective Date; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar claims arising from the purchase or sale of any such security, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) for reimbursement, contribution, or indemnification on account of any such Claim.

181. "***Tax***" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, gross margin, sales, use, ad valorem, value added, transfer, franchise, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, escheat, unclaimed property or windfall, custom, duty or other tax, governmental fee or like assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

182. "***Tax Code***" means the Internal Revenue Code of 1986, as amended.

183. "***Term Loan Agent***" means Silverview.

184. "***Term Loan Agreement***" means that certain Second Amended and Restated Credit Agreement, dated as of November 1, 2024 (as amended or otherwise modified prior to the Petition Date), by and among (a) Term Loan Borrower, (b) HoldCo, (c) the subsidiary guarantors party thereto, (d) the Term Loan Lenders, and (e) the Term Loan Agent.

185. "***Term Loan Borrower***" means Kiosk HoldCo LLC.

186. "***Term Loan Claim***" means any Claim arising under, derived from, secured by, based on, or related to the Term Loan Facility or any other agreement, instrument, or document executed at any time in connection therewith, or any guaranty thereof.

187. "***Term Loan Documents***" means the Term Loan Agreement and Loan Documents (as defined in the Term Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended or otherwise modified prior to the Petition Date.

188. "***Term Loan Facility***" means the credit facility evidenced by the Term Loan Documents.

189. "***Term Loan Lenders***" means the lenders from time-to-time party to the Term Loan Agreement.

190. "***Term Loan Secured Parties***" means the Term Loan Agent and the Term Loan Lenders.

191. "***Term Loan Settlement***" means the negotiated compromise between the Debtors, Term Loan Secured Parties, and Committee, resolving any Challenge(s) or potential Challenge(s) by the Debtors and/or the Committee.

192. "***Term Loan Settlement Amount***" means $500,000.

193. "***Term Loan Settlement Parties***" means the Debtors, the Term Loan Secured Parties, and the Committee.

194. "***Term Loan Settlement Term Sheet***" means the term sheet memorializing the Term Loan Settlement which will is attached as **Exhibit 1** to the Final Cash Collateral Order.

195. "***Third Interim Cash Collateral Order***" means the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Confirming Application of the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 327].

196. "***Treasury Regulations***" means the treasury regulations promulgated under the Tax Code.

197. "***UCC Settlement***" means the settlement reached by and between the UCC Settlement Parties as set forth herein.

198. "***UCC Settlement Parties***" means the Debtors and the Committee.

199. "***U.S.***" means the United States of America.

200. "***U.S. Trustee***" means the Office of the United States Trustee for the Southern District of Texas.

201. "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

202. "***Unimpaired***" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

203. "***V&E***" means Vinson & Elkins LLP.

204. "***VFS***" means VFS LLC.

205. "***VFS Collateral***" means certain collateral and all proceeds and products thereof, in each case whether then owned or existing or thereafter acquired or arising under the VFS Financing Agreement.

206. "**VFS Financing Agreement**" means that certain *Master Equipment Finance Agreement* dated as of June 29, 2021 by and between VFS and Lux Vending, LLC (n/k/a Bitcoin Depot Operating) (as amended or otherwise modified prior to the Petition Date).

207. "**VFS Liens**" means VFS's asserted security interest in, and lien on the VFS Collateral.

208. "**Voting Deadline**" means July 30, 2026 at 5:00 p.m. (CT) (unless such time is extended by the Debtors).

209. "**Wind Down**" means the process following the Effective Date for (i) making distributions pursuant to the Combined Disclosure Statement and Plan; (ii) pursuing, settling, or abandoning Causes of Action; (iii) implementing the Dissolution Transactions; and (iv) winding-down, dissolving, and liquidating the Estates.

210. "**Wind Down Budget**" means the budget, which shall be reasonably satisfactory to the Committee, pursuant to which the Liquidation Trust shall (i) resolve all Disputed Claims, (ii) make all distributions to Holders of Allowed Claims in accordance with the terms of the Combined Disclosure Statement and Plan, (iii) implement the Wind Down; and (iv) otherwise implement the Combined Disclosure Statement and Plan and carry out its duties hereunder subject to and to the extent set forth in the Combined Disclosure Statement and Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court entered in connection therewith.

## B.     Rules of Interpretation.

For purposes hereof: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "*Articles*" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Combined Disclosure Statement and Plan in its entirety rather than to a particular portion of the Combined Disclosure Statement and Plan; (viii) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the rights and obligations arising pursuant to the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Combined Disclosure Statement and Plan; (x) unless otherwise specified

herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xi) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Docket; (xiii) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xiv) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (xv) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (xvi) any immaterial effectuating provisions may be interpreted by the Debtors or the Liquidation Trustee in such a manner that is consistent with the overall purpose and intent of the Combined Disclosure Statement and Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xvii) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

Dated:  July 30, 2026

Bitcoin Depot Inc.,
on behalf of itself and all other Debtors

By:  */s/ Thomas Studebaker*
Thomas Studebaker
Chief Restructuring Officer

**Exhibit B**

**Proposed Notice of Effective Date**

4903-6728-2372

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90528 (CML)** |
| | § | |
| **BITCOIN DEPOT INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF (I) ENTRY
OF ORDER CONFIRMING PLAN
OF LIQUIDATION OF BITCOIN DEPOT INC.
AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE AND (II) OCCURRENCE OF THE EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on August [●], 2026, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***"), entered the order [Docket No. ●] (the "***Confirmation Order***") confirming the *Debtors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 570] (as amended, modified, or supplemented, the "***Plan***").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **August [●], 2026**.

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in these Chapter 11 Cases can be found on the docket of these Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Kroll, at https://restructuring.ra.kroll.com/bitcoindepot.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain release, exculpation, injunction, and related provisions in Article IX of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Liquidation Trust, the Liquidation Trustee, any Holder of a Claim against or Interest in the Debtors and such Holder's respective successors, assigns, and designees, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity voted to accept the Plan.

---

[1]   The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2]   Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

4903-6728-2372

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Expense Claims shall be [●], 2026, and the deadline for filing requests for payment of Professional Fee Claims shall be [●], 2026.[3]

**PLEASE TAKE FURTHER NOTICE** that the Bar Date for filing claims based on the rejection of Executory Contracts or Unexpired Leases is the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Central Time) on the date that is 30 days following service of an order (including the Confirmation Order) approving the rejection of any executory contract or unexpired lease of the Debtors.  To the extent any executory contract or unexpired lease is rejected pursuant to the terms of the Plan, the Rejection Damages Bar Date shall be 30 days after service of this *Notice of (I) Entry of Order Confirming Plan of Liquidation of Bitcoin Depot Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code and (II) Occurrence of the Effective Date*.

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Bankruptcy Court and serve a copy of such request for notice on counsel to the Liquidation Trust.  You must do this even if you filed such a notice prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

---

[3]   The deadline for filing requests for payment of Administrative Expense Claims shall be: (a) for Administrative Claims that are not Professional Fee Claims, 30 days after the Effective Date; and (b) for Administrative Claims that are Professional Fee Claims, 45 days after the Effective Date.

2

**Exhibit B**

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90528 (CML)** |
| | § | |
| **BITCOIN DEPOT INC.,** *et al.,* | § | **(Chapter 11)** |
| | § | |
| **Debtors.¹** | § | **(Jointly Administered)** |
| | § | |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND
ORDER GRANTING FINAL APPROVAL
OF DISCLOSURE STATEMENT AND CONFIRMING
PLAN OF LIQUIDATION OF BITCOIN DEPOT INC. AND
ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

having:

    a. Commenced, on May 17, 2026 (the "***Petition Date***"), their respective chapter 11 cases (the "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

    b. operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c. filed, on July 17, 2026, the *Affidavit of Service* [Docket No. 485] with respect to the *Order (I) Establishing Bar Dates and Procedures; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 331] (the "***Bar Date Affidavit of Service***");

    d. filed, on June 18, 2026, the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 304];

    e. filed, on June 18, 2026, the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 305];

    f. filed, on June 23, 2026, the *Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 318];

---

¹ The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

4903-6728-2372

g. filed, on July 13, 2026, the *Notice of Adjournment of Combined Hearing to Commence on August 10, 2026 at 1:00 pm (Prevailing Central Time)* [Docket No. 470] (the "***Confirmation Hearing Notice***"), which contained notice of the date and time set for the hearing to consider Confirmation of the Plan and final approval of the Disclosure Statement (the "***Combined Hearing***") and the deadline for filing objections to Confirmation of the Plan or final approval of Disclosure Statement;

h. filed, on July 16, 2026, the *Certificate of Publication* of the Combined Hearing Notice in the New York Times [Docket No. 480] (the "***Publication Affidavit of Service***");

i. filed, on July 16, 2026, the *Notice of Filing of Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 484] (the "***Initial Plan Supplement***");

j. filed, on July 20, 2026, the *Notice of Filing of Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 493] (the "***First Amended Plan Supplement***");

k. filed, on July 30, 2026, the *Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 570] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "***Combined Disclosure Statement and Plan***" or, separately in relevant part, the "***Disclosure Statement***" or the "***Plan***") which is attached hereto as **Exhibit A**;[2]

l. filed, on August 4, 2026, the *Notice of Filing of Second Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 589] (the "***Second Amended Plan Supplement***").

m. filed, on August 4, 2026, the *Affidavit of Service of Solicitation Materials* [Docket No. 587] (the "***Solicitation Affidavit of Service***");

n. filed, on August 4, 2026, the *Affidavit of Service of Amended Supplemental Notice* [Docket No. 595] (the "***Supplemental Notice Affidavit of Service***");

o. filed, on August 4, 2026, the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast On the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 590] (the "***Voting Declaration***");

p. filed, on August 4, 2026, the *Debtors' Memorandum of Law in Support of Approval and Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 591] (the "***Confirmation Brief***");

q. filed, on August 5, 2026, the *Declaration of Thomas Studebaker in Support of Plan Confirmation* [Docket No. 593] (the "***Studebaker Confirmation Declaration***");

r. filed on August 6, 2026, *Affidavit of Service of Combined Hearing Notice* [Docket No. 597] (the "***Combined Hearing Notice Affidavit of Service***", and collectively with the Publication Affidavit of Service, the Bar Date Affidavit of Service, the Solicitation Affidavit of Service, and the Supplemental Notice Affidavit of Service, the "***Affidavits of Service***");

s. filed, on August 7, 2026, the *Declaration of Ivona Smith, Sole Member of the Investigation Subcommittee of the Restructuring Committee of Bitcoin Depot Inc., in Support of the Debtors' First Amended Combined Disclosure Statement and*

---

[2] Capitalized terms used but not defined in this Confirmation Order shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan.

2

*Chapter 11 Plan of Liquidation* [Docket No. 605] (the "**Smith Confirmation Declaration**" and together with the Voting Declaration and the Studebaker Confirmation Declaration, the "**Declarations**"); and

t.  filed, on August 9, 2026, the *Notice of Filing of Third Amended Supplement to the Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 611] (the "**Third Amended Plan Supplement**" and together with the Initial Plan Supplement, First Amended Plan Supplement, and Second Amended Plan Supplement, the "**Plan Supplement**").

The Bankruptcy Court having:

a.  entered, on June 25, 2026, the *Order (I) Establishing Bar Dates and Procedures; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 331] (the "**Bar Date Order**");

b.  entered, on June 25, 2026, the *Order (I) Scheduling a Combined Hearing; (II) Establishing Objection Deadlines; (III) Approving the Solicitation Materials and Tabulation Procedures; (IV) Conditionally Approving the Combined Disclosure Statement and Plan; and (V) Granting Related Relief* [Docket No. 332] (the "**Solicitation Procedures Order**");

c.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Confirmation Hearing Notice, the Affidavits of Service, and all pleadings filed with respect to final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights with respect thereto, if any, filed on the docket in these Chapter 11 Cases or made at the Combined Hearing;

d.  held the Combined Hearing on August 10, 2026, at 1:00 p.m. Central Time;

e.  considered the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto; and

f.  considered all oral representations, Affidavits of Services, testimony, documents, filings, and other evidence regarding Confirmation of the Plan and the objections thereto.

**NOW, THEREFORE**, it appearing to the Bankruptcy Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, it hereby is **DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT**:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      **Findings of Fact and Conclusions of Law.** The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "***Confirmation Order***") constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.      **Jurisdiction, Venue, and Core Proceeding.**      The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Bankruptcy Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Final approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with section III of the United States Constitution.

C.      **Eligibility for Relief.** The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.      **Commencement and Joint Administration of These Chapter 11 Cases.** On the Petition Date, each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases. On May 28, 2026, the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***") appointed an Official

4

Committee of Unsecured Creditors (the "***Committee***") [Docket No. 101].  In accordance with the *Amended Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 34], the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

      **E.**      **Judicial Notice.**      The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, all declarations, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

      **F.**      **Notice.**

      (i)    Due, timely, proper, and adequate notice of the Plan, the Claims Bar Date, and the Combined Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan or opting out of the Releases (as defined herein), has been provided substantially in accordance with the Solicitation Procedures Order and the Bar Date Order, as set forth in the Voting Declaration and the Affidavits of Service.

      (ii) Such notice was appropriate and satisfactory based upon the facts and circumstances of these Chapter 11 Cases and pursuant to sections 1125, 1126(b)(1), and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely, and adequate notice of the Combined Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy laws, rules, and regulations.

G.      **Solicitation.**

(i)     The Solicitation Packages, the Opt-Out Form, the Notice of Non-Voting Status, the Combined Hearing Notice (each as defined in the Solicitation Procedures Order), and all other materials approved by and/or transmitted pursuant to the Solicitation Procedures Order (collectively, the "*Solicitation Materials*") were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and all other applicable rules, laws, and regulations applicable to such solicitation.  Transmission and service of the Solicitation Materials was timely, adequate, and sufficient.  No further notice is required.

(ii)    As set forth in the Voting Declaration, on June 30, 2026, the Solicitation Package was transmitted to and served on the eligible Holders of Claims in Classes 3, 4, and 5, which were the only Classes of Claims entitled to vote to accept or reject the Plan (the "*Voting Classes*").

(iii)   The Holders of Claims in the Voting Classes received Ballots.  The form of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for the Holders of Claims in the Voting Classes.  The instructions on each Ballot advised that for the Ballot to be counted, the Ballot had to be properly executed, completed, and delivered to the Voting Agent so that it was actually received by the Voting Agent on or before the Voting Deadline.  The period during which the Debtors solicited acceptance of the Plan was a reasonable period of time for the Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

(iv)    The Debtors were not required to solicit votes from the Holders of Claims in Classes 1 or 2 (collectively, the "*Unimpaired Classes*"), as each such Class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

6

Code.  The Holders of Claims in Classes 1 and 2 received the Notice of Non-Voting Status, the Combined Hearing Notice, and the Opt-Out Forms.

(v)   The Debtors were not required to solicit votes from the Holders of Claims or Interests in Classes 6, 7, 8, or 9, as the Holders of Claims or Interests in such Classes are not entitled to receive distributions on account of their Claims or Interests under the Plan and, thus, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and were not entitled to vote to accept or reject the Plan.  The Holders of Claims or Interests in Classes 6, 7, 8, and 9 received the Notice of Non-Voting Status and the Combined Hearing Notice.

(vi) As described in and as evidenced by the Voting Declaration, the transmittal and service of the Solicitation Materials (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances and no other or further Solicitation was or shall be required. The Solicitation complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures the Solicitation Procedures Order, and any other applicable rules, laws, and regulations governing the adequacy of disclosure in connection with such Solicitation. The applicable Released Parties and Exculpated Parties acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable non-bankruptcy law, rules, and regulations, including with respect to solicitation of the acceptance or rejection of the Plan, and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan and this Confirmation Order.

H.    **Adequacy of the Disclosure Statement.**    The    Disclosure    Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all

applicable non-bankruptcy rules, laws, and regulations, including the Securities Act of 1933 (the "**Securities Act**"), as applicable, (b) contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is hereby approved on a final basis in all respects.  The Disclosure Statement also provides Holders of Claims and Interests and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

      **I.**      **Voting.**      On August 4, 2026, the Debtors filed the Voting Declaration with the Bankruptcy Court, certifying the method and results of the Ballots tabulated for the Voting Classes. The procedures used to tabulate Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and all other applicable rules, laws, and regulations. As set forth in the Plan and the Disclosure Statement, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Senior Priority Lien Claims) and Class 2 (Other Priority Claims) are Unimpaired and are conclusively presumed to have accepted the Plan. Holders of Class 7 (Subordinated Claims) and Class 9 (Equity Interests) are Impaired and deemed to have not accepted the Plan. Holders of Class 6 (Intercompany Claims) and Class 8 (Intercompany Interests) are either Unimpaired and are conclusively presumed to have accepted the Plan or Impaired and deemed to have not accepted the Plan, at the election of the Liquidation Trustee.  As evidenced by the Voting Declaration, each of the Voting Classes voted to accept the Plan.

**J.      Plan Supplement.**

(i)    The Debtors filed the Plan Supplement, consisting of: (a) the Schedule of Retained Causes of Action; (b) a schedule identifying the Non-Contributed Assets; (c) the Liquidation Trust Agreement; (d) the Schedule of Retained Executory Contracts and Unexpired Leases; (d) the Liquidation Analysis; (e) a summary of the findings of the Investigation Subcommittee; (f) the identity of the Released Parties; (g) the identity of, and the proposed compensation to be paid to, the Liquidation Trustee; (h) and the Term Loan Settlement Term Sheet.

(ii) The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Bankruptcy Court), complies with the terms of the Plan, and the Debtors provided good and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and all other applicable laws, rules, and regulations. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors are authorized to alter, amend, update, modify, or supplement the Plan Supplement on or before the Effective Date. The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and were conducted in good faith. No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

**K.      Bankruptcy Rule 3016.**      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents. The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.**    **Burden of Proof: Confirmation of the Plan.**    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.  Each witness who testified or submitted a declaration or proffer of testimony on behalf of the Debtors or any other party, in support of Confirmation of the Plan, in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**M.**    **Compliance with Bankruptcy Code Requirements: Section 1129(a)(1).** Based on the evidentiary record at the Combined Hearing, the Declarations, the contents of the Plan and the Disclosure Statement, the Affidavits of Service, the Confirmation Brief, and the Bankruptcy Court's judicial notice of the complete record of the Chapter 11 Cases, the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)    <u>Proper Classification: Sections 1122 and 1123(a)(1)</u>.    Article IV of the Plan designates Classes of Claims and Interests, other than Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated. The Plan designates nine Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims and Interests that are substantially similar to the other Claims and Interests within the applicable Class. Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Such classifications were not implemented for improper purposes, and such Classes do not unfairly

10

discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) <u>Specified Unimpaired Classes: Section 1123(a)(2)</u>.  Article IV of the Plan specifies that Claims in Class 1 and Class 2 are Unimpaired under the Plan, and Claims in Class 6 and Class 7 may be Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

(iii) <u>Specified Treatment of Impaired Classes: Section 1123(a)(3)</u>.      Article IV of the Plan specifies that the Claims and Equity Interests in Classes 3, 4, 5, 8 and 9 are Impaired under the Plan and that the Claims in Classes 6 and 7 may be Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv) <u>No Discrimination: Section 1123(a)(4)</u>.      Article IV of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v) <u>Adequate Means for Plan Implementation: Section 1123(a)(5)</u>.      The      Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation:  (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (b) appointment of the Liquidation Trustee; (c) the Wind Down; (d) to the extent necessary, the sale and abandonment of Assets by the Liquidation Trust; (e) the cancellation of certain existing securities, agreements, obligations, instruments, and Interests; (f) the release of Liens; (g) the continuation of existing director and officer liability insurance; (h) provisions governing the distributions under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code; and

11

(i) the general authority for the Debtors to take all actions necessary or appropriate to effectuate any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, as set forth more fully in Articles V, VI, and X of the Plan.

(vi) Voting Power of Equity Securities: Section 1123(a)(6). All existing voting securities will be canceled pursuant to the Plan, therefore the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii) Designation of Directors and Officers: Section 1123(a)(7). The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article V of the Plan describes the powers of the Liquidation Trustee, which shall initially be Thomas A. Pitta, as set forth and disclosed in the Plan and the Plan Supplement. The Liquidation Trust Agreement included with the Plan Supplement also discloses the compensation of the Liquidation Trustee. The foregoing appointment of the Liquidation Trustee is consistent with the interests of Holders of Claims and with public policy. The foregoing provisions regarding the Liquidation Trustee satisfy section 1123(a)(7) of the Bankruptcy Code.

(viii) Impairment / Unimpairment of Classes: Section 1123(b)(1). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article IV of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix) Assumption and Rejection of Executory Contracts and Unexpired Leases: Section 1123(b)(2). The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article VI of the Plan provides for the assumption or rejection, as applicable, of all of the executory contracts or unexpired leases of the Debtors that have not already been assumed or rejected in the Chapter 11 Cases; *provided however*, that nothing in the Plan shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and

12

directors, the Liquidation Trustee, and/or the Liquidation Trust. Nothing in the Plan shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

(x) Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action: Section 1123(b)(3).

a. The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable and entry into such compromises and settlements represented a sound exercise of the Debtors' business judgment. The foregoing includes, without limitation, the UCC Settlement and Term Loan Settlement and the corresponding settlement of Claims, Causes of Action, and controversies embodied in the Plan.

b. Article V of the Plan describes the terms of the UCC Settlement and Term Loan Settlement between the UCC Settlement Parties and Term Loan Settlement Parties. The provisions of the UCC Settlement and Term Loan Settlement constitute good faith compromises and settlements among the UCC Settlement Parties and Term Loan Settlement Parties of all Claims, Causes of Action, and controversies among such parties, are in consideration of the value

13

provided to the Estates by the UCC Settlement Parties and Term Loan Settlement Parties pursuant to the UCC Settlement and Term Loan Settlement and are fair and equitable and in the best interests of the Estates and their creditors. The Plan shall be deemed a motion to approve the UCC Settlement and Term Loan Settlement as a good faith compromise and settlement of all of the Claims, Causes of Action, and controversies described in the foregoing sentence pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable). Entry of this Confirmation Order constitutes the Bankruptcy Court's approval of the UCC Settlement and Term Loan Settlement, as well as a finding by the Bankruptcy Court that the UCC Settlement and Term Loan Settlement are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and reasonable. If a UCC Settlement Party or Term Loan Settlement Party is in breach of the terms of the UCC Settlement or Term Loan Settlement, the parties that are not in breach shall not be obligated to perform any obligations for the benefit of such breaching party.

c. Article IX.B of the Plan describes certain releases granted by the Debtors and their Estates (the "***Debtor Releases***"). The Debtor Releases are granted in exchange for the good and valuable consideration provided by the Released Parties, including the Cooperation Covenant, as applicable. The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases. For the reasons set forth on the record of these Chapter 11 Cases and the evidence proffered, admitted, or adduced at or prior to the Combined Hearing, such Debtor Releases are a necessary and integral part of the Plan. The Debtor Releases are "fair and equitable" and "in the best interests of the estate" and the Holders of Claims and Interests considering: (a) the probability of success in litigation of the released claims and Causes of Action given uncertainty in fact and law with respect to such claims and Causes of Action;

14

(b) the complexity and likely duration and expense of litigating the released claims and Causes of Action; and (c) the arm's-length negotiations that produced the settlements embodied in the Plan, including the UCC Settlement and Term Loan Settlement.  Additionally, the Debtor Releases are: (x) a good-faith settlement and compromise of the claims and Causes of Action released by Article IX.B of the Plan; (y) given and made, after due notice and opportunity for hearing; and (z) a bar to any of the Debtors, the Liquidation Trust, or the Liquidation Trustee (as applicable) or any other entity on behalf of the Debtors' Estates asserting any claim or Cause of Action released by Article IX.B of the Plan.

d.      Article IX.C of the Plan describes certain releases granted by the Releasing Parties (the "*Releases*").  The Releases provide finality for the Debtors, the Liquidation Trust, the Liquidation Trustee, and the Released Parties (as applicable) regarding the parties' respective historic relationships with the Debtors, obligations under the Plan, and with respect to the Liquidation Trust.  The Ballots unambiguously stated that the Plan contains the Releases, set forth the terms of the Releases, and provided the option for the Holder of a Claim in the Voting Class to elect to opt-out of granting the Releases by indicating such election on the Ballot.  The Notice of Non-Voting Status was transmitted to all Holders of Claims and Interests who were not entitled to vote on the Plan (Classes 1, 2, 6, 7, 8, and 9), and unambiguously stated that the Plan contains the Releases, set forth the terms of the Releases, and included an explanation of how to object to the Plan.  The Notice of Non-Voting Status sent to all Holders of Claims receiving a recovery under the Plan but not entitled to vote on the Plan (collectively, the "*Opt-Out Classes*") similarly and unambiguously included information regarding the Releases and detailed the process by which Holders of Claims in the Opt-Out Classes could opt-out of granting the Releases, including by submitting an Opt-Out Form by which such Holders could indicate that they wished to opt-out of

15

granting the Releases and providing instructions for, alternatively, opting-out of granting the Releases electronically through the Debtors' case website. The Confirmation Hearing Notice transmitted to all Holders of Claims and Interests included the terms of the Releases and an explanation of how to object to the Plan. In addition, the Confirmation Hearing Notice advised careful review of the release, exculpation, and injunction provisions of the Plan and emphasized in bold and capitalized typeface that any party who opposed the Plan, including the release, exculpation, or injunction provisions set forth therein, should timely file an objection to the Plan in accordance with the Confirmation Hearing Notice.

e.       The Releases are (a) consensual; (b) specific in language; (c) integral to the Plan; (d) a condition of the settlements embodied in the Plan; (e) in exchange for good and valuable consideration provided by the Released Parties; (f) not violative of the Bankruptcy Code or any applicable non-bankruptcy law; and (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Releases. The Releases are consensual because all parties in interest granting the Releases, including all Releasing Parties, were provided with extensive and sufficient notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan, and the process for opting-out of giving the Releases and the consequences for failing to timely do so, and all such parties were properly informed that the Plan contained release provisions that could affect such parties' rights.

f.       The Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Releases are conspicuous and

16

emphasized with boldface type in the Combined Disclosure Statement and Plan, the Ballots, the Opt-Out Form, the Notice of Non-Voting Status, and the Confirmation Hearing Notice.

g.      The Releases are integral to the Plan because they, *inter alia*, facilitated participation in both the formulation of the Plan and the chapter 11 process generally and were critical in incentivizing the parties to support the Plan.  As such, the Releases offer certain protections to parties that participated constructively in the Debtors' chapter 11 process by, among other things, supporting the Plan.

h.      The Releases are consistent with established practice in this jurisdiction and others because they are, among other things:  (a) consensual; (b) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Releases.

i.      The exculpation, described in Article IX.D of the Plan (the "***Exculpation***"), is appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.,* 48 F.4th 419 (5th Cir. 2022), because it was proposed in good faith and is appropriately limited in scope.  The Exculpated Parties reasonably relied upon the Exculpation provisions as a material inducement to engage in postpetition work for the Debtors that culminated in the Plan.  The record in the Chapter 11 Cases supports that the Exculpation is appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contains appropriate carve-outs for actions determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

j.      The injunction provision set forth in Article IX.E of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Releases, and the Exculpation and, by

17

extension, the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose. Subject in all respects to Article IX.E of the Plan, no Entity or Person may commence or pursue a claim or Cause of Action of any kind against any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such claim or Cause of Action represents a colorable claim or Cause of Action of any kind, including negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against an Exculpated Party and (b) specifically authorizing such entity or person to bring such claim or Cause of Action against any such Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article IX of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.

k. Articles V.B and V.L of the Plan appropriately provide that, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and any other actions specifically enumerated in the List of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

l. The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against the property of the Estates described in Article V.I of the Plan (the "*Lien Release*") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi) Additional Plan Provisions: Section 1123(b)(6). The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims, (b) resolution of Disputed Claims, (c) allowance of certain Claims, and (d) retention of Bankruptcy Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code. The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**N.     Debtor Compliance with the Bankruptcy Code: Section 1129(a)(2).** The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

(i) is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

(ii) has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(iii) complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, any applicable non-bankruptcy law, rule and regulation, the Solicitation Procedures Order, and all other applicable law, in transmitting the

19

Solicitation Materials and related documents and notices, and in soliciting and tabulating the votes on the Plan.

O.      **Plan Proposed in Good Faith: Section 1129(a)(3).** The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In so determining, the Bankruptcy Court has considered the facts and record of these Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at or prior to the Combined Hearing, and examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, and the process leading to Confirmation.  The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to distribute the proceeds from the sale of certain of the Debtors' Assets and conduct the Wind Down.  The Plan (including all documents necessary to effectuate the Plan) and the Plan Supplement were negotiated in good faith and at arm's-length among the Debtors and their key stakeholders, including the Term Loan Secured Parties and the Committee.  Additionally, compromises and settlements embodied in the Plan, including the UCC Settlement and Term Loan Settlement, were negotiated in good faith and at arm's-length and reflect the best possible compromises and settlements that could be reached given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, and necessary for the Debtors' successful implementation of the Plan.

P.     **Payment for Services or Costs and Expenses: Section 1129(a)(4).**     The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code.  Any payment made or to be made by the Debtors for services or for costs and expenses of the Professionals in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  All such costs and expenses of the Professionals shall be paid in accordance with the Plan, and all other estimated costs and expenses of the Professionals shall be escrowed in the Professional Fee Reserve Account no later than the Effective Date.

Q.     **Directors, Officers, and Insiders: Section 1129(a)(5).**     The Debtors have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement discloses the identity and affiliations of the individual proposed to serve as the Liquidation Trustee.  The proposed Liquidation Trustee is qualified, and the appointment to such position is consistent with the interests of the Holders of Claims and Interests and with public policy.

R.     **No Rate Changes: Section 1129(a)(6).**     Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

S.     **Best Interest of Creditors: Section 1129(a)(7).**     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis included in the Plan Supplement and described in the Studebaker Confirmation Declaration and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and

21

assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were hypothetically liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

        **T.**        **Acceptance by Certain Classes: Section 1129(a)(8).**

        (i)    Classes 1 and 2 are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes 3, 4, and 5 are Impaired and have voted to accept the Plan, as established by the Voting Declaration.

        (ii)   Classes 6, 7, 8, and 9 are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan. Holders of Claims and Equity Interests in such Classes will not receive or retain any property on account of their Claims or Interests.  Therefore, the Plan does not satisfy the requirements of section 1129(a)(8) with respect to such Classes.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies section 1129(a)(10) of the Bankruptcy Code because Classes 3, 4, and 5 voted to accept the Plan, and, with respect to Classes 6, 7, 8, and 9, section 1129(b) of the Bankruptcy Code is satisfied as set forth below.

        **U.**        **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code: Section 1129(a)(9).**     The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Adequate Protection Claims, Priority Tax Claims, Allowed Other Priority Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article III of the

22

Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code (as applicable).

**V.** **Acceptance by At Least One Impaired Class: Section 1129(a)(10).** The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Declaration, Classes 3, 4, and 5, which are Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**W.** **Feasibility: Section 1129(a)(11).** The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at or prior to the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, including the Liquidation Trust, except as provided for under the Plan; and (e) establishes that the Debtors and the Liquidation Trust will have sufficient funds available to meet their obligations under the Plan.

**X.** **Payment of Fees: Section 1129(a)(12).** The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article III.B of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

**Y.** **Continuation of Employee Benefits: Section 1129(a)(13).** The Debtors maintain no programs providing for employee retirement benefits, as defined in section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

**Z.** **Non-Applicability of Certain Sections: 1129(a)(14), (15), and (16).** Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) are not individuals, and (c) are each a moneyed, business, or commercial corporation.

**AA.** **"Cram Down" Requirements: Section 1129(b).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Classes 6, 7, 8, and 9 are deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Combined Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the

24

Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.   Only One Plan: Section 1129(c).**   The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed with respect to each Debtor in each of these Chapter 11 Cases.

**CC.   Principal Purpose of the Plan: Section 1129(d).**  The   Plan   satisfies   the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.   Not Small Business Cases: Section 1129(e).**   These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**EE.   Good Faith Solicitation: Section 1125(e).**  Based  on  the  record  before  the Bankruptcy Court in these Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Combined Hearing, the Debtors and the other Exculpated Parties (a) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Procedures Order, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the development of the Plan, all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (b) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and therefore are not, and on account of such offer, issuance, and solicitation

25

will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Article IX.D of the Plan.

FF.     **Satisfaction of Confirmation Requirements.**     Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan, and all testimony, evidence, and arguments made, proffered, admitted, or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

GG.     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date.** Without limiting or modifying the rights of any party set forth in the Plan, each of the conditions precedent to the Effective Date, as set forth in Article X.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article X.C of the Plan.

HH.     **Implementation; Binding and Enforceable.**     The terms of the Plan, including the Plan Supplement, and all exhibits and schedules thereto, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications (collectively, the "***Plan Documents***") are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order.  Consummation of each such Plan Document is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests, and such Plan Documents are hereby approved.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have

26

been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law. The Plan and the Plan Documents, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

**II.** **Settlements Embodied in the Plan Satisfy Bankruptcy Rule 9019.** All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Bankruptcy Rule 9019 and in consideration for the benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable. The foregoing includes, without limitation, the UCC Settlement and Term Loan Settlement and the corresponding settlement of Claims, Causes of Action and controversies embodied in the Plan pursuant thereto.

**JJ.** **Liquidation Trust Agreement.** The Debtors have exercised sound business judgment in determining to enter into the Liquidation Trust Agreement and have provided

27

adequate notice thereof.  The Liquidation Trust Agreement has been negotiated in good faith and at arm's length and is deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the Liquidation Trust Agreement are fair and reasonable.

KK.    **Authority to Pursue, Settle, or Abandon Retained Causes of Action.**    All Retained Causes of Action are reserved and preserved and shall not be impacted or affected in any way by deemed consolidation of the Estates.  From and after the Effective Date, except as otherwise set forth in Article V.L of the Plan, prosecution and settlement of all Retained Causes of Action shall be the sole responsibility of the Liquidation Trustee pursuant to the Plan and the Confirmation Order.  From and after the Effective Date, the Liquidation Trustee shall retain and may enforce any claims, demands, rights, and Causes of Action that the Debtors' Estates may hold.  The Liquidation Trustee may pursue any such retained claims, demands, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Liquidation Trust as the sole representative of the Liquidation Trust pursuant to section 1123(b)(3) of the Bankruptcy Code.

LL.    **Good Faith.**    The Debtors, the Term Loan Secured Parties, the Committee, and other Released Parties, the Exculpated Parties, and their respective successors, assigns, predecessors, control persons, affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, investment bankers, advisors and agents, as applicable, acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan and the Plan Documents; and (b) take the actions authorized and directed by this Confirmation Order.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's finding and determination that (a) each Released Party's in-court or out-of-court efforts to develop, negotiate, and propose the Plan were, with respect to each other Released Party and any other Person, in good

28

faith and not by any means forbidden by law and (b) the settlements reflected in the Plan are (i) in the best interests of the Debtors and their Estates, (ii) fair, equitable, and reasonable, and (iii) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**MM.    Retention of Jurisdiction.**    The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, these Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.  The transactions contemplated in these Chapter 11 Cases should not be subject to any stay, and thus this Confirmation Order should not be subject to any stay under Bankruptcy Rule 3020(e) or any other Bankruptcy Rules such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.

**ORDER**

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    **Findings of Fact and Conclusions of Law**.  The findings of fact and conclusions of law set forth herein and on the record at the Combined Hearing are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Approval of Disclosure Statement**. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the

Debtors, the Plan, and the transactions contemplated therein, and (c) is **APPROVED** on a final basis in all respects.

3.      **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Supplement and other Plan Documents, are hereby authorized and approved.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

4.      **Objections**.  All objections to Confirmation of the Plan or final approval of the Disclosure Statement and other responses, comments, statements, or reservations of rights, if any, in opposition to the Plan or Disclosure Statement that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits.  All objections to Confirmation of the Plan or final approval of the Disclosure Statement not Filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

5.      **Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classification set forth on the Ballots tendered in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification

of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes. All rights of the Debtors, the Liquidation Trustee, and the Liquidation Trust, as applicable, to challenge, object to, or seek to reclassify Claims or Interests are expressly reserved.

6.     **Confirmation Hearing Notice**. The Confirmation Hearing Notice complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law, rule, and regulation.

7.     **Solicitation**. The solicitation of votes on the Plan complied with the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and applicable non-bankruptcy law, rule, and regulation.

8.     **No Action Required.** No action of the respective directors, equity holders, managers, or members of the Debtors or the Liquidation Trust is required to authorize the Debtors or the Liquidation Trustee to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Liquidation Trust Agreement and the other Plan Documents.

31

9.     **Binding Effect**.   On the date of and after entry of this Confirmation Order, in accordance with section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors, Liquidation Trust, or the Liquidation Trustee (as applicable), and any and all Holders of Claims or Interests and such Holder's respective successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases (including the releases set forth in Articles IX.B and IX.C of the Plan), waivers, discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases.   All Claims and Interests shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.   The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10.     **Vesting of Certain Assets in the Liquidation Trust.**  On the Effective Date, the Debtors shall fund the Liquidation Trust with the Minimum Trust Funding in accordance with Article V.G.2 of the Plan. For the avoidance of doubt, the condition precedent set forth in Article

X.B.8 of the Plan regarding the Minimum Trust Funding may only be waived by the Committee. Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, all Assets (other than the Non-Contributed Assets) not sold pursuant to the 363 Asset Sales (including all interests, rights, and privileges related thereto) in each Estate and all Causes of Action that are retained under the Plan shall vest in the Liquidation Trust, to be administered by the Liquidation Trustee in accordance with the Plan, free and clear of all Claims, Liens, and encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Liquidation Trust may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  To the extent that the retention by the Liquidation Trust of assets or property held immediately prior to the Effective Date in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Liquidation Trust (a) is or shall be a legal, valid, and effective transfer of property, (b) vests or shall vest the Liquidation Trust with good title to such property, free and clear of all Liens, Claims, charges, or other encumbrances, except as expressly provided in the Plan, the Plan Documents, or the Confirmation Order, (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, and (d) does not and shall not subject the Liquidation Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, rule, or regulation, including by laws affecting or creating successor or transferee liability.

11.    **Abandonment of Non-Contributed Assets.**  Notwithstanding anything in the Combined Disclosure Statement and Plan or this Confirmation Order, the Non-Contributed Assets shall not vest in the Liquidation Trust and as of the Effective Date the Liquidation Trust shall have

33

no ownership interest in the Non-Contributed Assets.  The Non-Contributed Assets are hereby abandoned under section 554 of the Bankruptcy Code effective as of the Effective Date.

12.     **Effectiveness of All Actions**.  All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors, or the Liquidation Trustee and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders or the Liquidation Trustee.

13.     **Plan Implementation**.

(a)     Consistent with section 1142 of the Bankruptcy Code and any provisions of the business corporation law and limited liability company law of any applicable jurisdiction, and without further action by the Bankruptcy Court or the equity holders, members, managers, officers, or directors of any of the Debtors or the Liquidation Trustee, the Debtors, and the Liquidation Trustee are authorized to: (a)  take any and all actions as may be necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby, and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and any transaction contemplated thereby or hereby.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including: (a) the rejection or assumption,

34

as appropriate, of any Executory Contracts and Unexpired Leases, (b) the sale and/or abandonment of Assets, (c) vesting of Assets in the Liquidation Trust, and (d) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan are hereby approved and shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of the Bankruptcy Court, or further action by the Debtors or the Liquidation Trustee.

(c)     To the extent that, under applicable non-bankruptcy law, rule, or regulation, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or the Liquidation Trustee, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the equity holders, members, managers, or directors of any of the Debtors or the Liquidation Trustee.

(d)     All such transactions effectuated by the Debtors during the pendency of these Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

14.     **UCC Settlement Approved**.  The UCC Settlement, as incorporated in the Plan, constitutes a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 among the UCC Settlement Parties.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and, controversies that were, or could have been asserted by the UCC Settlement Parties in connection with these Chapter 11 Cases.

15.     The UCC Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the UCC Settlement, including the settlement of all such Claims, Interests, and controversies and the approval of all such releases granted in connection therewith.

16.     **Term Loan Settlement Approved**.  The Term Loan Settlement, as incorporated in the Plan, constitutes a compromise and settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 among the Term Loan Settlement Parties.  The related provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, issues, disputes and, controversies that were, or could have been asserted by the Term Loan Settlement Parties in connection with these Chapter 11 Cases.

17.     The Term Loan Settlement was negotiated at arm's length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Term Loan Settlement, including the settlement of all such Claims, Interests, and controversies and the approval of all such releases granted in connection therewith.

18.     **Cancellation of Existing Securities and Agreements**.  On the Effective Date, except to the extent otherwise provided herein or in the Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests (including the Term Loan Documents, Equipment Financing Agreements, and Equity Interests), and any Equity Interests that are not represented by certificates or other instruments, shall be deemed canceled and surrendered and the obligations of the Debtors thereunder or in any way related thereto shall be released, discharged, deemed satisfied in full, canceled, and of no force or effect against the

36

Debtors or the Liquidation Trust without any further action on the part of the Debtors, the Liquidation Trustee, or any other Person. Holders of or parties to such canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding the foregoing, the Term Loan Documents and Equipment Financing Agreements shall continue in effect as between all non-Debtors to permit: (a) Holders of Term Loan Claims and Equipment Financing Agreement Claims to receive their respective distributions under the Combined Disclosure Statement and Plan, as applicable; (b) the respective agents or trustees under any of the foregoing to assert any charging or similar liens or future claims against the Liquidation Trustee and the Liquidation Trust for indemnification obligations under the applicable Term Loan Documents and Equipment Financing Agreements, and to make distributions on account of the Allowed Claims under the relevant documents and deduct therefrom such reasonable compensation, fees, and expenses; (c) preserving the Term Loan Agent's exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of the applicable Term Loan Claims, including permitting the Term Loan Agent to enforce their payment priority rights with respect to any such distributions; and (d) permitting the Term Loan Agent to enforce any obligation owed to them under the Plan.

19. **Directors and Officers of the Debtors**.

(a)     As of the Effective Date, the term of the current members of the boards of directors, boards of managers, or executive committee, as applicable, of the Debtors shall expire automatically and each person serving as a director or manager, as applicable, of each of the Debtors shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, each of the Estates will vest in the Liquidation Trust effective as of the

37

Effective Date and, the Liquidation Trustee shall automatically be appointed as the sole director and sole officer of the Debtors and their non-Debtor subsidiaries, and shall succeed to the powers of such Debtors' directors, managers, and officers.

(b)    As of the Effective Date, any and all powers of the Debtors' officers, managers, directors, members, employees, or other persons to act as an authorized signatory on behalf of the Debtors shall vest in the Liquidation Trustee who shall succeed to all such authority, and the Liquidation Trustee may act as a signatory on behalf of the Debtors and the Liquidation Trust.

20.    **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust will retain and may enforce, as successors to the Debtors, any claims, demands, rights and Causes of Action that any Estate may hold against any Person to the extent not satisfied, settled, and released under the Plan or otherwise, including the Retained Causes of Action; provided that, the Liquidation Trust will not retain any Causes of Action that were assigned to a Purchaser in connection with the 363 Asset Sales, each of which are automatically and irrevocably waived and/or abandoned hereunder. The Liquidation Trustee shall have standing and authority to pursue any such retained claims, demands, rights, or Retained Causes of Action, as appropriate, in accordance with the best interests of the Liquidation Trust. Except as otherwise provided herein or in the Plan, in accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on the Schedule of Retained Causes of Action shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Debtors or Estates may hold against any Person. The Debtors intend to preserve all such claims, demands, rights, or causes of action as Retained Causes of Action (except as assigned to a Purchaser in connection with the 363 Asset Sales or otherwise

38

provided herein or to the extent any such claim or Cause of Action is specifically satisfied, settled, and released herein or in the Plan).

21.     **Substitution in Pending Legal Actions.**  On the Effective Date, the Liquidation Trust or the Liquidation Trustee, as applicable, shall be deemed to be the same litigation party as the applicable Debtor(s) and are authorized to be substituted as the party to any litigation in which the Debtors are a party, including (but not limited to) (a) pending contested matters or adversary proceedings in the Bankruptcy Court, (b) any appeals of orders of the Bankruptcy Court and (c) any state court or federal or state administrative proceedings or equivalent in any other applicable jurisdiction pending as of the Petition Date.  The Liquidation Trustee and its professionals are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

22.     **Liquidation Trust**.  On and after the Effective Date, the Liquidation Trust shall be empowered to: (a) perform all actions and execute all agreements, instruments, and other documents necessary to implement the Plan; (b) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, supervise, prosecute, settle, and protect, as applicable, the Assets vested in the Liquidation Trust (directly or through its professionals or a Disbursing Agent), in accordance with the Plan; (c) review, reconcile, settle, or object to all Claims that are Disputed Claims as of the Effective Date pursuant to the procedures for allowing Claims prescribed in the Plan; (d) calculate and make distributions of the proceeds to Holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; (e) pursue Retained Causes of Actions; (f) retain, compensate, and employ professionals to represent the Liquidation Trust; (g) file appropriate tax returns and other reports on behalf of the Liquidation Trust and pay taxes or other obligations owed by the Liquidation Trust; (h) file, to the extent reasonably feasible,

appropriate tax returns on behalf of the Debtors and pay taxes or other obligations arising in connection therewith; (i) exercise such other powers as may be vested in the Liquidation Trust under the Plan, or as deemed by the Liquidation Trustee to be necessary and proper to implement the provisions of the Plan; (j) take such actions as are necessary or appropriate to close the Chapter 11 Cases; (k) dissolve the entities comprising the Debtors; and (l) undertake the Wind Down.

23. **Liquidation Trustee**. Thomas A. Pitta is hereby appointed to serve as the Liquidation Trustee for the Liquidation Trust in accordance with the terms of this Confirmation Order, the Plan, and the Liquidation Trust Agreement. The Liquidation Trustee shall be authorized to take all actions necessary to establish, maintain, and administer the Liquidation Trust pursuant to the terms of the Plan, this Confirmation Order, and the Liquidation Trust Agreement.

24. **Liquidation Trust Agreement**. The Liquidation Trust Agreement, substantially in the form filed with the Plan Supplement, is hereby approved in its entirety, and the Debtors are authorized to enter into the Liquidation Trust Agreement, and the Liquidation Trustee is authorized to perform its duties thereunder.

25. **Professional Compensation**. The provisions governing compensation of Professionals set forth in Article III.D of the Plan are approved in their entirety. All final requests for Professional Claims through and including the Effective Date shall be Filed no later than 45 days after the Effective Date. Any objections to Professional Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Claims.

26. **Payment of Professional Fee Claims**. On the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Claim Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the benefit

of the Professionals. Such funds shall not be considered property of the Debtors' Estates or of the Liquidation Trust. The amount of Allowed Professional Claims shall be paid in Cash to the Professionals by the Liquidation Trustee from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Claims are Allowed.

27.     When such Allowed Professional Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be irrevocably paid to the Liquidation Trust without any further action or order of the Bankruptcy Court.

28.     **Subordination.**  The allowance, classification, and treatment of all Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidation Trustee reserve(s) the right to reclassify any Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

29.     **Release of Liens.**  Except for as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date concurrently and consistent with the treatment provided for Claims and Interests in Articles III and IV of the Plan, all mortgages, deeds of trust, Liens against, security interests in, or other encumbrances or interests in property of any Estate (including the Liquidation Trust) shall be deemed fully released and discharged.

30.     **Insurance.**

41

(a)      On the Effective Date, the Debtors' rights under and to each Insurance Contract shall automatically vest in the Liquidation Trust as of the Effective Date without necessity for further approvals or orders. Confirmation and consummation of the Plan, and the vesting of the Insurance Contracts in the Liquidation Trust as set forth therein, shall not impair or otherwise affect (x) any party's rights to coverage thereunder, including in respect of any claims pending as of the Effective Date or pursued or made thereafter, including any claims pursued or made by the Liquidation Trustee on behalf of the Liquidation Trust, or (y) any available defenses of the Debtors or the Liquidation Trustee or any Insurer under the Insurance Contracts.

(b)      To the extent that any Insurance Contracts are deemed Executory Contracts or Unexpired Leases, unless such Insurance Contracts have been rejected pursuant to an order of the Bankruptcy Court, notwithstanding anything to the contrary in the Plan: (a) from and after the Effective Date, all Insurance Contracts will be assumed by the Liquidation Trust pursuant to section 365 of the Bankruptcy Code or continued in accordance with their terms, such that each of the parties' contractual, legal and equitable rights under each Insurance Contract shall remain unaltered; (b) the parties to each Insurance Contract will continue to be bound by such Insurance Contract as if the Chapter 11 Cases had not occurred; (c) nothing in the Plan shall affect, impair or prejudice the rights and defenses of the insurers or the Liquidation Trustee under the Insurance Contracts in any manner, and such insurers and the Liquidation Trustee shall retain all rights and defenses under the Insurance Contracts, and the Insurance Contracts shall apply to, and be enforceable by and against, the Liquidation Trustee and the applicable Insurer(s) as if the Chapter 11 Cases had not occurred; (d) nothing in the Plan shall in any way operate to, or have the effect of, impairing any party's legal, equitable or contractual rights, obligations and/or claims under any Insurance Contract, if any, in any respect, and any such rights and obligations shall be

42

determined under the Insurance Contracts, any agreement of the parties and applicable law and (e) to the extent any Insurance Contracts provide for a self-insured retention on the part of any Debtor or its Estate, such self-insured retention shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Plan.

31.     **Rejection of Contracts and Leases.**     Except with respect to any Executory Contract or Unexpired Lease: (a) that has been assumed by the Debtors and assigned to a Purchaser in connection with the 363 Asset Sales; (b) that has been previously rejected or assumed by a Final Order; (c) that is the subject of a separate motion to assume or reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (d) that is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; (e) that is a Retained Executory Contract or Unexpired Lease, or (f) that has previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code; *provided however*, that nothing herein or in the Plan shall cause the rejection, breach, or termination of any contract of insurance (including the Insurance Contracts) benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, the Liquidation Trustee, and/or the Liquidation Trust. Notwithstanding anything in the Plan, this Confirmation Order, any Order of the Bankruptcy Court, or stipulation to the contrary, all Executory Contracts or Unexpired Leases which are rejected under the Plan, any Order of the Bankruptcy Court, or a stipulation between the applicable Debtor(s) and the counterparty are rejected effective as of the earlier of (a) the Effective Date and (b) the date of rejection designated in such Order or stipulation.

32.    **Distributions**.  All distributions pursuant to the Plan shall be made in accordance with Article VII of the Plan, and such methods of distribution are approved.

33.    **Compromise and Settlement of Claims, Interests, and Controversies**.  Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions, settlements, releases, and other benefits provided pursuant to the Plan, which distributions, settlements, releases, and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions, releases, and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The entry of this Confirmation Order constitutes approval of the compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trust or the Liquidation Trustee (as applicable) may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

34.    In accordance with Bankruptcy Rule 9019, the Plan constitutes the good-faith compromise and settlement among the UCC Settlement Parties and Term Loan Settlement Parties regarding the matters set forth in the UCC Settlement and the Term Loan Settlement Term Sheet, and reflects and implements such compromise and settlement.  Such compromise and settlement

44

is made in exchange for consideration and is in the best interests of the UCC Settlement Parties, Term Loan Settlement Parties, and the Holders of Allowed General Unsecured Claims, is within the reasonable range of possible litigation outcomes, is fair, equitable, and reasonable, and is an essential element of the resolution of these Chapter 11 Cases.

35.  **Release, Discharge, Exculpation, and Injunction Provisions**.  All discharge, injunction, release, and exculpation provisions set forth in the Plan, including but not limited to those contained in Article IX of the Plan, are approved and shall be effective and binding on all Persons and Entities to the extent provided therein.  For the avoidance of doubt, the right of any party to object to any Professional Claim, subject to applicable objection deadlines, is preserved, notwithstanding the approval of the Releases herein.

36.  **Tax Withholding**.  To the extent applicable, pursuant to the Plan, the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent shall comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. All Persons holding Claims against any Debtor shall be required to provide any additional information necessary for the Debtors, Liquidation Trustee, Disbursing Agent, and any applicable withholding agent to comply with all Tax withholding and reporting requirements imposed on them by any Governmental Unit,

including an Internal Revenue Service Form W-8 or W-9, as applicable, and any other applicable tax forms. The Debtors and Liquidation Trustee reserve the right to allocate all distributions made under the Plan in a manner that complies with all other legal requirements, such as applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other Tax obligations, on account of such distribution.

37.     **Payment of Statutory Fees**.  All Statutory Fees that become due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, shall pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Liquidation Trustee on behalf of the Liquidation Trust, shall file with the Bankruptcy Court quarterly, Post-Confirmation Reports when they become due. Each and every one of the Debtors shall be and shall remain obligated to pay Statutory Fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the cases and shall not be treated as providing any release under the Plan.

38.     **Dissolution of the Committee**.  On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof

shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.

39.     **Documents, Mortgages and Instruments**.  Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

40.     **Filing and Recording**.  This Confirmation Order is binding upon and shall govern the acts of all Persons or Entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons and Entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

41.     **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan, the Confirmation Order, or any other Final Order entered by the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

42. **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from the entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

43. **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Article X.C of the Plan, of the conditions precedent to the Effective Date set forth in Article X.B of the Plan.

44. **Conditions Precedent to the Effective Date**.  The Plan shall not become effective unless and until the conditions set forth in Article X.B of the Plan have been satisfied or waived pursuant to Article X.C of the Plan.

45. **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent (and subject to other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

46. **Post-Confirmation Modifications**.  Subject to the terms of the Plan and without need for further order or authorization of the Bankruptcy Court, the Debtors or Liquidation Trustee, are authorized and empowered to make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on

48

modifications set forth in the Plan, the Debtors and Liquidation Trustee reserve their respective rights prior to the Effective Date to withdraw, alter, amend, or modify materially the Plan with respect to such Debtor or the Liquidation Trust and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

47.     **Reversal/Stay/Modification/Vacatur of Confirmation Order**.   Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

48.     **Applicable Non-Bankruptcy Law.**  The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law, rule, or regulation.

49

49. **Governmental Approvals Not Required**.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to therein, or contemplated by, the Plan.

50. **U.S. Securities and Exchange Commission**.  Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or the Plan Confirmation Order, no provision of this Plan or the Plan Confirmation Order shall (i) preclude the United States Securities and Exchange Commission ("*SEC*") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or entity in any forum.

51. **Police and Regulatory Authority**.  Notwithstanding anything to the contrary contained in the Plan and any other Plan Document, nothing shall limit or be intended to or be construed to bar any Governmental Unit, from pursuing any police or regulatory action or relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy law.

52. **IRS Provisions**.   Any Allowed Priority Tax Claims held by the Internal Revenue Service (the "*IRS*") shall be paid in equal monthly payments within 5 years of the Effective Date, with interest from the Effective Date at the rate determined under applicable nonbankruptcy law pursuant to 11 U.S.C., §§ 1129(a)(9)(C) and 511, unless otherwise agreed by the IRS and the Liquidation Trustee.

53. The IRS may pursue ordinary course collection remedies after the Effective Date for the collection of taxes for taxable years ending after the Petition Date.

54.    **Texas Taxing Authorities**.    Notwithstanding anything to contrary in the Plan or

this Confirmation Order, any Allowed Claims held by the Texas Taxing Authorities[3] (the "***Texas***

---

[3]    Texas Taxing Authorities shall include all taxing entities represented by Linebarger Goggan Blair, McCreary Veselka Bragg, and Perdue Brandon Fielder Collins and Mott, including but not limited to: Anderson County, Bell County TAD, Bowie CAD, Brazos County, Brown CAD, Burnet CAD, Callahan County, Comal County, Coryell County, Dallam CAD, Denton County, Erath County, Guadalupe County, Hardin County, Harrison County, Harrison CAD, Hays County, Henderson County, Hill County, Hill CAD, Jasper County Tax Units, City of Waco et al, Medina County, Midland CAD, Pine Tree ISD, Taylor County CAD, Williamson County, Hunt County, et al, Nacogdoches Central Appraisal District, Dripping Springs ISD, Kerrville ISD, Copperas Cove ISD, Kendall County Appraisal District, Weslaco Independent School District, Mercedes Independent School District, City of Alamo, City of Mercedes, Brownsville Independent School District, Ochiltree County Appraisal District, Hale County Appraisal District, Taxing Districts Collected by Randall County, Taxing Districts Collected by Potter County, Deaf Smith County Appraisal District, Hutchinson County Tax Office, Andrews Independent School District, Andrews County Tax Office, Bailey Central Appraisal District, Lubbock Central Appraisal District, Scurry County Tax Office, Howard County Tax Office, Jones County Appraisal District, Midland County, City of Garland, Garland Independent School District, Carrollton-Farmers Branch Independent School District, City of Bonham, Bonham Independent School District, Frisco Independent School District, Whitney Independent School District, City of Mineral Wells, Mineral Wells Independent School District, Palo Pinto County, Forney Independent School District, Richardson Independent School District, City of Garrett, Eagle Mountain-Saginaw Independent School District, City of Lake Worth, City of Grapevine, Grapevine-Colleyville Independent School District, City of Burleson, Burleson Independent School District, City of Cleburne, Cleburne Independent School District, City of Venus, Johnson County, Wichita County, Burkburnett ISD, Iowa Park ISD, Wilbarger County, Cooke County, Washington County Appraisal District, Walker County Appraisal District, Magnolia Independent School District, Woodlands Metro Municipal Utility District, Woodlands Road Utility District #1, Humble Independent School District, Alief Independent School District, Chelford City Municipal Utility District, Tomball Independent School District, Galena Park Independent School District, Huffman Independent School District, La Porte Independent School District, Pasadena Independent School District, Sheldon Independent School District, Spring Independent School District, Spring Branch Independent School District, Harris County Municipal Utility District #168, Harris County Municipal Utility District #68, Harris County Municipal Utility District #157, Harris County Municipal Utility District #53, Harris County Municipal Utility District #364, Friendswood City, Friendswood ISD, Santa Fe ISD/WCID, Clear Creek ISD, Dickinson ISD, Galveston Co MUD #44, Santa Fe ISD, Galveston Co MUD #54, Brazoria Co Tax Office, Brazoria Co MUD 34, Brazoria Co-Fort Bend County MUD #1, Brazoria County MUD 23, City of Rosenberg, Fort Bend County Municipal Utility District #94, Fort Bend County Municipal Utility District #225, Fort Bend Independent School District, West Keegans Bayou Improvement District, Fort Bend County Municipal Utility District #151, Fort Bend County Levee Improvement District #12, Grand Mission Municipal Utility District #1, Fort Bend Improvement District #24, Cornerstone Municipal Utility District, Harris County Municipal Utility District #61, Clear Lake Water Authority, Addicks Utility District, Harris County Municipal Utility District #173, Harris County Municipal Utility District #33, Harris County Municipal Utility District #120, Northhampton Municipal Utility District, Post Wood Municipal Utility District, Bridgestone Municipal Utility District, Harris County Municipal Utility District 167, Harris County Municipal Utility District #278, Harris County Municipal Utility District 423, Harris County Municipal Utility District #152, Barker Cypress Municipal Utility District, Waller County Tax Assessor-Collector, West Harris County Municipal Utility District #6, Harris County Municipal Utility District #368, Mission Bend Municipal Utility District #2, Austin County Appraisal District, Aransas County, Atascosa County, Bexar County, Cameron County, Camp CAD, City of Carrollton, Cypress-Fairbanks Independent School District, Dallas County, Eagle Pass Independent School District, Ector CAD, City of El Paso, Ellis County, Fannin CAD, Fort Bend County MUD #26, Fort Bend County, Frio Hospital District, City of Frisco, Gainesville Independent School District, Galveston County, Gonzales County, Grayson County, Greenville Independent School District, Gregg County, Harris-Fort Bend Emergency Service District #100, Harris County Emergency Service District #01, Harris County Emergency Service District #02, Harris County Emergency Service District #06, Harris County Emergency Service District #07, Harris County Emergency Service District #08, Harris County Emergency Service District #09, Harris County Emergency Service District #10, Harris

---

*Tax Claims*") shall be treated as Senior Priority Lien Claims.  Any Allowed Texas Tax Claims on account of tax years 2025 and prior shall be treated in accordance with Allowed Claims in Class 1 (Senior Priority Lien Claims) and any Allowed Texas Tax Claims on account of taxes for 2026 will be paid in the ordinary course of business as such taxes come due unless otherwise agreed by the Texas Taxing Authorities and the Liquidation Trustee.  The Texas Tax Claims shall include pre and post-petition interest as allowed under state law and the Bankruptcy Code. The Liquidation Trustee shall maintain and continue to segregate the Texas Lien Segregated Account established in the Final Cash Collateral Order. Further, to the extent applicable the Liquidation Trustee shall continue to segregate any sale proceeds attributable to the collateral subject to the Texas Tax Claims into the Texas Lien Segregated Account upon the closing of a sale of such assets by the Liquidation Trust. The Texas Taxing Authorities shall retain their asserted liens on the Texas Lien Segregated Account and/or the assets securing their asserted liens with the same validity, priority, and scope as existed on such property as of the Petition Date until the claims are paid in full.  In the event that, following the Effective Date, any assets subject to the Texas Taxing Authorities' liens are abandoned, the Texas Taxing Authorities shall be notified of such abandonment.  For the

---

County Emergency Service District #11, Harris County Emergency Service District #12, Harris County Emergency Service District #13, Harris County Emergency Service District #15, Harris County Emergency Service District #16, Harris County Emergency Service District #17, Harris County Emergency Service District #20, Harris County Emergency Service District #24, Harris County Emergency Service District #25, Harris County Emergency Service District #28, Harris County Emergency Service District #46, Harris County Emergency Service District #47, Harris County Emergency Service District #48, Harris County Emergency Service District #50, Harris County Emergency Service District #60, Harris County Improvement District #03, Harris County WCID #21, Hidalgo County, Hood CAD, Hopkins County, City of Houston, Houston City College, Houston Independent School District, City of Humble, Irving Independent School District, Jasper County, Jefferson County, Jim Wells CAD, Kaufman County, Kerr County, Kleberg County, Lewisville Independent School District, Liberty County, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Northwest Independent School District, Nueces County, Orange County, Parker CAD, City of Pasadena, City of Pearsall, Pearsall Independent School District, Quinlan Independent School District, Rockwall CAD, Rusk County, San Marcos CISD, San Patricio County, Smith County, City of Sulphur Springs, Sulphur Springs Independent School District, Tarrant County, Texas City Independent School District, Tom Green CAD, Val Verde County, Venus Independent School District, Victoria County, and Wilson County.

avoidance of doubt, except with respect any General Unsecured Claim, the Texas Taxing Authorities are not subject to Article VII (E)(3) of the Plan, and the Disbursing Agent is authorized and directed to pay any Allowed Texas Tax Claim that is under the $250 minimum distribution threshold.

55.     **Texas Taxing Entities**.     Notwithstanding anything to the contrary herein or in the Combined Disclosure Statement and Plan, any liens asserted by Royse City ISD, McKinney ISD, Princeton ISD, Plano ISD, City of Mckinney, City of Plano, City of New Hope, City of Josephine, City of Sherman, Collin County,  and Collin College (collectively, the "*Texas Taxing Entities*") against the Debtors or their property on account of ad valorem taxes shall continue to exist with the same validity, priority, and scope  as existed on such property as of the Petition Date and all rights of the Debtors and the Liquidation  Trustee to object to the priority, validity, amount, and extent of any liens or claims related thereto are expressly preserved.  All rights and defenses of the Debtors and the Liquidation Trustee under bankruptcy and non-bankruptcy law are fully and expressly reserved and preserved with respect to claims by the Texas Taxing Entities.

56.     **Governmental Unit Administrative Claims**.     Consistent with 11 U.S.C. § 503(b)(1)(D), a Governmental Unit shall not be required to file a request for payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or 11 U.S.C. § 503(b)(1)(C) as a condition of its being an Allowed Administrative Claim.

57.     **Texas Comptroller**.   Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Texas Comptroller of Public Accounts (the "*Comptroller*"): (a) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (b) nothing in the Plan or Confirmation Order shall affect or impair the

Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (c) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's Allowed Administrative Claims (if any); (d) to the extent that interest is payable on any Allowed Administrative Claim or Allowed Priority Tax Claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (e) the Comptroller is not required to file a motion or application for payment of Administrative Claims *provided, however*, that notwithstanding the foregoing, the Comptroller shall submit to the Liquidation Trustee any asserted Administrative Claim within 30 days after the Liquidation Trustee files the 2026 annual and 2026 final franchise tax returns on behalf of the Debtors and the Estates and provides notice of the same to counsel to the Comptroller.

58.     The Comptroller's Allowed Priority Tax Claims will be paid in cash, in full, (a) upon allowance, (b) in equal monthly installments in accordance with section 1129(a)(9)(C) over a period ending not later than five (5) years after the Petition Date, or (c) as otherwise agreed to by the Comptroller.  Interest on the Comptroller's Allowed Priority Tax Claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

59.     In the event of any default in payment, interest on any Allowed Administrative Claim or Allowed Priority Tax Claim of the Comptroller shall accrue at the statutory rate of interest.  The  Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on any Allowed Claims as set forth above.

60.     **Preservation of Police and Regulatory Powers.** Notwithstanding any provision in the Plan, the Plan Supplement or this Confirmation Order (collectively, the "***Plan and Confirmation Documents***"), nothing in the Plan and Confirmation Documents discharges, releases, precludes, or enjoins: (a) any liability to a Governmental Unit, as defined in 11 U.S.C.§

54

101(27), that is not a Claim, as defined in 11 U.S.C. § 101(5); (b) any Claim of a Governmental Unit arising on or after the Effective Date; (c) any liability to a Governmental Unit under police powers or regulatory statutes or regulations that any entity would be subject to as the owner, permittee, or operator of property or a business arising after the Effective Date; or (d) any liability to a Governmental Unit on the part of any non-Debtor.  Nothing in the Plan and Confirmation Documents shall enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence—except to the extent a Governmental Unit attempts to enforce or collect upon a monetary judgment obtained against any Debtor arising from pre-Effective Date acts, events or omissions. Nothing in the Plan and Confirmation Documents shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in the Plan and Confirmation Documents shall divest any tribunal of any jurisdiction it may otherwise have under police powers or regulatory law.

61.     **Opt-Out of Non-Debtor Releases.** Notwithstanding anything in the Plan and Confirmation Documents giving effect to releases: (a) Governmental Units are deemed to have opted out of the releases contained in Article IX.C of the Plan (the "***Non-Debtor Releases***") and (b) all individuals that used Debtors' cryptocurrency services or products as a consumer, including without limitation the Debtors' Bitcoin ATM machines or kiosks, before the Effective Date, are deemed to have opted out of the Non-Debtor Releases with respect to any claims arising out of such use of the Debtors' cryptocurrency services or products. An individual qualifies herein regardless of whether he or she filed a Proof of Claim.  For the avoidance of doubt, Holders of State Regulatory Claims (as defined below) shall be deemed to opt out of the Non-Debtor Releases and any injunction or provision enforcing or giving effect to the Non-Debtor Releases, regardless of whether or how such Holders have voted on the Plan.

55

62. **Compliance with State Laws Regarding Transfer or Discontinuance.** Notwithstanding any provision of the Plan and Confirmation Documents, nothing authorizes the transfer or assignment of any governmental: (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under state law or regulations, except that any fines or other monetary penalties assessed against, or agreed-to by, a Debtor in connection with discontinuation of such license, permit, registration, authorization, or obligation arising from pre-Effective Date acts, events or omissions shall be treated as Claims and paid as provided under the Plan (subject to the rights of the Liquidation Trustee to object to the allowance of such Claims). Nothing in the Plan and Confirmation Documents shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit, to the extent reasonably practicable.

63. **Police and Regulatory Actions and Claims.** Any and all orders, judgments, or Claims held by a Governmental Unit: (a) against the Debtor(s), (b) arising from actions before the Effective Date, and (c) arising out of the enforcement of consumer protection laws, money transmitter licensure laws, or similar police and regulatory laws (collectively, the "*State Regulatory Claims*") are not discharged, released, precluded, or enjoined  by confirmation of the Plan; provided however, that any monetary amounts provided for therein shall be treated as Claims and paid as provided under the Plan (subject to the rights of the Liquidation Trustee to object to the allowance of such Claims), and such treatment shall not limit or otherwise affect any nonmonetary relief. For the avoidance of doubt, nothing herein limits the rights of any Governmental Units as to any applicable surety bonds or financial assurance.

64. **Deletion of Article IX.F of the Plan.** Article IX.F of the Plan, entitled, "Protections Against Discriminatory Treatment" is hereby deleted.

65. **Definition of "Effective Date."** As used in the Plan and Confirmation Documents, "*Effective Date*" means the day, as determined by the Debtors in consultation with the Committee, that is the Business Day as soon as reasonably practicable after all conditions precedent to the effectiveness of the Combined Disclosure Statement and Plan set forth herein have been satisfied or waived in accordance with the requirements of the Combined Disclosure Statement and Plan, but, in no event, later than 30 days after the Confirmation Date.

66. **State Regulatory Claims Reconciliation.** Notwithstanding anything in the Plan and Confirmation Documents, the Debtors, the Liquidation Trustee, and Holders of State Regulatory Claims agree to work in good faith and cooperate with each other to resolve disputes and reach agreements on Allowed State Regulatory Claim amounts and treatment thereof within five months after the Effective Date.

67. **VFS.** VFS expressly reserves all rights with respect to asserting an Administrative Claim in connection with fifty-six (56) Bitcoin kiosks upon which VFS asserts a lien and which the Debtors are unable to locate in their records at this time. All rights and defenses of the Debtors and the Liquidation Trustee under any relevant agreement and bankruptcy and non-bankruptcy law are fully and expressly reserved and preserved with respect to any Administrative Claims asserted by VFS.

68. ~~67.~~ **Waiver of Filings**. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Bankruptcy Court or the Office of the United States Trustee (except for monthly operating reports

or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

69. 68. **Notice of Entry of the Confirmation Order and Effective Date**.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of Confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

70. 69. **Waiver of Stay.**  The Confirmation Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Sufficient cause has been shown to waive the stays contemplated by Bankruptcy Rule 3020(e) or any other Bankruptcy Rule such as Bankruptcy Rules 6004 and 6006, in each and every case, to the extent applicable.

71. 70. **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

72. 71. **References to and Omissions of Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order. The failure to specifically describe, include, or refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its

entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all of the foregoing are incorporated herein by this reference.

73. ~~72.~~ **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

74. ~~73.~~ **Effect of Conflict**.  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

75. ~~74.~~ **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

76. ~~75.~~ **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Bankruptcy Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

Dated: August ___, 2026
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit A**

**Combined Disclosure Statement and Plan**

4903-6728-2372

**Exhibit B**

**Proposed Notice of Effective Date**

4903-6728-2372

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-90528 (CML)** |
| | § | |
| **BITCOIN DEPOT INC.,** *et al.*, | § | **(Chapter 11)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

NOTICE OF (I) ENTRY
OF ORDER CONFIRMING PLAN
OF LIQUIDATION OF BITCOIN DEPOT INC.
AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE AND (II) OCCURRENCE OF THE EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on August [●], 2026, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***"), entered the order [Docket No. ●] (the "***Confirmation Order***") confirming the *Debtors' Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 570] (as amended, modified, or supplemented, the "***Plan***").[2]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **August [●], 2026**.

**PLEASE TAKE FURTHER NOTICE** that copies of Confirmation Order and the Plan, as well as other documents filed in these Chapter 11 Cases can be found on the docket of these Chapter 11 Cases and can also be downloaded free of charge from the website of the Debtors' noticing and claims agent, Kroll, at https://restructuring.ra.kroll.com/bitcoindepot.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain release, exculpation, injunction, and related provisions in Article IX of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtors, the Liquidation Trust, the Liquidation Trustee, any Holder of a Claim against or Interest in the Debtors and such Holder's respective successors, assigns, and designees, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity voted to accept the Plan.

---

[1]   The Debtors in these Chapter 11 Cases (as defined herein) and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot.  The location of the Debtors' corporate headquarters is:  8601 Dunwoody Place, Sandy Springs, Georgia 30350.

[2]   Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

4903-6728-2372

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Expense Claims shall be [●], 2026, and the deadline for filing requests for payment of Professional Fee Claims shall be [●], 2026.[3]

**PLEASE TAKE FURTHER NOTICE** that the Bar Date for filing claims based on the rejection of Executory Contracts or Unexpired Leases is the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable, and (ii) 5:00 p.m. (Central Time) on the date that is 30 days following service of an order (including the Confirmation Order) approving the rejection of any executory contract or unexpired lease of the Debtors. To the extent any executory contract or unexpired lease is rejected pursuant to the terms of the Plan, the Rejection Damages Bar Date shall be 30 days after service of this *Notice of (I) Entry of Order Confirming Plan of Liquidation of Bitcoin Depot Inc. and its Affiliated Debtors under Chapter 11 of the Bankruptcy Code and (II) Occurrence of the Effective Date*.

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Bankruptcy Court and serve a copy of such request for notice on counsel to the Liquidation Trust. You must do this even if you filed such a notice prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

---

[3] The deadline for filing requests for payment of Administrative Expense Claims shall be: (a) for Administrative Claims that are not Professional Fee Claims, 30 days after the Effective Date; and (b) for Administrative Claims that are Professional Fee Claims, 45 days after the Effective Date.