**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BITCOIN DEPOT INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90528 (CML)<br><br>(Jointly Administered) |

**APPLICATION OF STINKER STORES, INC. FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Stinker Stores, Inc. ("**Stinker Stores**"), by its undersigned counsel, hereby submits this application (the "**Application**") for entry of an order, substantially in the form attached hereto (the "**Proposed Order**") allowing and directing payment of its administrative expense claim in the amount of $42,746.00 (the "**Administrative Claim**") arising from post-petition services provided to the above-captioned debtors pursuant to an executory contract, and for the storage of estate assets pending the sale and removal of estate assets. In support of this Application, Stinker Stores respectfully states as follows:

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, and this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On May 17, 2026 (the "**Petition Date**"), Bitcoin Depot Operating LLC ("**Bitcoin Depot Operating Debtor**"), and Express Vending Inc. (collectively the "**Initial Debtors**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**").

5. On May 18, 2026 (the "**Remaining Debtors' Petition Date**"), the remaining debtors, including Bitcoin Depot Inc. ("**Bitcoin Depot Debtor**") (collectively the "**Remaining Debtors**"), each filed voluntary petitions under chapter 11 of the Bankruptcy Code with the Court.

6. The Initial Debtors and Remaining Debtors are collectively referred to herein as the "**Debtors**." The Debtors' chapter 11 Bankruptcy cases are collectively referred to herein as the "**Chapter 11 Cases**."

7. The Debtors remain in possession of their property and continue to operate and manage their business as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the *Amended Order Directing Joint Administration of the Debtors'*

*Chapter 11 Cases* [Dkt. No. 34] (the "**Joint Administration Order**") entered by the Court on May 19, 2026, in each of the Chapter 11 Cases.

**i. Relationship Between Stinker Stores and the Debtors**

9. The Debtors own kiosks and/or machines (collectively the "**Kiosks**" and each individually, a "**Kiosk**") that facilitate the purchase and sale of cryptocurrency and/or other functions relating to the purchase and sale of cryptocurrency.

10. Stinker Stores and Lux Vending, LLC d/b/a Bitcoin Depot (predecessor-in-interest to the Bitcoin Depot Operating Debtor) entered into that certain Master Placement Agreement Form, effective December 6, 2022, as subsequently amended by the Addendum to the Master Placement Agreement (collectively the "**Agreement**"). Pursuant to the Agreement, Stinker Stores and the Bitcoin Depot Operating Debtor agreed that the Bitcoin Depot Operating Debtor would install, operate, and maintain their Kiosks at specified Stinker Stores locations, and Stinker Stores agreed that the Debtors could install, operate, and maintain the Kiosks at the agreed upon locations set forth in the Agreement, and at all other additional locations where the decision had been made to install, operate, and maintain Kiosks and utilize the Stinker Stores' Services.

11. Under the Agreement, at all locations Kiosks were installed and operated, Stinker Stores was required to, among other things: (i) ensure adequate space and sufficient electrical supply to the Kiosks, and pay for any utilities or related fees, costs or expenses associated with the same; (ii) not add any advertising or marketing materials to or around the Kiosks; (iii) ensure that the premises are maintained and safe; and (iv) add reasonable technical or security measures as the Debtors may deem necessary (collectively the "**Services**"). In exchange for allowing the Debtors to install, operate, and maintain the Kiosks, as well as in exchange for Stinker Stores providing the Services, the Bitcoin Depot Operating Debtor agreed to pay Stinker Stores a monthly flat fee of

$400 per location where the Bitcoin Depot Operating Debtor maintained a Kiosk. A true and correct copy of the Agreement is attached hereto as **Exhibit A**. The Agreement is an executory contract subject to 11 U.S.C. § 365.

12. Both prior to and after the Petition Date, Stinker Stores supplied the Bitcoin Depot Operating Debtor with the Services, but the Bitcoin Depot Operating Debtor failed to pay for all the post-petition Services. As of August 31, 2026, the post-petition amount due is **$42,746.00**.

13. Due to the executory nature of the Agreement, Stinker Stores was required to continue to provide on-going Services and storage of the Kiosks to the Bitcoin Depot Operating Debtor until the Agreement was terminated. Additionally, and as set forth in more detail below, even after the Agreement was terminated, Stinker Stores was unable to remove the Kiosks from its property because the Debtors were in the process of selling the Kiosks for the benefit of the estate, thereby requiring Stinker Stores to wait until the sales closed and the purchasers of the Kiosks removed the Kiosks from each of the Stinker Stores locations, pursuant to the timing and terms set forth in the sale agreement. Rather than remove the Kiosks and store them elsewhere pending sale, the Debtors elected to keep the Kiosks on Stinker Stores' premises, requiring Stinker Stores to maintain and secure the Kiosks while awaiting sale and removal. To date, only one (1) Kiosk has been removed, and the remaining thirty (30) Kiosks remain on Stinker Stores' properties, but the purchaser, Bitcoin Bancorp, is coordinating the removals.

**ii. The Debtors Sale Process**

14. On May 28, 2026, the Debtors filed the *Emergency Motion of Debtors for Entry of Orders (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; (C) Approving (I) Sale of Substantially All of Debtors' Assets*

*Free and Clear of Liens, Claims, Encumbrances, and other Interests; and (D) Granting Related Relief* [Dkt No. 98] (the "**Bidding Procedures Motion**"), seeking approval of bidding procedures applicable to the sale of the Debtors assets. On June 10, 2026, the Court entered the *Order (A) Approving (I) Bidding Procedures, (II) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (III) Assumption and Assignment Procedures; (B) Scheduling Auction, Sale Hearing, and Related Deadlines; and (C) Granting Related Relief* [Dkt No. 193] (the "**Bidding Procedures Order**").

15. On June 1, 2026, the Debtors filed the Emergency Motion for Entry of an *Order (I) Approving Procedures to Reject Executory Contracts and Unexpired Leases; (II) Waiving Bankruptcy Rule 6006(F)(6); (III) Approving Abandonment of Property in Connection with Rejection of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Dkt No. 109] (the "**Rejection Procedures Motion**"), seeking approval of certain procedures for the rejection of executory contracts and the abandonment of related property. On June 9, 2026, the Court entered the *Order (I) Approving Procedures to Reject Executory Contracts and Unexpired Leases; (II) Waiving Bankruptcy Rule 6006(F)(6); (III) Approving Abandonment of Property in Connection with Rejection of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Dkt No. 186] ("**Rejection Procedures Order**").

**iii. Debtors' Assumption and Subsequent Rejection of the Agreement**

16. Pursuant to the Bidding Procedures Order, on June 18, 2026, the Debtors filed the *Seventieth Omnibus Notice of Proposed Assumption and Assignment of Certain Executory Contracts* [Dkt No. 272] ("**Assumption Notice**"). Pursuant to the Assumption Notice, the Agreement was identified as an executory contract to be potentially assumed and assigned to a winning bidder, with a cure amount of $19,189.00. *See* Assumption Notice, Ex. A, at 8.

Importantly, the Assumption Notice provided that all post-petition amounts due and owing under the potentially assumed and assigned contracts, including the Agreement, would be "paid in the ordinary course of business until the assumption and assignment of the Potential Assigned Contract or Lease." *Id.*, at 2, § 5 (emphasis added). The Debtors failed to make any post-petition payments in the ordinary course of business to Stinker Stores, contrary to their representations in the Assumption Notice.

17. On July 2, 2026, the Debtors filed the *Twelfth Omnibus Notice of Rejection of Certain Executory Contracts and Unexpired Leases and Abandonment of Property in Connection Therewith* [Dkt No. 429] ("**Rejection Notice**"). The Agreement was removed as a contract to be potentially assumed and assigned as identified in the Assumption Notice, and pursuant to the Rejection Notice, the Agreement was identified as a contract to be rejected. *See* Rejection Notice, Sched. A, at 8. Additionally, the Kiosk located at 302 Airport Rd, Rawlins, WY 82301, United States, was to be deemed abandoned. *Id*. Pursuant to the Rejection Notice, rejection of the Agreement and abandonment of the identified Kiosk would become effective on July 31, 2026, considering the three (3) day mailing rule and the twenty-one (21) day notice period.[2] *See id*; *see also* Rejection Procedures Order at 3(c).

18. The Agreement was officially rejected on July 31, 2026, pursuant to the terms of the Rejection Procedures Order and Rejection Notice. Although the Agreement was rejected on July 31, 2026, the Debtors continued to keep all Kiosks on Stinker Stores' properties until the

[2] Debtors' counsel confirmed that because the Rejection Notice was served on July 7, 2026, rejection becomes effective on July 31, 2026, considering the three-day mailing rule. Counsel further confirmed that during that time, the Debtors could remove the Agreement from the Rejection Notice and attempt to assume and assign the Agreement.

Kiosks were sold and thereafter removed by the applicable purchasers, as necessary to facilitate an orderly wind-down.

**iv. Bitcoin Bancorp Sale**

19. On July 1, 2026, the Debtors filed the *Notice of Winning Bidders and Adjourned Sale Hearing* [Dkt No. 404] ("**Bitcoin Bancorp Sale Notice**"). Pursuant to the Bitcoin Bancorp Sale Notice, Stinker Stores was informed that 30 of the Debtors' 31 Kiosks located on Stinker Stores' properties were sold to Bitcoin Bancorp, Inc. ("**Bitcoin Bancorp**"). *See* Bitcoin Bancorp Sale Notice, Ex. B-3, at 15–17. Specifically, Bitcoin Bancorp agreed to purchase the Kiosks located at the following Stinker Stores' addresses:

10677 W. Ustick Rd, Boise, ID 83713, United States
2323 Main St., Boise, ID 83702, United States
3412 W. State St., Boise, ID 83703, United States
101 Main St, Delta, CO 81416, United States
1015 SHERIDAN BLVD, LAKEWOOD, CO 3006, United States
1044 Pullman, Moscow, ID 83843, United States
10500 W STATE ST, BOISE, ID 83714, United States
1103 S Townsend Ave, Montrose, CO 81401, United States
1500 S Five Mile, Boise, ID 83709, United States
16000 Hwy 20/26, Caldwell, ID 83607, United States
1607 S Broadway, Boise, ID 83706, United States
1715 E Main, Burley, ID 83318, United States
2259 Addison Ave, Twin Falls, ID 83301, United States
2550 S Apple, Boise, ID 83706, United States
2959 S Cole Rd, Boise, ID 83709, United States
3110 North-South Hwy, Lewiston, ID 83501, United States
3203 N Cole Rd, Boise, ID 83704, United States
321 24th St, Caldwell, ID 83605, United States
4744 N Eagle Rd, Boise, ID 83713, United States
4849 N Meridian Rd, Meridian, ID 83646, United States
601 Main St, Fort Morgan, CO 80701, United States
620 Vista Rd, Boise, ID 83705, United States
630 Hwy 16, Emmett, ID 83616, United States
6300 N Eagle Rd, Boise, ID 83713, United States
702 N Overland Ave, Burley, ID 83318, United States
704 Cleveland, Caldwell, ID 83605, United States
800 E Main, Jerome, ID 83338, United States
803 12th Avenue S, Nampa, ID 83651, United States

496 First St, Idaho Falls, ID 83401, United States
800 W HAMPDEN AVE, ENGLEWOOD, CO 2116, United States

(collectively the "**Bitcoin Bancorp Kiosks**"). *See id.* The Bitcoin Bancorp Sale Notice further provided that the Debtors would file a form of sale order seeking Court authorization to consummate the sale of the Debtors' assets, including the Bitcoin Bancorp Kiosks, to Bitcoin Bancorp. *Id*., at 3.

20. On July 24, 2026, the Court entered the *Order (I) Approving (A) the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [Dkt. No. 521] ("**Bitcoin Bancorp Sale Order**"). Pursuant to the Bitcoin Bancorp Sale Order, which attaches and incorporates the Asset Purchase Agreement, as amended, between the Debtors and Bitcoin Bancorp, Bitcoin Bancorp agreed to remove the Bitcoin Bancorp Kiosks no later than 30 days following the Closing Date. *Id*., at 60, § 5.11.

21. On August 3, 2026, the Debtors filed the *Notice of Filing of Amended Asset Purchase Agreement* [Dkt. No. 584] between the Debtors and Bitcoin Bancorp, then on August 20, 2026, the Debtors filed another *Notice of Filing of Amended Asset Purchase Agreement* [Dkt. No. 637] between the Debtors and Bitcoin Bancorp. On August 21, 2026, the Debtors filed the *Fourth Notice of Sale Closing* [Dkt. No. 638], which provides the closing of the sale between Bitcoin Bancorp and the Debtors occurred on August 20, 2026.

22. As a result, Bitcoin Bancorp is required to remove the Bitcoin Bancorp Kiosks no later than September 19, 2026. As of August 31, 2026, zero Bitcoin Bancorp Kiosks had been removed from Stinker Stores' property. Accordingly, Stinker Stores is entitled to an administrative expense claim for the actual and necessary costs of preserving the Bitcoin Bancorp Kiosks through August 31, 2026, and continuing until each of the Bitcoin Bancorp Kiosks are removed. Each of

the remaining Kiosks continues to accrue an administrative expense at a per diem amount until each Kiosk is removed.

**v. PointsKash Sale**

23. On July 22, 2026, the Debtors filed the *Second Notice of Winning Bidders* [Dkt. No. 495] ("**PointsKash Sale Notice**"), identifying PointsKash Inc. ("**PointsKash**") as one of several successful bidders for the sale of the Debtors' assets. Pursuant to the PointsKash Sale Notice, Stinker Stores was informed that the one (1) remaining Kiosk located at 302 Airport Rd, Rawlins, WY 82301, United States ("**PointsKash Kiosk**") was sold to PointsKash, and that the Debtors would file a form of sale order seeking Court authorization to consummate the sale of Debtors' assets, including the PointsKash Kiosk, to PointsKash. *See* PointsKash Sale Notice, at 3, Ex. E, at 59.

24. As a result, the PointsKash Kiosk was therefore removed from property to be abandoned as initially indicated in the Rejection Notice, and on July 22, 2026, the Debtors filed the *Notice of Amendment to Twelfth Omnibus Notice of Rejection of Certain Executory Contracts and Unexpired Leases and Abandonment of Property in Connection Therewith* [Dkt No. 500] (the "**Rejection Notice Amendment**"), formally removing the PointsKash Kiosk from the list of abandoned property. *See* Rejection Notice Amendment, Ex. A, at 6.

25. On July 24, 2026, the Court entered the *Order (I) Approving the Sale of Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances and (II) Granting Related Relief* [Dkt No. 522] ("**PointsKash Sale Order**"). Pursuant to the PointsKash Sale Order, which attaches and incorporates the form of Asset Purchase Agreement between the Debtors and PointsKash, PointsKash agreed to remove the PointsKash Kiosk no later than 30 days following the Closing Date. PointsKash Sale Order, at 54, § 5.11.

26. On July 30, 2026, the Debtors filed the *Second Notice of Sale Closings* [Dkt. No. 580], which provides the closing of the sale between PointsKash and the Debtors occurred on July 27, 2026. As a result, PointsKash was required to remove the PointsKash Kiosk no later than August 26, 2026.

27. On August 26, 2026, the PointsKash Kiosk was removed from Stinker Stores' property. Accordingly, Stinker Stores is entitled to an administrative expense claim for the actual and necessary costs of preserving the PointsKash Kiosk through August 26, 2026.

**vi. Confirmation of Chapter 11 Plan**

28. On August 11, 2026, the Court entered the *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming Plan of Liquidation of Bitcoin Depot Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Dkt. 619] ("**Confirmation Order**"), confirming the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation filed at Docket Numbers 304, 318, 570, and as subsequently amended (collectively the "**Plan**"). Pursuant to the Plan, administrative claims that have not yet been allowed by the Court, the Debtors are required to pay administrative claims no later than 30 days after the date on which an order allowing such administrative claim becomes a final order. *See* Plan, at 18. Additionally, all applications for payment of administrative expense claims arising on or after the Petition Date, but prior to the Effective Date, are required to be filed no later than 30 days after the Effective Date. *Id*.

29. On August 24, 2026, the Debtors filed the *Notice of (I) Entry of Order Confirming Plan of Liquidation of Bitcoin Depot Inc. and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code and (II) Occurrence of the Effective Date* [Dkt. No. 641] (the "**Confirmation Notice**"), which provides that the Effective Date of the Plan occurred on August 24, 2026, and as

a result, the deadline to file requests for payment of administrative expense claims is September 23, 2026. *See* Confirmation Notice at 1-2.

30. Accordingly, Stinker Stores timely files this Application for payment of its Administrative Claim in the amount of $42,746.00. The Debtors failed to make any post-petition payments to Stinker Stores, contrary to their representations in the Assumption Notice. Even after the Agreement terminated pursuant to the Rejection Notice, the Debtors continued to utilize Stinker Stores' properties to store the Kiosks, requiring Stinker Stores to maintain each of the Kiosks in furtherance of the Debtors' orderly liquidation of their assets. The Debtors have failed to timely and fully pay Stinker Stores $42,746.00 while they liquidate their assets and wind down their businesses.

## RELIEF REQUESTED

31. By this Application, Stinker Stores seeks entry of an order substantially in the form of the Proposed Order attached hereto: (i) allowing and directing the payment of its Administrative Claim in the amount of $42,746.00, pursuant to section 503(b)(1)(A) of the Bankruptcy Code; and (ii) granting such other relief this Court deems necessary and appropriate. A true and correct payoff calculation is attached hereto as **Exhibit B**, which is incorporated herein by reference.

## BASIS FOR RELIEF REQUESTED

32. Stinker Stores has an administrative expense claim in the amount of $42,746.00 pursuant to section 503(b)(1)(A) of the Bankruptcy Code, for the value of the Services Stinker Stores has provided to the Debtors. Stinker Stores provided these Services in the same manner and under the same contractual terms as had been the parties' pre-petition ordinary course of dealing.

33. Section 503(b) of the Bankruptcy Code provides that allowed administrative expense claims exist for the "actual, necessary costs and expenses of preserving the estate,

including wages, salaries or commissions for services rendered after the commencement of the case . . . ." 11 U.S.C. § 503(b)(1)(A). Section 507(a) of the Bankruptcy Code provides that administrative expense claims allowed under section 503(b) of the Bankruptcy Code have priority. 11 U.S.C. § 507(a)(2).

34. An administrative expense claim is entitled to priority under section 503(b)(1)(A) if: (1) the claim arose post-petition and as a result of actions taken by the debtor-in-possession, and (2) those expenses yielded a benefit to the estate. *Nabors Offshore Corp. v. Whistler Energy II, LLC et al. (In re Whistler Energy II, LLC)*, 931 F.3d 432, 443 (5th Cir. 2019). Post-petition transactions can be established if it is "attributable to the actions of the bankruptcy estate through evidence of either a direct request from the debtor-in-possession or other inducement via the knowing and voluntary post-petition acceptance of desired goods or services." *Id*. (internal citation omitted). The word "benefit" functions as a way of testing whether a particular expense was truly necessary to the estate. *Id*. (citation omitted). The concept of "necessary costs" in the 503(b)(1)(A) context is broader than one of absolute requirement, and includes "less readily calculable benefits, such as the ability to conduct business as usual." *Id*. (citation omitted).

35. "Preserving the estate should not be interpreted narrowly … preserv[ing] the estate may also include … continuation of the business or an orderly liquidation." 4 Collier on Bankruptcy ¶ 503.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (internal quotations omitted); *see also In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992) (citing *In re Coastal Carriers Corp.*, 128 B.R. 400, 404 (Bankr. D. Md. 1991)) (holding that creditor was entitled to an administrative claim because, *inter alia*, the goods and services it provided allowed the debtor the ability to continue to conduct business as usual). "The actual and necessary expenditures of the trustee in operating the business of the estate, for storage of property,

for rent and for other goods and services incidental to protecting, conserving, maintaining, and rehabilitating the estate are certainly contemplated within the phrase 'actual, necessary costs and expenses of preserving the estate.'" 4 Collier on Bankruptcy ¶ 503.06[1]; *In re U Lock, Inc.*, No. 22-20823-GLT, 2023 WL 308210, at *9 (Bankr. W.D. Pa. 2023) (property owner entitled to a reasonable administrative expense claim for the estate's post-petition use of property to store assets because the assets "needed to be stored somewhere, and the estate enjoyed the added benefit of not having to move them."). Section 503(b)(1)(A) serves an important interest because it provides an incentive to creditors to continue to deal with a debtor in bankruptcy so that the debtor may continue its business and thus benefit the estate. *Whistler Energy II*, 931 F.3d at 441-42.

36. Applying these principles to this case, Stinker Stores has a valid administrative expense claim in the amount of $42,746.00. The Agreement constitutes an executory contract between Stinker Stores and the Debtors, which did not terminate until July 31, 2026, as provided by the Rejection Notice, only after the Debtors were unable to assume and assign the contract to any willing purchaser in the Chapter 11 Cases. Indeed, prior to the Rejection Notice, the Debtors initially identified the Agreement as a contract to be potentially assumed and assigned pursuant to the Assumption Notice, which notably, provided that the Debtors would continue to pay all post-petition amounts due under the Agreement in the ordinary course of business. Under 11 U.S.C. § 365, Stinker Stores was required, and did continue to provide, the Services to the Debtors under the terms of the Agreement after the Petition Date and further allowed the Debtors to store the Kiosks on Stinker Stores' properties without the Debtors having to remove them and pay for storage elsewhere. The Administrative Claim is for post-petition Services, and storage provided to the Debtors, satisfying the first prong of the section 503(b)(1)(A) inquiry.

37. The second element of section 503(b)(1)(A) is likewise satisfied. Stinker Stores' post-petition Services, and storage directly and substantially benefited the Debtors' estate, allowing the Debtors to facilitate the orderly liquidation of substantially all its assets, including a sale of the Kiosks. The Services continued to be provided in the same manner and under the same terms as had been the parties' pre-petition ordinary course of dealing, which Services are incident to the operation of the Debtors' business, allowing the Debtors to maintain the status quo of their business, and to facilitate the orderly liquidation of its assets. The Services, and storage are clearly incidental to protecting, conserving, and maintaining the estate. As a result, the Debtors should be ordered to pay the Administrative Claim to Stinker Stores.

38. Accordingly, the amount of $42,746.00 due to Stinker Stores for post-petition Services, and storage as of August 31, 2026, constitutes an actual and necessary cost of preserving the estate during the Debtors' orderly liquidation and wind-down, and the Court should enter an order allowing the Administrative Claim and compelling payment of same.

## RESERVATION OF RIGHTS

39. By submitting this request for payment of its Administrative Claim, Stinker Stores does not waive any rights, remedies, liens, interests, priorities, protections, claims, right to any security, or any other right or rights with respect to any claim that Stinker Stores has or may have against the Debtors or any of their affiliates, or any other person or persons.

40. Additionally, Stinker Stores reserves its right to replace, restate, amend, and/or supplement this request for payment of its Administrative Claim at any time and for any reason, to file additional and further pleadings for additional claims, and to assert any and all other claims, actions, defenses, rights, or remedies of whatever kind or nature that it currently has or may have in the future against the Debtors and/or any subsidiary, affiliate, or successor thereof, or any other

person at law or in equity, including but not limited to the right to (a) correct, increase, or amend the claim amounts referred to herein; (b) add or amend any documents or other information, and to describe further the claims asserted herein; (c) seek and/or assert other administrative or other priority claims; (d) seek interest; and (e) assert claims that are otherwise warranted in any related actions. The filing of this request for payment of administrative expense claims shall not be deemed a waiver of, or other limitation on, any such claims, actions, defenses, rights, or remedies, and such claims, actions, defenses, rights, and remedies are expressly reserved.

41. The filing of this request for allowance and payment of the Administrative Claim is not intended to be and should not be construed as an election of remedies or waiver of any past, present, or future claims.

42. Stinker Stores specifically reserves and preserves all its procedural and substantive defenses and rights with respect to any claim or counterclaim that may be asserted against Stinker Stores by the Debtors, any of their successors or assigns, or by any bankruptcy trustee for the Debtors' estates.

## CONCLUSION

**WHEREFORE**, Stinker Stores respectfully requests that this Court enter an Order: (i) allowing Stinker Stores' Administrative Claim against the Debtors in the amount of $42,746.00; and (ii) granting such other and further relief as the Court deems necessary and appropriate.

Dated: September 16, 2026
Houston, TX

Respectfully submitted,

**REED SMITH LLP**

*/s/ Haley B. Bray*
Haley B. Bray (24143584)
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Phone: 469.680.4200
Fax: 469.680.4299
Email: hbray@reedsmith.com
*and*
Paul D. Moak (00794316)
**REED SMITH LLP**
1221 McKinney Street
Suite 2100
Houston, TX 77010
Telephone: (713) 469-3661
Facsimile: (713) 469-3899
E-mail: pmoak@reedsmith.com

*Attorneys for Stinker Stores, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 16, 2026, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Haley B. Bray*
Haley B. Bray