**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| BITCOIN DEPOT INC., et al., | ) | Case No. 26–90528 (CML) |
| Debtors.[1] | ) | (Jointly Administered) |

**APPLICATION OF EG RETAIL (AMERICA), LLC FOR**
**<u>ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAM</u>**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

EG Retail (America), LLC, ("<u>EG America</u>") a creditor and contract counter-party in the above-captioned jointly administered chapter 11 cases, hereby submits this application (the "<u>Application</u>") for entry of an order, substantially in the form attached hereto (the "<u>Proposed Order</u>") allowing and directing payment of its administrative expense claim in the amount of $306,960.00 (the "<u>Administrative Claim</u>") arising from post-petition services provided to the above-captioned debtors pursuant to an executory contract, and for the storage of estate assets pending the sale and removal of the estate assets. In support of this Application, EG America submits the Declaration of Josh Perrin, attached as **<u>Exhibit A</u>**, and respectfully states as follows:

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/bitcoindepot. The location of the Debtors' corporate headquarters is: 8601 Dunwoody Place, Sandy Springs, Georgia 30350.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, and this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On May 18, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").[2]

### i. The Master Placement Agreement

5. The Debtors own kiosks and/or machines (collectively the "Kiosks" and each individually, a "Kiosk") that facilitate the purchase and sale of cryptocurrency and/or other functions relating to the purchase and sale of cryptocurrency.

6. Prior to the Petition Date, EG America and Debtor Bitcoin Operating, LLC, d/b/a Bitcoin Depot (the "Contract Debtor") maintained an arrangement, pursuant to that certain Master Placement Agreement, as amended (the "Agreement"), under which the Contract Debtor placed Kiosks in EG America's valuable and highly trafficked retail space for a certain "Host Fee" (as defined in the Agreement) on a monthly basis. The Agreement is attached as **Exhibit B**.

7. As of the Petition Date, EG America hosted 278 of the Contract Debtor's Kiosks. Each EG America location that housed a Kiosk pursuant to the Agreement is listed in Exhibit B.

[2] Debtors Bitcoin Depot Operating LLC and Express Vending Inc. each filed their voluntary petitions for relief on May 17, 2026.

8. Pursuant to Amendment 1 to the Agreement, the Debtors agreed pay to EG America $300 per month per Kiosk for hosting each Kiosk and performing related services (together, the "Services"). As of the filing of this Application, the Debtors have failed to pay for post-petition Services related to the Kiosks, with $306,960.00 in post-petition Services being due and owing.

9. Due to the executory nature of the Agreement, EG America was required to continue hosting the Kiosks for the Contract Debtor until the Agreement was rejected. Additionally, and as set forth in more detail below, even after the Agreement was rejected and 82 Kiosks abandoned, EG America was unable to remove 196 of the Kiosks from its property because the Debtors were in the process of selling the Kiosks for the benefit of the estate, thereby requiring EG America to wait until the sales closed to remove those Kiosks. Rather than remove the Kiosks and store them elsewhere pending sale, the Debtors elected to keep the Kiosks on EG America's premises, requiring EG America to maintain and secure 196 Kiosks while awaiting sale and removal.

**ii. The Debtors' Sale Process**

10. On May 28, 2026, the Debtors filed a motion requesting that this Court approve procedures for bidding on their assets as a part of a sale process as well as assuming and assigning executory contracts [Docket No. 98], which the Court approved on June 10, 2026 [Docket No. 193].

11. On June 1, 2026, the Debtors filed a motion requesting that this Court approve procedures for rejecting executory contracts or unexpired leases and/or abandoning assets related thereto [Docket No. 109], which the Court approved on June 9, 2026 [Docket No. 186] (the "Rejection Procedures").

12. On June 16, 2026, the Debtors filed their second omnibus notice of assumption [Docket No. 216] listing the locations where the Kiosks were placed per the Agreement as an executory contract the Debtors may potentially assume and assign to an as-of yet named Winning Bidder, as defined therein, to which EG America objected [Docket No. 333] (the "Cure Objection").

13. On July 2, 2026, the Debtors filed their tenth and eleventh rejection notices [Docket Nos. 427, 428], noticing for rejection of the Agreement and listing for abandonment Kiosks at 89 locations (the "Rejection Notices"). Pursuant to the Rejection Procedures, the rejection and abandonment would automatically become effective on July 23, 2026.

14. On July 7, 2026, counsel for EG America received email confirmation from the Debtors that the Agreement would not be assumed and assigned as a part of a sale. Accordingly, EG America withdrew its Cure Objection [Docket No. 440].

15. On July 22, 2026, the Debtors filed an amended version of the tenth and eleventh rejection notices [Docket Nos. 498, 499], removing from potential abandonment 7 of the 89 Kiosks (the "Amended Rejection Notices"). The Amended Rejection Notices also appeared to remove from rejection 3 of the locations governed by the Agreement. On the same day, the Debtors filed a supplemental notice of proposed assumption and assignment of contracts [Docket No. 501] listing those 3 locations. EG America informed the Debtors that the Debtors cannot assume only part of a contract and therefore could not assume the Agreement solely related to those 3 locations. The Debtors confirmed to EG America that the potential buyer removed the 3 locations from its bid.

16. On July 23, 2026, the Rejection Notices became effective, rejecting the Agreement and effectuating the abandonment of 82 Kiosks.

17. Through communications with the Debtors, EG America believes that the Debtors only sold 4 of the Kiosks, which were sold as part of the sale to PointsKash, Inc. As of the time of the filing of this Application, no purchaser has removed any Kiosks from EG America's retail locations.

**iii. Plan Confirmation**

18. On August 11, 2026, the Court confirmed the Debtors' combined disclosure statement plan of liquidation [Docket No. 619] (as subsequently amended, the "Plan"). Pursuant to the Plan, all applications for payment of administrative expense claims arising on or after the Petition Date, but prior to the effective date of the Plan (the "Effective Date"), are required to be filed no later than 30 days after the Effective Date.

19. On August 24, 2026, the Debtors gave notice of the Effective Date. Therefore, the deadline to file requests for payment of administrative expense claims is September 23, 2026.

20. Accordingly, EG America timely files this Application for payment of an administrative claim in the amount of $306,960.00 (the "Administrative Claim"). The Administrative Claim consists of payment of $183,480, for hosting 278 Kiosks up until the Debtors rejected the Agreement and abandoned 82 Kiosks on July 23, 2026, and $123,480 from the storage of the remaining 196 unabandoned Kiosks up through the date of this Application, as demonstrated below and attached as **Exhibit C**:

| **Kiosks Hosted** | **Date Range** | **Days** | **Monthly Rate per Kiosk** | **Monthly Total** | **Daily Rate (30-day month)** | **Amount** |
|---|---|---|---|---|---|---|
| Original 278 | May 18, 2026 - July 22, 2026 | 66 | $300 | $83,400 | $2,780 | **$183,480** |
| Remaining 196 | July 23, 2026 - September 23, 2026 | 63 | $300 | $58,800 | $1,960 | **$123,480** |
| **Total:** | | | | | | **$306,960** |

21. The Debtors failed to make any post-petition payment to EG America. Even after rejection of the Agreement pursuant to the Rejection Notices, the Debtors continued to utilize EG America's properties to store the Kiosks, requiring EG America to maintain each of the Kiosks in furtherance of the Debtors' orderly liquidation of their assets.

**RELIEF REQUESTED**

22. By this Application, EG America seeks entry of an order substantially in the form of the Proposed Order attached hereto: (i) allowing and directing payment of its Administrative Claim in the amount of $306,960.00, pursuant to section 503(b)(1)(A) of the Bankruptcy Code; and (ii) granting such other relief this Court deems necessary and appropriate.

**BASIS FOR RELIEF REQUESTED**

23. Section 503(b)(1)(A) of the Bankruptcy Code provides that allowed administrative expense claims exist for the "actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for service rendered after the commencement of the case . . . ." Section 507(a) of the Bankruptcy Code provides that administrative expense claims allowed under section 503(b) of the Bankruptcy Code have priority. 11 U.S.C. § 507(a)(2).

24. "[T]o qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefited the estate." *Nabors Offshore Corp. v. Whistler Energy II, LLC et al. (In re Whistler Energy II, LLC)*, 931 F.3d 432, 441 (5th Cir. 2019) (quoting *Jack/Wade Drilling, Inc.* 258 F.3d 387 (5th Cir. 2001)). Post-petition transactions can be established if it is "attributable to the actions of the bankruptcy estate through evidence of either a direct request from the debtor-in-possession or other inducement via the knowing and voluntary post-petition acceptance of desired goods or services." *Whistler Energy*, 931 F.3d at 441. "A benefit to the

estate can come in different forms" and cannot be "narrowly confined" and includes "less readily calculable benefits, such as the ability to conduct business as usual." *Id.* (internal quotations omitted); *see also* 4 Collier on Bankruptcy ¶ 503.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Preserving the estate should not be interpreted narrowly . . . preserv[ing] the estate may also include . . . continuation of the business or an orderly liquidation.").

25. The Fifth Circuit has stated that there is no presumption against recognizing administrative expenses following the rejection of a contract. *Whistler Energy*, 31 F.3d at 442, n2. In the absence of alternative evidence, Courts have relied on the contract rate to determine the value of the benefits provided to a debtor post rejection of a contract. *See In re Home Interiors & Gifts, Inc.*, Bankr. No. 09-31961-11-BJH, Adv. No. 08-03125-BJH, 2008 WL 4772102, at *11-12 (Bankr. N.D. Tex. Oct. 9, 2008) (applying the contract royalty rate to a rejected trademark licensing agreement when the debtor failed to introduce sufficient evidence that the royalty rate was not reflective of fair market value). Analogously, when a debtor rejects a post-petition lease, but continues to conduct business on the premises, courts will apply the lease contract rate unless shown by the debtors to be unreasonable. *See In re Imperial Beverage Grp., LLC*, 457 B.R. 490, 504 (Bankr. N.D. Tex. 2011) (applying 503(b)(1) to post-rejection lease claims and stating that during the post-rejection period "the contract rate is presumed to reflect the fair market value" and that such rate "sets the applicable rate of administrative expense recovery in the post-rejection period").

26. Pursuant to the above, EG America has a valid administrative expense claim in the amount of $306,960.00. The Agreement constitutes an executory contract between EG America and the Debtors, which was not rejected until July 23, 2026, as provided by the Rejection Notices. Under section 365 of the Bankruptcy Code, EG America was required to and did continue to host

the Kiosks under the terms of the Agreement after the Petition Date and further allowed the Debtors to store the Kiosks on EG America's properties without the Debtors having to remove the Kiosks and pay for storage elsewhere. EG America provided storage for 278 Kiosks up until July 23, and thereafter it provided storage for the 196 Kiosks the Debtors have not yet abandoned. EG America's storage of the remainder of the Kiosks continued as of the filing of this Application. Accordingly, the Administrative Claim is for post-petition services and storage provided to the Debtors, satisfying the first prong of the section 503(b)(1)(A) inquiry.

27. The benefits yielded to the estate satisfy the second prong of Section 503(b)(1)(A). EG America provided Services to the Debtors, including hosting hundreds of Kiosks at great cost to itself, so that the Debtors could attempt to facilitate the orderly liquidation of substantially all of its assets. The Services continued to be provided in the same manner and under the same terms as had been the parties' pre-petition ordinary course of dealing. If EG America did not provide the Debtors this benefit, then the Debtors would have had to undertake the taxing endeavor of retrieving hundreds of Kiosks and finding new storage for them. Such a task would have drained money from the estate and diverted the Debtors' attention away from their sale process.

28. Lastly, equitable principles dictate that the Debtors pay EG America the Administrative Claim. Without payment of the administrative claim, the Debtors will have unjustly enriched themselves, shifting to EG America the burden of hosting the Kiosks at no cost to the Debtors or the estate.

29. Accordingly, the amount of $306,960.00 due to EG America for post-petition Services and storage as of the filing of this Application constitutes an actual and necessary cost of

preserving the estate during the Debtors' orderly liquidation and wind-down, and the Court should enter the proposed order allowing the Administrative Claim and directing payment thereof.

**RESERVATION OF RIGHTS**

30. By submitting this request for payment of its Administrative Claim, EG America does not waive any rights, remedies, liens, interests, priorities, protections, claims, right to any security, or any other right or rights with respect to any claim that EG America has or may have against the Debtors or any of their affiliates, or any other person or persons.

31. Additionally, EG America reserves its right to replace, restate, amend, and/or supplement this request for payment of its Administrative Claim at any time and for any reason, to file additional and further pleadings for additional claims, and to assert any and all other claims, actions, defenses, rights, or remedies of whatever kind or nature that it currently has or may have in the future against the Debtors and/or any subsidiary, affiliate, or successor thereof, or any other person at law or in equity, including but not limited to the right to (a) correct, increase, or amend the claim amounts referred to herein; (b) add or amend any documents or other information, and to describe further the claims asserted herein; (c) seek and/or assert other administrative or other priority claims; (d) seek interest; and (e) assert claims that are otherwise warranted in any related actions. The filing of this request for payment of the Administrative Claim shall not be deemed a waiver of, or other limitation on, any such claims, actions, defenses, rights, or remedies, and such claims, actions, defenses, rights, and remedies are expressly reserved.

32. The filing of this request for allowance and payment of the Administrative Claim is not intended to be and should not be construed as an election of remedies or waiver of any past, present, or future claims.

33. EG America specifically reserves and preserves all its procedural and substantive defenses and rights with respect to any claim or counterclaim that may be asserted against EG America by the Debtors, any of their successors or assigns, or by any bankruptcy trustee for the Debtors' estates.

## CONCLUSION

**WHEREFORE**, EG America respectfully requests the Court enter an Order (i) allowing EG America's Administrative Claim against the Debtors in the amount of $306,960.00; and (ii) granting such other further relief as the Court deems necessary and appropriate.

September 23, 2026

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Christopher J. Giaimo*_______
Christopher J. Giaimo (admitted *pro hac vice)*
2550 M Street, NW
Washington, DC 20037
Telephone: 202.457.6461
Facsimile: 202.457.6315
Email: christopher.giaimo@squirepb.com

Greg R. Wehrer
Texas State Bar No. 24068592
600 Travis Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
Email: greg.wehrer@squirepb.com

*Counsel to EG Retail (America), LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on September 23, 2026 to all parties who have registered for and consented to electronic service in these cases.

/s/ *Christopher J. Giaimo*_______
Christopher J. Giaimo